**EXHIBIT 2**

Dunina v. LifeCare Hosps. of Dayton, Inc., No. 3:06-cv-399, 2008 BL 108182, 2008 Us Dist Lexis 41598 (S.D. Ohio May 21, 2008), Court Opinion

**Pagination**
* BL

[Majority Opinion](#) >

United States District Court for the Southern District of Ohio, Western Division, DAYTON

Olga V. Dunina, Plaintiff,

v.

Life Care Hospitals of Dayton, Inc., Defendant.

Case No. 3:06-cv-399

Chief Magistrate Judge Michael R. Merz

## DECISION AND ORDER ON THE MERITS

This case is before the Court on Defendant LifeCare Hospitals of Dayton, Inc.'s, Motion for Summary Judgment (Doc. No. 43). Plaintiff, who is proceeding *pro se*, was notified by the Court of her obligation to respond under **Fed. R. Civ. P. 56** and of the quality of evidence required in response (Order to Pro Se Plaintiff, Doc. No. 44). She then filed a Response in Opposition in which she also requested summary judgment (Doc. Nos. 45, 46). Defendant has filed a reply in support of the Motion (Doc. No. 48).

The parties unanimously consented to plenary magistrate judge jurisdiction under **28 U.S.C. § 636(c)** and the case was referred on that basis (Doc. No. 29). Thus the two summary judgment motions are properly decided by the undersigned.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56** . On a motion for summary judgment, the

⊞ Dunina v. LifeCare Hosps. of Dayton, Inc., No. 3:06-cv-399, 2008 BL 108182, 2008 Us Dist Lexis 41598 (S.D. Ohio May 21, 2008), Court Opinion

movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 , 106 S.Ct. 2505 , 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed. R. Civ. P. 50 ). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id.* The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 , 106 S. Ct. at 2510-11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F. 2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F. 2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F. 3d 795 (6th Cir. 1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable **[*2]** to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 , 82 S. Ct. 993, 994 , 8 L. Ed. 2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249 , 106 S. Ct. at 2510 .

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 ; *see also*, *Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587 ; *Martin v. Ohio Turnpike Comm'n.*, 968 F. 2d 606 , (6th Cir. 1992), *cert. denied*, 506 U.S. 1054 , 113 S. Ct. 979 , 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller*, 889 F.2d 108,

⊞ Dunina v. LifeCare Hosps. of Dayton, Inc., No. 3:06-cv-399, 2008 BL 108182, 2008 Us Dist Lexis 41598 (S.D. Ohio May 21, 2008), Court Opinion

111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

**Analysis**

Plaintiff claims that Defendant refused to hire her in 2005 on the basis of her Russian national origin and in retaliation for a prior lawsuit that she filed against it in 2002; she also claims that Defendant has defamed her professional reputation as a nurse, causing her damage.

In seeking summary judgment, Defendant submitted Plaintiff's deposition and the Affidavit of its personnel director during the relevant time period, Pamela Hollingshead; Plaintiff has submitted no evidence whatsoever.

The evidence submitted by Defendant, which is uncontradicted, establishes the following relevant facts: LifeCare is a specialty acute care hospital with approximately forty-four beds housed within Sycamore Hospital, which provides services to complex-care patients whose health has failed to improve in more traditional healthcare settings (Hollingshead Aff., p. 1, ¶3). In 2002, LifeCare entered into a Facility Staffing Agreement with Maxim Healthcare Services, Inc., ("Maxim"), in order to ensure adequate staffing for its facility (Hollingshead Aff., pp. 1-2, ¶4). Under the terms of the Facility Staffing Agreement, Maxim recruited, hired, and employed nurses, and then placed them at LifeCare's facility on a temporary basis (Hollingshead Aff., p. 2, ¶4). The nurses were employees of Maxim, not LifeCare (Hollingshead Aff., p. 2, ¶4).

From March 2002 through November 2002, Plaintiff was employed by Maxim as a Registered Nurse and placed on a temporary assignment at LifeCare (Hollingshead Aff., p. 2, ¶4; Plf. Dep., p. 41). In November 2002, LifeCare requested that Maxim remove Plaintiff from her temporary assignment at LifeCare, after there were allegations that Plaintiff stole prescription drugs and an investigation was conducted **[*3]** by the Ohio State Board of Pharmacy (Plf. Dep., p. 41).

After Maxim terminated Plaintiff's assignment at LifeCare, Plaintiff filed a lawsuit against both LifeCare and Maxim in the Montgomery County, Ohio, Court of Common Pleas, asserting the following claims: (1) breach of implied contract; (2) breach of the duty of good faith and fair dealing; (3) breach of fiduciary duty; and (4) negligent infliction of emotional distress ("Plaintiff's 2004 lawsuit"). (See, Plf. Dep. Ex. 4). In Plaintiff's 2004 lawsuit, she did not allege that LifeCare discriminated against her on the basis of her national origin, or on any other basis. (*Id.*).

On March 25, 2005, the Montgomery County Court of Common Pleas granted LifeCare's Motion for Summary Judgment and dismissed all of Plaintiff's claims (*See*, Plf. Dep. Ex. 5). Plaintiff appealed this decision, and by Order dated June 2, 2006, the trial court's dismissal was upheld by the Court of Appeals (*See*, Plf. Dep. Ex. 6). Both courts held that LifeCare had no contractual or employment relationship with Plaintiff. (*Id.*)

While Plaintiff's 2004 lawsuit was pending in state court, she applied for employment directly with LifeCare. In

> Dunina v. LifeCare Hosps. of Dayton, Inc., No. 3:06-cv-399, 2008 BL 108182, 2008 Us Dist Lexis 41598 (S.D. Ohio May 21, 2008), Court Opinion

about August 2005, Plaintiff sent her resume to LifeCare's Human Resources Department seeking a nursing position (Hollingshead Aff., p. 2, ¶4). Plaintiff became aware that LifeCare had open positions because the Company was actively engaged in recruiting registered nurses. Specifically, LifeCare bought a mailing list from the Board of Nursing and conducted a direct mailing of an employment advertisement to nurses in the Dayton, Ohio, area (Hollingshead Aff., p. 2, ¶4). In addition, on April 15, 2005, LifeCare placed an advertisement in the Dayton Daily News (Hollingshead Aff., p. 2, ¶4). Plaintiff applied with LifeCare in response to the direct mailing that she received, as well as an advertisement in the local newspaper (Plf. Dep., pp. 43-45, 48, 51, 53).

Pamela Hollingshead, LifeCare's Human Resources Director in 2005, received Plaintiff's resume (Hollingshead Aff., p. 2, ¶4). However, after consulting with the Company's corporate Human Resources Department, Ms. Hollingshead made the decision not to offer Plaintiff a position (Hollingshead Aff., p. 2, ¶5). The decision not to hire Plaintiff was made solely on the grounds that Plaintiff's 2004 lawsuit, which LifeCare believed was baseless, was pending in the Common Pleas Court (Hollingshead Aff., p. 2, ¶5).

On August 3, 2005, Plaintiff sent correspondence to Ms. Hollingshead inquiring as to why she was not being offered a position (Plf. Dep. Ex. 12). LifeCare informed Plaintiff that she was not being hired; however, it did not inform her that her lawsuit was the reason (Plf. Dep., pp. 44, 54-55, 74, 91).

Thereafter, on September 26, 2005, Plaintiff submitted a Charge of Discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") alleging national origin discrimination, based on LifeCare's failure to hire her (*See*, Plf. Dep. Ex. 7). In her Charge, Plaintiff only alleged that LifeCare discriminated against her when it failed to hire her, not that LifeCare's decision was retaliatory (**[*4]** *Id.*). After the relevant administrative agencies dismissed the charges, Plaintiff filed this case on December 18, 2006.

In a Title VII case, the employee has the initial burden of producing evidence of a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 93 S. Ct. 1817 , 36 L. Ed. 2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 , 101 S. Ct. 1089 , 61 L. Ed. 2d 207 (1981); *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 548 (6th Cir. 1991); *Gagne v. Northwestern Nat. Ins. Co.*, 881 F.2d 309 (6th Cir. 1989). The burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, *supra* ; *Burdine*, *supra* . However, the burden remains on the employee throughout the case to prove by a preponderance of the evidence that he or she was the victim of intentional discrimination. *Burdine*, *supra* .; *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 , 113 S.Ct. 2742 , 125 L.Ed.2d 407 (1993).

The essential factual inquiry in a case of alleged employment discrimination under Title VII is "whether the defendant intentionally discriminated against the plaintiff." *United States Postal Service Board of Governors v. Likens*, 460 U. S. 711, 716 , 103 S.Ct. 1478, 1482 , 75 L.Ed.2d 403 (1983); "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Department of Community Affairs v. Burdine*, 450 U. S. 248, 253 , 101 S. Ct. 1089, 1093 , 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 , 113 S.Ct. 2742 , 125 L.Ed.2d 407 (1993).

In a "disparate treatment" employment discrimination case such as this one, proof of discriminatory motive is

⊞ Dunina v. LifeCare Hosps. of Dayton, Inc., No. 3:06-cv-399, 2008 BL 108182, 2008 Us Dist Lexis 41598 (S.D. Ohio May 21, 2008), Court Opinion

an essential element of the plaintiff's proof. *International Brotherhood of Teamsters v. United States*, 431 U. S. 324, 335 n. 15, 97 S. Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). The plaintiff thus must prove (1) differences in treatment, and (2) a discriminatory motive on the part of the employer. *Beaven v. Commonwealth of Kentucky*, 783 F.2d 672 (6th Cir.1986).

The general rules governing the order and allocation of proof in an individual, non-class action alleging that an employment decision was discriminatory are set forth in *McDonnell Douglas Corp. v. Green*, 411 U. S. 792, 800-02 , 93 S. Ct. 1817, 1823-24 , 36 L.Ed.2d 668 (1973).

The *McDonnell Douglas* analytical framework is to be used in a disparate treatment case. *Galbraith v. Northern Telecom, Inc.*, 944 F.2d 275, 279 (6th Cir.1991). To establish a prima facie case of disparate treatment, a plaintiff is required to show 1) that he or she is a member of a protected class, 2) that a similarly situated non-protected persons received dissimilar (better) treatment, and 3) that sufficient evidence exists from which the Court can find a causal connection between race or sex and the dissimilar treatment. *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1270 (6th Cir.1986).

> Where, as here, a case is at the summary judgment stage and a plaintiff seeks to prove discrimination via indirect, rather than direct, evidence, the plaintiff must submit evidence from which a reasonable jury could conclude both that she has established a prima facie case of discrimination and that the defendant's legitimate, nondiscriminatory reason for its action, if any, is pretext for unlawful discrimination.
>
> *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 , 93 S. Ct. 1817 , 36 L. Ed. 2d 668 (1973); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000).

*Vincent v. Brewer Co.*, 514 F.3d 489 (6th Cir. 2007).

To establish a prima facie case of national origin discrimination, a plaintiff must show that: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004).

To establish that she was qualified, a plaintiff must show that her performance met her employer's legitimate expectations at the time of her discharge. *Vincent v. Brewer Co.*, 514 F.3d 489 (6th Cir. 2007), citing *McClain v. Nw. Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 334 (6th Cir. 2006). She need not show that she was as qualified as the person who replaced her so long as he was outside the protected group. *Id.*

Instead of meeting the *McDonnell-Douglas* test, a plaintiff may prove a *prima facie* case of discrimination by presenting direct evidence of intentional discrimination. *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 548 (6th Cir. 2004); *Talley v. Bravo Pitino Restaurant Ltd.*, 61 F.3d 1241 (6th Cir. 1995), citing *Terbovitz v. Fiscal Court*, 825 F.2d 111, 114-15 (6th Cir., 1987). Direct evidence is evidence that [*5] proves the existence of a fact without requiring any inferences. *Rowan*, *supra* (citations omitted). Where a plaintiff presents direct evidence of discriminatory intent in connection with a challenged employment action, "the burden of both production and persuasion shifts to the employer to prove it would have terminated the

+ Dunina v. LifeCare Hosps. of Dayton, Inc., No. 3:06-cv-399, 2008 BL 108182, 2008 Us Dist Lexis 41598 (S.D. Ohio May 21, 2008), Court Opinion

employee even if it had not been motivated by impermissible discrimination." *Johnson v. The Kroger Co.*, 319 F.3d 858 (6th Cir. 2003), quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999); *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)(citation omitted). Plaintiff has not, however, presented any direct evidence of national origin discrimination.

Where a plaintiff alleges disparate treatment, courts " 'require indirect evidence from which an inference of discriminatory motive may be drawn, namely comparative evidence demonstrating that the treatment of plaintiff differs from that accorded to otherwise "similarly situated" individuals who are not within the plaintiffs protected group'." *Shah v. General Electric Co.*, 816 F.2d 264, 268 (6th Cir.1987) (quoting B. Schlei & P. Grossman, EMPLOYMENT DISCRIMINATION LAW, at 1291 (2d ed. 1983). It is the plaintiff's burden to establish a similarity between his or her conduct and the conduct of other employees outside his or her protected class who she claims were treated differently. *Beaven*, 783 F.2d at 625-76 .

Where a plaintiff alleges that employees outside of her protected class were treated differently, the difference in treatment is probative of discrimination only if the employees were so similarly situated to the plaintiff that the most likely reason for treating the plaintiff differently was her race or sex. *See*, *Furnco Construction Co. v. Waters*, 438 U. S. 567, 577 , 98 S. Ct. 2943, 2949 , 57 L.Ed.2d 957 (1978). If nondiscriminatory explanations will account for the differences in treatment as readily as, for example, a plaintiff's race or sex, she has not shown that the most probable explanation is her race or sex. *See*, *Texas Dept. of Community Affairs*, 450 U.S at 258 , 101 S. Ct. at 1096 ("[I]t is the plaintiff's task to demonstrate that similarly situated employees were not treated equally.")

> Employees are not 'similarly situated' merely because their conduct might be analogized.
>
> Rather, in order to be similarly situated, other employees must have been subjected to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline of it.

*Mazzella v. RCA Global Communications, Inc.*, 642 F.Supp. 1531 (S.D.N.Y.1986), *affd without op.*, 814 F.2d 653 (2d Cir.1987), cited approvingly in *Mitchell v. Toledo Hospital*, 964 F.2d 577 (6th Cir. 1992). For example, a different supervisor can suggest a basis other than sex or race for the difference in treatment received by two employees. *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1271 (6th Cir.1986). *See also*, *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir.1989); *Tate v. Weyerhaeuser Co.*, 723 F.2d 598, 606 (8th Cir.1983), (different disciplinary measures distinguished because different supervisory personnel were involved); *Thomas v. Florida Power & Light Co.*, 532 So.2d 1060 , [532 SO.2D 1060], 1988 WL 142151 (S.D.Fla.1988) (plaintiff not similarly situated to comparative employee because they had different supervisors and worked at different facilities); *Lynch. v. Dean*, 1985 WL 56683 (M.D.Tenn.1985), *rev'd on other grounds*, 817 F.2d 380 (6thCir.1987) (proof that plaintiff was disciplined more severely than workers under supervision of another foreman did not aid plaintiff in showing she was victim of discrimination); *Talley v. U. S. Postal Service*, 33 FEP Cases 233, 238 (E.D.Mo.1982), *aff'd*, 720 F.2d 505 (8th Cir.1983) (none of employees worked for plaintiff's supervisor, whose motivation was at issue; therefore, **[*6]** employees to whom plaintiff compared herself were not similarly

situated); *Williams v TWA, Inc*, 507 F.Supp. 293 (W.D.Mo.1980), *aff'd in part rev'd in part*, 660 F.2d 1267 (8th Cir.1981) (evidence of disparate treatment of little probative value where disciplinary measures were imposed by different supervisors at different domiciles).

Plaintiff here has failed to establish a prima facie case because she has not shown that there is any person of American origin who filed a lawsuit against LifeCare such as the case she filed in 2002 and who was nonetheless hired as a nurse.

If the plaintiff succeeds in establishing a prima facie case, an inference or a rebuttable presumption of discrimination is created and the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp.*, 411 U. S. at 802 , 93 S. Ct. at 1824 ; *Texas Dept. of Community Affairs*, 450 U.S. at 253 , 101 S. Ct. at 1093 .

The defendant can rebut the presumption of discrimination by producing some "admissible evidence which would allow the [court] rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dept. of Community Affairs*, 450 U.S. at 257 , 101 S. Ct. at 1095 . The defendant does not have the burden of persuading the court that it was actually motivated by the proffered nondiscriminatory reasons. Board of Trustees of Keene State *College v. Sweeney*, 439 U. S. 24, 25 , 99 S. Ct. 295, 295 , 58 L.Ed.2d 216 (1978). The defendant must only demonstrate that a genuine issue of fact is raised by the evidence as to the reason for the employment decision in order to meet its burden of going forward. *Texas Dept. of Community Affairs*, 450 U. S. at 254-55 , 101 S. Ct. at 1094 .

The defendant has no obligation to prove by a preponderance of the evidence the existence of nondiscriminatory reasons for its decision. Rather, a plaintiff's prima facie case of discrimination will be rebutted if the employer simply articulates-not proves-a legitimate, nondiscriminatory reason for its action. *Texas Dept. of Community Affairs*, 450 U. S. at 257-58 , 101 S. Ct. at 1095-96 .

If the defendant meets its burden of going forward, the plaintiff then has the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *McDonnell Douglas Corp.*, 411 U. S. at 804 , 93 S. Ct. at 1825 ; *Simpson v. Diversitech General, Inc.*, 945 F.2d 156, 158-59 (6th Cir. 1991); *Sims v. Cleland*, 813 F.2d 790, 792 (6th Cir.1987). To demonstrate pretext, a plaintiff may show that the defendant's proffered reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Carter v. University of Toledo*, 349 F.3d 269 (6th Cir. 2003), quoting *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003).

The plaintiff may establish that the reasons stated are pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs*, 450 U.S. at 256 , 101 S. Ct. at 1095 . A plaintiff can refute the legitimate, nondiscriminatory reason articulated by an employer to justify an adverse employment action "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson v. The Kroger Co.*, 319 F.3d 858 (6th Cir. 2003), quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2001).

Title VII was not intended to "diminish traditional management prerogatives." *Steelworkers v Weber*, 443 U. S.

193, 207 , 99 S. Ct. 2721, 2729 , 61 L.Ed.2d 480 (1979); *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir.1987). It does not require the employer to restructure its employment practices to maximize the number of minorities and women hired or retained. *Furnco Construction Corp.*, 438 U.S 567, 577-78 , 98 S. Ct. 2943, 2949 , 57 L.Ed.2d 957 (1978), *cited in Texas Dept. of Community Affairs*, 450 U.S at 259 , 101 S. Ct. at 2096 . Federal courts are not the appropriate forum in which to review **[*7]** the multitude of personnel decisions that are made daily by public agencies or private employers, *Bishop v. Wood*, 426 U.S 341, 349 , 96 Sect. 2074, 2079 , 96 S. Ct. 2074 48 L.Ed.2d 684 (1976), and federal statutes prohibiting discrimination are not "intended as the vehicle for general judicial review of business decisions." *Douglas v. Anderson*, 656 F.2d 528 (9th Cir.1981).

The issue in a discrimination case is not whether the basis on which the employer acted in taking a personnel action is "sound"; rather, the issue is whether the reasons articulated by the employer are a pretext for discrimination. *In re Lewis*, 845 F.2d 624, 633 (6th Cir.1988) (emphasis in original). *See also*, *Nix v. WLCY Radio*, 738 F.2d 1181, 1187 , *reh'g denied (en banc)*, 747 F.2d 710 (11th Cir.1984) ("Title VII does not require the employer to have good cause for its decisions. An employer may [refuse to promote a person] for a good reason, a bad reason, a reason based on erroneous facts or for no reason at all, as long as its action is not for a discriminatory reason.").

Thus Defendant need not establish that it was right in some absolute or metaphysical sense in its judgment not to hire Plaintiff because she had filed the prior lawsuit. It has provided uncontradicted evidence that that was its sole reason for refusing to hire her.

A retaliation claim is analogous to an intentional discrimination or disparate treatment case and is subject to the same sequence and burden of proof. *Virts v. Consolidated Freightways Corp. of Delaware*, 285 F.3d 508, 521 (6th Cir. 2002); *Zanders v. National R. R. Passenger Corp.*, 898 F.2d 1127, 1134 (6th Cir. 1990). Plaintiff must first establish a prima facie case by a preponderance of the evidence. The elements of a prima facie retaliation claim are:

> (1) that plaintiff engaged in an activity protected by Title VII;
>
> (2) that the exercise of plaintiff's civil rights was known to the defendant;
>
> (3) that, thereafter, the defendant took an employment action adverse to the plaintiff, or the plaintiff was subjected to severe and pervasive retaliatory harassment by a supervisor; and
>
> (4) that there was a causal connection between the protected activity and the adverse employment action or harassment.

*Randolph v. Ohio Dept of Youth Services*, 453 F.3d 724, 736 (6th Cir. 2006); *Morris v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2000), explicitly modifying, by adding the harassment language, the prior standard in Christopher v. Stouder Memorial Hospital, 936 F.2d 870 (6th Cir. 1991), *citing*, *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987), *Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990); *Zanders v. National Railroad Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990); *Cooper v. City of North Olmsted*, 795 F.2d 1265 (6th Cir. 1986); *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 375 (6th Cir. 1984). If plaintiff establishes a prima facie case by a preponderance of the evidence, the burden shifts to the defendant to articulate a legitimate, non-retaliatory, reason for its action. *Zanders*, 898 F.2d at 1135 . If the

employer meets this burden, the employee bears the ultimate burden of persuading the court that the employer's reason is pretextual. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 , 101 S. Ct. 1089 , 67 L. Ed. 2d 207 (1981). If a legitimate nonretaliatory reason for the adverse action is articulated by the employer, the presumption of discrimination which flows from the prima facie case is eliminated. *Weems v. Ball Metal & Chemical Division, Inc.*, 753 F.2d 527, 529 , n.2 (6th Cir. 1985). The burden of persuasion remains at all times on the plaintiff. *Burdine*, supra .

The Plaintiff here cannot establish a prima facie case of retaliation because she cannot show that she took any action protected by Title VII. In her 2002 lawsuit against LifeCare, she did not claim discrimination in any way.

In order to recover for a discriminatory act under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq., a plaintiff must file a timely charge with the EEOC. *Cox v. City of Memphis*, 230 F.3d 199 (6th Cir., 2000), citing *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 46 (6th Cir. 1994). Under §2000e-5(e)(1), the charge must be filed within 180 days after the alleged unlawful employment practice occurred. Filing with the equivalent state agency extends the time to 300 days. Id. at n. 2. The time for filing is triggered at the time the alleged discriminatory [*8] act occurred. Id., citing *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991). As Defendant points out, any claim that Plaintiff might now make that the original discharge by Maxim in 2002 was based on national origin discrimination comes too late.

Finally, Plaintiff simply has no admissible evidence of defamation. To prove defamation under Ohio law, a plaintiff must show (1) a false and defamatory statement made about her; (2) published without privilege to a third party; (3) with fault or at least negligence on the part of the defendant; and (4) that was either defamatory per se or caused special harm to the plaintiff. *Gosden v. Louis*, 116 Ohio App.3d 195, 206 (1996); *Akron-Canton Waste Oil v. Safety-Kleen Oil Servs.*, 81 Ohio App. 3d 591 (1992) (citing Restatement of Law (Second) Torts 155, § 558 (1977)). None of this has been done in Plaintiff's motion papers.

## Conclusion

Having considered the motion papers of both parties, the Court determines that there is no genuine issue of material fact and Defendant LifeCare is entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment is GRANTED; Plaintiff's Motion for Summary Judgment is DENIED. The Clerk will enter judgment dismissing the Complaint herein with prejudice.

May 21, 2008.

s/ **Michael R. Merz**

Chief United States Magistrate Judge