

# Jones v. Johnson

United States Court of Appeals for the Sixth Circuit

January 9, 2020, Filed

File Name: 20a0011n.06

No. 18-2252

**Reporter**
801 Fed. Appx. 338 *; 2020 U.S. App. LEXIS 875 **; 2020 FED App. 0011N (6th Cir.); 2020 WL 113996

KYISHA JONES, Plaintiff-Appellant, v. JEH JOHNSON, Secretary, Department of Homeland Security, Defendant-Appellee.

**Notice:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**Prior History:** [**1] ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN.

Jones v. Johnson, 2018 U.S. Dist. LEXIS 232413 ( E.D. Mich., Oct. 11, 2018)

**Overview**
HOLDINGS: [1]-Grant of summary judgment to employer dismissing employee's Title VII failure-to-promote sex-discrimination claim after permitting only limited discovery was vacated and remanded because the district court abused its discretion in denying access to the disciplinary and evaluative material in the personnel files. The district court should have permitted access to those materials and should have permitted the employee to submit written discovery requests regarding their employment records, including their performance reviews and disciplinary records.

**Outcome**
Judgment vacated and remanded.

**LexisNexis® Headnotes**

# Case Summary

Civil Procedure > Judgments > Summary Judgment > Entitlement as Matter of Law

Civil Procedure > Appeals > Summary Judgment Review > Standards of Review

### HN1[⬇] Summary Judgment, Entitlement as Matter of Law

An appellate court reviews the district court's summary judgment determination de novo. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > Discovery & Disclosure > Discovery

### HN2[⬇] Standards of Review, Abuse of Discretion

Review of the district court's determinations to deny and limit discovery is for an abuse of discretion. An abuse of discretion occurs when the reviewing court is left with a definite and firm conviction that the district court committed a clear error of judgment.

Labor & Employment Law > ... > Gender & Sex Discrimination > Employment Practices > Demotions & Promotions

Labor & Employment Law > ... > Evidence > Burdens of Proof > Employee Burdens

### HN3[⬇] Employment Practices, Demotions & Promotions

In order to establish a prima facie case of failure-to-promote sex discrimination, a plaintiff must show that 1) she is a member of the protected class, 2) she applied for and was qualified for a promotion, 3) she was considered for and was denied the promotion, and 4) other employees with similar qualifications who were not members of the protected class received promotions at the time Jones's request for promotion was denied. Plaintiff's burden at the prima facie stage is not onerous.

Labor & Employment Law > ... > Gender & Sex Discrimination > Employment Practices > Demotions & Promotions

Labor & Employment Law > ... > Evidence > Burdens of Proof > Employee Burdens

### HN4[⬇] Employment Practices, Demotions & Promotions

In a failure to promote claim, the emphasis in the fourth prima facie element is on the relative qualifications of the plaintiff and the employee who actually received the promotion. Requiring a plaintiff to show identical qualifications to another individual is not realistic from a human standpoint.

Labor & Employment Law > ... > Evidence > Burdens of Proof > Burden Shifting

### HN5[⬇] Burdens of Proof, Burden Shifting

Courts perform a more searching evaluation of the relative qualifications of the two candidates when examining pretext.

Labor & Employment Law > ... > Gender & Sex Discrimination > Evidence > Burdens of Proof

*HN6*[] **Evidence, Burdens of Proof**

An employer may not unilaterally determine who is similarly situated to a plaintiff alleging employment discrimination.

**Counsel:** For Kyisha Jones, Plaintiff - Appellant: Felicia Duncan Brock, I.A.B. Attorneys At Law, Redford, MI.

For JEH JOHNSON, Secretary, Department of Homeland Security, Defendant - Appellee: Carolyn A. Almassian, Assistant U.S. Attorney, Office of the U.S. Attorney, Grand Rapids, MI.

**Judges:** BEFORE: ROGERS, WHITE, and READLER, Circuit Judges. CHAD A. READLER, Circuit Judge, concurring in part and dissenting in part.

**Opinion by:** HELENE N. WHITE

# Opinion

 [*339] **HELENE N. WHITE, Circuit Judge**. Kyisha Jones appeals the district court's grant of summary judgment to her employer, the Department of Homeland Security (DHS), dismissing her Title VII failure-to-promote sex-discrimination claim after permitting only limited discovery. We VACATE and REMAND.

## I.

Jones began working as an Immigration Maritime Inspector in June 2002. She was a Customs and Border Protection Officer (CBPO) from 2003 until April 2007, when she was awarded a position as CBP Enforcement Officer (CBPEO). The CBPEO unit is also known as the CBPEO Enforcement Cadre. CBPOEs, unlike CBPOs, focus on complex immigration violation work that requires knowledge of the Immigration and Nationalization Act. [**2]

In 2011, Jones applied for promotion to Supervisory CBP Officer (SCBPO) (vacancy 382705). Roderick Blanchard, Port Director for Detroit CBP Field Operations since February 2008, recommended that four males and one female be promoted in the June 2011 round of promotions, and one male and one female in the August 2011 round of promotions. Christopher Perry, Blanchard's superior, accepted Blanchard's promotion recommendations; Jones was not promoted. All seven of those who received promotions were promoted under vacancy 382705 and were drawn from the same pool of applicants.

Port Director Blanchard's unsworn declaration, submitted to the EEOC in connection with its investigation of Jones's sex-discrimination failure-to-promote complaint, stated that he was Jones's fourth-line supervisor, he had met and talked with Jones "concerning operational/enforcement issues on numerous occasions over the past 3+ years," and he did not consider Jones's gender in the recommendation-for-promotion process. R. 21 PID 389. Blanchard stated that he conducted no interviews for the promotions and that Human Resources provided a list of qualified candidates, their resumes, and OF 612s, Optional [**3] Applications for Federal Employment. Blanchard's declaration stated that he considered Jones for the SCBPO position but did not recommend her:

> Ms. Jones does not always work with her supervisors and is known to unnecessarily challenge them. While Ms. Jones possesses excellent knowledge, skills and ability for future nomination, her contentious nature cut against her in this nomination. However, she

had indeed improved over the past few months. I anticipate she will develop and demonstrate leadership qualities in the [*340] future, and I will continue to watch her development as a candidate.

. . . .

[] Ms. Jones was suspended 5 days for failure to follow a supervisor's order. This was not a technical violation. Being a leader requires that a person follow direction and contribute to an efficient operation. Ms. Jones's actions at the time of her suspension demonstrated that she lacked this leadership quality.

R. 21 PID 391-92.

Blanchard's declaration stated that Danny,[1] who was promoted in August 2011, had been suspended for three days in 2009 for failure to report outside employment. Blanchard stated that had Danny properly reported outside employment "that would have been allowed. This was a purely [**4] technical violation. Other than this one incident, [Danny] has consistently displayed superior leadership qualities/traits in the preceding two years and has excellent knowledge, skills and ability." R. 21 PID 392. Blanchard's declaration also stated that Danny was more qualified than Jones in that he had served on the Anti-Terrorism Contraband Enforcement Team, unlike Jones.

Jones filed her complaint on May 27, 2014. In lieu of answering the complaint, Defendant DHS Secretary Johnson filed a motion to dismiss and for summary judgment, to which Jones responded by filing an amended complaint.

As pertinent here, Jones's twenty-four count amended complaint alleged that her gender was a factor that made a difference in Defendant's decision not to promote her on two occasions in 2011, and that Defendant was predisposed to discriminate on the basis of gender and acted in accordance with that predisposition. Jones alleged that Defendant's actions constituted both a violation and a continuous violation of Title VII. According to the complaint, in August 2007 Jones received her only formal discipline, which resulted in a five-day suspension, and before being disciplined, Jones had complained [**5] about the internal rule that led to her suspension. Jones alleged that after a white[2] female in her unit lodged the same complaint in 2009, the rule was eliminated. Thus, her rule violation was nothing more than a "technical violation." Jones alleged that after she was disciplined, she received cash awards for exceptional performance and outstanding performance evaluations every year and was appointed Team Leader over approximately five CBP Officers. "Appointing Plaintiff as Team Leader over upwards of five CBP Officers demonstrates that Plaintiff's suspension did not cause Defendant Agency to doubt Plaintiff's leadership abilities." R. 15 PID 219.

Defendant filed a motion to dismiss and for summary judgment, asserting that "Plaintiff fails to establish that the male candidate's discipline was comparably serious to Plaintiff's suspension." Without citing authority, Defendant argued that "[e]ven if the male employee was similarly situated . . . the mere fact that a male employee, who also had a disciplinary record, received a promotion over Plaintiff does not support an inference that Plaintiff's gender had a role in CBP's decision to deny her the promotion, especially where CBP promoted [**6] both male and female candidates." R. 20 PID 341-42.

[*341] Relying on Blanchard's declaration, the district court dismissed Jones's sex-discrimination claim without permitting Jones any discovery.

## A. First Appeal

Jones appealed. This court reversed the district court's Fed. R. Civ. P. 12(b)(6) dismissal of Jones's sex-discrimination claim and affirmed the dismissal

---

[1] Blanchard's Declaration and other exhibits on which Jones relied were redacted to omit the last names of persons who are not parties to this case, including the five male comparators.

[2] Jones's amended complaint also alleged race discrimination.

of the remaining counts of her amended complaint. This court determined that Jones stated a plausible claim of failure-to-promote sex discrimination and stated a plausible claim that she exhausted her administrative remedies regarding two promotion rounds—June and August 2011. *Jones v. Johnson*, 707 F. App'x 321, 327-29 (6th Cir. 2017).

### B. <u>Proceedings On Remand</u>

Following this court's remand, and before any discovery took place, *see supra* n.3, Defendant filed a motion for summary judgment, asserting: 1) Jones failed to exhaust administrative remedies for the June 2011 promotion, and the June and August 2011 promotions did not constitute a continuing violation, and 2) Jones was not similarly situated to Danny, the male promoted in August 2011 who had a disciplinary suspension.

Defendant's motion relied on documentary evidence that included: the CBP Merit Promotion Plan, the declaration of Assistant Port Director David [**7] Beculheimer, and the CBP "Table of Offenses and Penalties" (pertaining to discipline). Regarding Danny, the promoted male who had been suspended in 2009, Beculheimer averred that Danny was suspended for failing to obtain proper approval for outside work, that *Blanchard* proposed the suspension, and Director of Field Operations Perry decided it.

### Jones's 2d Request for Discovery

Jones filed a brief in opposition to Defendant's motion for summary judgment and, in a concurrently filed application for stay, noted that Defendant had not answered her amended complaint and no discovery had occurred. Jones requested that the district court delay ruling on Defendant's dispositive motion until she was allowed to conduct discovery regarding 1) whether the promotions selection process in June and August 2011 was a unitary process, and 2) whether Defendant discriminated against her on the basis of her gender when it failed to promote her. Jones's opposition brief, application for stay, and counsel's accompanying affidavit explained how the specific discovery sought—the personnel records and depositions of the five male comparators, and the depositions of a Human Resources representative and Jones's [**8] first-line supervisors, Karene Smith and Robert Stockett, would "assist Plaintiff in establishing material triable issues of fact." R. 58 PID 1643.

Jones explained that the personnel records of the male comparators would assist her in establishing that she was as or more qualified for the position, allow her to show that there is no difference between her suspension and Danny's, reveal any performance deficiencies of the male comparators that were overlooked in the promotion selection process, and reveal the comparators' prior knowledge of immigration. Jones asserted that this information would assist her in establishing a prima facie case and in meeting her burden of showing that Blanchard's stated reasons for not promoting her were a pretext for discrimination.

Defendant opposed Jones's discovery requests, asserting that the information sought was irrelevant, redundant, or unnecessary.

[*342] In support of her opposition to Defendant's motion, Jones attached her affidavit, which averred that her five-day suspension "resulted from my choosing to follow one directive over another:"

> 6. Enforcement Officers were able to do the jobs of lower level officers, but these officers could not do the jobs [**9] of Enforcement Officers.
> 7. Enforcement Officers were regularly required to work overtime performing the duties of regular officers.
> 8. This overtime would extend our shifts.
> 9. The problem was that Enforcement Officers also were required to work on-call hours before the beginning of their shift.
> 10. During these hours, the Enforcement Officers had to be available by telephone to act

as subject matter experts as to complex immigration matters.
11. There was confusion as to Enforcement Officers being called out (at the end of their shift) to work overtime as regular officers.
12. Once the regular shift would end, we were often required to then work additional hours as Enforcement Officers because there would be no officer available with immigration knowledge.
13. We were then required to be on-call the next day before the start of our shifts as Enforcement Officers.
14. I, and other Enforcement Officers, repeatedly asked about the schedule and made many suggestions about how to resolve the difficulties that were caused.
15. We were told that our Enforcement Officer duties always took priority over regular office duties.

16. During this time, I was scheduled to work 8 a.m. - 4 p.m. My on call-hours **[\*\*10]** were 4 a.m. - 6 a.m.
17. When I would be called for overtime, I would fulfill the regular officer duties until 7 or 8 p.m.
18. When that shift would end, I would then be required to work additional hours as an Enforcement Officer because there was no officer with immigration knowledge available to perform the duties.
19. This was requiring me to work a total of 16 or more hours per day, including my before shift on-call hours.
20. On August 10, 2007, I was exhausted from being required to work this number of hours.
21. I was called out for overtime at the end of my shift.
22. I was also scheduled to work on-call from 4 a.m. - 6 a.m. the next day, as well as my regular 8 a.m. - 4 p.m. shift.
23. I just could not physically work the shift and then work on call in the morning.
24. I made the decision to follow the directive to put the Enforcement Officer duties first.
25. I was suspended for failing to stay and work the called-out overtime.
26. Shortly after my suspension, the Enforcement Officer overtime procedure was deemed unfair and changed.
27. We were no longer required to work overtime as a regular officer.

28. Sometime after my suspension, my direct supervisors Karene Smith and Robert Stockett **[\*\*11]** made me the team lead.
29. Also after my suspension, I received cash based performance based awards [in each of the years from 2008 through 2012].
30. In 2010, I applied for the Supervisory CBP Officer position posting number 347934.

 **[\*343]** 31. After the promotional assessment test and evaluation of other factors, I was rated a score of 90 out of 100.
32. In October 2010, the posting was cancelled . . .
33. The notice of cancellation said that the position would be reannounced as MHCMP-382705-IC.
34. I reapplied for the reposted Supervisory CBP Officer position.
35. There was no new testing for the reposted position; and all other factors remained the same.
36. In April 2011, some people were promoted.
37. I asked why I wasn't promoted. I was unofficially told that it was due to my suspension.
38. I never received any formal communication as to why I was not selected in April.
39. I knew that once the posting was closed, I would receive an email telling me other candidates were selected.
40. So, I had no reason to believe that I was not still under consideration.
41. On June 29, 2011, for the first time, I received an email telling me that another applicant was selected and [sic] closing the posting.

 [**12] 42. On July 19, 2011, I contacted the EEO Counselor to make a gender discrimination claim.

43. Out of the seven positions filled, three white males and two black males were promoted.

44. Two of the white males, Brandon [] and Neil [], were on the same team for which I was the team lead.

45. Also, I helped train Neil [] because his experience was as a Customs Officer and he had little to no experience with immigration.

R. 59-2 PID 1692-95.

## District Court Limits Discovery to One Deposition and the Job Selection File

The district court denied Defendant's motion for summary judgment without prejudice and denied Jones most of the discovery she requested. The court permitted Jones to depose only Port Director Blanchard, and limited the scope of Blanchard's deposition to his reasons for rejecting Jones's application for promotion. The court precluded inquiry into Blanchard's disciplinary suspension of Danny, who was promoted in August 2011. Jones was permitted discovery of the job selection file[3] that Blanchard reviewed, which contained the qualified applicants' resumes and optional Applications for Federal Employment (OF 612s), but did not contain any information on the applicants' disciplinary [**13] records or performance reviews. The district court denied Jones's request to depose a Human Resources representative regarding the selection process, the severity of offenses, the number of years disciplinary actions remain in personnel records, and the number of years disciplinary actions are utilized in staffing decisions.

The district court also denied Jones's request to depose, and for the personnel records of, the five male comparators. The district court denied Jones's request to depose her first-line supervisors, Karene Smith and Robert Stockett, on the basis that Jones did "not explain[] how she expects this testimony will help her in opposing summary judgment,"[4] and on the basis [*344] that Defendant did not dispute Jones's skills, qualifications, awards, and achievements. R. 67 PID 1929.

## Blanchard's Deposition Testimony

Jones deposed Blanchard on May 23, 2018. Blanchard testified that in determining who he recommended for promotion he did not speak to first-line supervisors; rather, his "research [into the candidates] is basically verbal discussion with my assistant port directors [APDs]." R. 81-3 PID 2401.

Blanchard acknowledged that Jones's only discipline was in 2007. Blanchard testified that Jones "had difficulties working with some supervisors," but could not identify the supervisors: "From the feedback I got from the assistant port directors, it could be first-line or second-line supervisors." R. 81-3 PID 2408. He testified that the APDs "said that when [Jones] disagreed with a supervisor's decision, she'd become argumentative and . . . as they reported it was very difficult because it would be an extraordinary long discussion on who was right." *Id.* Blanchard testified that the APDs reported that Jones "was often not happy and it was very apparent to everyone on the shift when that would happen." *Id.* Blanchard had no first-hand knowledge of any such

---

[3] The district court granted Jones's motion to compel after Defendant failed to produce the entire job selection file.

[4] The district court was incorrect. Jones's Second Application for Stay explained:

> Ms. Jones' first line supervisors [Smith and Stockett] will testify as to Ms. Jones' performance on-the-job, the reasons why they designated Ms. Jones as team lead, what, if anything, they reported to Blanchard; why they never informed Ms. Jones of any deficiencies on her performance evaluation[s]; the reasons [Jones] received cash based performance awards every year from 2008 through 2012; as well [**14] as the fact that since 2007, Ms. Jones did not have a performance problem.

R. 58 PID 1642-43.

incidents. When asked how often Jones **[\*\*15]** challenged supervisors, Blanchard responded, "I don't know how regular it was but it happened enough times that it was concerning to the assistant port director." *Id.* at 2408-09.

Because the district court had limited the scope of the deposition to Blanchard's reasons for not recommending Jones for promotion, Jones could not question him regarding his discipline of Danny, the comparator promoted in August 2011.

### Defendant's Renewed Motion for Summary Judgment

After Jones deposed Blanchard, Defendant again filed a motion for summary judgment, asserting: 1) Jones failed to exhaust her administrative remedies for the June 2011 promotions and could not identify a similarly situated male employee promoted in June 2011 who was disciplined, and 2) Jones could not demonstrate that Defendant's articulated nondiscriminatory reason for not promoting her was a pretext for sex discrimination.

Jones's response in opposition to Defendant's motion asserted that the district court, in contravention of this court's opinion in the first appeal, precluded her from conducting discovery into whether the June and August 2011 promotions were a unitary process. Jones also asserted that the district court precluded her from discovery **[\*\*16]** regarding pretext that would have permitted her to challenge Defendant's articulated, non-discriminatory reason for failing to promote her. Jones argued that she established a prima facie case of sex discrimination and that material issues of fact remained regarding pretext. Jones made clear that her argument was that she was at least as qualified as the five males who were promoted, not simply Danny, who had a previous disciplinary suspension. She set forth and provided documentary evidence of her qualifications and credentials, the CBP's two Merit Promotion Certificates of Eligibles pertaining to vacancy 382705 for the June and August 2011 rounds showing her rankings vis a vis **[\*345]** other applicants, and asserted that she was never counseled for any of the alleged deficiencies Blanchard claimed motivated him not to promote her.

Jones presented evidence that Danny, a CBPO like Jones, had a three-day disciplinary suspension on his record from 2009, and had not held a temporary supervisory position or been a member of a specialty team. Jones had a five-day disciplinary suspension from 2007, but thereafter received stellar performance reviews and annual bonuses, and was made team lead of the **[\*\*17]** CBPOE cadre, which placed her over two of the males promoted in June 2011, Brandon and Neil. Jones was ranked higher than Neil and Brandon on the pertinent Certificate of Eligibles.[5] Further, because of her immigration experience, Jones trained Neil; his CBP experience was as a Customs Officer and he had little to no immigration experience. Neither Neil or Brandon had held a temporary supervisory position; Brandon had been a member of a specialty team for one year. Jones had not held a temporary supervisory position and had not been a member of a specialty team.

### Jones's Third Application for Stay

More than one month before the scheduled hearing on Defendant's motion for summary judgment was to occur, Jones again sought discovery in a third application for stay. Jones renewed her requests for the personnel records of, and to depose, the five male comparators; to depose her first-line supervisors, Smith and Stockett; to depose a Human Resources representative regarding the severity of offenses, the number of years disciplines remain in personnel records and are utilized in staffing decisions, and regarding whether the June and August 2011 rounds of promotions were a

---

[5] Jones ranked 6th, Danny 7th, Neil 18th, and Brandon 31st on the first Certificate of Eligibles. On the 2d Certificate of Eligibles for VacancyID 382705, Certif. # LN-11-KWe-30806S0, Danny was ranked 5th, and Jones 6th.

unitary process; and [**18] sought all policies and procedures regarding suspensions. Jones also sought to depose APDs Beculheimer and Nowack, on whom Blanchard relied in determining not to recommend Jones for promotion.

On October 5, 2018, the district court canceled the October 10, 2018 motion hearing and stated that it would decide Defendant's dispositive motion on the briefs.

Before ruling on Jones's third request for discovery, the district court granted Defendant summary judgment by opinion dated October 11, 2018, concluding that Jones failed to establish that Blanchard's reasons for not promoting her were a pretext for gender discrimination. The district court denied Jones all the discovery she requested.

Jones appeals for the second time.

## II.

Jones asserts that the district court abused its discretion by limiting and denying her discovery. At issue is the district court's February 13, 2018 opinion denying most of the discovery Jones sought in her second application for stay, which requested, pursuant to Fed. R. Civ. Pro. 56(d),[6] an opportunity to conduct discovery before [*346] the district court ruled on Defendant's dispositive motion.

## Standard of Review

---

[6] Rule 56(d), titled "When Facts Are Unavailable to the Nonmovant," provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts [**19] essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any appropriate order.

Fed. R. Civ. P. 56(d).

**HN1**[⬆] We review the district court's summary judgment determination de novo. *Arban v. West Publ'g Corp.*, 345 F.3d 390, 400 (6th Cir. 2003). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**HN2**[⬆] Review of the district court's determinations to deny and limit discovery is for an abuse of discretion. *Siggers v. Campbell*, 652 F.3d 681, 695-96 (6th Cir. 2011). An abuse of discretion occurs when the reviewing court is left with a definite and firm conviction that the district court committed a clear error of judgment. *Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 642 (6th Cir. 2018). Fed. R. Civ. P. 26 provides in pertinent part:

(b) Discovery Scope and Limits.

> *(1) Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues [**20] at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).[7]

**HN3**[⬆] In order to establish a prima facie case of failure-to-promote sex discrimination, Jones must show that 1) she is a member of the protected class, 2) she applied for and was qualified for a

---

[7] Defendant did not invoke this rule before the district court.

promotion, 3) she was considered for and was denied the promotion, and 4) other employees with similar qualifications who were not members of the protected class received promotions at the time Jones's request for promotion was denied. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812-13 (6th Cir. 2011). Defendant disputed only the fourth prima facie element. Jones's burden at the prima facie stage is not onerous. *Id.* at 813 (internal citation omitted).

HN4[⬆] As this court explained in *Provenzano*:

> In a failure to promote claim, the emphasis in the fourth [prima facie] element is on the relative qualifications of the plaintiff and the employee who actually received the promotion. The prima facie burden is not intended [**21] to be onerous, and Provenzano is not required to establish that she and Babcock had the exact same qualifications. Requiring a plaintiff to show identical qualifications to another individual is not realistic from a human standpoint. We recognized this practical reality in *Ercegovich*, rejecting an exact matching requirement for "similarly-situated" comparators in an ADEA claim. 154 F.3d at 352-53. Instead, what is required in a failure to promote case is for the plaintiff to show she possesses "similar qualifications" to the employee who received the promotion.
>
> A comparison of Provenzano and Babcock reveals that Provenzano presented [*347] sufficient evidence to permit a reasonable trier of fact to conclude that she and Babcock were similarly qualified for the position of assistant manager. Provenzano had more experience and education than Babcock; she had been a supervisor longer, had helped in other stores, and held a high school diploma and associate's degree. In contrast, **Babcock had a stronger performance record, without any written or verbal warnings in comparison to Provenzano's multiple counselings**. Although their strengths and weaknesses were in different areas, Provenzano's experience and education [**22] made her similarly qualified to Babcock. HN5[⬆] This is the extent of the inquiry at the prima facie stage and Provenzano satisfied it.

663 F.3d at 814 (6th Cir. 2011) (emphasis added). We perform a "more searching evaluation of the relative qualifications of the two candidates" when examining pretext. *Id.* at 816; *see also Louzon v. Ford Motor Co.*, 718 F.3d 556, 563 (6th Cir. 2013) (determining that the district court erred by requiring, at the prima facie stage, that comparators must have dealt with the same supervisor).

A. **Discovery Regarding Whether Jones's Gender Motivated Defendant's Failure to Promote**

In the first appeal, this court concluded regarding the August 2011 round of promotions,

> Because Jones did not receive the promotion and a male candidate who also had a suspension on his record did receive the promotion, it is facially plausible that Jones's sex was a factor in CBP's decision not to promote her. Indeed, Jones has provided a somewhat detailed explanation for why sex discrimination is a plausible explanation for CBP's failure to promote her—noting that the promoted employee's suspension was more recent than her suspension, alleging that their violations were of comparable severity, and also pointing out her otherwise "stellar annual performance evaluations." R. 15 (Amended [**23] Compl. at ¶ 21, 45-56) (Page ID #218, 221).

*Jones v. Johnson*, 707 F. App'x at 328.

Despite this court's reference to Jones's allegations that buttressed her failure-to-promote claim, the district court denied her discovery to support her assertions. Noting that Blanchard's declaration in the EEOC investigation set forth a legitimate, nondiscriminatory reason for not promoting Jones the district court invited Jones "to bring forth

evidence to discredit Blanchard's affidavit," R. 67 PID 1919, but its discovery ruling made that impossible: Jones was denied the male comparators' personnel records and depositions; she was precluded from questioning Blanchard regarding the male comparators' disciplinary records, including Blanchard's own discipline of Danny; was denied the deposition of a Human Resources representative whom she would have questioned regarding the selection process, the severity of Jones's and Danny's offenses, how long disciplinary actions remain in personnel records and affect staffing decisions, and whether the June and August 2011 promotion rounds were a unitary process; and was denied the opportunity to depose the APDs whose input Blanchard asserted influenced his promotion decisions.

B. **Discovery Regarding [**24]  Whether the June and August Selection Processes were Unitary**

This court instructed in the first appeal that resolution of the question whether the June and August 2011 promotions were a unitary process depended "on the specific facts about the promotion process(es), including whether CBP treated them as two [*348] separate promotion processes or one process that it carried out in two stages." 707 F. App'x at 329. The district court denied Jones discovery, side-stepping the issue:

> [T]he Sixth Circuit held that the June 2011 hiring and the August 2011 hiring possibly could be a single unified process such that if Plaintiff had established a *prima facie* case of discrimination as to one and more importantly, had exhausted her administrative remedies as to one, then she had done so for both, i.e., for the entire unified process. *See Jones*, [] at *4-*5.
>
> This determination makes little practical difference unless the facts of the June 2011 hiring further Plaintiff's claim for sexual discrimination. Presently, Plaintiff has not identified any facts related to the June 2011 hiring that establish the fourth prong of a *prima facie* case of sexual discrimination. She has not identified a male employee of similar qualification [**25] who was promoted in June 2011. In contrast, Defendant has provided evidence that each of the candidates promoted in June 2011 possessed qualifications and records of superior quality.

R. 67 PID 1924.

In sum, by precluding Jones from discovery regarding the five males she asserted were comparators, the district court precluded her from gathering information that could establish that she was as or more qualified for promotion than the males promoted in June 2011. The district court then concluded that it made no difference whether the June and August promotions were a unitary process because Jones provided no evidence of a male comparator promoted in June 2011.

**Analysis**

The district court's rulings, in effect, accepted as unassailable Blanchard's determination that Danny was the only proper male comparator. *HN6*[↑] But an employer may not unilaterally determine who is similarly situated to a plaintiff alleging employment discrimination. *Bobo v. United Parcel Service, Inc.*, 665 F.3d 741, 749 (6th Cir. 2012) (holding that the district court "improperly restricted the scope of discovery when it allowed UPS to determine unilaterally that the only Caucasian, non-military supervisor who was similarly situated to Bobo was Ronnie Wallace.").[8] Bobo, a UPS supervisor, alleged [**26] race discrimination under Title VII and § 1981, and discrimination under the Uniformed Services Employment and Reemployment Rights Act (USERRA) for being in

---

[8] *Bobo* was abrogated on other grounds by *University of Texas Southwest Medical Center v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013) (holding that Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation standard applicable to status-based Title VII discrimination claims set forth in 42 U.S.C. § 2000e-2(m)).

the military reserve. *Id.* at 744. In response to written discovery requests, UPS identified one comparator, Wallace, whom UPS considered to be similarly situated to Bobo. *Id.* at 749. UPS provided discovery about Wallace but declined to provide discovery about other potential comparators, asserting that such discovery was not relevant. *Id.* The magistrate judge denied Bobo's discovery motions, concluding that UPS had complied with discovery requests by providing information about the one employee who qualified as a comparator.

This court reversed the grant of summary judgment to UPS and remanded, concluding that the discovery order was contrary to law, and instructed the district court "to grant Bobo's motion to compel UPS to provide appropriate discovery in response to Bobo's written discovery requests **[*349]** for information on proposed comparators other than [Wallace]." *Id.* at 753.

> The discovery order effectively blocked Bobo from obtaining relevant and potentially admissible evidence on a critical element of his case—evidence necessary to convince a jury that there were supervisors **[**27]** besides Wallace who were similarly situated to Bobo in all relevant respects and yet received better treatment than Bobo because they did not take time off for military service or were of a different race.

*Id.* at 752. This court further noted that whether the other supervisors Bobo identified are similarly situated is a jury question. *Id.* at 757 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

**Defendant's Counter-Arguments**

Defendant maintains that much of the discovery Jones sought is not relevant, pointing to the fact that Jones was provided the entire job selection file, which was what Blanchard reviewed. But Blanchard's deposition testimony is clear that his decision not to recommend Jones for promotion was based on asserted statements of the APDs, not just the contents of the job selection file. The district court should have permitted Jones to depose APDs Nowack and Beculheimer, whose statements Blanchard relied on in not promoting Jones.

Defendant further asserts regarding the June 2011 round of promotions that none of the men promoted at that time had disciplinary records and thus further discovery into those candidates' records would not have aided Jones in identifying a suitable comparator. But, as *Bobo* held, an employer may not unilaterally **[**28]** determine who is similarly situated to a plaintiff alleging employment discrimination. 665 F.3d at 749 (concluding that "the district court improperly restricted the scope of discovery when it allowed UPS to determine unilaterally that the only Caucasian, non-military supervisor who was similarly situated to Bobo was Ronnie Wallace," and that the district court "unduly delayed its ruling on Bobo's discovery motions until after the court had already granted summary judgment for UPS. The discovery errors alone convince us that the summary judgment in favor of UPS cannot stand.").

Defendant also asserts that the district court did not abuse its discretion in denying Jones the personnel file, disciplinary records, and deposition of Danny, the male promoted in August 2011 who had a prior suspension. Defendant claims that Blanchard did not have that information in making his decision, ignoring that Blanchard himself determined to suspend Danny and that the district court precluded Jones from questioning Blanchard at deposition regarding that suspension.

On this record and at this time, there does not seem to be a reason to *depose* Danny and the others who were promoted, but the district court abused its discretion **[**29]** in denying access to the disciplinary and evaluative material in the personnel files. The district court should have permitted access to those materials and should have permitted Jones to submit written discovery requests regarding their employment records,

including their performance reviews and disciplinary records. Once that discovery is produced, Jones may need further discovery, e.g., to depose Blanchard regarding the newly discovered evidence.

Defendant asserts that the district court correctly denied Jones's request to depose a Human Resources representative because Jones already possessed the Merit Promotion Plan, thus such deposition testimony would have been duplicative. Defendant **[*350]** is incorrect; the Merit Promotion Plan does not address the length of time disciplinary actions remain in personnel records and the use of disciplinary actions in staffing decisions. In addition, Defendant at no time addressed Jones's affidavit asserting that the rule under which she was suspended in 2007, two years earlier than Danny was suspended in 2009, had been changed or eliminated and thus no longer resulted in disciplinary action. A Human Resources representative can shed light on that issue **[**30]** as well. In addition, a Human Resources representative can shed light on whether the two promotion rounds were a unitary process, and how the candidates' ratings and rankings were arrived at. The district court should have permitted Jones to depose a Human Resources representative.

Defendant further asserts that the district court correctly denied Jones the depositions of her supervisors, Smith and Stockett, because Defendant did not dispute Jones's "achievements, awards, education, knowledge, skills, and other qualifications" and this information would not have created issues of fact to overcome summary judgment. According to Defendant, the district court properly determined that Jones failed to explain how these depositions would have helped her respond to Defendant's motion. However, Jones's Second Application for Stay explained:

> Ms. Jones' first line supervisors [Smith and Stockett] will testify as to Ms. Jones' performance on-the-job, the reasons why they designated Ms. Jones as team lead, what, if anything, they reported to Blanchard; why they never informed Ms. Jones of any deficiencies on her performance evaluation[s]; the reasons [Jones] received cash based performance awards **[**31]** every year from 2008 through 2012; as well as the fact that since 2007, Ms. Jones did not have a performance problem.

R. 58 PID 1642-43. The district court should have permitted Jones to depose Smith and Stockett.

### III.

We VACATE the grant of summary judgment to DHS on the basis of the district court's unduly restrictive discovery rulings, and REMAND for proceedings consistent with this opinion.

**Concur by:** BCHAD A. READLER (In Part)

**Dissent by:** BCHAD A. READLER (In Part)

## Dissent

**CHAD A. READLER, Circuit Judge, concurring in part and dissenting in part**.

More often than not, discovery proves to be a divisive aspect of trial proceedings. The sides are well worn. The plaintiff seeks broad discovery; the defendant resists. The plaintiff seeks to collect as many of the defendant's records as possible, inquiries sometimes grounded in fact or fair suspicion, sometimes in sheer speculation. The defendant refuses such intrusions, given their breadth and asserted lack of materiality as well as their expense and disruption. Then, following document-based discovery, the parties often dispute who should sit for deposition, a potentially informative exercise for the plaintiff, and typically a demanding and resource-intensive one for the **[**32]** defendant. By the same token, the

reciprocal requests made by the defendant of the plaintiff almost always pale in comparison, at least by volume, making discovery a one-way ratchet. It is thus not hard to see why parties often reach impasse over its scope.

When they do, the district court is called upon as umpire. And as the umpiring process involves many judgment calls, district courts appropriately are afforded some manner of discretion in calling discovery's "balls and strikes." *See Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) ("District courts have broad discretion [*351] over docket control and the discovery process.") (citation omitted). Our standard of review reflects as much—we will find error in a district court's discovery decision only where it amounts to an "abuse of discretion." *Robertson v. Lucas*, 753 F.3d 606, 623 (6th Cir. 2014) (citation omitted). That is, the district court's decision will go untouched unless we are left "with a definite and firm conviction that the trial court committed a clear error of judgment." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 218 (6th Cir. 2019) (internal quotation marks and citation omitted).

Add to that level of deference the wide discretion afforded to the district court by the Federal Rules of Civil Procedure in setting the discovery rules of engagement. Whether a party seeks discovery from the [**33] outset, or, as here, seeks discovery in response to the opposing party's summary judgment motion, the district court has wholesale control over what discovery, if any, will take place. Rule 26(b), recently amended, emphasizes that the "scope of discovery" is subject to "limit[ation] by court order." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment (noting that a district court "must limit the frequency or extent of proposed discovery, on motion or on its own, if it is outside the scope permitted by Rule 26(b)(1)"). Likewise, a district court, when asked by a non-moving party to order discovery in response to the moving party's motion for summary judgment, may "issue any . . . appropriate order," including allowing or denying such discovery. Fed. R. Civ. P. 56(d).

To the extent a district court permits discovery at some point in the proceeding, the scope of that discovery may cover only the items that, in the judgment of the district court, are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). That standard was changed from the previous "reasonably calculated to lead to the discovery of admissible evidence" standard, cementing the need for district courts to consider relevance and proportionality [**34] (rather than reasonable calculations regarding admissibility) as the touchstones in setting the scope of discovery.

In view of these many layers of discretionary judgment calls, it is perhaps no surprise that different jurists can give different answers to the same discovery questions. So too here, when one compares the view of the majority with that of the district court. One could even reach a third conclusion. That is, employing these discovery measuring sticks, I agree with my friends in the majority in some respects, and with the district court in others.

*Danny's Personnel File*. One area of agreement with the majority is that Jones has a reasonably compelling argument to discover "Danny's" personnel file and records (but not to depose him). Danny is the lone comparator Jones has pointed to as similarly situated. He is the one she cited to this Court as the basis for our subsequent reversal of the dismissal of her case; Jones noted that Danny and Jones are the two candidates with prior disciplinary violations. *Jones v. Johnson*, 707 F. App'x 321, 328 (6th Cir. 2017). As Jones has demonstrated why Danny (unlike other male employees who were also promoted) is arguably similarly qualified, further documentary discovery as to Danny appears [**35] appropriately relevant and proportional, consistent with the requirements in Rule 26(b). This is particularly true since Blanchard himself disciplined Danny, the details of which presumably are recorded in Danny's personnel file.

*Deposing Assistant Port Directors*. Jones also has a colorable basis for deposing the assistant port directors who spoke **[*352]** with Blanchard regarding the promotion process. In making his hiring decisions, Blanchard, as it is largely his right to do, relied upon a somewhat limited range of information. Those items primarily included the job selection files provided to Blanchard. But, as the majority correctly notes, he did not rely upon those files alone. In reaching his promotion decision, Blanchard also had conversations with his assistant port directors. If, as Blanchard appears to concede, he relied upon those conversations in deciding against promoting Jones, the information revealed in those conversations would seem directly to inform the underlying merits question: Was the decision not to promote Jones driven by discriminatory motives? Deposing those central figures thus seems high on the proportionality scale. *See* Fed. R. Civ. P. 26(b)(1).

The fly in this request's ointment, however, is that **[**36]** Jones waited until her third application to stay—filed right before the district court ruled on Defendants' summary judgment motion—to ask to depose the assistant port directors. That late-in-the-day request undermines its necessity. So too does the fact that Jones only asked to depose the assistant port directors under a rationale that they, not Blanchard, were the real discriminators, what has come to be known as the "cat's paw" theory. But that last-minute change to Jones's theory of the case was rightly rejected below. Limiting discovery in this way was thus not an abuse of discretion.

*Personnel Files*. Other areas of discovery ordered today, to my mind, fall even lower on the proportionality scale. Take, for instance, the personnel files of those employees (other than Danny) who received promotions. In assessing a Title VII claim, the district court should employ the "honest belief" rule in assessing the employer's purported reasons for taking an employment action. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (citation omitted). Following that rule, where an employer's proffered reason for taking an adverse employment action was based upon the employer's honest, non-discriminatory belief drawn from the facts before it, "the **[**37]** employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285-86 (6th Cir. 2012) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998)); *see also Majewski*, 274 F.3d at 1117. With this in mind, it is difficult to see how the court below abused its discretion. All seem to agree that the personnel files were not relied upon by Blanchard. For that reason, the information contained therein has no bearing on Blanchard's motives or his assessment of the relative qualifications of the candidates. After all, even if something were found in those files that shows another candidate also had a disciplinary violation, as Blanchard did not rely on that information, it would not establish that Blanchard's purported reasons for not promoting Jones were pretextual.

Jones has no compelling response. Today, she says that she might use information in these files to ask the assistant port directors whether they told Blanchard about any hypothetical incidents in the files. But again, before the district court, Jones did not request depositions of the assistant port directors for this purpose. Likewise, any claim by Jones that the files *might* reveal relevant information related to the individuals in question is highly speculative, **[**38]** and thus unlikely to lead to information squarely "relevant to any party's claim or defense." Indeed, Defendant has sworn that there are no other disciplinary items regarding the other candidates. In emphasizing relevance and proportionality, **[*353]** Rule 26(b) instructs that some line-drawing is required by the district court in regulating discovery. I see no abuse of discretion in drawing the line where the district court did here.

*Deposition of Human Resources Representative*. For many of these same reasons, the district court did not abuse its discretion by denying Jones's request to depose a Human Resources

representative regarding the promotion selection process, the severity of offenses, and the number of years disciplinary violations remain in personnel records. Jones already has the Merit Promotion Plan, which describes in some detail the process for evaluating applicants. The Plan makes clear that the selecting official "may choose any applicant referred on the best qualified list," regardless of their ranking. The record likewise includes the declarations of Marianne Snow, the Assistant Director for Mission Support, who was also responsible for human resources management. In her declaration, [**39] Snow described the referral practice and scoring system used in the hiring process. The selection process was also addressed by Blanchard in his deposition. There is thus no need, much less a need significant enough to warrant reversal, to ask an HR representative one level removed from the decision-making process about topics for which there is already sworn testimony. It is even more difficult to see how the district court abused its discretion in not allowing depositions regarding how long disciplinary offenses remain on personnel records, when Blanchard did not rely upon those records in his decision not to promote Jones.

*Disciplinary Policies*. Likewise, as to Defendants' disciplinary policies, discovery into this area similarly would not resolve any contested issues. Jones does not contest she was reprimanded in 2007. And regardless whether Jones's reprimand is still in her personnel file, a supervisor could fairly consider that historic conduct as a reason not to promote Jones, especially where that disobedience is consistent with other perceptions about Jones's ability to work with colleagues at the agency, a large aspect of the position she sought, which would require her to [**40] lead up to 25 employees. Even if the disciplinary violation Jones committed might no longer be considered a disciplinary violation under *current policy*, that says nothing about whether Jones broke the rules as they applied at the relevant time. By analogy, if one drives her car at 65 miles per hour, in violation of a 55 mile-per-hour speed limit, she has failed to honor traffic laws, regardless whether the speed limit might be changed to 70 miles per hour in the future.

*Deposing Jones's Supervisors*. The district court was also well within its discretion to find that depositions of Jones's supervisors was not proportional to the needs of the case. The record reflects that Blanchard relied only upon the job selection files and conversations with the assistant port directors, not Jones's supervisors, to make his decision. Jones says that her supervisors would praise her performance. But Defendants do not dispute that Jones performs well in her current role. Accolades from her current supervisors would thus do little to move the Title VII needle. This is especially true when one considers that the Merit Promotion Plan provides that accolades and performance assessments are not a significant [**41] factor in the selection process. The Plan specifies that: "Mere possession of a specific number of awards or a specific [performance] appraisal level will not, in and of themselves, be factors in the evaluation process." To the extent information obtained from Jones's supervisors was passed on to the assistant port directors and then to Blanchard, a more proportional route to obtain this information would have been to [*354] ask the port directors themselves what they told Blanchard. But Jones only sought that information below at the last minute, and did so to support a new, unsubstantiated theory, a fair point for the district court to consider in utilizing its discretion to manage the case. *See Pittman*, 901 F.3d at 642 ("District courts have broad discretion over docket control and the discovery process.") (citation omitted).

In my view, there also was no abuse of discretion in denying Jones discovery on the issue of whether the June and August 2011 hiring segments were one unitary process. While we did previously remand this case for discovery on this issue, the district court did not commit an abuse of discretion by later denying this request, for two reasons. One, as the

Jones v. Johnson

district court found, Jones failed to **[**42]** identify any comparators in the June round of hiring, making it irrelevant whether it was part of the August round. Two, as the failure to exhaust her remedies was not a basis for the grant of summary judgment to Defendants, Jones was not harmed in being denied further discovery related to exhaustion.

\* \* \* \* \*

In assessing Jones's discovery requests, it is worth turning back to Rule 26(b)'s relevance and proportionality standards. Measuring what is relevant and proportional here requires keeping in mind the many narrowing features of this case. It is a single plaintiff case, not a class action, the latter of which might justify broader discovery into generalized workplace hiring and promotion practices. The EEOC previously determined no discrimination had taken place against Jones, and Jones has access to that record, which provides much of the discoverable information needed to address her claims. *See Jones*, 707 F. App'x at 325. Jones now asserts just one type of discrimination—sex discrimination. Her race discrimination claims were previously rejected by this Court when we affirmed the dismissal of all twenty-three of the other counts in her complaint. *Id.* at 323-24. And as to her sex discrimination claim, the fact remains that **[**43]** both women and men were promoted to the position she seeks, and she has pointed to only one man who seems to be "similarly situated," in that he also had a disciplinary issue in his work history (albeit one with a less severe punishment). Indeed, it was on the basis of that single comparator that we previously remanded this case back to the district court, overriding the district court's earlier dismissal under Rule 12(b)(6). *Id.* at 328. Given the somewhat confined nature of this case, then, discovery should be similarly confined.

The district court, with a front-row seat to the proceedings, is obligated to tailor discovery based upon issues the case has actually raised, as opposed to ungrounded theories about what wide-ranging discovery might possibly reveal. As to assessing those judgment calls here, I would hue more closely to the decision below.

---

**End of Document**

Case 3:20-cv-00628   Document 24-5   Filed 03/08/21   Page 17 of 17 PageID #: 246

Page 17 of 17