**EXHIBIT 2**

Spears v. SPi America, LLC, No. 3:11-CV-1208, 2012 BL 51912, 2012 WL 719663 (M.D. Tenn. Mar. 05, 2012), Court Opinion

**Pagination**
\* BL

**Majority Opinion** >

United States District Court for the Middle District of Tennessee, Nashville Division

Nina Spears, Plaintiff,

v.

SPi America, LLC and Acusis, LLC, Defendants.

Case No. 3:11-CV-1208

Judge Aleta A. Trauger

## MEMORANDUM

Pending before the court are a set of related motions. SPi America, LLC ("SPi") has filed a Motion to Dismiss (Docket No. 6) and Acusis, LLC ("Acusis") has filed a separate Motion to Dismiss (Docket No. 9) (collectively, "Motions to Dismiss"). After filing an Amended Complaint in response thereto as a matter of right (Docket No. 12) ("First Amended Complaint" or "First Am. Compl."), the plaintiff filed a Motion to Amend Amended Complaint (Docket No. 19) ("Motion for Leave to Amend") and a Motion to Amend Plaintiff's Response to Defendants' Motions to Dismiss (Docket No. 20) ("Motion to Conform Briefing"). For the reasons stated herein, the Motion for Leave to Amend will be denied, the Motion to Conform Briefing will be denied as moot, and the Motions to Dismiss will be granted.

## BACKGROUND

**I. _Procedural History_**

On November 16, 2011, the plaintiff, Nina Spears, filed a complaint in Tennessee state court against the defendants, alleging that they had terminated her in retaliation for filing a workers' compensation claim.

+ Spears v. SPi America, LLC, No. 3:11-CV-1208, 2012 BL 51912, 2012 WL 719663 (M.D. Tenn. Mar. 05, 2012), Court Opinion

(Docket No. 1, Attach. 1 ("Original Complaint").) The defendants removed the case to this court on December 21, 2011. (Docket No. 1.) Following removal, the defendants filed separate Motions to Dismiss with supporting memoranda (Docket Nos. 6-7 (SPi) and 9-10 (Acusis)), arguing that Spears had failed to state a claim in the Original Complaint pursuant to **Fed. R. Civ. P. 12(b)(6)** .

Spears responded by filing a First Amended Complaint (Docket No. 12), along with a Response to the Motions to Dismiss (Docket No. 14) and a supporting Memorandum of Law (Docket No. 15), which argued that the First Amended Complaint remedied the deficiencies in the Original Complaint that the defendants had identified in their Motions to Dismiss. Accordingly, the court ordered the defendants to file replies addressing the sufficiency of the amended allegations by January 24, 2012. (Docket No. 17.)

One day before the defendants' reply deadline, Spears filed a Motion for Leave to Amend (Docket No. 19), which seeks leave to file a Second Amended Complaint (Docket No. 19, Attach. 1 ("Second Amended Complaint" or "Second Am. Compl.")) that asserts an additional cause of action against Acusis for intentional interference with business relations and an additional cause of action against both defendants for civil conspiracy. (Second Am. Compl. ¶¶ 15, 25-26.) Spears also filed a Motion to Conform Briefing (Docket No. 20), which requests leave to "correct" her prior opposition papers to reflect the additional allegations in the proposed Second Amended Complaint. ( *Id.*, Attachs. 1 (proposed Amended Response to Motions to Dismiss) and 2 (proposed Memorandum of Law in Support of Plaintiffs' Amended Response in Opposition to Motions to Dismiss) ("Pltf. Am. Mem.").)[1]

Because Spears filed her Motion for Leave to Amend and associated papers just one day before the reply deadline, the defendants, on January 24, 2012, filed Replies that addressed the sufficiency of Spears' allegations in the **[\*2]** First Amended Complaint only. (Docket Nos. 21 (SPi Reply) and 22 (Acusis Reply)[2].) Acusis thereafter filed a Response to the Motion for Leave to Amend (Docket No. 27), which argues that the proposed amendments are futile because they fail to state a claim.

## II. *Factual Allegations*

### A. Allegations in the First Amended Complaint[3] (1) Factual Allegations

SPi operates as a medical transcription business. Spears was employed by SPi from 2004 through September 23, 2011 as a medical transcriptionist. At an unspecified point, Spears contracted carpal tunnel syndrome in the course of performing repetitive transcription work for SPi. At an unspecified point prior to July 26, 2011, Spears made a workers' compensation claim against SPi related to this injury, which SPi apparently approved at an unspecified time. On July 26, 2011, Spears underwent surgery on her left hand and wrist as a result of the workers' compensation injury, which SPi authorized and paid for. Prior to the surgery, "Plaintiff's job performance had been satisfactory," and her supervisor told her that she was a "top producer." (First Am. Compl. ¶ 9.) For approximately five weeks following the surgery, including the entire month of August 2011, Spears was medically unable to return to work.

On August 5, 2011, SPi Global (apparently a related corporate entity of SPi) announced that it had entered into a "definitive agreement to sell its medical transcription business line assets to Acusis, LLC." ( *Id.* ¶ 10.) However, the sale of SPi's medical transcription business to Acusis was not completed until September 30,

2011. In the weeks or months preceding the sale date, Acusis and SPi communicated concerning the termination of SPi employees in advance of the sale. Spears alleges that, during this time, Acusis "was actively involved, if not making, the decisions regarding whom to terminate before the sale." ( Id. ¶ 11.)

At some unspecified point (presumably before Spears' termination on September 23, 2011), Acusis Human Relations department employee Katie Stewart emailed Carl Thomsen, SPi's Human Resources Manager, concerning termination of SPi personnel in advance of the sale. The email allegedly "goes into great detail about who should be and should not be terminated, including a paragraph regarding the termination of Nina Spears." ( Id. ¶ 12.) With respect to Spears, the email allegedly states that "[s]he had the lowest average productivity at 6,500 lines per month." ( Id.) The First Amended Complaint does not allege that Stewart's email expressed any awareness of Spears' injury or her workers' compensation claim, let alone any hostility thereto.[4]

At an unspecified point thereafter, Spears' supervisor at SPi, Ellyn Serra, informed Thomsen (SPi) that Spears' lack of productivity in August was the result of her surgery and associated inability to work. Notably, Spears does not allege that Thomsen ever relayed this information to Acusis. At any rate, Spears alleges that, "[n]evertheless, the Defendant SPi, as directed by Acusis or in the alternative with Acusis, terminated Ms. Spears" ( id. ¶ 13) on or about September 23, 2011 "for lack of **[*3]** production, particularly during the month of August, 2011." ( Id. ¶ 8.)[5] Spears does not allege whether she returned to work before she was terminated. At any rate, Spears was terminated from SPi just one week before the sale to Acusis was completed.

At some unspecified point, Serra (SPi) and Stewart (Acusis) emailed each other concerning the SPi termination decisions. In an email from Stewart to Serra, Stewart wrote that "Ananda Sanjeev [an Acusis employee] is the person from Acusis overseeing the quality portion of the transition and I have made him aware of some concerns with recent decisions." ( Id. ¶ 14.) Spears alleges that Stewart "further indicated that the basis of the termination of the Plaintiff was lack of production."[6] ( Id. ¶ 14.) Spears also alleges that Ms. Stewart's reason "was pretextual in that the Plaintiff had been one of the highest producers in medical transcription, excluding the month of August 2011, when she was unable to work due to her work related injury. As a result, lack of production for that month could not be held against her." ( Id.).[7]

(2) Theories of Liability/Causes of Action

The First Amended Complaint asserts a claim for workers' compensation retaliatory discharge against both SPi and Acusis, alleging that Spears' claim for workers' compensation benefits was a "substantial factor in Defendants' decision to discharge" her. ( Id. ¶ 21.) Paragraph 15 of the First Amended Complaint also articulates the following two theories of liability against Acusis: "Upon information and belief and because of the level of control being asserted over SPi by Acusis as shown by emails between SPi employees and Acusis employees, at the time of the Plaintiff's discharge, management of SPi and Acusis was so intertwined that Acusis and SPi should be considered one legal entity and thus Acusis and SPi are both liable in this cause of action . . . . In the alternative, at the time of the Plaintiff's discharge, SPi and its employees were acting as agents of Acusis and Acusis is liable for the actions of its agents." ( Id. ¶ 15.)

B. Additional Causes of Action in the Proposed Second Amended Complaint

In addition to the allegations in the First Amended Complaint, the proposed Second Amended Complaint adds

two new causes of action against SPi and Acusis. First, it alleges a claim against Acusis for intentional interference with Spears' employment relationship with SPi. (*See* Second Am. Compl. ¶¶ 15 and 25.) Second, it alleges that SPi and Acusis engaged in a civil conspiracy to discharge Spears in retaliation for filing a claim for workers' compensation benefits. ( *Id.* ¶ 26.) The proposed Second Amended Complaint does not recite the legal elements of either claim, nor does it allege any additional facts in support thereof.

## ANALYSIS

### I. *Standards of Review*

**(A) Motion to Dismiss Standard**

In deciding a motion to dismiss for failure to state a claim under **Fed. R. Civ. P. 12(b)(6)**, the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, **487 F.3d 471, 476** (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, **281 F.3d 613, 619** (6th Cir. 2002). The Federal Rules of Civil Procedure require that **[*4]** a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, **355 U.S. 41, 47**, **78 S. Ct. 99**, **2 L. Ed. 2d 80** (1957) (quoting **Fed. R. Civ. P. 8(a)(2)** ). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, **534 U.S. 506, 511**, **122 S. Ct. 992**, **152 L. Ed. 2d 1** (2002) (quoting *Scheuer v. Rhodes*, **416 U.S. 232, 236**, **94 S. Ct. 1683**, **40 L. Ed. 2d 90** (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, **550 U.S. 544, 555**, **127 S. Ct. 1955**, **167 L. Ed. 2d 929** (2007). To establish the "facial plausibility" as required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, **556 U.S. 662**, **129 S. Ct. 1937, 1949-50**, **173 L. Ed. 2d 868** (2009).

**(B) Motion for Leave to Amend Standard**

Under **Fed. R. Civ. P. 15(a)(2)**, leave to amend "shall be freely granted when justice so requires." However, "[a] motion for leave to amend may be denied for futility if the court concludes that the pleading as amended could not withstand a motion to dismiss." *Midkiff v. Adams Cnty. Reg'l Water Dist.*, **409 F.3d 758, 767** (6th Cir. 2005) (internal quotation omitted); *Rose v. Hartford Underwriters Ins. Co.*, **203 F.3d 417, 420** (6th Cir. 2000) ( "A proposed amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss."); *see also Foman v. Davis*, **371 U.S. 178, 182**, **83 S. Ct. 227**, **9 L. Ed. 2d 222** (1962). Thus, with respect to the issue of futility here, the court will analyze the additional allegations in the Second Amended Complaint under the motion to dismiss standard for failure to state a claim.

### II. *Proposed Claims Asserted in Second Amended Complaint*

Spears v. SPi America, LLC, No. 3:11-CV-1208, 2012 BL 51912, 2012 WL 719663 (M.D. Tenn. Mar. 05, 2012), Court Opinion

The court will consider the Motion for Leave to Amend first. The proposed Second Amended Complaint would add two causes of action. Acusis argues that these proposed amendments are futile for failure to state a claim.

A. <u>Tortious Interference with Business Relations</u>

Under Tennessee law, a plaintiff must show the following five elements to make out a claim for tortious interference with business relations: (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and (5) damages resulting from the tortious interference. *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2000). With respect to "improper motive" under the fourth element, "the plaintiff [must] demonstrate that the defendant's predominant purpose was to injure the plaintiff." *Id.* at 701 n.5.

Spears argues that the proposed Second Amended Complaint establishes these elements. According to Spears, Acusis initially decided to terminate her based on lack of production without knowing the reason for that lack of production. Acusis then purportedly learned from Serra at SPi that Spears' lack of production was the result of her hand surgery for a work-related injury. Nevertheless, according to Spears, Acusis "persisted in having Ms. Spears terminated." (Pltf. Am. Mem. at p. 11.) According to Spears, "Acusis's *failure to remediate [*5] its decision* to fire Ms. Spears *after* learning the reason for her lack of production leads to an inference that their actions were motivated with the predominant purpose of injuring [her]." ( *Id.* (emphases added).)

Spears' proposed cause of action for tortious inference fails for several reasons. As an initial matter, the Second Amended Complaint does not allege any facts showing that Acusis was ever made aware of Spears' injury or her workers' compensation claim in the first place, let alone that Acusis harbored an intent to "injure" Spears for suffering the injury or filing the claim. Specifically, the Second Amended Complaint alleges that, after Stewart (Acusis) and Thomsen (SPi) discussed the possible termination of Spears for lack of production, Thomsen learned from Serra at SPi that Spears' production numbers were low because she had missed several weeks of work as a result of her surgery. However, the Second Amended Complaint does not allege that Thomsen or anyone else at SPi ever communicated this information to Acusis. Indeed, Spears actually argues that Acusis was not aware of her injury or her claim when it allegedly made its initial decision to terminate her. Absent such knowledge, Acusis could not have harbored the alleged improper motive and the claim must fail.

Even assuming *arguendo* that the Second Amended Complaint could support a reasonable inference that Acusis was apprised that Spears had missed work because of a work- related injury, that fact alone does not establish any improper motive by Acusis in terminating her. In fact, Spears simply complains that Acusis should have "remedied" its previous decision to terminate her after learning about her work-related injury. The fact that Acusis may have "persisted" in its previously determined course of action to terminate Spears, standing alone, cannot reasonably support an inference that Acusis' "predominant purpose" was to injure Spears specifically. Indeed, the Second Amended Complaint alleges no facts supporting a reasonable inference that Acusis harbored any animus towards Spears, whether related to her injury, her workers'

compensation claim, or otherwise.[8]

B. Civil Conspiracy

Under Tennessee law, the elements of a cause of action for conspiracy are: (1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury [to the plaintiff]." *O'Dell v. O'Dell*, 303 S.W.3d 694, 697 (Tenn. Ct. App. 2008). Each alleged conspirator must "hav[e] the intent and knowledge of the other's intent" to act in concert to accomplish the unlawful purpose. *Trau-Med*, 71 S.W.3d at 703 . Here, Spears argues that SPi and Acusis engaged in a conspiracy to discharge her in retaliation for filing a workers' compensation claim. (Pltf. Am. Mem. at p. 12.)

The proposed civil conspiracy claim fails for several reasons. First, as described herein at pp. 15-18, the well-pleaded factual allegations do not support a reasonable inference that Spears' workers' compensation claim was a substantial motivating factor for her termination. Thus, at least with [*6] respect to Tennessee workers' compensation law, there was no unlawful purpose underlying the alleged conspiracy and the claim must fail.

Second, even assuming *arguendo* that SPi harbored an unlawful motive to discharge Spears in retaliation for filing a workers' compensation claim, Spears has not alleged facts establishing that Acusis was aware of SPi's purported intent. As noted above at pp. 9-10, Spears has not pled any facts showing that Acusis was even aware of her claim or her injury, let alone that Acusis intended to terminate her because of them.

Third, even if the Second Amended Complaint allegations supported reasonable inferences that SPi harbored an unlawful motive and that Acusis was made aware of that motive — which it does not — the alleged facts do not establish that Acusis shared that intent or that Acusis and SPi engaged in any "overt act" in furtherance of the alleged conspiracy. The meaning of the cherry-picked quotations and characterizations of email excerpts referenced in the Second Amended Complaint is, at best, ambiguous. Even granting the allegations an exceedingly liberal construction, they do not support a reasonable inference that Acusis harbored an intent to target Spears for discriminatory treatment because of her workers' compensation claim or that SPi and Acusis engaged in any concerted action to terminate Spears because she filed that claim.

The proposed amendments to the First Amended Complaint are futile because they fail to state a claim; therefore, the Motion for Leave to Amend will be denied. Accordingly, the Motion to Conform Briefing, which seeks to conform the briefing to the futile proposed amendments, will be denied as moot.

III. *Claims Asserted in the First Amended Complaint*

Having determined that the proposed amendments are futile, the court now examines the sufficiency of the workers' compensation retaliatory discharge claim asserted in the First Amended Complaint.

A. Legal Standard for Workers' Compensation Retaliatory Discharge Claim

Tennessee recognizes a cause of action for retaliatory discharge following an employee's claim for workers' compensation. *Anderson v. Std. Register Co.*, 857 S.W.2d 555, 556-59 (Tenn. 1993). This cause of action for retaliatory discharge provides "*a narrow exception* to the employment at will doctrine," under which an

employer presumptively may terminate an employee for good cause, bad cause, or no cause at all. *Abraham v. Cumberland-Swan, Inc.*, No. *01A01-9201CH00032* , *1992 WL 207775* , at *3-*4 (Tenn. Ct. App. Aug. 28, 1992) (emphasis added); *Harney v. Meadowbrook Nursing Ctr.*, 784 S.W.2d 921, 922 (Tenn. 1990) ("The long standing rule in this State is that an employee-at-will may be discharged without breach of contract for good cause, bad cause or no cause at all, without being thereby guilty of legal wrong. Either the employer or the employee may terminate the relationship at will.")

To make out a *prima facie* case of retaliatory discharge, a plaintiff must prove that: (1) she was an employee of the defendant at the time of the injury; (2) she made a claim against the employer for workers' compensation benefits; (3) the defendant terminated her employment; and (4) the claim for workers' compensation benefits was a substantial factor in the defendant's motivation to terminate **[*7]** her employment. *Anderson*, 857 S.W.2d at 558 ; *Frizzell v. Mohawk Indus.*, No. *M2004-01598-COA-R3-CV* , [2006 BL 59651], 2006 WL 1328773 , at *3 (Tenn. Ct. App. May 15, 2006).

To meet the substantial factor requirement of her *prima facie* case, a plaintiff must show either direct or "compelling circumstantial evidence" of a causal connection between the workers' compensation claim and the termination. *Thomason v. Better-Bilt Aluminum Prods., Inc.*, 831 S.W.2d 291, 293 (Tenn. Ct. App. 1992); *Reed v. Alamo Rent-A-Car, Inc.*, 4 S.W.3d 677, 685 (Tenn. Ct. App. 1999); *Frizzell*, [2006 BL 59651], 2006 WL 132877 , at *3. Tennessee courts have offered guidance about what types of evidence satisfy this standard:

> [A] plaintiff cannot establish causation by testifying that she cannot think of any other reason for her discharge.
>
> The plaintiff's subjective beliefs or speculations are insufficient to create the requisite causal relationship.
>
> Moreover, a plaintiff may not prevail on a wrongful discharge claim merely by showing that a causal connection exists between her on-the-job *injury* and her subsequent discharge.
>
> Instead, the plaintiff must show that her *claim* for workers' compensation benefits, *as opposed to her injury*, was the true or substantial reason for her discharge.

*Reed*, 4 S.W.3d at 685 (emphases added); *see also Campbell v. Eagle Bend Mfg., Inc.*, No. *3:10-cv-24* , [2011 BL 163788], 2011 WL 2471493 , at *6 (E.D. Tenn. June 22, 2011) (applying *Reed* and finding that plaintiff had not demonstrated the requisite causal connection). In considering the types of evidence that might meet this standard, the Tennessee Court of Appeals has found as follows:

> In an effort to prove causation, a plaintiff can present circumstantial evidence in numerous forms, to include the employer's knowledge of the compensation claim, the expression of a negative attitude by the employer toward an employee's injury, the employer's failure to adhere to established company policy, discriminatory treatment when compared to similarly situated employees, sudden and marked changes in an employee's performance evaluations after a workers' compensation claim, or evidence tending to show that the stated reason for discharge was false.

*Newcomb v. Kohler Co.*, 222 S.W.3d 368, 391 (Tenn. Ct. App. 2006) (internal citations omitted).

Temporal proximity alone between the claim and the termination is insufficient. *See Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 648 (Tenn. 1995) (holding that evidence was insufficient to establish causation, where plaintiff was fired three weeks after receiving workers' compensation and three days after returning to work from the underlying injury); *Cooper v. Wyndham Vacation Resorts, Inc.*, 570 F. Supp. 2d 981, 986 (M.D. Tenn. 2008) (holding that evidence was insufficient to establish causation, where plaintiff was fired five weeks after filing workers' compensation claim); *Morgan v. HTH Cos., Inc.*, No. *3:10-CV-411* , [2011 BL 300461], 2011 WL 5967275 , at *7 (E.D. Tenn. No. 29, 2011). However, temporal proximity may serve as evidence of causation if the plaintiff's prior job performance was otherwise satisfactory. *See, e.g.*, *Conatser*, 920 S.W.2d at 648 ; *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 198-99 (Tenn. Ct. App. 1999) (reversing summary judgment for employer, where plaintiff was fired three weeks after filing a workers' compensation claim for allegedly violating plant policy but had never before violated plant policy or been disciplined).

On the other hand, the inability to perform work at all for a significant time period provides compelling evidence that the plaintiff could not perform her job satisfactorily. For instance, in *Birchett v. Nashville Co., Inc.*, No. *M1999-00207-COA-R3-CV* , [2000 BL 9932], 2000 WL 640895 (Tenn. Ct. App. May 19, 2000), the court held that a plaintiff who had been fired two weeks after filing a workers' compensation claim did not prove a causal connection because she had also missed thirty-two days of work in the previous two months. Thus, even though the plaintiff had worked for the defendant for thirty **[*8]** years, the court found that the thirty-two missed days constituted "overwhelming evidence that plaintiff was not performing her job satisfactorily." *Id.* ; *see also Anderson*, 857 S.W.2d 555, 559 (Tenn. 1993) (listing "physical inability to do the job" as a legitimate reason for termination); *Robinson v. Nissan Motor Mfg. Corp.*, No. *M1999-00296-COA-R3-CV* , [2000 BL 9928], 2000 WL 320677 , at *5 (Tenn. Ct. App. Mar. 29, 2000) (finding that, where plaintiff was terminated because he refused to perform specified work due to a previous work-related injury for which he had received workers' compensation, the plaintiff had not established a retaliatory discharge claim).

**B. Application**

Here, the defendants argue that the retaliatory discharge claim fails because Spears has not made out a *prima facie* case. Spears has established that (1) she was an employee of SPi at the time of the injury, (2) she made a claim against SPi for workers' compensation benefits, and (3) SPi terminated her employment, thereby satisfying the first three elements of her retaliatory discharge claim against SPi. However, she has not alleged well-pleaded facts that, if taken as true, would constitute direct or compelling circumstantial evidence that her workers' compensation *claim*, rather than her *injury*, played a substantial factor in her termination. Thus, her retaliatory discharge claim against both defendants must fail.[9]

As an initial matter, Spears has not alleged the date on which she filed a claim for workers' compensation benefits against SPi, which may have occurred some time before her surgery. Even assuming that Spears filed her claim on or about July 26, 2011, the date of her hand surgery, the fact that she was discharged approximately two months later does not, standing alone, establish the requisite causal relationship — a point that even Spears acknowledges. (*See* Pltf. Am. Mem. at p. 5.)

At any rate, Spears argues that decision-makers at SPi and Acusis "persisted" in discharging her, even after learning that her lack of recent production was related to her injury and associated corrective surgery. Essentially, she argues that her extended work absence and associated lack of production "could not be held against her" and that the decision-makers should have re-considered the decision when they were apprised of the reason for her recent lack of productivity.

Spears' allegations actually reinforce the absence of an alleged causal connection between her workers' compensation claim and her termination. Spears repeatedly states that she was terminated for lack of production and she admits that, in fact, *she could not perform her job for at least five weeks*. Whether it was fair or reasonable for SPi and/or Acusis to "hold it against her" that her productivity plummeted to zero for five weeks preceding the sale of the company is beside the point. She does not allege that anyone at SPi or Acusis ever expressed any hostility toward her injury or her claim, that SPi or Acusis deviated from any company policies with respect to her, or that she was subjected to discriminatory treatment when compared to similarly situated employees who had not filed workers' compensation claims. *See Newcomb v. Kohler Co.*, 222 S.W.3d at 391 . Also, although she received positive performance [*9] evaluations before she filed the workers' compensation claim, there is no indication that she received any unjustifiably negative performance reviews. Indeed, she admits that she was in fact unable to work for an extended period of time — she just disputes whether it should have been "held against her."

Whether the decision-makers at SPi and/or Acusis should have reconsidered their decision to terminate Spears after learning why she had been unproductive, as Spears argues, is beside the point. With respect to workers' compensation retaliatory discharge claims, Spears could have been terminated for a good reason, a bad reason, or no reason at all, so long as the claim for workers' compensation benefits did not play a substantial motivating factor in that termination decision. *See Abraham*, 1992 WL 207775 , at *3-*4; *Harney*, 784 S.W.2d at 922 . The facts as alleged establish, at most, that Spears' debilitating *injury* and the associated lack of productivity led to her termination, considerations that do not establish a workers' compensation retaliatory discharge claim. *See Anderson*, 857 S.W.2d at 559 ; *Robinson*, [2000 BL 9928], 2000 WL 320677 , at *6; *Birchett v. Nashville Co., Inc.*, No. *M1999-00207-COA-R3-CV* , [2000 BL 9932], 2000 WL 640895 , at *1-*4. She alleges no other facts supporting a reasonable inference that the fact of her workers' compensation claim played any role in the decision to terminate her, whether that decision was made by SPi, Acusis, or both.

Spears' burden was to allege facts that, if taken as true, would provide compelling circumstantial evidence that her *claim*, not her *injury* and its associated effects, played a substantial factor in her termination. *Reed*, 4 S.W.3d at 685 . She has not done so and, therefore, her retaliatory discharge claim against both defendants must fail.

## CONCLUSION

For the reasons stated herein, the Motion for Leave to Amend will be denied, the Motion to Correct Briefing will be denied as moot, and the Motions to Dismiss will be granted.

Bloomberg Law® © 2021 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service

⊞ Spears v. SPi America, LLC, No. 3:11-CV-1208, 2012 BL 51912, 2012 WL 719663 (M.D. Tenn. Mar. 05, 2012), Court Opinion

An appropriate order will enter.

ALETA A. TRAUGER

United States District Judge

---

fn

1 Spears also re-filed identical copies of the Second Amended Complaint and supporting papers as attachments to Docket Nos. 25 and 26 with the required exhibit titles.

fn

2 Acusis also filed an exhibit to its Reply under separate cover. (Docket Nos. 23 (original) and 24 (amended)). That exhibit is a complete copy of an August 5, 2011 press release by SPi and Acusis, a short excerpt from which is quoted within — but not attached to — the First Amended Complaint and Second Amended Complaint at ¶ 10. Because Spears incorporated this press release into her complaint allegations by reference, the court may consider this press release to "fill in the contours and details" of those allegations. *See Armengau v. Cline*, **7 Fed. App'x 336, 344** (6th Cir. 2001) (*citing Yeary v. Goodwill Indus.-Knoxville, Inc.*, **107 F.3d 443, 445** (6th Cir. 1997)).

fn

3 All allegations and associated paragraph references in the First Amended Complaint are identical to those in the Second Amended Complaint, except for a single sentence addition to ¶ 15 and the proposed addition of two paragraphs, ¶¶ 25 and 26, which assert two new causes of action, as described herein at pp. 6-7.

fn

4 Spears references the substance of this and other alleged email communications between and/or among Acusis and SPi employees, but those emails are not attached to the First Amended Complaint or the Second Amended Complaint. Spears does not allege when the communications were made, nor is it clear whether the quoted passages, even if accurate, are taken in context.

fn

5 Many of Spears' allegations are worded in the passive voice without attribution, leaving the "who," "when," and "how" ambiguous. For instance, with respect to the basis for terminating Spears, it is unclear whether Spears is alleging that SPi told her that she was being terminated for lack of production at the time she was terminated, or whether she learned of this basis for her termination through other means and/or at another time. (*See* First Am. Compl. ¶¶ 8, 13-14.)

fn

6 It is not clear whether Spears alleges that Stewart made this statement concerning her lack of production in the same email as the references to Sanjeev.

fn

7 Notably, certain details concerning the alleged Serra/Stewart exchange(s) are ambiguous as they are alleged. For instance, it is unclear whether Stewart's alleged "concerns" with "the recent decisions" relate to

termination decisions at all, let alone the termination of Spears specifically. Also, Spears does not allege that these communications even referenced her injury, let alone her claim for worker's compensation benefits.

[fn] 8 Spears also argues that her allegations "raise an inference that Acusis was able to exert a great amount of influence, amounting to unethical acts such as duress, undue influence, and/or coercion, over SPi's decision to fire [her]." (Pltf. Am. Mem. at p. 11.) Spears also contends that "[i]t should be inferred that because of the pending sale of SPi to Acusis, SPi, in effect, was unable to make its own decision regarding [the plaintiff's] employment and was forced to comply with the desires of its future owner." ( *Id.*) These assertions are speculative, unsupported by the Second Amended Complaint allegations, and may be internally inconsistent. In any case, these arguments concerning the alleged pre-sale measure of control of Acusis over SPi are rendered irrelevant by the court's finding that Spears has not made out an essential element of her tortious interference claim.

[fn] 9 Acusis did not employ Spears on the date of her termination, which preceded the sale of SPi's medical transcription business to Acusis by approximately one week. Spears argues that the court should relax the first element of the *Anderson* standard to reach Acusis, pursuant to *Hayes v. Computer Scis. Corp.*, No. *M2001-01611-COA-R3-CV* , [2003 BL 1738], 2003 WL 113457 (Tenn. Ct. App. Jan. 14, 2003). Spears also asserts other theories that seek to hold Acusis liable for SPi's actions, including her theory that SPi acted as Acusis' "agent" in terminating her or that, with respect to her termination, SPi and Acusis should be treated as "one legal entity" under a corporate veil-piercing theory. (Pltf. Am. Mem. at pp. 6-9.) Because the court finds that Spears has not made out the "substantial factor" element in any case, the court need not reach the merits of these arguments.

Bloomberg Law® © 2021 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service