IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CAITLIN O'CONNOR, | ) | |
| | ) | |
|     Plaintiff, | ) | No. 3:20-cv-00628 |
| | ) | |
| v. | ) | Judge Eli J. Richardson |
| | ) | |
| | ) | |
| THE LAMPO GROUP, LLC a/k/a | ) | Magistrate Judge Frensley |
| RAMSEY SOLUTIONS, | ) | Jury Demand |
| | ) | |
|     Defendant. | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

Defendant claims that its religious based, subjectively applied, righteous living "core value" gives it unfettered right to violate federal law. Defendant is wrong. Its made-up discriminatory dictates couched as a policy do not supersede federal law, nor are they proper grounds for a motion to dismiss. Defendant's insistence to the contrary does not change that fact. Not only is Defendant's alleged "policy" against premarital sex upon which Defendant relies unwritten, the allegations of the Amended Complaint clearly set out that this subjectively applied, unwritten "policy" discriminates against women and employees whose sincerely held religious beliefs do not align with the unwritten religious beliefs Defendant illegally imposes on some, but not all, of its employees. As such, Defendant fails to demonstrate how Count V of the Amended Complaint- discrimination and retaliation on the basis of religion under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII") and the Tennessee Human Rights Act ("THRA"), T.C.A. §4-21-101, *et seq*. - fails to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) or (c). (ECF 39- Motion to Dismiss). Accordingly, for the reasons set forth herein, Defendant's motion should be denied as a matter of law.

# THE WELL PLED FACTUAL ALLEGATIONS OF THE COMPLAINT

As required by the federal notice pleading standards, Plaintiff articulated details of the religious discrimination she experienced while an employee of Defendant. (ECF 37, Am. Compl. ¶11). Ramsey is a private, for-profit company that alleges to provide "biblically based, common-sense education and empowerment." However, Ramsey is not a religious institution, church, nor affiliated with any specific church. (ECF 37, Am. Compl. ¶9). Dave Ramsey, the founder of Ramsey Solutions contends "I've got a right to tell my employees whatever I want to tell them;" he said in a Q&A segment about the company code of conduct posted on the company website. "They freaking work for me." (ECF 37, Am. Compl. ¶10). Ramsey's contention includes discriminating against employees on the basis of sex, pregnancy, and religion. In other words, Mr. Ramsey's beliefs are inconsistent with civil rights laws prohibiting discrimination on the basis of a protected class. (ECF 37, Am. Compl. ¶11).

## O'CONNOR'S EMPLOYMENT HISTORY

Ms. O'Connor was employed with Ramsey Solutions over four years. She was hired on February 22, 2016. Her position with Ramsey Solutions was as an Administrative Assistant in the Information Technology Department. (ECF 37, Am. Compl. ¶12). In Ms. O'Connor's role, she was not a "the face of the company" and she did not have a public role, a radio show, a podcast, nor was she required to engage in any public appearances as the face of the company. (ECF 37, Am. Compl. ¶13). Ms. O'Connor's duties as Administrative Assistant included: managing her leader's calendars, daily emails, and day to day business. Ms. O'Connor would schedule meetings, one on ones and annual reviews for the leaders and other employees. Ms. O'Connor would also take notes during meetings, handle team member care which included sending flowers, supporting the staff etc. (ECF 37, Am. Compl. ¶14). Ms. O'Connor performed her job duties without incident

and was never given a write up for performance or placed on a Performance Improvement Plan. (ECF 37, Am. Compl. ¶15).

**FACTS REGARDING O'CONNOR'S PREGNANCY AND RAMSEY'S DISCRIMINATORY AND RETALIATORY RESPONSE**

On June 18, 2020, Ms. O'Connor emailed Ramsey Solutions' Head of Human Resources, Armando Lopez, that she was 12 weeks pregnant and requested FMLA paperwork for her maternity leave once she had her baby. Her email stated:

> I needed to let you know that I'm 12 weeks pregnant. I understand that being unmarried and expecting is frowned on here, but the reality of the situation is this is what I'm walking through right now. This is obviously uncharted territory for me so I'm not sure what my next steps are regarding sharing the news with my leader, getting FMLA & ADA paperwork in case it's need in the future, etc.

(ECF 37, Am. Compl. ¶16). Ms. O'Connor's email was circulated among various members of Ramsey's Human Resource Committee ("HRC"), Dave Ramsey and Ms. O'Connor's immediate supervisor, Michael Finney. The HRC passes moral judgment on Ramsey employees based on gossip that has been reported to them, or by employee reports. Immediately after the email was circulated, a member of the HRC and a high-ranking officer in the company stated Ms. O'Connor's email was "totally classless" for sending the email requesting information about FMLA and notifying that she was pregnant. Another HRC member appeared offended Ms. O'Connor sent the email "on her way out the door" and claimed, "our core values and what they stand for are clear." (ECF 37, Am. Compl. ¶17). The next day, on June 19, 2020, Ms. O'Connor received a phone call from a board member telling her that the next week she would have to have a meeting with the board. (ECF 37, Am. Compl. ¶18). On June 23, 2020, Ms. O'Connor met with two board members who told her Ramsey Solutions was still deciding the best way to proceed with her situation. (ECF 37, Am. Compl. ¶19). On June 25, 2020, Mr. Lopez and Ramsey Solutions board members terminated Ms. O'Connor due to her pregnancy and for violating Ramsey Solutions' rules of

3

"Company Conduct." (ECF 37, Am. Compl. ¶20).

**FACTS OF ILLEGAL DISCRIMINATION ON THE BASIS OF RELIGION**

Ramsey Solutions' Company Conduct provision in their handbook states, "The image of Ramsey Solutions is held out to be Christian. Should a team member engage in behavior not consistent with traditional Judeo-Christian values or teaching, it would damage the image and the value of our good will and our brand. If this should occur, the team member would be subject to review, probation, or termination." (ECF 37, Am. Compl. ¶21). The Core Values incorporated into Ramsey's Mission Statement incorporates a "righteous living" policy or value which allegedly prohibits premarital sex. However, there is no written prohibition against premarital sex in the policy. (ECF 37, Am. Compl. ¶22). The righteous living core value states that "We believe that character matters. All the time" and "Who you are is far more important than what you do. We aren't perfect, but we want to get better. No cheating, stealing or lying. Goal # 1 is to be men and women of integrity." (ECF 37, Am. Compl. ¶23).

Ms. O'Connor's violation of "Company Conduct" and righteous living policy is that she and the father of her child are in a committed long-term relationship, but not legally married, nor did they desire to be married at the time in question. Ms. O'Connor does not believe [not having] premarital sex is a requirement or fundamental tenant of her faith as a Christian. (ECF 37, Am. Compl. ¶24). Ms. O'Connor neither cheated, stole nor lied, as set forth in the "Righteous Living" value. However, there have been sustained and admitted to allegations that male employees, who obviously did not get pregnant, did cheat and lie, and they were in fact not terminated. (ECF 37, Am. Compl. ¶15). Ms. O'Connor's sincerely held Christian belief is that Christianity is not meant to be punitive, hateful, vengeful, or judgmental. Accordingly, her Christian belief is that God gave a woman the ability to procreate, and that ability to procreate was not restricted by a contract, *i.e.*,

4

marriage or employment at Ramsey Solutions. Moreover, Plaintiff does not believe that her identification as a Christian gives her the right to judge and condemn other Christians or humans for how they choose to carry out their one dictate from Jesus, that is, to love one another. To the contrary, Ms. O'Connor believes it is inherently unloving to pass judgment and condemnation on others for their private relationships. (ECF 37, Am. Compl. ¶26).

Ms. O'Connor's sincerely held Christian beliefs do not prohibit her from engaging in sex outside of a marriage contract. (ECF 37, Am. Compl. ¶27). Ms. O'Connor's view of Christianity does not require her to invade or inquire or know the specifics of what other people do or do not do in their bedroom or when they do it, much less pass morality judgement on other people. Moreover, Plaintiff sincerely believes that she should be able to seek the support of her Christian community during her pregnancy without fear of recrimination, much less termination from her employment. To be sure, her church did not ex-communicate her in the cruel manner in which Ramsey did. (ECF 37, Am. Compl. ¶28).

Ramsey Solutions is a for-profit company that seeks to impose a specific religious belief system on its employees. However, it is selective in its application of that purported belief system. Upon information and belief, Ramsey's religious belief system has a disparate impact on women. (ECF 37, Am. Compl. ¶29). Upon information and belief, there is no prohibition on pre-marital sex as a basic tenet of Christianity. Even if Defendant alleges it holds such a sincerely held belief, upon information and belief, Defendant has made exceptions for other employees, in particular male employees who have engaged in sex outside of marriage. (ECF 37, Am. Compl. ¶30).

**FACTS OF ILLEGAL DISCRIMINATION AND RETALIATION ON THE BASIS OF SEX (PREGNANCY), DISABILITY AND FMLA**

When Ms. Connor notified Defendant of her pregnancy on June 18, 2020, she specifically stated to Armando Lopez "I needed to let you know that I'm 12 weeks pregnant. I understand that

5

being unmarried and expecting is frowned on here, but the reality of the situation is this is what I'm walking through right now. This is obviously uncharted territory for me so I'm not sure what my next steps are regarding sharing the news with my leader, getting FMLA & ADA paperwork in case it's need in the future, etc." (ECF 37, Am. Compl. ¶31). In sending this email on June 18, 2020, Plaintiff ostensibly requested an accommodation from Defendant's strict Righteous Living value which frowns on pregnancy outside of marriage. Accommodating an exception to a policy that does not even specifically mention pre-marital sex would not have posed an undue hardship on Ramsey, nor would an exception to this policy have involved a *de minimus* cost, if any cost at all. (ECF 37, Am. Compl. ¶32, 33). Significantly, Ramsey has been notified of male employees who have had extra marital affairs, and they have not been immediately terminated, thus it appears sex that results in pregnancy is treated more harshly. (ECF 37, Am. Compl. ¶34).

Ramsey Solutions' termination of Ms. O'Connor interfered with her right to take FMLA leave, discriminated against her due to her sex, pregnancy, religion, and disability, and was in retaliation for informing them of her pregnancy due to it being "frowned upon here," requesting FMLA, and/or accommodation for her disability. (ECF 37, Am. Compl. ¶35). Ramsey Solutions' discriminatory policy has a disparate impact on women, in particular pregnant women because they are unable to keep their private lives private in the event they become pregnant because pregnancy is a very visible condition. (ECF 37, Am. Compl. ¶36).

## STANDARD OF REVIEW

A. **Motion to Dismiss Standard**

A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). To survive a Rule 12(b)(6) motion to dismiss, a claim's "factual allegations must be enough

6

to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The court must construe the claim in a light most favorable to the plaintiff, accept the factual allegations as true, and determine whether plaintiff's factual allegations present plausible claims. *Twombly*, 550 U.S. at 570. *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007); *Central States Pension Fund v. Mahoning Nat'l Bank*, 112 F.3d 252, 255 (6th Cir. 1997).

A court should assume the veracity of well-pleaded factual allegations and then determine whether they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. The pleading needs to demonstrate "just enough factual information to create an expectation that discovery will uncover evidence supporting the claim." *Id*. at 1955. The Sixth Circuit "has cautioned against reading '*Twombly* and *Iqbal* so narrowly as to be the death of notice pleading...'" *Rhodes v. R & L Carriers, Inc.*, 491 Fed. App'x 579, 583 (6th Cir. Aug. 6, 2012) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012)). Further, "when a document is referred to in the pleadings and is integral to the claims" it may be considered in the context of a motion to dismiss without converting it to a motion for summary judgment. *Lewis Lumber Milling, Inc. v. Mereen-Johnson, LLC*, 2018 U.S. Dist. LEXIS 200504 *6-7 (M.D. Tenn. Nov. 27, 2018) (Richardson, J.)(citing *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-336 (6th Cir. 2007)). A motion under Rule 12(c) is analyzed under the same standards as Rule 12(b)(6). *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). When a party invokes FRCP 12(c), the Court construes "all well-pleaded material allegations of

the pleadings of the [non-movant] . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007.)

The Supreme Court has made it clear that a plaintiff need not plead all the elements of the *McDonnell Douglas* prima facie case in order to survive a motion to dismiss. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ("The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement."); *Thompson v. Hendrickson, USA*, 2021 U.S. Dist. LEXIS 41697 *7 (M.D. Tenn. March 5, 2021) (Richardson, J.). Indeed, "so long as a complaint provides an adequate factual basis for a Title VII discrimination claim, it satisfies the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)." *Serrano v. Cintas Corp.*, 699 F.3d 884, 897 (6th Cir. 2012). Importantly, *Swierkiewicz* remains good law after the Supreme Court's decisions in *Twombly* and *Iqbal*. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012).

## THE MOTION SHOULD BE DENIED

### A. Plaintiff Presented Legally and Factually Sufficient Claims of Religious Discrimination Based on Defendant's Violations of Title VII and the THRA

Plaintiff's Amended Complaint states a claim for religious discrimination pursuant to Title VII and the THRA.[1] The Sixth Circuit has interpreted the prohibition against religious discrimination in the workplace under Title VII "to preclude employers from discriminating against an employee because of the employee's religion as well as because the employee fails to comply with the *employer's* religion" or religious beliefs. *Pedreira v. Ky. Baptist Homes for*

---

[1] Title VII and THRA claims are analyzed the same. *Chattman v. Toho Tenax Amer.,* Inc., 686 F.3d 339, 346 (6th Cir. 2012) (analyzing THRA claims under the Title VII standard); *Mullins v. Goodyear Tire & Rubber Co.*, 291 Fed. Appx. 744, 745 n.1 (6th Cir. 2008) ("The THRA is a state law analogous to Title VII and the statutes are analyzed identically.")

8

Case 3:20-cv-00628  Document 40  Filed 06/16/21  Page 8 of 16 PageID #: 660

*Children, Inc.*, 579 F.3d 722, 727 (6th Cir. 2009) (*citing Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 624 (6th Cir. 2000) (explaining that Title VII's scope "include[s] the decision to terminate an employee whose conduct or religious beliefs are inconsistent with those of its employer"); *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 708-09 (6th Cir. 1985)). More succinctly, as recognized by this Court, "the law broadly defines 'religion' to mean all aspects of religious observance and practice, as well as belief." *EEOC v. Publix Super Mkts., Inc.*, 2020 U.S. Dist. LEXIS 151066 *8 (M.D. Tenn. Aug. 20, 2020) (Richardson, J.). The elements of a *prima facie* case of religious discrimination include: (1) plaintiff was a member of a protected class, (2) plaintiff experienced an adverse employment action, (3) plaintiff was qualified for the position, and (4) plaintiff was replaced by a person outside of the protected class or that he was treated differently than similarly situated employees. *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

To assess whether a religious belief is sincere "[c]ourts are to 'determine whether the line drawn' by the plaintiff is between conduct consistent and inconsistent with his or her religious beliefs "'reflects an honest conviction.'" *Doe v. Cong. Of the U.S.*, 891 F.3d 578, 586 (6th Cir. 2018) (*citing Burwell v. Hobby Lobby*, 134 S. Ct. 2781, 2779 (2014). Sincerity is not to be confused with reasonableness, thus, it is not the role of the court "to say their religious beliefs are mistaken or insubstantial." *Id. See Haight v. Thompson*, 763 F.3d 554, 566 (6th Cir. 2014) (courts are not "to inquire into the centrality to a faith of certain religious practices—dignifying some, disapproving others"). "For example, an employee's desire to make a religious pilgrimage is a protected observance entitled to accommodation; the employee's desire to make the pilgrimage, which could be made at any time, at a time of her choosing is a matter of personal preference." *Jiglov v. Hotel Peabody, G.P.*, 719 F.Supp. 2d 918, 929 (W.D. Tenn. 2010) (internal citations omitted). Further, *See E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y*

9

*Alcantrarillados de Puerto Rico,* 279 F.3d 49, 56 (1st Cir. 2002) (Ordinarily, the sincerity of an employee's religious belief is a "quintessential fact question[]" appropriately reserved "for the fact finder at trial, not for the court at summary judgment).

In this case, Plaintiff alleged that she emailed HR letting him know about her pregnancy. (ECF 37, Am. Compl. ¶16, 31). Plaintiff also alleged facts regarding her sincerely held religious beliefs regarding premarital sex, and the effects of Defendant's vague "righteous living" core value, as well as the unwritten and subjectively applied prohibition against premarital sex. (ECF 37, Am. Compl. ¶¶11, 13, 21-24, 26-30). Moreover, Plaintiff's email can reasonably be interpreted as a request for accommodation and assertion of her rights to Human Resources under Title VII, as well as the ADA and FMLA, and implicit in this request is that she disagrees with Defendant's policy. (ECF 37, Am. Compl. ¶32, 35). The Sixth Circuit has long held that an employee is not required to use "magic words" to request an accommodation or engage in protected conduct. *See Leeds v. Potter*, 249 F. App'x 442, 449-50 (6th Cir. 2007); *Chaniott v. DCI Donor Servs.*, 2020 U.S. Dist. LEXIS 153 *27 (M.D. Tenn. 2020) (Trauger). The same holds true for the protected activity and request for accommodation Plaintiff engaged in when she initiated the conversation about her pregnancy in the context of being "frowned upon" and Defendant's polices rooted in its interpretation of its version of "Judeo-Christian" values that it illegally seeks to impose its employees. (ECF 37, Am. Compl. ¶¶16, 21-22, 32-33).

Here, Defendant misleadingly asserts that "there is nothing inherently illegal about a private employer prohibiting employees from engaging in premarital sex" and cites a non-binding Oregon District Court case against a Christian university.[2] (MTD, ECF 39 p. 5). Defendant then attempts to draw a correlation between its own discriminatory policy and those that have been

---

[2] Notably, the Oregon court denied summary judgment in that case.

imposed at religious institutions, like Christian schools, but one which has been only imposed under the ministerial exception to Title VII. (ECF 39 p. 5). *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 188, 132 S. Ct. 694, 181 L. Ed. 2d 650 (2012) (recognized "the existence of a 'ministerial exception,' grounded in the First Amendment, that precludes application of [employment discrimination statutes] to claims concerning the employment relationship between a religious institution and its ministers."). Defendant is neither a religious institution, nor a Christian school, nor is O'Connor a minister; in short, any analysis based on the ministerial exception to Title VII does not apply and the discrimination and retaliation provisions of Title VII do apply to this Defendant, a private, for-profit employer.

While ignoring the pleading standards of Rule 8 and the analytical framework of a 12(b)(c) or 12(c) motion which requires all inferences be drawn in Plaintiff's favor, Defendant makes several arguments, each will be addressed in turn.

**1. As a matter of law, Plaintiff pled a case for religious discrimination**

First, Defendant claims religious discrimination on the basis of belief, not conduct, is all that is prohibited, and cites *Pedreira*. Defendant's reliance on *Pedreira* is misplaced. (ECF 39 p. 6). In *Pedreira,* there was no specific assertion of rights contrary to that of the employer as alleged in the complaint here. *Pedreira*, 579 F.3d at 725. (ECF 37, Am. Compl. ¶¶16, 21-22, 24, 26-28, 32-35). Rather, the employer, the Kentucky Baptist Homes for Children ("KBHC"), found pictures on social media and subsequently terminated its employee for being gay which it determined was inconsistent with its Christian values. (*Id*.). KBHC's employee did not go directly to her employer to state she was gay and that she knew it violated any policies, which would have been an assertion of a sincere belief. Instead, it appears that employee made no such assertion indicating she held a different religious belief than that of her employer. (*Id*.). In this case, Plaintiff specifically states

11

she was unmarried, pregnant and she raised that she knew it was frowned upon at work; Plaintiff also pled very specific facts about her sincerely held religious beliefs. (ECF 37, Am. Compl. ¶¶16, 26-28, 31). Moreover, Plaintiff pled facts that Defendant is seeking to impose its religious beliefs on its employees. (ECF 37, Am. Compl. ¶¶21-23, 29-31). These allegations contain enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. That is all that is required at this stage.

Defendant also claims that because it did not know about Plaintiff's belief's concerning pre-marital sex, that somehow this translates as a green light for its imposition of its vague, unwritten beliefs of "Judeo-Christian" values on Plaintiff. (ECF 39 p. 6-7). This is simply not true. The Sixth Circuit has long acknowledged that an employer cannot impose its religious beliefs on its workforce. *Pedreira*, 579 F.3d at 727 (6th Cir. 2009) (*citing Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 624 (6th Cir. 2000) (explaining that Title VII's scope "include[s] the decision to terminate an employee whose conduct or religious beliefs are inconsistent **with those of its employer**").

Second, Defendant claims that Plaintiff must have "requested an exemption from Defendant's prohibition against premarital sex before she violated it." (ECF 39, p. 7). This argument makes the least sense of all because it assumes Defendant's unwritten, vague "policy" is non-discriminatory, it is not; indeed, that is the entire issue here. Moreover, Plaintiff was not required to get permission to have sex with her partner from Defendant before she could assert a request for accommodation, such an assertion is ludicrous on its face.[3] Rather, the premise of her

---

[3] Defendant's bizarre argument is essentially that Ms. O'Connor should have gotten permission from them if she wanted to have sex without being married to maintain an accommodation claim. If this is in fact their assertion, it appears the complaint will need to amended yet again to address Defendant's ever evolving restrictions on its employees to include an invasion of privacy claim.

12

accommodation claim is to not be punished under Defendant's vague, unwritten and illegal "policy" against pre-marital sex and to simply retain her employment and have her baby in peace.

The cases cited by Defendant are simply inapplicable. For example, in *Chalmers*, a supervisor sent judgmental, shameful notes to her co-workers and subordinates under the contention that her faith required her to point out their moral failings and perceived ungodly behavior and then after she did so, she requested an accommodation and attempted to make the case that there was nothing that specifically prevented her actions and that her letters were notice of her intent to violate a workplace policy that generally promoted harmony and respect. *Chalmers v. Tulon Co.*, 101 F.3d 1012, 1020 (4th Cir. 1996) (internal citations omitted). The Fourth Circuit rejected her arguments. Here, there is no written policy against pre-marital sex, nor is it intuitive that it is an employer's business to have a say on in its employees' sex lives in the same manner as a basic non-religion-based respect policy which was at issue in *Chalmers*. (ECF 37, Am. Compl. ¶22). Assuming arguendo, the discriminatory prohibition has any effect, the triggering notice of request for accommodation is not a request to Defendant for permission to have sex as an unwed person, as ridiculous as it sounds, but rather to have her baby and be treated as any other pregnant employee rather than be "frowned upon." (ECF 37, Am. Compl. ¶16).

Third, Defendant claims that Plaintiff cannot state a claim for religious accommodation because her sincerely held religious beliefs do not conflict. (ECF 39, p. 8). Not true. O'Connor pled that her sincerely held religious beliefs do not prohibit her from engaging in sex outside of a marriage contract.[4] (ECF 37, Am. Compl. ¶27).

---

[4] Defendant appears to be referring to paragraph 24, which admittedly is somewhat confusingly written. However, the entire context of the complaint is that she does not believe her faith demands a prohibition against premarital sex. (ECF 37, Am. Compl. ¶¶26-30, 32).

Fourth, Defendant makes a broad argument "looking ahead" that Plaintiff will "never be able to satisfy the prima facie elements of a religious accommodation claim." (ECF 39 p. 8). This is rehash of Defendant's other arguments, and one confusingly written sentence in the Amended Complaint does not alter the conclusion that drawing all inferences in Plaintiff's favor that Defendant's motion must be denied. *Doe v. Cong. Of the U.S.*, 891 F.3d at 586 (Sincerity is not to be confused with reasonableness, thus, it is not the role of the court "to say their religious beliefs are mistaken or insubstantial."). *See Haight v. Thompson*, 763 F.3d 554, 566 (6th Cir. 2014) (courts are not "to inquire into the centrality to a faith of certain religious practices—dignifying some, disapproving others"). *See also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (A plaintiff need not plead all the elements of the *McDonnell Douglas* prima facie case in order to survive a motion to dismiss. "The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement."). Thus, for purposed of a motion to dismiss, there is no "looking ahead"- there is the complaint which is to be evaluated. Facts are yet to be made known and discovery must take place to evaluate whether any facts are in dispute.

**B. Plaintiff Presented Legally and Factually Sufficient Claims of Religious Retaliation Based on Defendant's Violations of Title VII and the THRA**

Defendant claims Plaintiff's allegations of retaliation are insufficient. (ECF 39 p. 9). Defendant is mistaken. Plaintiff alleged she engaged in protected conduct, namely that she notified Defendant she was pregnant and even though it was frowned on based on Defendant's view of Judeo-Christian values and she requested to know what her rights were (ECF 37, Am. Compl. ¶16, 17). She then suffered an adverse action in her immediate termination for getting pregnant due to Defendant's illegal, religious based policy that it imposes on employees. (ECF 37, Am. Compl. ¶20). Again, Defendant's argument is premised on a falsehood, namely that its unwritten "policy"

14

Case 3:20-cv-00628   Document 40   Filed 06/16/21   Page 14 of 16 PageID #: 666

against premarital sex is a legal policy, it is Plaintiff's contention that it is not. *See EEOC v. R.G.*, 884 F. 3d 560, 576 (6th Cir. 2018) (employer justification for termination of a transgender employee on the basis of employer's religious belief was still evidence of illegal discrimination). As recognized by the Sixth Circuit, "the Supreme Court made clear in *Price Waterhouse* that Title VII requires '[religion] be irrelevant to employment decisions.'" *Id*. (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989). Here O'Connor's protected class and conduct clearly were pled and taken into account in Ramsey's decision to terminate. These are sufficient facts set forth in the Amended Complaint to give rise to a claim of retaliation.

WHEREFORE, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss.

Respectfully submitted,

*s/ Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Bennett Hunter BPR # 022407
Ashley Shoemaker Walter BPR #037651
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
ashley@collinshunter.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY certify that a copy of the foregoing has been served via the Court's CM/ECF system this the 16 day of June 2021 to counsel of record:

Leslie Goff Sanders
Daniel Crowell
WEBB SANDERS PLLC
611 Commerce Street
Suite 3102
Nashville, TN 37203
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com            /s/ Heather Moore Collins
                                       *Attorney for Plaintiff*