EXHIBIT 3

➕ Averett v. Honda of America Mfg., Inc., Case No. 2:07-cv-1167., 2010 BL 26701, 2010 WL 522826 (S.D. Ohio Feb. 09, 2010), Court Opinion

**Pagination**
\*      BL

**[Opinion](#)** >

United States District Court, S.D. Ohio, Eastern Division.

VERNESSA AVERETT, Plaintiff, v. HONDA OF AMERICA MFG., INC., Defendant.

Case No. 2:07-cv-1167.

February 9, 2010

## MEMORANDUM OPINION & ORDER

JOHN HOLSCHUH, Senior District Judge

Plaintiff Vernessa Averett filed suit against her former employer, Honda of America Manufacturing, Inc. ("HAM"), seeking relief pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), **42 U.S.C. § 2000e** *et seq.*, the Age Discrimination in Employment Act ("ADEA"), **29 U.S.C. § 621** *et seq.,* the Americans with Disabilities Act ("ADA"), **42 U.S.C. § 12111** *et seq.,* **42 U.S.C. § 1981**, and Ohio Revised Code Chapter *4112*. She alleges a hostile work environment and discrimination based on age, race, religion, and disability. She also brings state law claims of breach of contract and intentional infliction of emotional distress.

This matter is currently before the Court on Defendant's motion for summary judgment. (Doc. 30.) For the reasons stated below, the Court grants Defendant's motion with respect to Plaintiff's claims of hostile work environment and discrimination, and declines to exercise supplemental jurisdiction over Plaintiff's state law claims of breach of contract and intentional infliction of emotional distress.

## I. Background and Procedural History

Vernessa Averett, an African-American female, began working as a production associate in the Aluminum Machining Department at HAM's Anna Engine Plant in 1989. She is Baptist, over the age of forty, and suffers from carpal tunnel syndrome. (Compl. ¶¶ 13-14, 38; Pl. Dep. at 46, 49-50.) During her fifteen years in the Aluminum Machining Department, she was "coached" or "counseled" twenty-one times for substandard job



performance and violations of safety rules. (Eyink Aff. ¶ 4; Ex. 13 to Pl. Dep.)[fn1]

In 1999, Plaintiff complained that she was taunted and harassed by coworkers and that they were conspiring against her. She wrote "[i]f it had not been [for] my close relationship with the Lord I would not have come this far. Each day I come here I have to be taunted. It's ungodly and inhumane. . . . Either way the Lord will be with me. Because He knows I do the best." (Ex. 2 to Mem. in Opp'n). When HAM questioned her about her concerns, she admitted that the situation had improved once she moved to a different work area. (Martin Aff. ¶ 3.) In November of 2003, Plaintiff again complained that coworkers were intimidating her and plotting against her. HAM found these allegations to be unsubstantiated. (Ex. 9 to Pl. Dep.)

In March of 2004, after allegedly threatening to kill coworker Shelle Dukes and undergoing a psychological examination, Plaintiff was transferred to the Driveshaft Manufacturing Department. (Martin Aff. ¶¶ 5-6.) During the next two and a half years, Plaintiff was coached or counseled forty-one times, mainly for substandard job performance. (Eyink Aff. ¶ 5.) In May of 2005, Plaintiff complained that her Coordinator and Team Leader were picking on her and that there was a conspiracy to get rid of her. Again, HAM was unable to substantiate her claims. (Ex. 10 to Pl. Dep.; Eyink Aff. ¶ 8.) In August of 2005, after being reprimanded for more performance-related issues, Plaintiff **[*2]** again complained that her supervisors were plotting to get rid of her. Again, HAM concluded that these allegations were unfounded. (Eyink Aff. ¶ 10.)

In February of 2006, as part of her annual performance review, Plaintiff wrote that she was "constantly harassed" and that such harassment was not only allowed, but encouraged. She also wrote:

My strength is my spirituality. My relationship with God allows me to continue on. There has been many disappoints [sic] and traps set for me here. . . . I know that one day judgement day has to come for evildoers and this keeps me optimistic. I have been through a lot here. I do not deserve it and I am depending on God to work it all out for me. . . .

(Ex. 18 to Pl. Dep.) On March 1, 2006, Rebecca Eyink met with Plaintiff regarding this statement. Eyink "[e]xplained to Vernessa that comments like the one she wrote in her evaluation referring to `judgement day' for `evildoers' keeping her optimistic, are inappropriate as they can be taken as threatening." Plaintiff responded that she was very spiritual and that was what she honestly believed. Eyink "[e]xplained to Vernessa that she may feel that way, but she should not impose her beliefs on others, especially when it could be taken in a threatening manner. She should refrain from making those comments either verbally or in writing." (Id.)

Eyink met with Plaintiff again on March 22, 2006. Plaintiff again complained to Eyink that there was a plan to get rid of her, but stated that judgment day would come and God would take care of the evildoers. Eyink reminded Plaintiff about their earlier discussion and again instructed her to not to verbalize or write comments of this nature. (Ex. 17 to Pl. Dep.) On May 11, 2006, Plaintiff received a Level III counseling concerning her substandard performance. In the Associate Comment section of the paperwork, she wrote "these are lies & exaggerations and God assures me daily about judgement of all." (Id.)

⊞ Averett v. Honda of America Mfg., Inc., Case No. 2:07-cv-1167., 2010 BL 26701, 2010 WL 522826 (S.D. Ohio Feb. 09, 2010), Court Opinion

On November 2, 2006, Plaintiff complained of shoulder pain and filled out an Incident Report stating that she had physical difficulty performing her assignment. She also wrote of the "hatred" she had experienced in the Driveshaft Manufacturing Department: "God knows what's going on there in drive shaft and he know [sic] the torture and suffer [sic] there and as a faithful servant he assures me that all the evildoers and plotter [sic] will be judged according to his deeds." (Id.) Plaintiff's supervisor, Bill Shortridge, brought these comments to the attention of Associate Relations. Shortridge acknowledged that no one else had seen the Incident Report and no associates had complained that Plaintiff had made any inappropriate comments to them. (Id.)

On November 13, 2006, Michelle Aboulkassim of Associate Relations met with Plaintiff about the comments in the Incident Report. Plaintiff received a Level II counseling for failing to follow previous instructions not to make threatening statements. (Ex. 13 to Pl. Dep.) Plaintiff explained that she did not intend to offend anyone; she is a spiritual person and just states what she believes to be a fact. Plaintiff admitted **[*3]** that Rebecca Eyink had previously instructed her not to make statements like these because others could view them as threatening. Plaintiff explained, however, that sometimes she says things without understanding where the words are coming from. She said that God must have put the words there. Aboulkassim again explained why these kinds of statements were inappropriate. Plaintiff said that she would pray about it and ask God to help her refrain from stating her beliefs. (Ex. 17 to Pl. Dep.)

On November 22, 2006, Shortridge again counseled Plaintiff concerning ongoing quality control issues. (Ex. 21 to Pl. Dep.) She attempted to blame the problems on other employees. She was suspended on November 27, 2006 pending the completion of an investigation. Honda terminated Plaintiff's employment on November 29, 2006 for accumulated gross misconduct. By that time, she had received a total of 55 coachings and 7 counselings, almost all related to substandard job performance. A Senior Manager Review Panel upheld her termination on appeal. (Eyink Aff. ¶¶ 12-13.)

On November 9, 2007, Plaintiff filed suit against HAM seeking relief under Title VII, the ADEA, the ADA, **42 U.S.C. § 1981**, and Ohio Revised Code Chapter *4112*. She alleged that she was subjected to a hostile work environment and discriminated against because of her age, race, disability, and religion. She further alleged that HAM failed to accommodate her religious beliefs and her disability. In addition, she asserted claims of breach of contract and intentional infliction of emotional distress. She seeks reinstatement, along with compensatory and punitive damages, attorney fees and costs.

On March 31, 2009, Plaintiff attempted to unilaterally dismiss without prejudice all of her claims of age discrimination, race discrimination, and disability discrimination. On May 1, 2009, the Court granted HAM's motion to strike Plaintiff's Notice of Voluntary Dismissal, noting that at this stage of the litigation, Plaintiff needed either a court order or a stipulation of dismissal. This matter is currently before the Court on HAM's motion for summary judgment as to all claims.

**II. Standard of Review**

Bloomberg Law® © 2021 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service

+ Averett v. Honda of America Mfg., Inc., Case No. 2:07-cv-1167., 2010 BL 26701, 2010 WL 522826 (S.D. Ohio Feb. 09, 2010), Court Opinion

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

[Summary judgment] . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting **[*4]** Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed.R.Civ.P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson[*5] , 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

**III. Analysis**

**A. Count I: Hostile Work Environment**

Count I of Plaintiff's Complaint alleges that she was harassed because of her age, race, religious convictions, and/or disability and that this harassment created a hostile work environment in violation of Title VII, the ADEA, the ADA, 42 U.S.C. § 1981, and Ohio Revised Code Chapter *4112*.[fn2] In order to establish a hostile work environment claim under any of these statutes, Plaintiff must show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her status as a member of a protected class; (4) the harassment was so severe and pervasive that it unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable because it knew or should have known of the harassment and failed to take appropriate action. See Barrett v. Whirlpool Corp., 556 F.3d 502, 515-16 (6th Cir. 2009).

As an initial matter, the Court notes that it appears that Plaintiff has abandoned most of her hostile work environment claims. Plaintiff admitted in her deposition that she was not pursuing her claim that she was subjected to a hostile work environment based on her disability. (Pl. Dep. at 44). In addition, Plaintiff has not responded to HAM's argument that she has presented no evidence that she was harassed because of her age

or her race.[fn3]

This leaves only Plaintiff's claim that she was subjected to a hostile work environment based on her religious beliefs. HAM argues that summary judgment is warranted on this claim because Plaintiff cannot show that the harassment complained of was based on Plaintiff's religion, that the conduct was severe or pervasive, or that HAM failed to take immediate, corrective action. The Court finds that, based on the evidence presented, no reasonable jury could find that Plaintiff was harassed *because of* her religious beliefs. Because Plaintiff cannot satisfy this essential element of her claim, there is no need for the Court to address HAM's other arguments.

As explained above, Plaintiff complained on numerous occasions that she was taunted and harassed by her coworkers and her supervisors, and that there was a conspiracy against her. Plaintiff testified that her supervisors and coworkers repeatedly yelled at her and called her "stupid" and "an idiot." (Pl. Dep. at 202-09.) In August of 2005, she complained that her supervisor, Bill Amweg, encouraged her coworkers to harass her to the point of tears and then mock her when she cried. She further alleged that her supervisors were trying to get her fired by plotting to plant drugs on her. When Rebecca Eyink interviewed Team Leader James **[*6]** Teague about Plaintiff's allegations, he denied that Plaintiff was singled out for harassment. Rather, he explained that in his work area, "everybody picks on everybody." (Ex. 3 to Mem. in Opp'n).

Although Plaintiff has presented evidence showing that she was taunted and harassed, and has repeatedly stated that her strong Christian beliefs help her to cope with the alleged harassment, she has presented absolutely no evidence that she was harassed *because of* her religious beliefs. Absent such evidence, her claim necessarily fails. See Rivera v. Puerto Rico Aqueduct and Sewers Auth., **331 F.3d 183**, **189** (1st Cir. 2003) (holding that the plaintiff must show that the alleged conduct "was, in either character or substance, discrimination *because of religion.*"). For the reasons set forth above, the Court finds that HAM is entitled to summary judgment on Count I.

**B. Count II: Wrongful Termination**

In Count II of her Complaint, Plaintiff alleges that her termination "was motivated in whole or in part by [her] age and/or race and/or religious convictions and/or disability." (Compl. ¶ 25). Again, it appears that Plaintiff has abandoned all claims of age and disability discrimination; her memorandum in opposition to the motion for summary judgment is completely silent regarding these claims. Moreover, to the extent that Plaintiff alleges that her termination was motivated by her religious convictions, this claim substantially overlaps with Count III, in which Plaintiff alleges that she was disciplined and terminated for engaging in protected speech concerning her religious beliefs. This particular claim will, therefore, be addressed in the next section of this opinion. With respect to Count II, the Court will focus solely on Plaintiff's claim of race discrimination.

Title VII prohibits employers from discharging or otherwise discriminating against any individual because of such individual's race. **42 U.S.C. § 2000e-2**(a)(1). Plaintiff's claims of race discrimination under **42 U.S.C. § 1981** and under Ohio Revised Code **§ 4112** are analyzed in accordance with Title VII. See Johnson v.

University of Cincinnati, 215 F.3d 561, 573 n. 5 (6th Cir. 2000); Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n, 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131 (Ohio 1981).

In an employment discrimination case, a plaintiff can withstand a motion for summary judgment either by presenting direct evidence of discrimination or, using the McDonnell Douglas framework set forth below, by presenting circumstantial evidence from which a jury may infer a discriminatory motive underlying an adverse employment action. See Kline v. Tennessee Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997). Direct evidence "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999). A facially discriminatory employment policy or an express statement by a decision-maker of a desire to terminate employees because they belong to a protected class would constitute direct evidence of discriminatory intent. See Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. **[*7]** 2000). In this case, Plaintiff has presented no direct evidence of race discrimination.

Where the plaintiff has only circumstantial evidence of a discriminatory motive, claims are analyzed according to the burden-shifting framework set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). Under that framework, a plaintiff must first establish a prima facie case of discrimination by proving that she is a member of a protected class, was qualified for the position, was subject to an adverse employment action, and was replaced by a person outside the protected class or was treated less favorably than similarly-situated employees outside the protected class. See Clayton v. Meijer, Inc., 281 F.3d 605, 610 (6th Cir. 2002).

If the plaintiff establishes a prima facie case, an inference of discrimination arises and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802-03. If the employer satisfies its burden of production, the presumption of discrimination drops away, leaving only the issue of "discrimination *vel non*." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000). The plaintiff must then prove by a preponderance of the evidence that the reason offered was pretextual. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The plaintiff may prove pretext by showing either that: (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate the discharge; or (3) the proffered reason was insufficient to motivate the discharge. See Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994); Peters v. Lincoln Elec. Co., 285 F.3d 456, 471-72 (6th Cir. 2002). The plaintiff has the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against her. Burdine, 450 U.S. at 253.

In its motion for summary judgment, HAM argues that Plaintiff cannot establish a prima facie case of race discrimination because she cannot prove that she was replaced by a person outside the protected class or that she was treated less favorably than similarly-situated employees outside the protected class. Rather than respond to HAM's argument, Plaintiff inexplicably cites to Farmer v. National City Corp., No. *C2-94-966*, *1996 WL 887478*, at *8 (S.D. Ohio April 5, 1996), a case involving an employee who was terminated as part of a reduction in force. As the court explained in Farmer, when a plaintiff is terminated as part of a reduction-in-force, the elements of a prima facie case of discrimination are modified and the plaintiff faces a heightened

burden. The employee need not show that she was replaced by a person outside the protected class or was treated less favorably than similarly-situated employees outside the protected class. However, she must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." Id. (citing Barnes v. GenCorp, Inc., 896 F.2d 1457, 1464-65 (6th Cir. 1990)). Relying on Farmer, Plaintiff then presents — as "additional" circumstantial evidence of race discrimination — the deposition testimony of Monica [*8] Ways, a HAM employee who had previously filed suit alleging race discrimination and retaliation. In her deposition in that case, Ways testified that, in general, black women tended to get written up for "disrespectful" behavior more often than white employees and were subjected to a separate standard of discipline. (Exs. 9-12 to Mem. in Opp'n.)

Because Plaintiff was not terminated as part of a reduction-in-force, the modified fourth element of the prima facie case as set forth in Farmer is completely inapplicable. Instead, Plaintiff must prove either that she was replaced by a person outside the protected class or that a similarly-situated individual outside the protected class was treated more favorably than she was. According to Rebecca Eyink, Plaintiff was not replaced by another associate after her termination. (Eyink Aff. ¶ 17.) Plaintiff has presented no evidence to the contrary. Nor has Plaintiff identified any similarly-situated non-African-American employee who was treated more favorably than she was. See Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (holding that plaintiff must identify other employees who had the same supervisor, were subject to the same standards, and engaged in the similar misconduct without such differentiating circumstances that would distinguish the employer's treatment of them). As noted earlier, Plaintiff was terminated for accumulated gross misconduct, having been coached and counseled more than 60 times during her career. Because Plaintiff has not established a prima facie case of race discrimination, HAM is entitled to summary judgment on Count II.

## C. Count III: Religious Discrimination

Count III of Plaintiff's Complaint alleges that on several occasions, she "was berated by management personnel for her references to her religious beliefs and suffered retaliatory discipline, harassment and termination for engaging in protected speech concerning her religious beliefs." (Compl. ¶ 33.) Plaintiff also alleges that HAM failed to accommodate her religious beliefs. (*Id.* at ¶ 34.)

It is undisputed that Plaintiff repeatedly made written and verbal statements expressing her belief that, on judgment day, God would punish the coworkers who were taunting her and harassing her. HAM maintains that these statements violated a company policy that prohibits employees from using "abusive or threatening language either to, or about fellow associates." (Ex. 1 to Mem. in Opp'n.) Plaintiff was "coached" for violating this policy and, when she continued to make similar statements, she received a Level II "counseling."

At issue is whether, in enforcing its policy, HAM discriminated against Plaintiff on the basis of her religion in violation of Title VII. Title VII makes it unlawful for an employer to discharge or otherwise discriminate against an individual because of such individual's religion. 42 U.S.C. § 2000e-2(a)(1). "The term `religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is

unable to reasonably accommodate to an employee's religious observance **[*9]** or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. 2000e(j). There are two types of religious discrimination claims — disparate treatment and failure to accommodate. See Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1017 (4th Cir. 1996). Plaintiff has asserted both, but neither survives HAM's motion for summary judgment.

**1. Disparate Treatment**

Plaintiff first alleges that HAM discriminated against her on the basis of her religion when it disciplined her for expressing her belief that God would punish those employees who taunted and harassed her. She maintains that this constitutes direct evidence of religious discrimination. The Court disagrees. As noted earlier, direct evidence "is that evidence which, if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn, 176 F.3d at 926 (emphasis added).

Here, Plaintiff was disciplined for violating the company policy prohibiting the use of abusive or threatening language about coworkers. She admits that the policy itself its facially neutral; it does not single out employees who hold strong religious convictions. Moreover, no one told Plaintiff that she was being disciplined because of what she believed. Rebecca Eyink told Plaintiff that although she was entitled to her religious beliefs, she should not make statements that could be perceived as threatening. (Ex. 5 to Mem. in Opp'n.) Likewise, Michelle Aboulkassim explained that Plaintiff was "certainly entitled to believe how she wishes," but needed to be mindful of how others might interpret her statements. (Id..)

There is no reasonable inference from the evidence that HAM acted out of a discriminatory religious animus in interpreting its policy to prohibit the kinds of statements made by Plaintiff. It is more easily inferred that HAM acted out of a legitimate concern for the well-being of its other employees and enforcement of a facially-neutral, non-discriminatory company policy. This is particularly true in light of the fact that Plaintiff had previously been accused of threatening to kill one of her coworkers. Because the evidence does not *require* the conclusion that HAM treated Plaintiff differently because of her religious beliefs, it is not direct evidence.

Since Plaintiff, at best, has only circumstantial evidence of religious discrimination, the McDonnell Douglas burden-shifting framework applies.**[fn4]** In order to establish a prima facie case of religious discrimination based on a disparate treatment theory, Plaintiff must prove that she is a member of a protected group, was qualified for the position, suffered an adverse employment action, and was treated less favorably than a similarly-situated employee outside the protected class. Alexander v. Local 496, Laborers' Int'l Union of N.A., 177 F.3d 394, 402-03 (6th Cir. 1999). Plaintiff has not identified any similarly-situated employee outside the protected class who was disciplined less harshly for engaging in similar misconduct. She has therefore failed to establish a prima facie case of disparate treatment **[*10]** based on religion and HAM is entitled to summary judgment on this claim. There is no need for the Court to consider whether the proffered reason for disciplining Plaintiff was pretextual.

**2. Failure to Accommodate**

Plaintiff also argues that HAM violated Title VII by failing to reasonably accommodate her religion by allowing her to express her belief that her coworkers were sinful and evil persons whom God would one day punish. In order to establish a prima facie case of failure to accommodate, Plaintiff must show that she: (1) holds a sincere religious belief that conflicts with an employment requirement; (2) informed the employer about the conflict; and (3) was discharged or disciplined for failing to comply with the conflicting requirement. If a prima facie case is established, "the burden shifts to the employer to prove that it cannot reasonably accommodate the employee without incurring undue hardship." Smith v. Pyro Mining Co., 827 F.2d 1081, 1085 (6th Cir. 1987).

HAM argues that Plaintiff cannot establish a prima facie case because she admitted in her deposition that she never asked for an accommodation that would allow her to openly state her belief that God would punish her coworkers. (Pl. Dep. at 239.) Plaintiff wholly fails to respond to this argument. Instead, she jumps ahead in the analysis and argues only that HAM has failed to show it would have incurred undue hardship had it allowed her to express the fundamental principles of her faith. Because Plaintiff has failed to establish a prima facie case of failure to accommodate, there is no need to consider whether the accommodation at issue would have imposed an undue hardship on HAM.

The second prong of the prima facie case requires Plaintiff to prove that she informed her employer about the conflict between her religious beliefs and an employment requirement. Notably, although Plaintiff was told on at least three occasions that her statements violated HAM's policy prohibiting the use of abusive or threatening language about coworkers, she never told HAM that her religious principles *required* her to express her opinion that God would punish her coworkers for taunting her.[fn5] Moreover, Plaintiff admits that she never requested any accommodation. Despite receiving a "coaching" and a "counseling," she never asked that HAM make an exception to its policy prohibiting the use of abusive or threatening language about coworkers so that she could express her religious belief that God would one day punish them for their misconduct.

Public policy requires that an employer be informed of the alleged conflict and be given the opportunity to make an accommodation before being subjected to liability for religious discrimination. Federal regulations provide that an employer's obligation to reasonably accommodate an employee's religious practices arises "[a]fter an employee or prospective employee notifies the employer . . . of his or her need for a religious accommodation." 29 C.F.R. § 1605.2(c)(1).

The Chalmers case is instructive. In Chalmers, the plaintiff was terminated after sending letters **[*11]** to her coworkers accusing them of immorality and urging them to make amends with God. She argued that because she had a religious motive for writing the letters, her employer should have accommodated her conduct. The Fourth Circuit upheld the district court's decision to grant summary judgment in favor of the employer. It held that the plaintiff failed to establish a prima facie case because she failed to give her employer advance notice that her religious beliefs required her to send the letters to her coworkers and thereby deprived the employer of

any opportunity to attempt a reasonable accommodation. Chalmers, 101 F.3d at 1019.

In this case, it is undisputed that Plaintiff at no time notified HAM of her need for an accommodation. Instead, she waited until after she was terminated for accumulated gross misconduct and then argued that she should not have been disciplined for violating company policy by expressing her religious beliefs. Title VII, however, does not require employers to "give lesser punishment to employees who claim, after they violate company rules . . ., that their religion caused them to transgress the rules." Id. at 1020.

Because Plaintiff has not established a prima facie case, HAM is entitled to summary judgment on this claim. However, even if Plaintiff had requested an accommodation permitting her to openly express her religious beliefs without the threat of disciplinary action being taken against her, "Title VII does not require an employer to allow an employee to impose [her] religious views on others." Wilson v. U.S. West Communications, 58 F.3d 1337, 1342 (8th Cir. 1995). See also Peterson v. Hewlett-Packard Co., 358 F.3d 599, 607 (9th Cir. 2004) ("an employer need not accommodate an employee's religious beliefs if doing so would result in discrimination against his co-workers or deprive them of contractual or other statutory rights"); Chalmers, 101 F.3d at 1021 (holding that no accommodation is required when an employee requests an accommodation that infringes on the rights of other employees, subjecting the employer to potential liability). For these reasons, the Court concludes that HAM is entitled to summary judgment on Plaintiff's failure to accommodate claim.

### D. Count IV: Disability Discrimination

In Count IV of her Complaint, Plaintiff alleges that HAM refused to accommodate her disability, carpal tunnel syndrome. She alleges that HAM violated the ADA by forcing her to perform duties that aggravated her medical condition. HAM moved for summary judgment on this claim, arguing that because Plaintiff's carpal tunnel syndrome did not substantially limit a "major life activity," she does not qualify as an "individual with a disability." See 42 U.S.C. §§ 12102(1)(A) and 12102(2). HAM further argues that because it accommodated the only medical restrictions submitted by Plaintiff, she cannot prove that she was denied a "reasonable accommodation." See 42 U.S.C. § 12112(b)(5)(A). Plaintiff's memorandum in opposition to HAM's motion for summary judgment is completely silent concerning any claim of disability discrimination. Since Plaintiff has failed to set forth any evidence from which a reasonable jury could find **[*12]** in her favor, HAM is entitled to summary judgment on Count IV.

### E. Counts V and VI: Breach of Contract and Intentional Infliction of Emotional Distress

Counts V and VI of Plaintiff's Complaint assert claims of breach of contract and intentional infliction of emotional distress. Since the Court is granting summary judgment on all of Plaintiff's federal claims, it declines to exercise jurisdiction over Plaintiff's supplemental state law claims. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (holding that if the federal claims supporting supplemental jurisdiction are dismissed prior to trial, the state claims should be dismissed as well); 28 U.S.C. § 1367(c)(3); Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before

trial, the balance of considerations usually will point to dismissing the state law claims . . .". Counts V and VI are therefore dismissed without prejudice.

IV. Conclusion

For the reasons stated above, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's federal and state claims of hostile work environment and discrimination on the basis of race, age, disability, and religion. (Doc. 30). The Clerk is directed to enter final judgment in favor of Defendant on Counts I-IV. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims of breach of contract and intentional infliction of emotional distress. Counts V and VI are therefore **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

[fn1] According to Rebecca Eyink, a member of HAM's Associate Relations group, "coaching" is an informal discussion with a supervisor regarding an issue of concern. If "coaching" is insufficient, then a "counseling" occurs. A counseling may include suspension, reassignment, demotion or separation. Counseling progresses from Level I to Level III, with Level III being the most serious. (Eyink Aff. ¶ 3).

[fn2] Plaintiff's Complaint also cites the anti-retaliation provisions of these statutes. HAM maintains that Plaintiff failed to exhaust her administrative remedies with respect to any federal claim of retaliation. Plaintiff has failed to respond to this argument.

[fn3] HAM actually argues that there is no evidence that the harassment was based on *"sex,* race and/or religion." (Mot. Summ. J. at 17) (emphasis added). The Court assumes that this is a typographical error since Plaintiff's Complaint does not allege any claims of gender discrimination. This same mistake permeated Plaintiff's memorandum in opposition (p. 17) and HAM's reply brief (p. 10).

[fn4] As Plaintiff notes, if the employer considered both lawful and unlawful factors in making its decision, the "mixed motive" analysis set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), may apply. There is no need for the Court to engage in a "mixed motive" analysis in this case. Plaintiff relies only on a single motive theory, arguing that "HAM disciplined and discharged Plaintiff for nothing more than making accurate, non-abusive and non-threatening statements of Biblical principles." She also argues that her religious beliefs were "the catalyst for a series of targeted disciplinary actions against Plaintiff grounded solely on her religious beliefs." (Mem. in Opp'n at 7, 9.)

[fn5] One district court has noted that the accommodation clause of 42 U.S.C. § 2000e(j) expressly applies only to religious "observances" and "practices," not religious beliefs. See Peterson v. Wilmur Communications, Inc., 205 F. Supp.2d 1014, 1020 (E.D. Wis. 2002). In the Court's view, absent any evidence that Plaintiff's religion compelled her to express her belief that God would one day punish the evildoers, it is questionable

⊞ Averett v. Honda of America Mfg., Inc., Case No. 2:07-cv-1167., 2010 BL 26701, 2010 WL 522826 (S.D. Ohio Feb. 09, 2010), Court Opinion

whether Plaintiff's claim involves a religious "observance" or "practice" that requires any accommodation at all.