IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CAITLIN O'CONNOR, | ) | |
| Plaintiff, | ) | NO. 3:20-cv-00628 |
| v. | ) | JUDGE RICHARDSON |
| THE LAMPO GROUP, LLC, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Pending before the Court is Defendant's "Motion to Dismiss Count V of Plaintiff's Third Amended Complaint."[1] (Doc. No. 39, "Motion"). Count V of the Third Amended Complaint asserts claims for violations of the Tennessee Human Rights Act ("THRA") and Title VII of the Civil Rights Act of 1964 ("Title VII") based on religious discrimination and retaliation. (Doc. No. 37 at 11-13). Plaintiff filed a response to the Motion. (Doc. No. 40, "Response"). Defendant replied. (Doc. No. 42, "Reply"). The matter is ripe for review.

---

[1] Defendant labeled its Motion a "Motion to Dismiss" (Doc. No. 39) as opposed to a partial motion to dismiss (or, in what would be more precise terminology, a motion to dismiss in part). The Court will consider the Motion as a partial motion to dismiss. *See Thompson v. Hendrickson USA, LLC*, No. 3:20-CV-00482, 2021 WL 848694, at *1 n. 1 (M.D. Tenn. Mar. 5, 2021) (discussing how mislabeling a partial motion to dismiss as a motion to dismiss is irrelevant where the legal analysis is the same) (Richardson, J.). Although a partial motion to dismiss, Defendant did not request permission to file it and should do so in the future pursuant to this district's local rules.

Defendant's Motion appears to also serve as its memorandum in support. The Court directs Defendant's attention to Local Rule 7.1 which requires "every motion that may require the resolution of an issue of law [to] be accompanied by a *separately* filed memorandum of law." Local Rule 7.1. Defendant failed to separately file a memorandum in support and should be sure to do so in future filings.

For the reasons discussed herein, the Court will grant Defendant's Motion.

## **BACKGROUND**[2]

Defendant is a private for-profit company licensed to transact business in Tennessee that provides "biblically based, common-sense education and empowerment." (Doc. No. 37 at ¶¶ 9-10). Defendant is not a religious institution or church and has no affiliation with any specific church. (*Id.* at ¶ 9). Plaintiff was employed by Defendant at its Franklin, Tennessee location for over four years. (*Id.* at ¶¶ 1, 12). She was hired on February 22, 2016 and worked as an administrative assistant in the information technology department. (*Id.* at ¶ 12). According to Plaintiff, her role was not to be "'the face of the company'[,] and she did not have a public role, a radio show, or a pod cast [sic], nor was she required to engage in any public appearances [on behalf

---

[2] The facts in this section are taken from Plaintiff's Third Amended Complaint (Doc. No. 37) and are accepted as true for purposes of the Motion. The Third Amended Complaint is the operative complaint in this matter. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). To the extent that allegations referred to below are legal conclusions, however, they are not accepted as true but rather are identified as merely something Plaintiff claims, as opposed to something the Court is accepting as true for purposes of the Motion.
   The Court also does not accept as true Plaintiff's particular interpretation of or perspective on Christian principles, the extent to which particular conduct comports with or violates Christian principles, or Christianity generally. Like everyone, she is entitled to her opinion on these matters, and the Court does not presume to be able to say whether her opinions are flawed or correct. But history shows that any particular interpretation or perspective on these matters tends to be subject to debate (and sometimes to conflict that is, alas, far less civil than debate). So, for example, Plaintiff implies that there is only "one dictate from Jesus, that is, to love one another," (Doc. No. 37 at 6), but others may legitimately disagree, claiming with support from, for example, Matthew 19:16-22 or Mark 12:28-30, that this is not the only or even the primary dictate from Jesus. The Court expresses no opinion on such matters except to note that it cannot accept Plaintiff's particular view on such matters as "true."
   On the other hand, the Court does accept as true Plaintiff's allegations as to what her sincerely held religious beliefs are. So in short, the Court accepts as true Plaintiff's allegations about the sincerity and content of her religious beliefs, without treating those beliefs as either true or untrue.
   While the Third Amended Complaint asserts several claims against Defendant, Defendant has moved to dismiss only Count V, which asserts alleged violations of the THRA and Title VII based on religious discrimination and retaliation. Accordingly, the facts in this section will mainly focus on those claims.

2

of Defendant]." (*Id.* at ¶ 13). Instead, Plaintiff's job duties included managing her leader's calendars, daily emails, and day-to-day business. (*Id.* at ¶ 14). Additionally, Plaintiff would schedule meetings for leaders and other employees, take notes during meetings, and handle "team member care" (like sending flowers). (*Id.*). Prior to her termination, Plaintiff performed her job duties without incident and never received a "write-up" for her performance. (*Id.* at ¶ 15).

On June 18, 2020, Plaintiff emailed Defendant's head of human resources to inform him that she was 12 weeks pregnant. (*Id.* at ¶ 16). Plaintiff's email stated:

> I needed to let you know that I'm 12 weeks pregnant. I understand that being unmarried and expecting is frowned on [sic] here, but the reality of the situation is this is what I'm walking through right now. This is obviously uncharted territory for me so I'm not sure what my next steps are regarding sharing the news with my leader, getting FMLA & ADA paperwork in case it's need [sic] in the future, etc.

(*Id.*). Plaintiff's email was circulated to various members of Defendant's human resource committee, Dave Ramsey (Defendant's founder), and Plaintiff's immediate supervisor. (*Id.* at ¶ 17). After Plaintiff's email was circulated, a member of Defendant's human resources committee stated that Plaintiff's email was "totally classless." (*Id.*). Another member appeared offended that Plaintiff sent the email "on her way out" and claimed that "[Defendant's] core values and what they stand for are clear." (*Id.*).

On June 19, 2020, Plaintiff received a phone call from one of Defendant's board members informing her that she would have a meeting with the board during the next week. (*Id.* at ¶ 18). On June 23, 2020, Plaintiff met with two of Defendant's board members who told her that they were still deciding the best way to proceed with her situation. (*Id.* at ¶ 19). Two days later (and one week after she sent the email to the head of human resources), Defendant terminated Plaintiff for violating Defendant's rules of "Company Conduct." (*Id.* at ¶ 20). Defendant's "Company Conduct" provision in its handbook states:

3

> The image of Ramsey Solutions is held out to be Christian. Should a team member engage in behavior not consistent with traditional Judeo-Christian values or teaching, it would damage the image and the value of our good will and our brand. If this should occur, the team member would be subject to review, probation, or termination.

(*Id.* at ¶ 21). Additionally, the core values incorporated into Defendant's mission statement include a "righteous living" policy which allegedly prohibits premarital sex. (*Id.* at ¶ 22). However, Defendant does not have a *written* prohibition against premarital sex. (*Id.*). Defendant's "righteous living" policy states in pertinent part: "Who you are is far more important than what you do. We aren't perfect, but we want to get better. No cheating, stealing or lying. Goal # 1 is to be men and women of integrity." (*Id.* at ¶ 23).

Plaintiff contends that her (supposed) violation of the company conduct and righteous living policy is that she and the father of her child are in a committed long-term relationship, but not legally married, nor do they desire to be married at this time. (*Id.* at ¶ 24). Plaintiff asserts that it would not have posed an undue hardship on Defendant to accommodate an exception to the policy, especially because the policy does not specifically mention pre-marital sex or pregnancy outside of marriage. (*Id.* at ¶ 33).

Plaintiff claims that Defendant's termination of her interfered with her right to take Family and Medical Leave Act ("FMLA") leave, discriminated against her due to her sex, pregnancy, religion, and disability, and was in retaliation for informing Defendant of her pregnancy due to it being "frowned upon [t]here" and her requesting FMLA leave and/or accommodation for her disability. (*Id.* at ¶ 35). Specifically, in Count V, Plaintiff claims Defendant violated the THRA and Title VII when Defendant terminated her for having different religious beliefs[3] than what

---

[3] Plaintiff states that she does not adhere to Defendant's interpretation of "Judeo-Christian" values for non-work-related behavior. (Doc. No. 37 at ¶ 76). Specifically, Plaintiff does not believe that a prohibition on pre-marital sex is a basic tenet of Christianity. (*Id.* at ¶ 30). Plaintiff believes that
4

Defendant imposes on its employees. (*Id.* at ¶¶ 70, 77, 79). Plaintiff supports her claim by stating that Dave Ramsey has contended that he has "a right to tell [his] employees whatever [he] want[s] to tell them," and that "they freaking work for [him]." (*Id.* at ¶ 10). Plaintiff claims this statement from Ramsey includes his belief that he (through his company) can discriminate against employees on the basis of religion. (*Id.* at ¶ 11).

## **LEGAL STANDARD**[4]

For purposes of a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all the factual allegations in the complaint as true, as it has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations

---

"Christianity is not meant to be punitive, hateful, vengeful, or judgmental" and that her "sincerely held Christian beliefs do not prohibit her from engaging in sex outside of a marriage contract." (*Id.* at ¶¶ 26-27).

[4] Defendant requests alternative relief under Fed. R. Civ. P. 12(c), Doc. No. 39 at 3, but the Court need not address such request as it is granting Defendant's Motion pursuant to Fed. R. Civ. P. 12(b)(6).

5

Case 3:20-cv-00628   Document 54   Filed 09/29/21   Page 5 of 20 PageID #: 830

that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

6

Notably, when ruling on a Rule 12(b)(6) motion to dismiss, the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), is inapplicable.[5]

This means among other things, that a plaintiff need not allege facts specifically indicating that the plaintiff could carry the burden she might ultimately bear under *McDonnell Douglas*. This is because *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). A plaintiff is not required to plead what would qualify as a prima facie case for purposes of *McDonnell Douglas*. *See, e.g.*, *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) ("The district court's requirement that [the plaintiff's] complaint establish a prima facie case under *McDonnell Douglas* and its progeny is contrary to Supreme Court and Sixth Circuit precedent."); *Clough v. State Farm Mut. Auto. Ins. Co.*, No. 13-2885-STA-tmp, 2014 WL 1330309, at *6 (W.D. Tenn. Mar. 28, 2014) ("In light of *Swierkiewicz*, the Court concludes that strictly speaking Plaintiff need not plead all of the elements of the prima

---

[5] The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* framework as follows:

> A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).
> To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a prima facie case of discrimination by a preponderance of the evidence. . . . Once the plaintiff makes out a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019) (citations omitted).

facie case in order to survive a motion to dismiss."). After all, "*McDonnell Douglas* ultimately may not apply at all in a particular case; in particular it would not apply if the plaintiff can rely on direct evidence of discrimination, rather than indirect evidence of discrimination (which is what *McDonnell Douglas* deals with)." *Thompson v. Hendrickson USA, LLC*, No. 3:20-CV-00482, 2021 WL 848694, at *5 (M.D. Tenn. Mar. 5, 2021). So it makes no sense to apply *McDonnell Douglas* at the pleading stage. Instead, to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must satisfy Iqbal's general plausibility requirement. *Id.* (quoting *Jodry v. Fire Door Sols., LLC*, No. 3:20-cv-00243, 2020 WL 7769924, at *3–4 (M.D. Tenn. Dec. 30, 2020)).

## DISCUSSION

Via the Motion, Defendant seeks dismissal of Count V of Plaintiff's Third Amended Complaint, which alleges discrimination and retaliation in violation of the THRA and Title VII. (Doc. No. 39). Specially, Defendant contends that "Title VII does not create or protect any right to engage in premarital sex, Plaintiff does not have a sincerely held religious belief that requires her to engage in premarital sex, and there was absolutely nothing illegal about Defendant prohibiting premarital sex or terminating Plaintiff's employment for it." (Doc. No. 39 at 2).

Although Plaintiff addresses religious discrimination and religious retaliation (*i.e.*, retaliation for asserting her rights against discrimination on the basis of religion) in a single count, these claims have different analyses, and the Court therefore will address each claim in turn.

8

Case 3:20-cv-00628   Document 54   Filed 09/29/21   Page 8 of 20 PageID #: 833

A. *Discrimination Under Religious Accommodation Theory*[6]

>Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion[.]"

*Crider v. Univ. of Tenn., Knoxville*, 492 F. App'x 609, 611-12 (6th Cir. 2012) (qouting 42 U.S.C. § 2000e–2(a)(1)).

The law broadly defines "religion" to mean "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e–2(j).

>Short of an undue hardship on the employer's business, an employer is required to make reasonable accommodations for the religious practices of its employees. 42 U.S.C. § 2000e(j). Once an employer has offered a reasonable accommodation, it has met its duty under Title VII. *McGuire v. Gen. Motors Corp.*, 956 F.2d 607, 609 (6th Cir.1992). However, whether an accommodation is reasonable is determined on a case-by-case basis and is generally a question of fact for a jury.

*Crider*, 492 F. App'x at 612 (citing *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir.1987); *see also EEOC v. Robert Bosch Corp.*, 169 F. App'x 942, 944 (6th Cir.2006)).

>To establish a prima facie case of religious discrimination under an accommodation theory, a plaintiff must show that "(1) [s]he holds a sincere religious belief that conflicts with an employment requirement; (2)[s]he has informed the employer about the conflicts; and (3)[s]he was discharged or

---

[6] The discrimination analysis under the THRA is the same as it is under Title VII because "[t]he stated purpose and intent of the Tennessee Act is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws." *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996). Accordingly, the Court will analyze Plaintiff's claim of religious discrimination under Title VII.

Although she is unclear in this regard, Plaintiff seems to be bringing her religious discrimination claim under a religious accommodation theory. In Count V, Plaintiff notes that her email to HR was a "request for an accommodation from its strict policies" and that "allowing a religious accommodation in the form of an exception to Ramsey's righteous living policy . . . would not have imposed any sort of undue hardship on Ramsey." Doc. No. 37 at ¶¶ 72, 78. Accordingly, the Court will analyze Plaintiff's religious discrimination claim under a failure-to-accommodate theory.

9

disciplined for failing to comply with the conflicting employment requirement." *Smith,* 827 F.2d at 1085. Once the Plaintiff has established a prima facie case of discrimination, the burden then shifts to the employer to prove that it cannot reasonably accommodate the employee without incurring undue hardship. *Id.*

*Crider*, 492 F. App'x at 612.

As to the first element, Plaintiff must have plausibly alleged that she holds a sincere religious belief that conflicts with an employment requirement. Plaintiff contends that "[h]er practice and belief of Christianity is above all a loving, not punitive and judgmental faith." Doc. No. 37 at ¶ 70. She further contends that she "does not believe [*sic*] premarital sex is a requirement or fundamental tenant of her faith as a Christian." *Id*. at ¶ 24. Plaintiff alleges that her

> sincerely held Christian belief is that Christianity is not meant to be punitive, hateful, vengeful, or judgmental. Accordingly, her Christian belief is that God gave a woman the ability to procreate, and that ability to procreate was not restricted by a contract, i.e., marriage or employment at Ramsey Solutions. Moreover Plaintiff does not believe that her identification as a Christian gives her the right to judge and condemn other Christians or humans for how they choose to carry out their one dictate from Jesus, that is, to love one another. To the contrary, [Plaintiff] believes it is inherently unloving to pass judgment and condemnation on others for their private relationships.

*Id*. at ¶ 26.[7] What she is alleging here is that her sincerely held religious beliefs do not align with the religious beliefs that underlie Defendant's policy against premarital sense. The Court certainly understands her point, but it is irrelevant for present purposes. What she needs to have alleged is a religious belief that conflicts with an *employment requirement*; it is not enough (or even relevant) that she alleges a religious belief that conflicts with the religious beliefs *underlying* the employer's requirement. Plaintiff has not shown this.

---

[7] Plaintiff implies that by enforcing a policy against premarital sex, an entity is "judg[ing] and condemning," in a transcendent and personal sense, violators of the policy. The Court is uncertain that this characterization is accurate but need not quibble with it for present purposes.

10

To see why this is the case, one must start with the employer's requirement: to eschew premarital sex.[8] So Plaintiff must show a religious belief that conflicts with the requirement to eschew premarital sex. But what kind of religious belief conflicts with a requirement to eschew premarital sex? A religious belief that *requires* or at least *encourages* premarital sex. One can imagine religions that may embrace such a belief.[9] Plaintiff alleges no such belief; she alleges only a religious belief to the effect that (at least in certain cases) premarital sex should not be prohibited or disparaged. Her point is not that her religious beliefs proactively require or encourage premarital sex and thus conflict with Defendant's requirement to abstain from (prohibition of) premarital sex. Her point, instead, is that her religious beliefs conflict with Defendant's religious beliefs that fostered such requirement. This misses the mark; a conflict between her religious beliefs and Defendant's religious beliefs (as opposed to Defendant's *requirement*) is insufficient.

Put differently, it is not enough for her to say that her religious beliefs allow (at least in some cases, including her own case) something (premarital sex) that Defendant's religious beliefs do not. In a case like this, which involves an employer's requirement to abstain from something, She must show that the requirement prevents her from doing something that, according to her religious beliefs, she has to (or is at least encouraged to) do. Otherwise, her religious beliefs simply do not conflict with the employer's *requirement*, even if her religious beliefs entirely conflict with Defendant's religious beliefs as to whether there should (considering the principles of the applicable religion, here, Christianity) be such a requirement.

---

[8] It is worth keeping in mind that this requirement is a negative one, *i.e.*, a prohibition.
[9] For example, one can imagine (or perhaps even find in human history) a fertility cult that affirmatively encourages certain sexual practices and that some of them may be geared to sexual practices between persons who are not married. Obviously, Plaintiff here does not allege belonging to any such group or adhering to any such views.

"[T]he Supreme Court has observed that, in order to qualify as a 'religious' belief or practice entitled to constitutional protection, an alleged belief must not be merely a matter of personal preference, but one of deep religious conviction, shared by an organized group, and intimately related to daily living. *Dunn v. Kentucky Dep't of Corr., Civil Action* No. 5:12-cv-192, 2014 WL 1319777, at *3 (W.D. Ky. Mar. 28, 2014) (citing *Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972)); *see also Ackerman v. Washington,* 436 F. Supp. 3d 1002, 1012 (E.D. Mich. 2020) (a court may inquire into the sincerity of a prisoner's professed religiosity, and the sincerity inquiry is almost exclusively a credibility assessment)." *Equal Emp. Opportunity Comm'n v. Publix Super Markets, Inc.*, 481 F. Supp. 3d 684, 699 (M.D. Tenn. 2020). Here, Plaintiff has noted several of her "beliefs," which the Court accepts as sincere.[10] But she has not plausibly alleged any belief that premarital sex is to be actively encourage or required, as would be necessary to allege a conflict with Defendant's requirement. Instead, she contends only that her "sincerely held Christian beliefs *do not prohibit her* from engaging in sex outside of a marriage contract." Doc. No. 37 at 6. A belief that something is *not prohibited* is inadequate here; she must have a belief that something prohibited by Defendant *must or should be done*.

Even if Plaintiff's beliefs could be deemed to conflict with Defendant's requirement (prohibition) here, she does not plausibly allege that she informed Defendant of such beliefs before her hire, during her tenure, or immediately prior to her termination. The June 18, 2020 email Plaintiff sent to Defendant's head of human resources did not provide notice of any sincerely held religious belief. Instead, it provided notice that Plaintiff became pregnant after engaging in

---

[10] For this reason, the Court herein usually refers to Plaintiff's "religious beliefs" without adding the qualifier "sincerely held," which is assumed herein to apply to any religious beliefs that Plaintiff has.

premarital sex and wanted to know what her "next steps" were regarding getting FMLA leave & ADA benefits. The email specifically stated that:

> I needed to let you know that I'm 12 weeks pregnant. I understand that being unmarried and expecting is frowned on [sic] here, but the reality of the situation is this is what I'm walking through right now. This is obviously uncharted territory for me so I'm not sure what my next steps are regarding sharing the news with my leader, getting FMLA & ADA paperwork in case it's need in the future, etc.[11]

*Id*. at ¶ 16. This email is not an expression of religious belief. And this email, by itself, does not plausibly show that Plaintiff informed Defendant her alleged religious belief. This case is much like *Chalmers v. Tulon Co. of Richmond*.[12] In *Chalmers*, a former employee (an evangelical Christian) brought a religious discrimination action against her former employer under Title VII. 101 F.3d 1012 (4th Cir. 1996). In assessing the plaintiff's failure to accommodate claim, the Fourth Circuit noted that:

> Chalmers cannot satisfy the second element of the prima facie test. She has forecast no evidence that she notified Tulon that her religious beliefs required her to send personal, disturbing letters to her coworkers. Therefore she did not allow the company any sort of opportunity to attempt reasonable accommodation of her beliefs.
>
> As Chalmers recognizes, a prima facie case under the accommodation theory requires evidence that she informed her employer that her religious needs conflicted with an employment requirement and asked the employer to accommodate her religious needs. *See Redmond v. GAF Corp.,* 574 F.2d 897, 901 (7th Cir.1978) (prima facie standard includes a "requirement that plaintiff inform his employer of both his religious needs and his need for an accommodation"); *Cary v. Carmichael,* 908 F. Supp. 1334, 1343–46 (E.D.Va.1995). *Compare Ithaca,* 849 F.2d at 118 (if an employee requests to observe the Sabbath, the employer must attempt to accommodate) *with EEOC v.*

---

[11] Plaintiff claims that "[i]n sending this email on June 18, 2020, [she] ostensibly requested an accommodation from Defendant's strict Righteous Living value which frowns on [sic] pregnancy outside of marriage." Doc. No. 37 at ¶ 32.

[12] Plaintiff contends in her Response that *Chalmers* is inapplicable because the case is factually different from the instant matter. Doc. No. 40 at 13. Although the cases differ in some respects, they are quite alike in others. More importantly, this Court mirrors the Fourth Circuit's legal reasoning in the case as it feels that the Fourth Circuit correctly tackled this issue.

> *J.P. Stevens & Co.,* 740 F. Supp. 1135, 1137 (E.D.N.C.1990) (employer may fire an employee who failed to provide advance notice of his religious beliefs regarding the Sabbath).
>
> Chalmers concedes that she did not expressly notify Tulon that her religion required her to write letters like those at issue here to her co-workers, or request that Tulon accommodate her conduct. Nonetheless, for several reasons, she contends that such notice was unnecessary in this case.
>
> . . .
>
> Chalmers also contends that the letters themselves provided notice that her religious beliefs compelled her to write them. But giving notice to co-workers at the same time as an employee violates employment requirements is insufficient to provide adequate notice to the employer and to shield the employee's conduct. *See Johnson v. Angelica Uniform Group, Inc.,* 762 F.2d 671 (8th Cir.1985) (plaintiff failed to provide adequate notice to establish prima facie case where she left a note to her employer immediately before she went away for several days, informing the employer that she would need to exceed her allotted leave time for religious reasons).
>
> There is nothing in Title VII that requires employers to give lesser punishments to employees who claim, after they violate company rules (or at the same time), that their religion caused them to transgress the rules. *See Johnson,* 762 F.2d at 673 (employer need not establish that it attempted accommodation when plaintiff failed to provide adequate notice to the employer before violating employment rules, even though the employer knew of the religious motive for employee's violation prior to discharge).
>
> Part of the reason for the advance notice requirement is to allow the company to avoid or limit any "injury" an employee's religious conduct may cause. Additionally, the refusal even to attempt to accommodate an employee's religious requests, prior to the employee's violation of employment rules and sanction, provides some indication, however slight, of improper motive on the employer's part. The proper issue, therefore, is whether Chalmers made Tulon aware, *prior* to her letter writing, that her religious beliefs would cause her to send the letters. Since it is clear that she did not, her claims fail.

*Chalmers*, 101 F.3d 1012 at 1019-20. Similarly, Plaintiff never informed Defendant of any sincerely-held religious belief, or any belief *whatsoever* regarding premarital sex or having a child out of wedlock. Plaintiff's email did not give notice of anything but her pregnancy and her desire to receive FMLA and ADA benefits. *See Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315 (3d Cir. 2008) ("'A person's religion is not like [her] sex or race[,]' that is, simply announcing

one's belief in a certain religion, or even wearing a symbol of that religion (i.e., a cross or Star of David) does not notify the employer of the particular beliefs and observances that the employee holds in connection with her religious affiliation. We do not charge employers with possessing knowledge about the particularized beliefs and observances of various religious sects.") (internal citations omitted); *see also Johnson v. Angelica Uniform Group, Inc.,* 762 F.2d 671, 673 (8th Cir.1985) ("Had [plaintiff] informed [her employer] of her need for religious accommodation . . . [in advance], her employer would have had the chance to explain the . . . policy in relation to [her] religious needs, and perhaps work out an arrangement satisfactory to both parties."). Plaintiff has not pointed the Court to any alleged facts suggesting that she gave notice to the Defendant of a sincerely-held religious belief, let alone notice that she was requesting a reasonable accommodation for such beliefs. This means that she has not plausibly alleged that defendant violated its duty under Title VII to make reasonable accommodations for the religious practices of its employees. 42 U.S.C. § 2000e(j).

Finally, to survive a motion to dismiss to a general religious discrimination claim (as opposed to the above referenced failure-to-accommodate claim), Plaintiff must have alleged enough factual matter to plausibly suggest that she was terminated for her religious beliefs. Plaintiff has not done so. Defendant contends (and the Court agrees) that this case is similar to *Pedreira v. Kentucky Baptist Homes for Children, Inc*, where the Sixth Circuit held in part that a terminated employee failed to allege that her sexual orientation was premised on her religious beliefs. 579 F.3d 722 (6th Cir. 2009).[13] Here, the Sixth Circuit noted that "Pedreira's termination

---

[13] In her Response, Plaintiff claims that "Defendant's reliance on *Pedreira* is misplaced." Doc. No. 40 at 11. However, Plaintiff's reasoning for her assertion is that *Pedreira* and the instant matter are factually different. Although true, the legal analysis and discussion of discrimination based on religious beliefs in *Pedreira* is highly relevant to the instant matter.

notice indicated that she was fired 'because her admitted homosexual lifestyle is contrary to Kentucky Baptist Homes for Children core values.' After her termination, KBHC announced as official policy that '[i]t is important that we stay true to our Christian values. Homosexuality is a lifestyle that would prohibit employment.'" *Pedreira*, 579 F.3d at 725. "Pedreira argues that living openly as a lesbian constitutes not complying with her employer's religion. Pedreira claims that she was terminated because she does not hold KBHC's religious belief that homosexuality is sinful." *Id*. at 727-28. Here, the Sixth Circuit concluded that "[t]o show that the termination was based on her religion, [the plaintiff] must show that it was the *religious* aspect of her [conduct] that motivated her employer's actions. . . . While there may be factual situations in which an employer equates an employee's sexuality with her religious beliefs or lack thereof, in this case, Pedreira has 'failed to state a claim upon which relief could be granted.'" *Id*. at 728. Similarly, in the instant matter, Defendant contends that Plaintiff was fired for violating its "righteous living" policy, not for her religious beliefs. Specifically, Defendant claims that "Plaintiff was aware of Defendant's prohibition against premarital sex, she engaged in premarital sex anyway, and Defendant fired her for it." Doc. No. 39 at 1. The Court agrees with Defendant, based on Plaintiff's own allegations. Plaintiff alleges that there was *religious motivation* for Defendant's policy, but this is not enough; she must show that she was terminated based on *her* religious beliefs, and not merely that she was fired for violating a policy prompted by Defendant's religious beliefs. Plaintiff has not proven facts to plausibly show that she was terminated because of her religious beliefs. As Defendant rightly claims, Plaintiff plausibly alleges only that Defendant "terminated Plaintiff for engaging in premarital sex, not her religious beliefs regarding premarital sex." Doc. No. 39 at 6.

      In summary, Plaintiff has not plausibly alleged either of two different things that she needs to allege in order to plausibly allege a failure-to-accommodate claim: a religious belief that

conflicts with Defendant's employment requirement and notice of such belief. And she has not plausibly alleged, as necessary to sustain her general religious discrimination claim, that she was terminated due to a religious belief. Accordingly, Defendant's Motion as to Count V (religious discrimination) will be granted.

B. Retaliation[14]

Plaintiff loosely alleges that she "was terminated from her job because of her pregnancy." Doc. No. 37 at 1. Plaintiff also alleges that she was terminated "for a violation of 'company conduct' because she is not to married to her partner, the baby's father" which Defendant agrees to. *Id*. Defendant's "Company Conduct" provision in its handbook states:

> The image of Ramsey Solutions is held out to be Christian. Should a team member engage in behavior not consistent with traditional Judeo-Christian values or teaching, it would damage the image and the value of our good will and our brand. If this should occur, the team member would be subject to review, probation, or termination.

(Doc. No. 37 at ¶ 21).

Title VII makes it unlawful to retaliate against employees for engaging in protected conduct. 42 U.S.C. § 2000e-3(a). In this context, to "retaliate" against an employee means to take an "adverse action" against the employee. *See Eppinger v. Caterpillar Inc.,* 682 F. App'x 479, 482 (7th Cir. 2017).

---

[14] Retaliation claims under the THRA are subject to the same analysis as retaliation claims under Title VII. *Frazier v. Phillip's Masonry Grp., Inc*., No. 1:09-0022, 2010 WL 1882123, at *6 (M.D. Tenn. May 11, 2010); *Pendleton v. Bob Frensley Chrysler Jeep Dodge Ram, Inc.*, No. 3:14 C 02325, 2016 WL 2927983, at **3, 8, 10 (M.D. Tenn. May 19, 2016). Accordingly, the Court will analyze Plaintiff's retaliation claim under Title VII.

To plausibly allege a retaliation claim, then, Plaintiff must plausibly allege three elements:[15] protected conduct, an adverse action taken by the employer, and a causal link between the adverse action and the protected conduct. *Hazel v. Quinn*, 933 F. Supp. 2d 884, 886–87 (E.D. Mich. 2013) (referring to "the three elements of a retaliation claim—protected conduct, adverse action, and a causal link). If she fails to do so, it cannot be said that she has plausibly alleged what Title VII prohibits here, *i.e.*, retaliate against Plaintiff for engaging in protected conduct. Notably, although the employer's knowledge of the protected conduct is not broken out separately as an element of the statutory violation,[16] it stands to reason that if Plaintiff does not plausibly allege that Defendant knew of her protected conduct, this makes it much harder to claim that she has plausibly alleged a causal link between the adverse action and the protected conduct.

Protected conduct includes opposing any practice made unlawful by Title VII, or making a charge or testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under Title VII. 28 U.S.C. § 2000e-3(a). "Protected conduct [thus] includes 'complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices.' *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir.2015) (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579, 580 n. 8 (6th Cir.2000))." *Coffman v. United States Steel*

---

[15] Importantly, the Court is talking here about the three basic components necessary to show a violation of Title VII's anti-retaliation provisions, and *not* about the (four) elements of an indirect-evidence *prima facie* case of retaliation. *See Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008) ("In order to establish a prima facie case of retaliation under Title VII, an employee must establish that (1) he or she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action."). As noted above, Plaintiff need not allege all elements of such a *prima facie* case in order to survive a Rule 12(b)(6) motion. But to plausibly allege a violation of Title VII's anti-retaliation provisions, a plaintiff does need to allege these three things.

[16] As indicated above, the employer's knowledge is a separate element of an indirect evidence prima facie case. *See Niswander*, 529 F.3d at 720.

*Corp.,* 185 F. Supp. 3d 977, 986 (E.D. Mich. 2016). In other words, for this instant retaliation claim (what the Court is calling religious retaliation), protected conduct includes any conduct opposing discrimination, or making allegations to anyone regarding, religious discrimination by Defendant. And the Court will construe protected conduct also to include requesting an accommodation for her religious beliefs. *See Bryson v. Regis Corp.,* 498 F.3d 561, 577 (6th Cir. 2007) (accepting Plaintiff's argument that, for purposes of a disability retaliation claim, "she engaged in statutorily protected conduct by requesting an accommodation"). But this does not help Plaintiff, because, as discussed above, she has not plausibly alleged that she requested an accommodation for her *religious beliefs*, even if she did request an accommodation for her *situation*.

As also discussed above, Plaintiff has not plausibly alleged that she raised her religious beliefs with Defendant. Along the same lines, she has not plausibly alleged that she exercised her rights not to be discriminated against on the basis of religion by opposing, or making a formal or informal allegation regarding, religious discrimination (including failure to accommodate religious beliefs) on the part of Defendant. Plaintiff's sending an email notifying an employer of pregnancy and requesting FMLA and ADA benefits is not protected conduct for purposes of a religious retaliation claim; the email was not meant for complaint purposes, instead it was meant to notify Defendant of Plaintiff's pregnancy and to request benefits. Perhaps Plaintiff has plausibly alleged that she opposed *something* (the application to her of Defendant's prohibition of pre-marital sex, perhaps) or made an allegation of *something* (implementation by Defendant of an unreasonable or wrongheaded prohibition, perhaps). But Plaintiff has not plausibly alleged that she opposed, or made an allegation regarding, *religious discrimination in violation of Title VII*. And so she has not

19

Case 3:20-cv-00628   Document 54   Filed 09/29/21   Page 19 of 20 PageID #: 844

plausibly alleged that she engaged in protected conduct for purposes of her religious retaliation claim.

Moreover, even if one were to credit Plaintiff with plausibly alleging protected activity on the (very shaky) grounds that she has alleged that *subjectively* (in her own mind) that she was opposing or making allegations regarding religious discrimination, she has not plausibly alleged that Defendant knew that that is what she was doing. She has not plausibly alleged that Defendant knew of anything cognizable as protected activity on the part of Plaintiff. This gravely impairs the plausibility of any allegation that Plaintiff suffered an adverse action-her termination—*because* she engaged in protected activity, even if one assumes that she did engage in protected activity.

Thus, Plaintiff has not plead enough factual matter to plausibly suggest that she was terminated for exercising her religious beliefs. Accordingly, Defendant's Motion will be granted as to a claim of religious retaliation just as it will be granted as to a claim of religious discrimination (both general discrimination and failure to accommodate).

## **CONCLUSION**

For the reasons discussed herein, the Court will grant Defendant's partial motion to dismiss Count V (religious discrimination and retaliation in violation of the THRA and Title VII).

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE