IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CAITLIN O'CONNOR, | ) |
| | ) |
| Plaintiff, | ) No. 3:20-cv-00628 |
| | ) |
| v. | ) Judge Eli J. Richardson |
| | ) |
| | ) |
| THE LAMPO GROUP, LLC a/k/a | ) Magistrate Judge Frensley |
| RAMSEY SOLUTIONS, | ) Jury Demand |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MOTION FOR RECONSIDERATION ON THE COURT'S ORDER ON DEFENDANT'S PARTIAL MOTION TO DISMISS**

Plaintiff respectfully seeks reconsideration of the Court's ruling under Federal Rule of Civil Procedure 12(b)(6) dismissing Plaintiff's claim of discrimination on the basis of religion Title VII. (ECF 54, 55). In particular, the Plaintiff asks the court to reconsider its Order because Plaintiff's pleading did meet the federal notice pleading standards as set forth under Federal Rule of Civil Procedure 8, and as articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007), and the Court's Order failed to appreciate Supreme Court precedent articulated in *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2033, 192 L. Ed. 2d 35 (2015), which was issued after the cases relied on by the Court.

In arriving at the conclusion that it did, the Court failed to fully appreciate the primary basis for the religion claim is that Ramsey Solutions imposes its religious beliefs on its employees, like Ms. O'Connor, as set forth in its policies which are clearly and unequivocally based on religion. (ECF 37, Am. Compl. ¶21). When Ms. O'Connor disagreed with Ramsey Solutions' imposition of religion, she was illegally terminated after notifying Ramsey Solutions she had gotten pregnant. (ECF 37, Am. Compl. ¶20). In its Order, the Court's analysis started with the

1

religious accommodation analysis (ECF 54 pp. 9-14) which necessarily presumed the Ramsey Solutions' religious based policy was a valid policy, which it is not, and discovery certainly proved this point. However, by closing the Court's doors at the motion to dismiss stage, the Court did not have the benefit of these facts, just as Ms. O'Connor did not have that benefit, other than the notice facts which she properly and adequately pled as explained in her opposition and below. More importantly, the Court's Order did not take into account Supreme Court precedent, *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2033, 192 L. Ed. 2d 35 (2015), which significantly changed the legal landscape with respect to religious accommodation, including the cases relied on by the Court, all of which pre-dated *Abercrombie*.

### Religious Discrimination

The Court's Order focuses on Ms. O'Connor's religious beliefs and then states that her allegation that Defendant's religious policy was "religious motivation" is "not enough" and that "she has not proven facts to plausibly show that she was terminated based on *her* religious beliefs," and not merely that she was fired for violation of a policy prompted by Defendant's religious beliefs." (ECF 54 p. 16). As an initial point, a plaintiff is not required to "prove" facts at motion to dismiss stage, as acknowledged by the Court, she is only required to allege enough facts, to be taken as true, to present plausible claims. (ECF 54 p. 16). *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). *See, e.g.*, *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Neitzke* v. *Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer* v. *Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). "Plausibility" occupies that ***wide*** space between "possibility" and

2

Case 3:20-cv-00628   Document 56   Filed 10/05/21   Page 2 of 10 PageID #: 848

"probability." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950, 556 U.S. at 678 (2009). The Sixth Circuit "has cautioned against reading '*Twombly* and *Iqbal* so narrowly as to be the death of notice pleading...'" *Rhodes v. R & L Carriers, Inc.*, 491 Fed. App'x 579, 583 (6th Cir. Aug. 6, 2012) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012)). Plaintiff more than occupied the wide space between possibility and probability because she did allege that contradictory beliefs were at issue, which is what Title VII seeks to protect. Further, Ramsey Solutions' religious motivation, or belief, that was not shared by Ms. O'Connor is, in fact, enough to survive the motion to dismiss.

The Court draws on the *Pedreira* case in making its determination that Ms. O'Connor's beliefs "were not enough." (ECF 54 pp. 15-16) (*citing Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722 (6th Cir. 2009)). First, a plaintiff may not be discriminated against under Title VII based on her religious beliefs *or* that of the defendant, but this fundamental premise, that an employer cannot discriminate based on its own beliefs, was not properly considered. *Pedreira*, 579 F.3d at 727 (*citing Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 624 (6th Cir. 2000) (explaining that Title VII's scope "include[s] the decision to terminate an employee whose conduct <u>or</u> religious beliefs are inconsistent **with those of its employer**"); *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 708-09 (6th Cir. 1985)). *See also, Equal Opportunity Empl. Comm'n v. United Health Program of Am., Inc.*, 213 F. Supp 3d 377 (E.D. N.Y. 2016) (an employer who discriminates based on its own religious beliefs viewed as "reverse religious discrimination" where defendant imposes its own religious based belief system on its employees).

In *Pedreira*, the Court explained:

> To show that the termination was based on her religion, [the plaintiff] must show that it was the *religious* aspect of her [conduct] that motivated her employer's actions." *Hall*, 215 F.3d at 627. Furthermore, Pedreira does not allege that her sexual orientation is premised on her religious beliefs or lack thereof, nor does she

3

> state whether she accepts or rejects Baptist beliefs. While there may be factual situations in which an employer equates an employee's sexuality with her religious beliefs or lack thereof, in this case, Pedreira has "failed to state a claim upon which relief could be granted." *Amadasu v. Christ Hosp.*, 514 F.3d 504, 506-07 (6th Cir. 2008).

*Pedreira*, 579 F.3d at 728. Here, Ms. O'Connor did exactly as instructed by the Sixth Circuit, she alleged her pregnancy and decision to engage in premarital sex is premised on her religious belief or the lack thereof and Ramsey Solutions' imposition of its beliefs on her:

- Ms. O'Connor does not believe [not having] premarital sex is a requirement or fundamental tenant of her faith as a Christian. (ECF 37, Am. Compl. ¶24).

- Ms. O'Connor's sincerely held Christian beliefs do not prohibit her from engaging in sex outside of a marriage contract. (ECF 37, Am. Compl. ¶27).

- Ms. O'Connor's view of Christianity does not require her to invade or inquire or know the specifics of what other people do or do not do in their bedroom or when they do it, much less pass morality judgement on other people. Moreover, Plaintiff sincerely believes that she should be able to seek the support of her Christian community during her pregnancy without fear of recrimination, much less termination from her employment. To be sure, her church did not ex-communicate her in the cruel manner in which Ramsey did. (ECF 37, Am. Compl. ¶28).

- Ramsey has policies, and in particular its Core Values, which are considered consistent with "Judeo-Christian" values or teaching. (ECF 37, Am. Compl. ¶21). The Core Values incorporated into Ramsey's Mission Statement incorporates a "righteous living" policy or value which allegedly prohibits premarital sex. (ECF 37, Am. Compl. ¶22).

- O'Connor was terminated specially for violating the Religious Core Value prohibiting pre-marital sex. (ECF 37, Am. Compl. ¶17, 20).

Just in the same way an atheist or agnostic can adequately plead that their lack of or rejection of religious belief is a basis for a religious discrimination claim, the same holds true here, *i.e.*, that Ms. O'Connor's rejection of rigid religious Christian beliefs like those espoused by Ramsey Solutions, that people should not engage in pre-marital sex, are in fact a belief. (ECF 37, Am. Compl. ¶27). *See Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007) ("protected class" element inapplicable for reverse religious discrimination claims); *Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 934 (7th Cir. 2003) ("[A]n atheist. . . cannot be fired because his employer dislikes atheists. If we think of religion as taking a position on divinity, then atheism is indeed a form of religion."); *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1038 (10th Cir. 1993) ("Where discrimination is not targeted against a particular religion, but against those who do not share a particular religious belief, the use of the protected class factor is inappropriate"); *International Association of Machinists & Aerospace Workers v. Boeing Co.,* 833 F.2d 165, 169 (9th Cir. 1987) (Title VII protects persons who are not members of organized religious groups); *Young v. Southwestern Savings and Loan Association,* 509 F.2d 140, 142 & n.3 (5th Cir. 1975) (atheists entitled to Title VII protection and made out a prima facie case at summary judgment where compulsory attendance policy at meetings opened with prayer was reason for resignation). Moreover, Title VII provides that the "term 'religion' includes all aspects of religious observance and practice." 42 U.S.C. § 2000e(j). EEOC guidelines further clarify:

> In most cases whether or not a practice or belief is religious is not at issue. However, in those cases in which the issue does exist, **the Commission will define religious practices to include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views**. . . . The fact that no religious group espouses such beliefs or the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee or prospective employee.

29 C.F.R. § 1605.1 (emphasis added). The EEOC adopted its expansive definition of religion based

5

on two Supreme Court decisions, *United States v. Seeger*, 380 U.S. 163, 85 S. Ct. 850, 13 L. Ed. 2d 733 (1965) and *Welsh v. United States*, 398 U.S. 333, 90 S. Ct. 1792, 26 L. Ed. 2d 308 (1970), which defined religion broadly for purposes of addressing conscientious-objector provisions to the selective service law. Accordingly, Ms. O'Connor can likewise disagree with Ramsey Solutions' religious policy being imposed in the workplace without alleging she had a specific conversation about her beliefs, or asking for explicit permission to have sex or to get pregnant outside of marriage merely because Ramsey Solutions imposes a rigid religious belief that unlawfully attempts to prohibit such behavior.

**Religious Accommodation**

It bears reiterating from the outset, that it was Ramsey Solutions' religious requirement that Ms. O'Connor sought relief from, thus, should an employee really need to ask for an accommodation from on a practice that is on its face discriminatory? The Supreme Court has said no. *Abercrombie*, 135 S. Ct. 2028, 2033, 192 L. Ed. 2d 35 (An employer who acts with the motive of avoiding accommodation may violate Title VII even if he has no more than an unsubstantiated suspicion that accommodation would be needed). The Court's Order states that Ms. O'Connor should have alleged "a religious belief that conflicts with an employment requirement." (ECF 54 p.10). However, that is exactly what she did, as set forth above, she alleged that Ramsey Solutions has an employment requirement that its employees cannot engage in pre-marital sex, despite the invasive requirement, Ms. O'Connor obviously refused to conform to Ramsey's religious practice and practice her non-belief in the same and as a result she got pregnant, which she informed them of.[1] (ECF 37, Am. Compl. ¶22, 29). *See Mathis v. Christian Heating & Air Conditioning, Inc.*, 158

---

[1] Although not considered on a Motion to Dismiss, it bears noting this requirement is exactly what has been confirmed in every deposition taken in this case, that a person will, without exception, be terminated for engaging in pre or extra marital intercourse based on Ramsey Solutions' religious righteous living core value that is imposed on its employees and that Ramsey goes to great lengths to intrude on inquiries about its employees' sex lives if not

6

F.Supp. 3d 317, 329 (E.D. Penn. 2016) (right to practice atheism or non-belief, is protected for purposes of religious accommodation claim). Indeed, Title VII "does not impose a knowledge requirement" on the employer about a plaintiff's beliefs; a plaintiff is not required to prove that she advertised her beliefs to her employer, nor does it require that she prove that she phrased her disagreement with Ramsey Solutions' mission statement in terms of her beliefs, she need only show that defendant acted upon an improper motive when it terminated her employment and/or when it failed to accommodate her. *Id*. (citing *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. at 2032-33 ("A request for accommodation, or the employer's certainty that the practice exists, may make it easier to infer motive, but is not a necessary condition of liability")).

Likewise, to the extent the Court determined that Ms. O'Connor's email "was not an expression of religious belief" premised on its reading of *Chalmers*, a summary judgment ruling where the plaintiff had the benefit of discovery, the case is inapposite and is likely the outcome would not be the same given the ruling in *Abercrombie*. (ECF 54 p. 13). First, the plaintiff in *Chalmers* was a supervisor who sent derogatory letters of condemnation to two employees based on her belief she was called by God to do so and then after the fact asking for permission as an accommodation to harass them. *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1016-1017 (4th Cir. 1996). In other words, Chalmers was harassing employees she supervised and then tried to excuse her harassing and discriminatory behavior by requesting an accommodation; the Fourth Circuit found that her religion did not require her to send the harassing letters. *Id*. at 1019. However, any "requirement" by a plaintiff does not take into account cases of non-belief in an employer's imposed religious beliefs, as is the case here. As indicated by the Supreme Court, express notification is not required:

Thus, the rule for disparate-treatment claims based on a failure to accommodate a

married.

7

> religious practice is straightforward: An employer may not make an applicant's religious practice, **confirmed or otherwise**, a factor in employment decisions. For example, suppose that an employer **thinks** (though he does not know for certain) that a job applicant may be an orthodox Jew who will observe the Sabbath, and thus be unable to work on Saturdays. If the applicant actually requires an accommodation of that religious practice, and the employer's desire to avoid the prospective accommodation is a motivating factor in his decision, the employer violates Title VII.

*Abercrombie*, 575 U.S. at 773-74, 135 S. Ct. 2028, 2033 (emphasis added). Accordingly, contrary to the conclusion drawn by the Court, Ms. O'Connor was not required to inform Ramsey Solutions that she had a sincerely held religious belief about pre-marital sex. (ECF 54 p. 14). To be sure, all of the cases cited by the Court pre-date *Abercrombie*, which significantly changed the accommodation analysis relied on by the Court. (ECF 54 pp. 13-15). Here, it was enough that she notified them that she was pregnant, even though they "frowned" on it [per Ramsey Solutions' discriminatory policy]. (ECF 37, Am. Compl. ¶16). This notification is disagreement with Ramsey Solutions' religious policy and is legally sufficient.

Here, Ramsey Solutions was improperly motivated by its religious policy imposed on Ms. O'Connor. Ms. O'Connor alleged that her sincerely held Christian beliefs do not prohibit her from engaging in sex outside of a marriage contract, in other words, her belief is that she can have sex and procreate with or without a marriage contract and certainly without seeking permission from her employer, and Ramsey Solutions' requirement that she not do so illegally caused her termination. (ECF 37, Am. Compl. ¶16, 24, 26, 27, 28). Based on these allegations, Ms. O'Connor met the plausibility standard.

The Court parsed the allegations and concluded Ms. O'Connor's "religious beliefs that conflict with Defendant's religious beliefs" with respect to the requirement against pre-marital sex "misses the mark" because a conflict between beliefs, as opposed to a requirement is insufficient. (ECF 54 p.11). With all due respect, belief is enough; the Defendant's belief was a requirement

8

and the incongruence with Ms. O'Connor's beliefs is a violation of Title VII, as such, the parsing of beliefs vs. requirement is immaterial for purposes of a motion to dismiss under Rule 12(b)(6). 29 C.F.R. § 1605.1. Moreover, the cases cited by the court were summary judgment cases or a Rule 52 motion where the plaintiffs had the benefit of discovery to be able to state or not state with certainty whether a policy was or was not a requirement.[2] (ECF 54 p. 12).

The Court also explained Ms. O'Connor must show that Ramsey Solutions' requirement to abstain from pre-marital sex prevents her from doing something that "she has to (or is at least encouraged to)" do according to her religious beliefs. (ECF 54 p. 11). Again, with all due respect, this is not consistent with Title VII and is an incorrect conclusion of law, as explained above where non-belief is likewise protected. Such a conclusion to the contrary is untenable. For example, what the Court proposes is that an employee must herself have a religious belief that requires action, i.e., to believe she must have pre-marital sex, to be under the protections of Title VII. This is not the case, non-belief, *e.g.*, atheists or agnostics, which ostensibly encourage nothing, is protected by Title VII just as is an organized religion. Thus, to hold Ms. O'Connor to such a standard because she does have a belief and one which conflicts with Defendant's is plainly an incorrect legal conclusion.

**Retaliation**

The Court also dismissed the religious retaliation claims contending that she did not make an accommodation request for religious accommodation. (ECF 54 p. 19). As set forth above, per *Abercrombie*, Ms. O'Connor did make such a request for accommodation, which is protected activity. As such, that claim should likewise survive.

---

[2] The Court acknowledged that "the sincerity inquiry is almost exclusively a credibility assessment." (Id. (*citing Ackerman v. Washington*, 436 F. Supp. 3d 1002, 1012 (E.D. Mich. 2020). Credibility is not to be judged on a motion to dismiss. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

Wherefore, Plaintiff requests the Court reconsider its ruling on Defendant's motion to dismiss with respect to her Title VII and THRA claims of discrimination and retaliation on the basis of religion and deny the Motion with respect to these claims.

Respectfully submitted,

*s/ Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Bennett Hunter BPR # 022407
Ashley Shoemaker Walter BPR #037651
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
ashley@collinshunter.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been served via the Court's CM/ECF system on October 5, 2021 to counsel of record:

Leslie Goff Sanders
Daniel Crowell
WEBB SANDERS PLLC
611 Commerce Street
Suite 3102
Nashville, TN 37203
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com

*/s Heather Collins*
Heather Moore Collins