UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CAITLIN O'CONNOR, | ) |
|     Plaintiff, | ) Case No. 3:20-cv-00628 |
| | ) |
| | ) District Judge Richardson |
| v. | ) |
| | ) Magistrate Judge Frensley |
| THE LAMPO GROUP, LLC, | ) |
| | ) Jury Demand |
|     Defendant. | ) |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR RECONSIDERATION**

Defendant, The Lampo Group, LLC, ("Lampo") by and through the undersigned counsel and pursuant to Local Rule 7.01(3) and the Court's Order dated October 7, 2021 (Doc. #57), responds in opposition to Plaintiff's Motion for Reconsideration on the Court's Order on Defendant's Partial Motion to Dismiss (Doc. #56).

On September 30, 2021, the Court dismissed Count V of Plaintiff's Third Amended Complaint (Doc. #37), which asserted religious discrimination and retaliation claims against Lampo under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, ("Title VII") and the Tennessee Human Rights Act, T.C.A. §4-21-101, *et seq.* ("THRA"). Plaintiff has now moved the Court to reconsider its dismissal of Count V. Lampo will address those arguments of Plaintiff that we can discern.

**I.**     ***EEOC v. Abercrombie & Fitch Stores, Inc.***

Plaintiff's motion makes various references to the Supreme Court's decision in *EEOC v. Abercrombie & Fitch Stores, Inc.,* 575 U.S. 768 (2015), and its impact on this case. The Court is aware of *Abercrombie*, *see, e.g., EEOC v. Publix Super Mkts., Inc.,* 481 F. Supp. 3d 684, 692-93 (M.D. Tenn. 2020), so we need not belabor it.

Succinctly, *Abercrombie* involved a Muslim woman who applied for a position with Abercombie & Fitch. *Id.* at 770. While qualified for the position, the applicant wore a headscarf that violated a "cap" prohibition in Abercrombie & Fitch's "Look Policy". *Id.* Abercrombie & Fitch correctly surmised that the applicant wore a headscarf because of her faith, without the applicant volunteering or confirming that information. Given that the headscarf would violate the Look Policy, Abercrombie & Fitch decided not to hire her. *Id.*

On behalf of the applicant, the EEOC sued Abercrombie & Fitch under a failure to accommodate theory. *Id.* at 771. The district court granted summary judgment to the EEOC, but the Tenth Circuit reversed because the applicant had not provided Abercrombie & Fitch with actual knowledge of her need for an accommodation, *i.e.,* an exception to the Look Policy for her headscarf. *Id.*

The Supreme Court reversed, holding that an applicant does not have to notify an employer of their need for religious accommodation to fall within the ambit of Title VII's protections. *Id.* at 773-74. An employer violates Title VII "[i]f the applicant actually requires an accommodation of…religious practice, and the employer's desire to avoid the prospective accommodation is a motivating factor in his [employment] decision." *Id.* at 773-74. "A request for accommodation or the employer's certainty that the [religious] practice exists, may make it easier to infer motive." *Id.* at 774. However, neither is a necessary condition of liability. *Id.* The Supreme Court did not resolve the employer knowledge necessary to form improper motive, but determined that knowing or correctly suspecting that an employee needed religious accommodation was enough. *Id.* at 774 FN3.

The Sixth Circuit foreshadowed *Abercrombie* in *Pedreira v. Ky. Baptist Homes for Children, Inc.,* by acknowledging that there may be situations where an employer equates an

2

employee's conduct with religious beliefs or the lack thereof, *i.e.,* situations where an employer is charged with knowledge of an employee's religious beliefs without the employee having to tell them. 579 F.3d 722, 728 (6th Cir. 2009). However, given the peculiar facts of *Abercrombie*, a situation where the employer knew or at least correctly suspected that an applicant would require a religious accommodation without any discussion with the applicant, the decision's impact has been limited and hardly the sea change that Plaintiff claims. *Abercrombie* should only abrogate cases in which and to the extent that religious discrimination claims failed because the employee did not notify their employer of their need for religious accommodation, but the employer otherwise knew or at least suspected that a religious accommodation was needed.

In any event, this case is not *Abercrombie*. In Plaintiff's Third Amended Complaint and until her motion to reconsider, Plaintiff forcefully argued that she expressly notified Lampo of her religious beliefs regarding premarital sex and need for accommodation via the e-mail that she sent to Armando Lopez on June 18, 2020. However, as Defendant has repeatedly argued and the Court recently agreed, there is no way to plausibly read that e-mail as communicating Plaintiff's religious beliefs regarding premarital sex or need for accommodation. Beyond the June 18 e-mail, Plaintiff has not pled that Lampo otherwise knew or even correctly suspected her religious beliefs regarding premarital sex or need for accommodation. Nor has Plaintiff pled a strict liability theory of failure-to-accommodate. Though, even if she had, we have no reason to believe that the Sixth Circuit (or the Supreme Court for that matter) would adopt that approach. *See, e.g., Winchester v. Wal-Mart Stores, Inc.,* 2017 BL 541269 at *3 (6th Cir. Mar. 2, 2017) (retaining notice requirement in prima facie case).[1]

---

[1] Lampo has attached a copy of this unpublished case as Exhibit 1.

## II. Religious Discrimination

As we interpret the section of Plaitniff's motion devoted to general religious discrimination, she appears to make three arguments in support of reviving that claim against Lampo.

First, Plaintiff argues that she can state a religious discrimination claim simply because Lampo maintains a religiously inspired prohibition against premarital sex. However, that argument is foreclosed by *Pedreira,* where the Sixth Circuit dismissed a lesbian employee's religious discrimination claim *even though* her employer maintained a religiously inspired prohibition against homosexuality. 578 F.3d at 727-28.

Second, Plaintiff argues that she can state a religious discrimination claim simply because she was terminated for failing to comply with Lampo's religiously inspired prohibition against premarital sex. Again, that argument is foreclosed by *Pedreira*, where the Sixth Circuit dismissed a lesbian employee's religious discrimination claim *even though* she was terminated for failing to comply with her employer's religiously inspired prohibition against homosexuality. *Id.*[2]

---

[2] Plaintiff's insistence that she can maintain a religious discrimination claim based on her failure to comply with Lampo's prohibition against premarital sex stems from the following confusing dicta in *Pedreira*:

"Courts have interpreted the prohibition to preclude employers from discriminating against an employee because of the employee's religion as well as because the employee fails to comply with the employer's religion. *See, e.g., Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 624 (6th Cir. 2000) (explaining that Title VII's scope 'include[s] the decision to terminate an employee whose conduct or religious beliefs are inconsistent with those of its employer'); *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 708-09 (6th Cir. 1985)." *Pedreira* at 727-28.

The Sixth Circuit's citation to and characterization of that excerpt from *Hall* is either inaccurate or very strained. *Hall* at 624 discusses the rights of certain entities exempt from Title VII to hire and employ individuals "of a particular religion" under 42 U.S.C. §§ 2000e-1(a) or 2000e-2(e)(2). 215 F.3d at 624. The Sixth Circuit was not describing the scope of the prohibition against religious discrimination in 42 U.S.C. §2000e-2(a). *Id.*

4

Third and finally, Plaintiff argues that she can state a religious discrimination claim simply because she and Lampo held different religious beliefs regarding premarital sex.[3] This is Plaintiff's most confusing point. Plaintiff vigorously contends that Lampo's prohibition against premarital sex is religiously inspired and that her own views regarding premarital sex constitute religious beliefs, but neither of those points are disputed for purposes of Defendant's motion to dismiss. Nor is the religious inspiration for Lampo's prohibition against premarital sex particularly significant. Religious discrimination claims do not turn on the existence or nature of an employer's beliefs.[4] Whether Lampo engaged in religious discrimination against Plaintiff for religious or secular reasons is ultimately irrelevant.

To state a claim for religious discrimination, Plaintiff had to plausibly allege that Lampo terminated her employment *because of her religion.* As discussed in detail in Section I, *supra*, that required Lampo to know something about Plaintiff's religious beliefs regarding premarital

---

By contrast, *Blalock* was a straightforward religious discrimination case where an employer held employees to different performance standards depending on their religious beliefs. 775 F.2d at 708-09. Plaintiff has not alleged that Lampo held her to different standards—with respect to premarital sex or otherwise—because of her religious beliefs. In fact, in a footnote in Plaintiff's motion, she concedes that Lampo terminates every employee who engages in premarital sex "without exception." (Doc. #56 at PageID #852).

[3] In Plaintiff's motion, she once again adds "[not having]" to the last sentence of Paragraph 24 of her Third Amended Complaint. (Doc. #56 at PageID #850). The addition of "[not having]" changes that sentence completely. Lampo will not belabor the point because adding "[not having]" does not change the legal sufficiency of Plaintiff's Third Amended Complaint. However, it is inappropriate and frankly uncandid for Plaintiff to try to amend her Third Amended Complaint this way. Particularly since she has already amended or attempted to amend her complaint *four* times, the last sentence of Paragraph 24 of Plaintiff's Third Amended Complaint is coherent as written, the sentence did not change between Plaintiff's Second Amended Complaint (Doc. #25-1) and Third Amended Complaint (Doc. #37), she only began adding "[not having]" to the sentence after Defendant addressed its significance in *three* legal briefs (Docs. #30, 35, 39), and then she slips "[not having]" in with no more acknowledgement than two brackets.

[4] With exceptions for employers who are statutorily exempt from Title VII for religious reasons or whose violations of Title VII may be excused under the Religious Freedom Restoration Act, 42 U.S.C. §2000bb, *et seq.*, First Amendment to the United States Constitution, or another similar federal or state law.

sex. Despite Plaintiff's insistence, her June 18 e-mail did not constitute actual notice to Lampo of her religious beliefs. Lampo cannot be charged with knowledge of her religious beliefs regarding premarital sex simply because she engaged in it. *See, e.g., Pedreira* at 728 (declining to equate homosexuality with religious beliefs regarding homosexuality). And Plaintiff has not pled that Lampo otherwise knew or at least correctly suspected her religious beliefs regarding premarital sex or need for accommodation, the notice deemed sufficient in *Abercrombie*.

The Court properly dismissed Plaintiff's religious discrimination claim against Lampo.

### III.     Religious Accommodation

As Lampo interprets the section of Plaintiff's motion devoted to religious accommodation, she appears to make three arguments in support of reviving that claim against Lampo.

First, Plaintiff reiterates that she did not have to expressly request an accommodation of her religious beliefs regarding premarital sex to protected under Title VII. While *Abercrombie* clarified that express notice is not required, that is not what Plaintiff has pled or forcefully argued throughout the course of this case. Plaintiff has pled and forcefully argued that her June 18 e-mail constituted actual notice to Lampo of her religious beliefs regarding premarital sex and need for accommodation. Only when Plaintiff's June 18 e-mail ran aground did she switch positions. However, Plaintiff has not pled anything beyond express notice. She has not pled that Lampo equated her religious beliefs regarding premarital sex with her decision to engage in it as suggested in *Pedreira*. Nor has she pled that Lampo otherwise knew or at least correctly suspected her religious beliefs, which was enough in *Abercrombie*. She has not even pled the dubious strict liability theory.

Second, Plaintiff argues that she does not need to show a conflict between Lampo's

6

prohibition against premarital sex and her religious beliefs regarding it. Plaintiff claims that it is enough that she and Lampo held different religious beliefs regarding premarital sex. There is no legal support for this position because it makes no sense. Religious accommodations exist to excuse employees from employment requirements that conflict with their sincerely held religious beliefs. *See, e.g., Hall* at 627-28. The proper focus is on any conflict between Plaintiff's religious beliefs and Lampo's prohibition against premarital sex, not Lampo's underlying reasons for prohibiting premarital sex.[5] Lampo required Plaintiff to abstain from premarital sex, not share the company's religious beliefs regarding it. And as Defendant has repeatedly argued and the Court recently agreed, there was no conflict between Plaintiff's religious beliefs regarding premarital sex and Lampo's prohibition of it. Plaintiff's religious beliefs permit, but do not require, premarital sex. She could have complied with Lampo's prohibition against premarital sex without violating her religious beliefs.

Third, Plaintiff claims that *Chalmers v. Tulon Co.*, 101 F.3d 1012 (4th Cir. 1996), is no longer good law following *Abercrombie*. The continued viability of *Chalmers* is not essential to dismissal of Plaintiff's religious discrimination claims. However, given the peculiar facts of *Abercrombie,* we believe that *Chalmers* remains good law in all religious discrimination cases except those where (1) the employee has not expressly notified their employer of their religious beliefs and need for accommodation but (2) the employer knew or otherwise correctly suspected them.

Moreover, the specific rule stated in *Chalmers* that employees must request religious

---

[5] Plaintiff's interpretation places more emphasis on why an employment requirement exists than the employment requirement itself. It privileges secularly inspired employment requirements over religiously inspired ones, directly contrary to the spirit of Title VII which preferences religion. *See, e.g., Abercrombie* at 775. In a scenario in which Lampo prohibited premarital sex for secular reasons, under Plaintiff's formulation, she would not be entitled to a religious accommodation. That is absurd.

7

accommodations before violating employment requirements seems particularly well insulated from *Abercrombie*. The Fourth Circuit applied that rule even though the employee in *Chalmers* expressly notified her employer of the religious nature of her conduct *after* violating the employment requirement but *before* being terminated. *Id.* at 1020-21. So, the rule does not appear to turn on notice or lack of notice. Also, that rule applies to past violations of employment requirements, whereas *Abercrombie* is inherently forward looking. 575 U.S. at 773-74 (Title VII prohibits employment decisions intended to avoid prospective accommodation).

The Court properly dismissed Plaitniff's religious accommodation claim against Lampo.

### IV. Retaliation

Plaintiff's retaliation claim in Count V rises and falls with her religious accommodation claim with one exception. The protected activity underlying Plaintiff's retaliation claim is her request for religious accommodation, which she has at times disavowed in her motion to reconsider. If Plaintiff did not request a religious accommodation from Lampo because she did not have to, then her retaliation claim necessarily fails. In any event, the Court properly dismissed Plaintiff's retaliation claim against Lampo.

Respectfully submitted,

/s/Daniel Crowell
Leslie Sanders (TN #18973)
Daniel Crowell (TN #31485)
WEBB SANDERS PLLC
611 Commerce Street
Suite 3102
Nashville, TN 37203
Telephone: (615) 915-3300
Fax: (866) 277-5494
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I certify that, on October 19, 2021, I filed *Defendant's Response in Opposition to Plaintiff's Motion for Reconsideration on the Court's Order on Defendant's Partial Motion to Dismiss* via the Court's electronic filing system, which will automatically notify and send a copy of that filing to:

Heather Moore Collins
Anne Bennett Hunter
Ashley Shoemaker Walter
Collins & Hunter PLLC

*Attorneys for Plaintiff*

        /s/Daniel Crowell
        Daniel Crowell (TN #31485)
        *Attorney for Defendant*