IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CAITLIN O'CONNOR, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:20-cv-00628 |
| | ) | |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| THE LAMPO GROUP, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Reconsideration (Doc. No. 56, "Motion"), whereby Plaintiff seeks reconsideration of the Court's Order on Defendant's Partial Motion to Dismiss Count V of Plaintiff's Third Amended Complaint (Doc. No. 55, "Order"), which asserts claims for religious discrimination and religious retaliation. Defendant filed a response in opposition (Doc. No. 58, "Response"). For the reasons discussed herein, Plaintiff's Motion (Doc. No. 56) is **DENIED.**

A. Standards Governing a Motion for Reconsideration

Plaintiff does not even identify the standard for assessing her Motion, let alone explain how the particular standard is met in her case. Instead, she essentially says that the Court got it wrong and assumes that if this is true, the motion for reconsideration should be granted. Plaintiff assumes too much. It is not proper for a motion for reconsideration to be brought—let alone be granted—based on the mere assertion that the Court got it wrong and should accept Plaintiff's explanation of how the Court got it wrong.

The kinds of arguments that can be raised on a motion for reconsideration are limited. *Hanna v. Marriott Hotel Servs., Inc.*, No. 3:18-cv-0325, 2019 WL 7482144, at *1 (M.D. Tenn. Mar. 18, 2019). A motion for reconsideration should not provide the parties with an opportunity for a proverbial second bite at the apple. *Id.* (citing *Chad Youth Enhancement Center, Inc. v. Colony Nat'l Ins. Co.*, No. 3:09-0545, 2010 WL 2253538, at *1 (M.D. Tenn. June 1, 2010)). A motion for reconsideration is not an opportunity to merely re-argue a case. *See id.*

Nor is a motion for reconsideration properly grounded on a request that a court rethink a decision already made. *Id.* District courts reviewing motions to reconsider interlocutory rulings "at a minimum" require that there be some clear error in the court's prior decision or that the movant put forth an intervening controlling decision or newly discovered evidence not previously available. *Id.* The Federal Rules of Civil Procedure do not provide for a "motion to reconsider" (or a "motion for consideration of") an order, whether interlocutory or final. Nevertheless, courts customarily have been willing to entertain motions titled this way.

The primary standard for such motions was essentially borrowed from the standard for motions under Fed. R. Civ. P. 59(e) to alter or amend a judgment. More specifically, a motion to reconsider generally must be based on one of the grounds available for motions to alter or amend judgment or upon a showing that the court clearly overlooked material facts or controlling law that were presented by the movant in its prior motion and that would result in a different disposition. *Id.* The Court may grant a motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Id.* (citing *United States v. Tennessee Walking Horse Breeders' and Exhibitors' Ass'n.*, 263 F. Supp. 3d 679, 681 (M.D. Tenn. 2017)). As indicated above, a motion to reconsider may be based on these four grounds, or upon essentially a fifth or sixth ground: (5) that the court clearly

overlooked material facts (or, in the case of an order on a Rule 12(b) motion, factual allegations from the complaint) that were presented by the movant in its prior motion and that would result in a different disposition; or (6) that the court clearly overlooked controlling law that was presented by the movant in its prior motion and that would result in a different disposition.

The decision whether to deny a motion for reconsideration, including a motion for reconsideration of an order disposing of some but not all of the plaintiff's claim, is a matter within the discretion of the district judge. *See Tolbert v. Potter*, 206 F. App'x 416, 417 (6th Cir. 2006); *Lommen v. McIntyre*, 125 F. App'x 655, 658 (6th Cir. 2005) (noting that the Sixth Circuit "review[s] the district court's denial of the motion for reconsideration for an abuse of discretion").

Plaintiff does nothing to identify which of the six grounds supposedly are satisfied here. And it is clear that the Motion asserts, at most, only the first ground.[1] And even that is a major stretch. The Motion does not assert, let alone establish, any error that is *clear*—nothing along the lines of the Court overlooking precedent that is squarely on point ("on all fours"), or *clearly* misreading or overlooking allegations in the Third Amended Complaint, or drawing a plainly illogical conclusion from the alleged facts and applicable law. Instead, the Motion argues that the Court should have come out differently under what Plaintiff claims is the current construction of the case law and her complaint. The Court finds that this is far more akin to rearguing an issue already decided—including by, for example simply re-arguing what *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722 (6th Cir. 2009) does and does not teach—than to showing (or even

---

[1] The first ground certainly overlaps with the fifth and sixth grounds. But the Court notes that it cannot construe the Motion as asserting the fifth and sixth grounds. True, the Motion asserts that the Court reached the wrong result under controlling law as applied to the facts (as alleged in the Third Amended Complaint). So the Motion may fairly be said to assert that the Court misapplied controlling law and misconstrued the alleged facts (and their significance in light of the controlling law). But the Motion does not identify any controlling law or alleged facts that the Court "overlooked," let alone *clearly* overlooked.

merely asserting) *clear* error. If Plaintiff thinks the Court erred, Plaintiff may at some point take this up with the Sixth Circuit and seek to show that court that this Court erred, but the Court does not discern any even arguably *clear* error that would occasion *this Court* to revisit its own opinion. In short, a district court may or may not be right. But with few if any exceptions, a district court is quite busy and, absent a specific one of the four reasons to do so, should not be asked to revisit a motion that it has already addressed in some detail and resolved. Plaintiff has every right to disagree with the Court's decision and be frustrated by it, but she does not have the right to pull the Court's attention away from its hundreds of other cases merely because she disagrees with the Court's decision. A motion for reconsideration is not a venue to see whether the Court will conclude that perhaps on balance it should have gone the other way the first time. Thus, having considered the Motion as well as the Response, the Court finds the Motion is not based on a cognizable ground for granting a motion for reconsideration, and the Court in its discretion denies the Motion for that reason alone.

The Court alternatively denies the Motion on the ground that Plaintiff has not shown *any* error, even error that is less than clear. In the Motion, Plaintiff asserts that the Court erred inasmuch as (1) her pleading met the federal notice pleading standards and that the Court was incorrect to find otherwise, and (2) the Court's Order "failed to appreciate Supreme Court precedent articulated in *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*". (Doc. No. 56 at 1). The Court will address both arguments in turn.

B.  Plaintiff's Complaint and her Failure to Meet the *Iqbal*/*Twombly* Pleading Standard

As noted in the memorandum opinion accompanying the Order (Doc. No. 54, "memorandum opinion"), Plaintiff has failed to plausibly allege facts plausibly suggesting entitlement to relief on Count V (religious discrimination and religious retaliation). (Doc. No. 54

at 8-20). In the Court's view, nothing in Plaintiff's Motion undercuts the Court's reasoning and ruling on Defendant's Motion to Dismiss Count V. If anything, Plaintiff's Motion shows still further that she has failed to state claims for religious discrimination and religious retaliation.

Here, Plaintiff argues that "the Court failed to fully appreciate the primary basis for [her] religion claim is that Ramsey Solutions imposes its religious beliefs on its employees, like Ms. O'Connor, as set forth in its policies which are clearly and unequivocally based on religion." (Doc. No. 56 at 1). The Court believes that, to the contrary, it fully appreciated the primary basis for Plaintiff's "religion claim", and to the extent that basis is accurately characterized as Defendant "impos[ing] its religious beliefs on employees, like [Plaintiff] as set forth in its policies which are clearly and unequivocally based on religion," the basis is inadequate because (i) case law indicates that religious-discrimination and religious-retaliation claims are not properly grounded on the broad and ambiguous notion of an employer "imposing its religious beliefs" (whatever that means) on the plaintiff, but rather are properly grounded on something more specific; and (ii) Plaintiff's complaint in any event plausibly alleges only the imposition of a *policy* based on religious beliefs, and not the imposition of *religious beliefs*.[2] In any event, nothing prohibits employers from having (enforceable) policies with religious motivations. *See Hall v. Lee Coll., Inc.*, 932 F. Supp. 1027

---

[2] In Paragraph 24 of Plaintiff's Third Amended Complaint, she states that she "does not believe premarital sex is a requirement or fundamental tenant of her faith as a Christian." (Doc. No. 37 at 5-6). But when quoting this statement in her response to Defendant's Partial Motion to Dismiss, and in the Motion, Plaintiff adds the words "not having" to the sentence so that it reads as follows: "[Plaintiff] does not believe [not having] premarital sex is a requirement or fundamental tenant of her faith as a Christian." (Doc. No. 40 at 4; Doc. No. 56 at 4). In its Response, Defendant questions the legitimacy of Plaintiff's adding of the two words in the brackets. (Doc. No. 58 at 5 n.3). The Court understands that this probably was a mere scrivener's error, as it would seem that Plaintiff's intended point here would have required the inclusion of the negative. On the other hand, the Court agrees with Defendant that Plaintiff's unilateral decision to add (without explanation, no less) the bracketed two words in quoting the statement (thereby changing its meaning completely) was at the very least questionable. However, the Court need not delve further into that issue at this time.

(E.D. Tenn. 1996) (dismissing a plaintiff's claim for gender discrimination because plaintiff failed to establish disparate treatment between sexes with respect to her suspension for violating Defendant's policy prohibiting premarital sex). As Defendant essentially notes correctly in its Response, (Doc No. 58 at 7 n.5), any such prohibition would constitute an absurd government preference for secularism over religion, since plainly an employer is not prohibited from having policies (including personal-conduct policies) that are based on secular concerns. Importantly, Plaintiff has not pointed the Court to even one case concluding that if a person is terminated for violating a policy with religious underpinnings, that person necessarily has a claim for religious discrimination or retaliation even if the employer has no notice (or even reason to be aware) of a plaintiff's alleged religious beliefs.

As Defendant correctly points out "[t]o state a claim for religious discrimination, Plaintiff had to plausibly allege that [Defendant] terminated her employment *because of her religio[us] [belief(s)]*." (Doc. No. 58 at 5). But Plaintiff has failed to do so, as thoroughly discussed in Defendant's Response and this Court's Order.[3]

For the first time, in Plaintiff's instant Motion, she argues that she was terminated because of *Defendant's* religious beliefs, and not just because of her *own* religious beliefs. (Doc. No. 56 at 3). One might argue that these two concepts tend to run together, but it is Plaintiff herself who

---

[3] Making a fair point, Plaintiff correctly points out that the Court should not have used the word "proven" in one place in its memorandum opinion, because Plaintiff is not required to prove anything at the motion to dismiss stage. (Doc. No. 56 at 2). This was a scrivener's error; in this place, the Court should have used "adequately alleged," or something very similar thereto. The Court does not begrudge Plaintiff pointing out this mistake. But as the Court made clear (not least by using such language) throughout the rest of its Order, it was addressing only the issue of what Plaintiff had alleged and whether the allegations were adequate, and not addressing what Plaintiff had "proven" (as would be improper at this stage). And in any event, this minor error does not change the reasoning or ruling of the Court's Order with respect to Plaintiff's religious-discrimination claim.

goes out of her way to make the distinction in an effort to support her claim. But if the distinction is valid, Plaintiff is now making a new argument because up until now, Plaintiff has asserted that she was fired because of *her* (religious) belief that (under her construction of the precepts of her religion) it is permissible to engage in premarital sex.[4] But it is axiomatic that "a motion to reconsider is not an appropriate mechanism for raising new arguments or stating new claims." *Mullins v. Marshall*, No. CIV.A. 08-286-JBC, 2010 WL 2331038, at *1 (E.D. Ky. June 10, 2010); *see also Bd. of Trustees of Toledo Roofers Loc. No. 134 Pension Plan v. Enter. Roofing & Sheet Metal Co.*, No. 3:10CV1869, 2014 WL 988851, at *3 (N.D. Ohio Mar. 13, 2014) ("a motion to reconsider is not the time to raise new arguments" (citing *Jinx v. AlliedSignal, Inc*., 250 F.3d 381, 385 (6th Cir.2001)).

Relatedly, invoking *Equal Opportunity Emp. Comm'n v. United Health Programs of Am., Inc.,* 213 F. Supp. 3d 377 (E.D.N.Y. 2016), Plaintiff is now arguing a "reverse religious discrimination theory," which is a new argument not made until the instant Motion. "A religious discrimination claim premised on an employer's preference for a particular religious group is often referred to as a 'reverse religious discrimination' claim." *Id.* at 392. But Plaintiff has never asserted that Plaintiff was discriminated against because she did not belong to a particular religious group preferred by Defendant. The Third Amended Complaint clearly alleges that she is a Christian and that Defendant's preferred religious group is Christians; conceivably, Plaintiff could have undertaken the difficult task of, for example, clearly identifying some definable sub-group of Christians to which she did not belong and then claim that she was discriminated against for not

---

[4] The Court's Order explained the vital distinction between such belief and the belief that (under her religious beliefs) she *should* or *must* (as opposed to may) engage in premarital sex. Plaintiff does not allege the latter belief.

belonging to that subgroup. But she did no such thing; in her complaint she claimed that she was discriminated against in that she was fired for violating a company policy premised on an interpretation of Christian sexual morality that she (a Christian, like the leaders of the company) did not share. The Court thus will not consider this new theory on the instant Motion.[5]

Confusingly, Plaintiff asserts an alleged "lack of or rejection of religious belief" or "non-belief," then claims that she is entitled as a non-believer (of Defendant's views of Christianity) to the protection against religious discrimination that exists for atheists or agnostics even though they are conventionally "religious." (Doc. No. 56 at 5). But Plaintiff has not asserted any "lack of belief" or "non-belief." Instead, she has asserted, since her very first Complaint, that "[h]er practice and belief of Christianity is that Christianity is above all a loving, not punitive and judgmental faith" (Doc. No. 37 at 11) and that she had "different religious beliefs" than Defendant regarding premarital sex (*Id*. at 12), namely that it is acceptable to engage in it before marriage. As explained in its memorandum opinion, the Court accepts as true Plaintiff's allegations as to what her sincerely held religious beliefs are in this regard (Doc. No. 54 at 2, fn. 2) but will not allow Plaintiff, in this late hour, to assert that her claim survives because she has a lack of belief "in the same way [as] an atheist or agnostic." (Doc. No. 56 at 5). This argument (theory) is new and thus not appropriate on the instant Motion. And in any event, although the Court fully understands that non-believers in a divine being (atheists and agnostics) are entitled to protection against religious discrimination,

---

[5] Plaintiff also attempts to use the *Pedreira* case to support her claim here. The Court spent two-and-one-half pages of its Order analyzing and explaining *Pedreira's* applicability to this case and will not rehash those points herein. The Court redirects Plaintiff to its discussion in its Order (Doc. No. 55) on pages 15-17. Plaintiff is free to disagree with the Court about the teachings of *Pedeira*, but Plaintiff is not entitled to have an ongoing dialog with the Court on the subject, and the Court declines to engage in such a dialog.

the Court does not see how this principle would help Plaintiff even if it were to consider whatever argument Plaintiff is trying to make here.

Ultimately, as Defendant correctly puts it, "[t]he proper focus is on any conflict between Plaintiff's religious beliefs and Lampo's prohibition against premarital sex, not Lampo's underlying reasons for prohibiting premarital sex." (Doc. No. 58 at 7). As the Court explained in its memorandum opinion, Plaintiff did not plausibly allege any such conflict—or that her termination was the result of any such conflict (given that she has not plausibly alleged that Defendant was aware of Plaintiff's religious beliefs).

Further, as to Plaintiff's religious retaliation claim, which alleges retaliation against her for engaging in the purportedly protected conduct of requesting an accommodation,[6] she "has not plausibly alleged that she requested an accommodation for her *religious beliefs*, even if she did

---

[6] The Third Amended Complaint identifies this as the protected conduct in the following paragraphs:

> 71. Plaintiff engaged in protected conduct when she notified Defendant she was pregnant on June 18, 2020, she specifically stated in an email to Armando Lopez "I understand that being unmarried and expecting is frowned on here, but the reality of the situation is this is what I'm walking through right now. This is obviously uncharted territory for me so I'm not sure what my next steps are regarding sharing the news with my leader, getting FMLA & ADA paperwork in case it's need in the future, etc."
>
> 72. Plaintiff's email to HR was a request for an accommodation from its strict policies which "frown on" pregnancy outside of marriage.
>
> . . .
>
> 74. Premised on these alleged "Judeo-Christian" values, Defendant terminated Plaintiff's employment after she notified them of her pregnancy and not only terminated her employment, but in a particularly cruel manner also her health insurance benefits which included pre and post-natal care.

(Doc. No. 37 at 11).

request an accommodation." (Doc. No. 54 at 19). The accommodation she requested was an accommodation (in the form of relief from the consequences of a violation of Defendant's policy) for her *pregnancy*, not her religion. Accordingly, Plaintiff has not plausibly alleged that she was terminated for exercising her right to request a religious accommodation, and therefore she has not stated a claim for religious retaliation.

The Motion thus does not demonstrate that the Court erred at all (let alone clearly) in determining that Plaintiff has not stated a claim for religious discrimination or religious retaliation.

B. Plaintiff's Reliance on *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*

Attacking more specifically the Court's conclusion that she has failed to state a valid claim based on Defendant's alleged failure to make a religious accommodation, Plaintiff also contends that this Court's ruling should be reconsidered because "the Court's Order failed to appreciate Supreme Court precedent articulated in *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, [575 U.S. 768 (2015)]" when considering her religious accommodation claim. (Doc. No. 56 at 1). Plaintiff invokes this case for the proposition that "contrary to the conclusion drawn by the Court, Ms. O'Connor was not required to inform [Defendant] that she had a sincerely held religious belief about pre-marital sex." (*Id*. at 8). However, Plaintiff's reliance on *Abercrombie* is misguided.[7]

In *Abercrombie*, the Equal Employment Opportunity Commission ("EEOC") brough suit against Abercrombie & Fitch ("Abercrombie") on behalf of a Muslim job applicant for religious discrimination, alleging that the retailer failed to accommodate the applicant's religious practice

---

[7] Although Plaintiff chastises the Court for citing to summary judgment cases as opposed to motion to dismiss cases, Plaintiff does the same with her heavy reliance on *Abercrombie*, which is a reversal and remand of a summary judgment case. The Court is aware that cases involving summary judgment are helpful on a Rule 12(b)(6) motion only to the extent that they indicate what a plaintiff needs to plausibly allege in order to validly state a claim—but many such cases are indeed obviously helpful in this way.

of wearing a headscarf. Abercrombie had a "look policy" that prohibited "caps" as too informal for the company's desired image. 575 U.S. at 770. Abercrombie did not hire the applicant. (*Id*.). As to the applicant's disparate treatment claim, the Supreme Court held that "a job applicant seeking to prove a Title VII disparate treatment claim need only show that the need for a religious accommodation was a motivating factor in the prospective employer's adverse decision and need not show that employer actually knew that the applicant's practice was a religious practice that required an accommodation." (*Id*. at 768). Thus, the employer's *knowing or correctly suspecting* that an employee needed religious accommodation was sufficient (even if not necessarily *required*) to support the employee's claim, even if the employee did not *request* an accommodation. (*Id*. at 774 n. 3).

The Court take no issue with this holding and of course follows it as binding precedent. However, just as Plaintiff has not alleged that she made a request for a religious accommodation (as explained in the memorandum opinion), Plaintiff has not plausibly alleged in the Third Amended Complaint (or plausibly asserted in her instant Motion, for that matter) that Defendant knew or suspected she had a need for a religious accommodation. Instead, she alleges only that she notified Defendant that she was pregnant and asked about receiving benefits and requested, essentially, an exemption from Defendant's policy; none of this plausibly suggests that Defendant knew of or correctly suspected a need for a religious accommodation (as opposed to accommodation in the form of relief from Defendant's policy). Thus, even considering *Abercrombie*, she has not plausibly alleged that her need for a religious accommodation was a motivating factor in Defendant's decision to terminate her employment.

The Supreme Court in *Abercrombie* noted that

> [a]n employer is surely entitled to have, for example, a no-headwear policy as an ordinary matter. But when an applicant requires an accommodation as an

> "aspec[t] of religious . . . practice," it is no response that the subsequent "fail[ure] . . . to hire" was due to an otherwise-neutral policy. Title VII requires otherwise-neutral policies to give way to the need for an accommodation.

(*Id*. at 775). Defendant is likewise entitled to have a "righteous living policy" as an ordinary matter, *i.e.,* except to the extent that it conflicted with a requirement of an employee's religious practice. And here, unlike the plaintiff in *Abercrombie*, Plaintiff has not plausibly alleged facts suggesting that Defendant knew of or suspected (via a request from her or otherwise) that Plaintiff needed an accommodation for some aspect of her *religious* practice (as opposed to some aspect of her *personal circumstances*). She thus has not plausibly alleged that she fired due to a need for religious accommodation. Plaintiff contends that "[h]ere, it was enough that she notified [Defendant] that she was pregnant, even though they 'frowned' on it. . . ." This notification is disagreement with [Defendant's] religious policy and is legally sufficient." (Doc. No. 56 at 8). But Plaintiff notifying Defendant that she is pregnant is not (and cannot be understand as) a request for a religious accommodation. Therefore, Plaintiff has not pled factual matter plausible to show that she is entitled to relief on her failure to accommodate claim. Accordingly, Plaintiff's reliance on *Abercrombie* fails.

One more thing about *Abercrombie*: it serves to highlight clearly the very distinction on which the Court's memorandum opinion relied in substantial part. *Abercrombie* involved someone whose religious beliefs *required* her to do something: wear a headscarf. The defendant's policy prohibited her from doing what her religion *required* her to do. As the Court by now has said several times, Defendant's policy did *not* prohibit Plaintiff from doing anything her religion required her to do. What Defendant's policy did, according to the Third Amended Complaint, was impose (based on an particular interpretation of Christian values) a prohibition with which Plaintiff

disagreed based on (perhaps among other things) her interpretation of Christian values. This is not sufficient to support a claim of religious discrimination.[8]

## **CONCLUSION**

Plaintiff has not shown clear error, and in the Court's view not any error, in the Court's prior conclusion that Count V does not meet the required pleading standard to survive a Rule 12(b)(6) motion to dismiss. Thus, Plaintiff's Motion (Doc. No. 56) is **DENIED.**

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[8] The Court agrees with Defendant that *Pedreira*, in quoting *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 624 (6th Cir. 2000), flatly misreads what *Hall* was talking about. As Defendant notes, *Hall* there was discussing the scope of an exemption from Title VII whereby certain religious schools can employ individuals "of a particular religion" under 42 U.S.C. §§ 2000e-1(a) or 2000e-2(e)(2), not the scope of Title VII's prohibition against religious discrimination in 42 U.S.C. §2000e-2(a). Moreover, the quoted proposition from *Hall*—that particular provisions of Title VII "hav[e] been interpreted to cover . . . the decision to terminate an employee whose conduct or religious beliefs are inconsistent with those of its employer"—is regrettably phrased so as to render its meaning obscure. The proposition is marred by, among other things, a confusing blending of the singular ("conduct") and the plural ("beliefs, "those"), and ultimately one cannot tell what has to be inconsistent with what to render the situation covered by whatever provisions of Title VII *Pedreira* purports to be talking about (which, as noted, are not the same provisions *Hall* was talking about). Thus, the Court declines to treat this quote from *Pedreira*, which as Defendant notes is dicta, as supporting Plaintiff's position.