IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CAITLIN O'CONNOR, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:20-cv-00628 |
| | ) | |
| v. | ) | Judge Eli J. Richardson |
| | ) | |
| | ) | |
| THE LAMPO GROUP, LLC a/k/a | ) | Magistrate Judge Frensley |
| RAMSEY SOLUTIONS, | ) | Jury Demand |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S BRIEF DEMONSTRATING DAVE RAMSEY CANNOT CONTINUE TO EVADE A NOTICE FOR HIS DEPOSITION**

COMES NOW Plaintiff Caitlin O'Connor pursuant the Court's October 28, 2021, Order regarding the discovery dispute conference which addressed, in part, the issue of Dave Ramsey's refusal to appear for deposition. (ECF 62). During the conference, the Court requested briefing on the issue as it pertained primarily to a motion for protective order, in the context of the Defendant's assertion that the "apex doctrine" shields Mr. Ramsey from deposition.

## Background

Ramsey Solutions terminated Caitlin O'Connor in June 2020 after she worked at Ramsey for over four years without incident due to her being an unwed pregnant female premised on its religious righteous living policy. Discovery has revealed that its CEO Dave Ramsey was involved in the firing decisions at his company for violations of its "Core Values," even for employees like Ms. O'Connor that he did not have much contact with at all. When Ms. O'Connor emailed Armando Lopez, Executive Director of Human Resources, that she was pregnant and requesting FMLA paperwork, within two minutes, Lopez forwarded her message directly to Dave Ramsey and HR committee members. At approximately 5:10 am the next morning, in response to Ms.

O'Connor notifying HR of her pregnancy, Mr. Ramsey emailed the HRC stating "[s]o sad" and speculating that "the reason she sent an email is she is scared and embarrassed" and then directing "next week we will follow the steps we did before." (Lopez Dep. Ex. 6). Then, after female members of the HRC met with Ms. O'Connor (at Mr. Ramsey's direction) and emailed a summary of the meeting about the details of her pregnancy, Mr. Ramsey again directed who would be involved in her termination meeting and stated: "this is obviously contrary to our values." (Lopez Dep. Ex. 7).

Thus, despite the fact that Ramsey Solutions has over 900 team members, Dave Ramsey is typically directly involved with termination decisions involving alleged violations of its mandatory, required religious based core values, in particular the righteous living core value. Indeed, most of the comparators identified by Defendant include Mr. Ramsey's opinion on the subject that termination is mandatory due to its religious righteous living value. For example, the following illustrates the degree of involvement Mr. Ramsey maintains over righteous living decisions:

- Team member that was terminated for living with his girlfriend, Jack Galloway, Executive Vice President emailed the HR team: "I['ll] also g[i]ve Dave a heads up."
- Mr. Ramsey sent an email to his HR team regarding an affair his one his direct reports had with another team member and that he was personally convening a meeting to discuss and which eventually resulted in placing the employee in an independent contractor status for six months before his final departure from the company.

2

- Jen Sievertsen emailed the HR team regarding a male team member accused of engaging in pre-marital sex (after he notified the company his wife was pregnant, but the company backdated her pregnancy and determined she got pregnant before they got married), "I gave Dave a heads up. . . he [Mr. Ramsey] is aware ..."

- Mr. Ramsey emailed the HR team regarding a team member living with his girlfriend, "Starting to feel like we are running Bob Jones University. Attitude if [sic] almost funny it is so pitiful. The arrogance of that. If he slept with her of [sic] lives with her or won't answer the question fire him on the spot. We have let people go that were much more repentant and offended the policy less."

- Mr. Ramsey also sent this email to his HR team regarding a team member who was watching pornography, "Damn. Satan is having a field day with us."

- Mr. Ramsey also has first-hand knowledge of the handling of former Ramsey male personality and exceptions that were made for this person for the extramarital affairs that were alleged and admitted to. Critically, with respect to this person, and the exceptions that were made, there was much less email traffic or notes about the reasons for the exceptions that were made for this male.

Accordingly, Mr. Ramsey is clearly involved personally with various team member terminations who violate the requirement they adhere to the Company's mandatory religious based core values. The fact that he was directly involved with Ms. O'Connor's termination decision makes him a relevant witness, aside from his direct involvement in other decisions involving the righteous living core value.

## DISCUSSION

In examining a failed assertion of the "apex doctrine" sought to prevent the deposition of a high ranking official. Magistrate Judge Newbern recognized:

> The scope of discovery is 'within the sound discretion of the trial court.' *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). Generally, Rule 26 permits discovery of 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.' Fed. R. Civ. P. 26(b). For 'good cause,' a court may 'issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense' by preventing the disclosure of otherwise-discoverable information. Fed. R. Civ. P. 26(c)(1). 'The 'good cause' necessary to sustain a protective order under Rule 26(c) must be shown by particular and specific facts, 'as distinguished from stereotyped and conclusory statements.' *Abriq v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:17-0690, 2018 U.S. Dist. LEXIS 67994, 2018 WL 1907445, at *1 (M.D. Tenn. Apr. 23, 2018) (quoting *Knight Capital Partners Corp. v. Henkel AG & Co., KGaA*, 290 F. Supp. 3d 681, 685 (E.D. Mich. 2017))

*First Fid. Capital Mkts., Inc. v. Reliant Bank*, 2019 U.S. Dist LEXIS220630 *3 (June 24, 2019.

District courts have broad discretion when managing discovery disputes, however, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). "The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970).

Defendant raised the issue that the "apex doctrine" applies. The apex doctrine typically requires the party seeking to depose a high ranking official to show that that official has unique or superior knowledge and that the knowledge is unavailable through less intrusive discovery methods. Christopher R. Christensen & Justin M. Schmidt, *Revisiting the Apex Doctrine* § 200 (2011). The party seeking to depose the official must show that the deponent has "unique personal knowledge" of facts relevant to the dispute. *Devlin v. Chemed Corp.*, No. 04-CV-74192-DT, 2005 U.S. Dist. LEXIS 46853, at *5 (E.D. Mich. Sep. 21, 2005). "In the absence of a showing of unique

4

personal knowledge, the circuit courts, including the Sixth Circuit, have upheld the entry of a protective order precluding the depositions of high-level company executives." *Wagner v. Novartis Pharm. Corp.*, No. 3:07-CV-129, 2007 U.S. Dist. LEXIS 83212, at *4 (E.D. Tenn. Nov. 8, 2007) (citing *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998) (upholding a protective order for a high-ranking officer where there was no showing that individual was involved in the termination at issue).

However, the Sixth Circuit has not taken such an expansive protective view of the apex doctrine, to the contrary, it has expressly disagreed with district court decisions that assume that "harassment and abuse" are "inherent" in depositions of high-ranking officials. *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012). As such, the Sixth Circuit determined "to justify a protective order, one of Rule 26(c)(1)'s enumerated harms 'must be illustrated 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Id*. (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004)).

To support a specific harm under Rule 26(c)(1)(A), the party seeking protection must expressly state the harm that would result to warrant the court enforcing a protective order because the Sixth Circuit has "declined 'to credit a [corporate officer's] bald assertion that being deposed would present a substantial burden.'" *Serrano*, 699 F.3d at 901 (quoting *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009) (unpublished opinion)).

The court will uphold a protective order where the deposition of a high-ranking official was used as an "oppressive bargaining chip." *Lewelling v. Farmers Ins. of Columbus, Inc*., 879 F.2d 212 (6th Cir. 1989) (quoting *Serrano*, 699 F.3d at 902). In <u>Lewelling</u>, the plaintiffs tried to depose the then-Chairman of the Board of Directors and CEO of Farmers Group, Inc. 879 F.2d at 218. When Farmers filed for a protective order, the plaintiffs offered to cancel the deposition in

exchange for a settlement agreement, leading the court to conclude they were wagering the deposition as a bargaining chip and acting in bad faith. *Id*. The Sixth Circuit upheld the district court's decision to issue a protective order here finding it was valid to protect the high-ranking officials in this case. *Id*. This is certainly not the case here because Defendant refuses out of hand to discuss settlement of any kind.

Some district courts will also issue a protective order where the high-ranking official lacks knowledge as to the facts of the current dispute. *Wagner v. Novartis Pharm. Corp.*, No. 3:07-CV-129, 2007 U.S. Dist. LEXIS 83212 (E.D. Tenn. Nov. 8, 2007). In considering if the high-ranking official has unique and special knowledge it is irrelevant that other high-ranking officials who were deposed, were also part of the same conversations at issue. *HCP Laguna Creek CA v. Sunrise Senior Living Mgmt.*, No. 3-10-0220, 2010 U.S. Dist. LEXIS 21500, at *14 (M.D. Tenn. Mar. 8, 2010). In *HCP Laguna Creek CA*, the court denied the motion to quash the deposition of one official entirely, noting that while "[he] contends that he does not have "unique" knowledge since [he] and the defendant's CEO were also present. . . that is not the type of non-unique knowledge that is normally at issue. When three people are present during a conversation, one may remember or choose to remember certain portions of the conversation that conflict with the memory of one or two of the other participants." *HCP Laguna Creek CA*, at *14.

In this case, Dave Ramsey has both unique and special knowledge and even if other employees have already testified about Ms. O'Connor's termination, recollections vary and his is relevant. Moreover, Mr. Ramsey's subjective speculations as to Ms. O'Connor being "scared and embarrassed" as well as his statement that "this is obviously contrary to our values" is subject to discovery.

6

Defendant cannot show "good cause" necessary to sustain a protective order under Rule 26(c) with particular and specific facts, as distinguished from stereotyped and conclusory statements. At the discovery conference, Defendant's counsel only claimed in bombastic fashion that Ms. O'Connor has a vendetta against Ramsey, and that she wanted to ruin him and embarrass him. Ms. O'Connor only desires to pursue her civil rights under federal law. If Mr. Ramsey sees this as a personal vendetta, then his gripe is with Congress, not with Ms. O'Connor. Is Ms. O'Connor upset that she was fired when she was at her most vulnerable and pregnant in violation of her civil rights? Yes. Does that translate to a limitation in discovery that has been illustrated with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements to justify a protective order? No. Besides, Ms. O'Connor will not be taking the deposition, her attorney, an officer of the court, will be handling the deposition. Thus, Defendant simply has not, nor can it, establish that good cause exists to prevent Mr. Ramsey, who was directly involved in Ms. O'Connor's termination and the termination of many her comparators, as well as the flexibility of the righteous living policy for a male personality, and the direction and evolution of righteous living policy over the years, from being deposed.

WHEREFORE, Mr. Ramsey should be ordered to sit for his deposition.

Respectfully submitted,

*s/ Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Bennett Hunter BPR # 022407
Ashley Shoemaker Walter BPR #037651
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX

heather@collinshunter.com
anne@collinshunter.com
ashley@collinshunter.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY certify that a copy of the foregoing has been served via the Court's CM/ECF system October 29, 2021 to counsel of record:

Leslie Goff Sanders
Daniel Crowell
WEBB SANDERS PLLC
611 Commerce Street
Suite 3102
Nashville, TN 37203
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com

/s/ Heather Moore Collins
*Attorney for Plaintiff*