UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CAITLIN O'CONNOR, | ) |
| Plaintiff, | ) Case No. 3:20-cv-00628 |
| | ) District Judge Richardson |
| v. | ) |
| | ) Magistrate Judge Frensley |
| THE LAMPO GROUP, LLC, | ) |
| | ) Jury Demand |
| Defendant. | ) |

**DEFENDANT'S BRIEF REGARDING DISCOVERY DISPUTE**

Defendant, The Lampo Group, LLC, ("Lampo" or the "Company") by and through the undersigned counsel and pursuant to the Court's Order dated October 28, 20201 (Doc. #62), files the following brief regarding Plaintiff's request to depose Dave Ramsey.

Lampo contends that the deposition of Mr. Ramsey is disproportionate to the needs of this case, imposes an undue burden upon Mr. Ramsey, and only sought by Plaintiff for the purpose of embarrassing, annoying, and furthering of her oppressive personal vendetta against him.

I.  **Background**

The parties originally presented this issue to the Court during a case management conference on July 7, 2021. Following that conference, the Court decided to reserve the issue "pending completion of additionally scheduled depositions." (Doc. #44).

*As of July 7*, Plaintiff had already deposed two members of Defendant's six-member Human Resources Committee ("HRC") - Armando Lopez, Executive Director of Human Resources and Mark Floyd, Chief Financial Officer. The "additionally scheduled depositions" referenced in the Court's July 7 Order consisted of three more HRC members - Suzanne Simms,

Senior Executive Vice President B2C, Jen Sievertsen, Chief Marketing Officer and Jack Galloway, Chief People Officer, which were all completed in August and September. Although the HRC made the decision to terminate Plaintiff's employment, Plaintiff has inexplicably never asked to depose the sixth HRC member, Sarah Sloyan.

*After July 7*, Plaintiff also asked to depose her former supervisor, Michael Finney, and Defendant pursuant to Rule 30(b)(6). In response to the Rule 30(b)(6) topics provided by Plaintiff, Defendant designated three corporate representatives to testify. The Rule 30(b)(6) deposition of Defendant covered a broad array of topics, including the 14 other employees that Plaintiff has identified as perhaps being similarly situated comparators.[1] Plaintiff offered and Lampo agreed to conduct the Rule 30(b)(6) deposition on September 30, the day before fact discovery ended on October 1.[2]

On August 10, Plaintiff issued a notice of deposition for Mr. Ramsey with a date "to be determined." On September 3, without conferring with Lampo or providing any justification, Plaintiff issued an amended notice of deposition for Mr. Ramsey scheduled for September 30, the same date that Lampo's three corporate representatives were already scheduled to testify.

---

[1] Those 14 employees include eight employees known to have engaged in premarital sex (all terminated or resigned in lieu of termination), three employees known to have engaged in extramarital sex (all terminated), and three employees known to have viewed pornography (all terminated or disciplined). Importantly, Plaintiff has identified those employees as being potentially similarly situated without any regard for differences in their conduct, employment periods, tenures, positions, supervisors, or decisionmakers. So far, it has been enough for Plaintiff that those 14 employees were known to have engaged in conduct at some point since January 1, 2016 that ran afoul of Lampo's broad Righteous Living Core Value.

[2] Plaintiff seems to attribute the fact that Defendant's Rule 30(b)(6) deposition took place on September 30 to delay by Defendant. To the contrary, Plaintiff provided Defendant with six dates, including September 30. Defendant offered some additional dates in September, but ultimately chose September 30 because it had been offered by Plaintiff and worked best for Defendant's counsel and three corporate representatives.

2

Case 3:20-cv-00628   Document 64   Filed 10/29/21   Page 2 of 12 PageID #: 911

On September 16, Lampo restated its objection to the deposition of Mr. Ramsey via an e-mail to Plaintiff. Eleven days later, on September 27. Plaintiff responded with an apparently mistaken version of facts that had been discovered including: (1) that Mr. Ramey was a member of the Human Resources Committee (he has never been identified in any document or by any witness as a member of the HRC and Mr. Lopez testified that he has "never been" on the HRC), (2) that the HRC made a decision regarding Chris Hogan (again, there is no dispute that the HRC was not involved in any decision related to Mr. Hogan but instead, it was the Operating Board) and (3) he has unique knowledge of the HRC's decisions (with no explanation of how Mr. Ramsey's knowledge is "unique" as opposed to the actual members of the HRC).

II.     **Legal Standard**

Federal Rule of Civil Procedure 26(c)(1) provides that the Court may forbid a deposition "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…." In *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012), the Sixth Circuit applied this rule to a high-level executive at the defendant company and provided instruction to courts considering such protective orders

> To justify restricting discovery, the harassment or oppression should be unreasonable, but discovery has limits and … these limits grow more formidable as the showing of need decreases. Thus even very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it.

*Id.* (quoting 8A CHARLES ALAN WRIGHT & ARTHUR MILLER ET AL., FEDERAL PRACTICE AND PROCEDURE § 2036 (3d ed. 2012). To justify a protective order in this situation, one of the harms outlined in Rule 26(c)(1) "must be illustrated 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Id.* (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)). The court explained that "harassment and

3

Case 3:20-cv-00628   Document 64   Filed 10/29/21   Page 3 of 12 PageID #: 912

abuse" should not be assumed in requests to depose high-level corporate employees. *Id.* In *Serrano*, the court explained its decision in *Bush v. Dictaphone Corp.*, 161 F.3d 363 (6th Cir. 1998), a case in which the district court prevented the deposition of certain corporate officers and the Sixth Circuit concluded the decision "seem[ed] a reasonable way to balance [plaintiff's] right to discovery with the need to prevent 'fishing expeditions.'" *Id.* at 902 (quoting *Bush* at 367). The district court should balance the burdens on the deponent with the need for access to information relevant to the case to ensure compliance with Rule 26(c)(1). *Id.*

This District Court has had opportunities to apply the Sixth Circuit's reasoning to cases involving depositions of high-level executives. In *First Fidelity Capital Markets, Inc. v. Reliant Bank, et al.*, 2019 BL 493175 (M.D. Tenn. June 24, 2019)[3], the Court recognized that consideration of a corporate officer's knowledge is appropriate but only when balanced with a showing of actual harm under Rule 26(c)(1). In *First Fidelity*, the executives asserted that they had no unique personal knowledge of the claims, but they did not demonstrate a particular harm in taking their depositions.

In *Fox v. Amazon.com, Inc.*, No. 3:16-cv-03013, Doc. #80 (M.D. Tenn. Sept. 21, 2017)[4], the Court recognized its authority to relieve any undue burden on a responding party under FRCP 26(b)(2) and its inherent authority to manage litigation as "the desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Id.* at PageID #832 (citing *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting *Scales v. J.C. Bradford*, 925 F.2d 901, 906 (6th Cir. 1996)). In *Fox*, the Court concluded that Jeff Bezos, CEO of the defendant, would not be

---

[3] Defendant has attached a copy of this unpublished decision as Exhibit 1.

[4] Defendant has attached a copy of this unpublished decision as Exhibit 2.

4

required to appear at a deposition despite being the only recipient of e-mails from customers reporting product safety issues. The Court was persuaded by defense counsel's representation that Mr. Bezos had no involvement in the events at issue and that his deposition was not proportional to the burden and inconvenience on Amazon and Mr. Bezos. *Id.* at PageID #834. Plus, there were individuals who were deposed by Plaintiff that could testify to the defendant's response to the e-mails in question. *Id.* In the same decision, the Court permitted depositions of other Amazon executives based on e-mails from those executives indicating that there were more details behind the "decision and next steps" related to the product at issue and that the executives were willing to have "further discussions, answer questions or meet with the recipients of the email." *Id.* at PageID #835.

Finally, ironically enough, in *The Lampo Group, LLC v. Paffrath, et al.*, No. 3:18-cv-1402, (Doc. #91) (M.D. Tenn. November 1, 2019)[5], the defendants also sought to depose Mr. Ramsey as the "chairman and Chief Executive Officer" of Lampo. However, the Court denied the defendants' request because Mr. Ramsey was not a party and represented that (1) he did not have any personal knowledge or involvement in the matters at issue, (2) he had not had any dealings nor had he corresponded with the defendants in any way, (3) the information sought by the defendants could be obtained from the six corporate representatives that they already planned to depose, (4) and the defendants only sought the deposition for the purpose of harassing him, unreasonably interfering with his business obligations to Lampo, and unreasonably interfering with Lampo's business operations. *Id.* at PageID #1048-51. The Court determined that Mr. Ramsey had shown good cause for a protective order, explaining:

> There are individuals with whom [d]efendants can explore the facts of this dispute. Given that those individuals have knowledge about the

---

[5] Defendant has attached a copy of this unpublished decision as Exhibit 3.

> facts and circumstances of this dispute that Mr. Ramsey maintains he
> does not have, taking Mr. Ramsey's deposition now presents a
> substantial and unreasonable burden.

*Id.* at PageID #1051. The Court also expressed concerns that the defendants were using the deposition of Mr. Ramsey "as an oppressive bargaining chip, contrary to the purpose that deposition requests are meant to serve." *Id.* (quoting *Serrano* at 902).

### III. Analysis

At issue in this discovery dispute is the application of the Righteous Living Core Value. Plaintiff contends that it is necessary to depose Mr. Ramsey to determine how Righteous Living has been applied because he has unique knowledge and her characterization that Mr. Ramsey calls all the shots at the Company. This is nothing more than Plaintiff's bald assertion as the discovery indicates the complete opposite is true. At the case management conferences in this case, Defendant has asserted Rule 26(c)(1) grounds for precluding Mr. Ramsey from testifying including undue burden, annoyance and embarrassment.

In determining undue burden, courts balance the necessity of the discovery with the burden to the party seeking protection. There is no need for Plaintiff to depose Mr. Ramsey to get a complete record of the application of the Righteous Living Core Value as it relates to this case. The Defendant's Human Resources Committee ("HRC") and its Operating Board have made all decisions related to violations of Righteous Living during the time period relevant to this case, as Defendant testified in its interrogatory responses. Defendant also testified that the HRC made the decision to terminate Plaintiff's employment and provided the name of all six (6) members of the HRC involved in the decision. Plaintiff deposed five (5) of the six (6) members of the HRC including Executive Director of Human Resources, Armando Lopez. Plaintiff deposed Mr. Lopez a second time as a 30(b)(6) designated witness to testify on behalf of the

Company regarding Plaintiff's termination from employment. Plaintiff also deposed Michael Finney, Plaintiff's supervisor at the time of her termination.

In addition to the depositions, Defendant provided Plaintiff with every non-privileged e-mail related to Plaintiff's termination. The first e-mail was on June 18, 2020 at 4:44 in which Plaintiff informed the Company that she was unmarried and pregnant. Mr. Lopez forwarded that e-mail to the HRC and copied Mr. Ramsey and Mr. Finney at 4:46 on June 18, 2020. All of the HRC members (with the exception of Jack Galloway who was on vacation) responded to Mr. Lopez' email within the next hour and agreed to handle Plaintiff's situation like every other employee who violated the Righteous Living Core Value by engaging in premarital sex. Some HRC members commented on the fact that Plaintiff informed the Company by e-mail rather than an in-person meeting. On the next day and *after* the HRC members e-mailed their consensus on the decision, Mr. Ramsey sent the following e-mail to the HRC:

> So sad. The reason she sent an e-mail is she is scared and embarrassed. Jen or Suzanne please pick up the phone and call her today. Love her. Tell her we will work this out with her next week but she will be loved and cared for. Then next week we will follow the steps we did before. Lots of grace, care for the child, money, counseling, pastor support. We were thorough because that is the right thing to do.

After the HRC made the decision to treat Plaintiff with consistency, HRC members Suzanne Simms and Jen Sievertsen met with Plaintiff to discuss the situation and to confirm that she had engaged in premarital sex. On June 23, 2020, Ms. Simms then e-mailed a report of the meeting and the HRC's decision to give Plaintiff one year of severance and full medical coverage for her and her baby to Mr. Ramsey. Mr. Ramsey replied:

> Agreed. Finney and Armando should not talk.[6] As a matter of fact would be good if one of them is not there. Don't want her to feel ganged up on. You handle this with great compassion and ask her what more we can do to love her well. But this is obviously contrary to our values.

---

[6] Mr. Lopez spoke during the meeting in which Plaintiff was terminated, but Mr. Finney was not present.

These two (2) emails from Mr. Ramsey are the extent of his involvement in the entire situation involving Ms. O'Connor. The evidence shows that he did not meet with the HRC. He did not speak to anyone in person about Ms. O'Connor. He never had a one-on-one conversation with Ms. O'Connor. He provided guidance to the HRC *after* they made the decision to terminate Plaintiff and he agreed with their decision to offer one year of severance. Mr. Ramsey is not a member of the HRC. The HRC did not meet in person to decide whether to terminate Ms. O'Connor - it only met to decide the severance amount to offer her. Mr. Ramsey was not present at the meeting. Plaintiff has not even deposed all members of the HRC that made the decision. The sum total of Mr. Ramsey's involvement is in two (2) emails – a deposition of him will reveal nothing more than the e-mails as no member of HRC talked to him about the e-mails or what he meant by them.

Plaintiff also contends that she must depose Mr. Ramsey to get information that apparently she believes she cannot get from anyone else with respect to the 14 individuals identified as potential comparators. Defendant provided two (2) 30(b)(6) witnesses to testify as to the details of each individual's employment. Defendant provided documents related to the termination or discipline decision of all 14 individuals. The majority of the decisions of the 14 potential comparators were made by the HRC while two (2) of them were made by the Operating Board. Plaintiff has not deposed all of the members of the HRC or the Operating Board involved in the decisions, but Ms. Sievertsen, Ms. Simms, Mr. Floyd and Mr. Galloway were all on the HRC and the Operating Board at the time of the decisions and Mr. Lopez, while not on the Operating Board, was on the HRC at the time of each decision. Plaintiff did not request to depose any other Company witnesses other than Ms. Sievertsen, Ms. Simms, Mr. Galloway, Mr. Floyd, Mr. Lopez and Mr. Finney as well as the 30(b)(6) witnesses. Unlike the plaintiffs in *Fox*,

8

Plaintiff had access to all of the members of the HRC and the 30(b)(6) witnesses – not a single one of them confirmed her unfounded suspicion that Mr. Ramsey was the actual decision maker.

Mr. Ramsey's lack of unique knowledge has been established by the nine (9) depositions taken in this case. This lack of unique knowledge (while not dispositive) is relevant in determining whether Defendant has shown an undue burden per FRCP 26(c)(1). Mr. Ramsey filed an affidavit in the case *State of Washington v. Reed Hein & Associates et al.*, No. 21CV-267 (Circuit Court for Williamson County, Tennessee, August 27, 2021)[7] which is attached as Exhibit 4. It proves that Mr. Ramsey spends about five (5) hours each weekday preparing for and appearing on his nationally syndicated radio program. This is in addition to his management duties as the CEO of the Defendant and extensive travel for speaking engagements and other events. If Mr. Ramsey is required to take time away from his radio show or running the Company to provide testimony on matters that he has no unique knowledge of (particularly when there are a number of executives with the same or greater knowledge who serve on the committees that made the decisions), it imposes an undue burden on the Company. Mr. Ramsey's involvement in Plaintiff's termination was exactly what one would expect of a CEO – his subordinates made the decision to terminate Plaintiff, they informed Mr. Ramsey and he provided guidance on how to execute the decision. If this level of involvement makes a CEO subject to a deposition, then leaders of companies should avoid all knowledge of terminated employees and the severance they are offered or else risk being involved in all litigation brought by former employees of whom they have no personal knowledge.

---

[7] Due to the Court's willingness to address this matter expediently because of the fast-approaching dispositive motion deadline and the fact that Mr. Ramsey has been out of town and unavailable for the past two (2) days, Defendant was unable to secure an affidavit from Mr. Ramsey. Defendant submits, instead, the sworn Declaration of Mr. Ramsey that was submitted only two (2) months ago in another matter to provide the Court with an idea of Mr. Ramsey's duties and limited availability.

In addition to the undue burden, there is no question that Plaintiff's motivation in deposing Mr. Ramsey is *not* to discover information relevant to her case – she has deposed a number of executives, received written discovery and been provided nearly 3000 pages of documents that have provided her with extensive information that is both relevant and irrelevant to her case. Instead, Plaintiff apparently has a personal vendetta against Mr. Ramsey. Defendant deposed Rob Kuskin, (Plaintiff's fiancée) and he testified that Plaintiff had what he described as an "unhealthy" pattern of reading articles about the Company and Mr. Ramsey. In messages between Mr. Kuskin and Plaintiff in which Plaintiff is sharing and commenting on various media coverage of Mr. Ramsey, Mr. Kuskin says that "Dave will have to retire eventually if he wants his kids to have a company to run."

Plaintiff had extensive dialogue with Amy Fritz, the spouse of a former employee of Defendant. Plaintiff has deleted all of the messages during the course of this case despite the fact that they contain relevant information that Defendant requested in discovery. Defendant was forced to subpoena the messages from Ms. Fritz who had deleted some of her comments. Still, what is left of the exchanges between Ms. Fritz and Plaintiff reveal Plaintiff's intention to try to embarrass and annoy Mr. Ramsey. There are somewhere between 600 and 700 messages between Plaintiff and Ms. Fritz from January 20, 2021 through June 8, 2021. The messages that are visible (and apparently those that are not) relate to the Company or Mr. Ramsey including media coverage related to Mr. Ramsey, media coverage of Plaintiff (including her own social media posts), this lawsuit, and Chris Hogan and other former or current employees of the Company. There are also messages (presumably from Twitter) between Ms. Fritz and Plaintiff in which Plaintiff says "I can't imagine they'd be willing to pay what I would want in order to keep quiet" referring to Ramsey.

Plaintiff has also involved Melissa Hogan, former spouse of Chris Hogan, former Ramsey employee and personality, in her lawsuit. Ms. Hogan provided a declaration in this case that has nothing to do with Plaintiff but instead details her ex-husband's scandalous behavior and Ms. Hogan's disapproval of how the Company handled the situation. Plaintiff and Ms. Fritz discussed this in detail in their messages as well. Plaintiff has sought a disproportionate amount of discovery related to Mr. Hogan's employment which dwarfs the discovery sought about Plaintiff and the eight (8) other employees who were disciplined for engaging in premarital sex.

Finally, Plaintiff has sought attention from the media and has posted derogatory comments about Mr. Ramsey and the Company on social media, some of which she has deleted and not provided to Defendant despite discovery requests and her obligation to preserve documents. She has even reached out to Mr. Ramsey as recently as June 2, 2021 by e-mail asking him for an "off record sit down" with Plaintiff, her fiancée and Mr. Ramsey's wife. All of this indicates that Plaintiff is more interested in Mr. Ramsey than relevant evidence related to her lawsuit.

While Defendant is adamant that Mr. Ramsey should not be deposed and that it has established grounds for the protection provided in FRCP 26(c)(1), Defendant is aware that the Court intends to make a decision quickly with no further input of the parties. Thus, should the Court conclude that Mr. Ramsey must be deposed, Defendant requests, in the alternative, that the Court issue restrictions on the deposition to avoid embarrassment and harassment of the witness. Appropriate restrictions include the deposition be designated as Attorneys Eyes Only per the Confidentiality Order in this case (that is, Plaintiff may not be present), that the deposition be limited in scope to the witnesses knowledge of Plaintiff's termination and the potential comparators identified in discovery and that it be limited to one (1) hour.

Respectfully submitted,

/s/Leslie Sanders
Leslie Sanders (TN #18973)
Daniel Crowell (TN #31485)
WEBB SANDERS PLLC
611 Commerce Street
Suite 3102
Nashville, TN 37203
Telephone: (615) 915-3300
Fax: (866) 277-5494
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I certify that, on October 29, 2021, I filed *Defendant's Brief Regarding Discovery Dispute* via the Court's electronic filing system, which will automatically notify and send a copy of that filing to:

Heather Moore Collins
Anne Bennett Hunter
Ashley Shoemaker Walter
Collins & Hunter PLLC

*Attorneys for Plaintiff*

/s/Daniel Crowell
Daniel Crowell (TN #31485)
*Attorney for Defendant*