# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| CAITLIN O'CONNOR, | ) | |
| | ) | Case No. 3:20-cv-00628 |
| Plaintiff, | ) | |
| | ) | District Judge Richardson |
| v. | ) | |
| | ) | Magistrate Judge Frensley |
| THE LAMPO GROUP, LLC, | ) | |
| | ) | Jury Demand |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, The Lampo Group, LLC, by and through the undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.01(a)(2), files this memorandum of law in support of its Motion for Summary Judgment (Doc. #66). The Court has already dismissed Plaintiff's religious discrimination and related retaliation claims in Count V of the Third Amended Complaint (Doc. #37). (Doc. #55). Defendant now seeks dismissal of Plaintiff's remaining claims:

- Count I – Interference and retaliation under the Family and Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA");

- Count II – Disparate treatment based on sex/pregnancy and retaliation under the Tennessee Human Rights Act, T.C.A. §4-21-101*, et seq.* ("THRA");

- Count III – Violation of the Tennessee Maternity Leave Act, T.C.A. §4-21-408 ("TMLA");

- Count IV – Disparate treatment based on disability and retaliation under the Tennessee Disability Act, T.C.A. §8-50-103, *et seq.* ("TDA");

- Count VI – Disparate treatment based on sex/pregnancy and retaliation under Title VII of

the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.,* ("Title VII"); and

- Count VII – Disparate treatment based on disability and failure to accommodate under the Americans with Disabilities Act, 42. U.S.C. §12101, *et seq.,* ("ADA").

(Third Amended Complaint).

## I.     LEGAL STANDARDS

### A.  Summary Judgment

The Court recently restated the summary judgment standard in *Grizzard v. Nashville Hosp. Capital, LLC*:

> Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id*. at 248 . On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id*.
>
> A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).
>
> The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 628 .
>
> A party asserting that a fact cannot be or genuinely is disputed—*i.e.*, a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A) . In reviewing a motion

2

for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248 ). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

2021 BL 288084 at *3-4 (M.D. Tenn. July 30, 2021).[1]

To survive summary judgment, Plaintiff cannot rely on her own personal opinions, conjecture, or conclusory assertions or accusations. *Southall v. USF Holland, Inc.,* 2018 BL 452011 at *10 (M.D. Tenn. Dec. 5, 2018).[2] Nor can Plaintiff rely upon affidavit testimony that contradicts earlier sworn testimony, whether made in a deposition or interrogatory answers. *Evola v. City of Franklin*, 18 F. Supp. 3d 935, 939 (M.D. Tenn. 2014).

**B. Indirect Evidence**

Plaintiff has not adduced any direct evidence in this case, so her remaining claims (except failure to accommodate under the ADA in Count VII) are subject to the burden-shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).[3] The Court recently provided an extensive overview of the *McDonnell Douglas* framework in *Grizzard,*

---

[1] Defendant has attached a copy of this unpublished decision as Exhibit 1.

[2] Defendant has attached a copy of this unpublished decision as Exhibit 2.

[3] *See, e.g., Jaszczyszyn v. Advantage Health Physician Network,* 504 Fed. Appx. 440, 447-48 (6th Cir. 2012) (*McDonnell Douglas* burden-shifting framework applies to FMLA interference & retaliation claims); *Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police,* 91 F.3d 836, 842-43 (6th Cir. 1996) (same for Title VII claims); *Blue v. Fed. Express Corp.*, 66 Fed. Appx. 542, 543 (6th Cir. 2003) (same for ADA discrimination claims); *Singh v. Vanderbilt Univ. Med. Ctr.,* 2020 BL 16146 at *12 (M.D. Tenn. Jan. 16, 2020) (same for ADA retaliation claims) (copy attached as Exhibit 3).

3

explaining that Plaintiff first bears the burden under *McDonnell Douglas* of establishing a prima facie case of discrimination or retaliation. *Grizzard* at *9-13.

If Plaintiff can establish a prima facie case of discrimination or retaliation, the burden shifts to Defendant to show some legitimate, non-discriminatory/retaliatory reason for her termination. *Id.* at *10 (citing *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)). This is only a burden of producing "some evidence of permissible motive." *Id.* (quoting *Harris v. City of Akron, Ohio*, 836 Fed. Appx. 415, 419 (6th Cir. 2020)). As the Court explained:

> To meet that burden of mere production, "the defendant need not persuade the court that it was actually motivated by the proffered reason[s]." *Burdine*, 450 U.S. at 254 . Rather, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." To raise such genuine issue, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection[, which] must be legally sufficient to justify a judgment for the defendant." *Id.* at 255 . "The defendant only has to present [evidence of] 'clear and reasonably specific' reasons that will 'frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.'" *Harris*, 836 F. App'x at 419 (quoting *Burdine*, 450 U.S. at 258).

*Id.*

Once Defendant establishes a legitimate, non-discriminatory/retaliatory reason for Plaintiff's termination, the burden shifts back to her to show that Defendant's proffered reason is a pretext. *Id.* at *10-11 (citing *McDonnell Douglas* at 802-04; *Burdine* at 255). This is a burden of persuasion that "merges with the ultimate burden of persuading the court that [Plaintiff] has been the victim of intentional discrimination [or retaliation]." *Id.* at *11 (quoting *Burdine* at 256). "To defeat a summary judgment motion in such circumstances, [Plaintiff] must produce sufficient evidence from which the jury could reasonably reject [Defendant's] explanation and infer that [Defendant] intentionally discriminated [or retaliated] against [her]." *Id.* at *11 (citing *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001)).

4

To prove pretext and ultimately that Defendant intentionally discriminated or retaliated against her, Plaintiff must offer evidence that (1) Defendant's stated reason for terminating her employment had no basis in fact, (2) the stated reason did not actually motivate her termination, or (3) the stated reason was insufficient to warrant her termination. *Id.* at *11. This three-part test is not applied rigidly. *Id.* "Rather, '[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?'" *Id.* at *11 (quoting *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012)). If Plaintiff can prove this, she meets her burden of showing that Defendant's stated reason was not its true reason. *Id.*

> But something more is required of the plaintiff. That is, the plaintiff must address the second component of pretext, i.e., that the actual reason was discriminatory. That is, as indicated above, "[t]o demonstrate pretext, a plaintiff must show both that the employer's proffered reason was not the real reason for its action, and that the employer's real reason was unlawful." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 , 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993), and *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). In other words, if the burden has shifted back to the plaintiff, the plaintiff's trial burden would be to show by a preponderance of the evidence that the defendant's reasons were not its true reasons and were instead actually a pretext for retaliation. *Kirilenko-Ison*, 974 F.3d at 661…. In some cases, the evidence that the defendant's proffered reason was not the proffered reason will serve equally as evidence that the real reason was discriminatory, and vice versa. After all, evidence may suggest that the defendant's proffered (non-discriminatory) reason was not the real reason precisely because it suggests that the real reason was discriminatory; likewise, evidence may suggest that the defendant's proffered (non-discriminatory) reason was discriminatory precisely because it suggests that (suspiciously) the proffered reason was not the real reason. But under Sixth Circuit law, the Court must be mindful to require evidence showing both things, even if it turns out to all be the same evidence.

*Id.* at *11-12.

In the summary judgment context, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* analysis. *Id.* at *12.

In *Grizzard*, the Court ultimately distilled the summary judgment standard applicable to indirect evidence cases to the following:

> To obtain summary judgment on Title VII or THRA claims grounded exclusively on the so-called "indirect-evidence" theory, the defendant must either (i) show that there is no genuine issue of material fact as to at least one of the elements of the plaintiff's prima facie case (such that the defendant necessarily is entitled to judgment as a matter of law based on the absence of that element); or, failing that, (ii) (a) make an evidentiary showing that there was a legitimate, nondiscriminatory reason for its alleged actions and then (b) show that there is no genuine issue of material fact as to pretext (such that the defendant necessarily is entitled to judgment as a matter of law based on the absence of pretext). On the other hand, the plaintiff will avoid summary judgment if: (i) either (a) the defendant fails to meet its initial burden to show the lack of a genuine issue of material fact as to any one or more elements of the plaintiff's prima facie case, or (b) the plaintiff presents sufficient evidence to demonstrate a genuine issue of material fact as to any element(s) of such prima facie case as to which the defendant met its initial burden to show the lack of a genuine issue of material fact; and (ii) either (a) the defendant cannot make an evidentiary showing of a legitimate, nondiscriminatory reason for its alleged actions, or, if the defendant can make such a showing, (b) the plaintiff demonstrates that there is a genuine issue of material fact as to pretext.

*Id.* at *12-13.

## II.      STATEMENT OF FACTS

### A. Defendant's Prohibition Against Premarital Sex

Defendant is a private, closely held company that specializes in creating and delivering education programs for individuals and organizations. (Declaration of Armando Lopez ("Lopez") at ¶2)[4]. Defendant is best known for providing biblically based financial counseling programs that help individuals get out of debt, manage their money well and achieve financial success. (Id. at ¶3). Defendant's mission is stated as follows: "[w]e provide biblically based, commonsense education and empowerment that give hope to everyone in every walk of life."

---

[4] Defendant has attached a copy of the Declaration of Armando Lopez as Exhibit 4.

6

(Id. at ¶4).

Defendant has a set of 14 principles known as "Core Values" that embody the philosophy of the company. (Id. at ¶5). Rather than relying on an extensive list of work rules or a lengthy employee handbook as is common in many companies, Defendant uses the Core Values as the guiding principles for all decisions made at the company. (Id.). One of Defendant's Core Values is "Righteous Living", expressed as "[w]e believe character matters. All the time." (Id. at ¶6; Third Amended Complaint at ¶23)[5]. To reinforce the Righteous Living Core Value, Defendant also has a "Company Conduct" section in its Employment Policies and Procedures that states the following:

> The image of Ramsey Solutions is held out to be Christian. Should a team member engage in behavior not consistent with traditional Judeo-Christian values or teaching, it would damage the image and the value of our good will and our brand. If this should occur, the team member would be subject to review, probation, or termination.

(Third Amended Complaint at ¶21). Defendant considers premarital sex to be inconsistent with the Righteous Living Core Value. (Defendant 2315[6]; Lopez at ¶6). Therefore, Defendant prohibits its employees from engaging in premarital sex while employed there. (Lopez at ¶7).

Defendant manages its organization through committees who interpret and implement the Core Values as situations arise. (Id. at ¶8). Employment-related matters, including employee discipline and employment policies, are typically decided and implemented by the Human

---

[5] On August 6, 2021, Plaintiff provided an unsolicited sworn declaration ("O'Connor Declaration"), which Defendant has attached as Exhibit 5. In this declaration, Plaintiff appears to disavow her deposition testimony. (Id. at ¶¶ 5, 7, 11, 13, 14, 15, 17, 20, 31, and 33). Plaintiff also seems to suggest that her statements drafted by or with assistance from her attorneys are more reliable than her deposition testimony, including the Third Amended Complaint (and every earlier complaint that she filed with the Court) (id. at ¶18), her Interrogatory Responses (id. at ¶30) and documents created by the EEOC (id. at ¶¶ 28-29).

[6] Defendant has attached a copy of this statement as Exhibit 6, which was provided as a supplemental answer to Interrogatory No. 10 of Plaintiff's First Set of Interrogatories.

Resources Committee ("HRC"). (Id. at ¶9). The HRC consists of the Human Resources leader and 4-5 other upper-level managers who rotate on and off the committee at regular intervals. (Id.). The company's day-to-day operations are managed by the Operating Board. (Id. at ¶10). Although the Operating Board does not typically make employment-related decisions, if there is a new issue the company has not dealt with or the employee in question is an executive or a public-facing personality, the Operating Board may be involved in the decision-making process. (Id.). The Operating Board is a larger group (typically 15-17 employees) comprised of the executive leaders and owners of the company. (Id.).

## B. Plaintiff's Employment with Defendant

Defendant employed Plaintiff as an administrative assistant from February 22, 2016 to June 25, 2020. (Third Amended Complaint at ¶¶ 12, 20). On June 18, 2020, Plaintiff emailed the following to Armando Lopez, the company's Director of Human Resources and an HRC member:

> I needed to let you know that I'm 12 weeks pregnant. I understand that being unmarried and expecting is frowned on here, but the reality of the situation is this is what I'm walking through right now. This is obviously uncharted territory for me so I'm not sure what my next steps are regarding sharing the news with my leader, getting FMLA & ADA paperwork in case its needed in the future, etc.

(Id. at ¶16). Mr. Lopez forwarded Plaintiff's e-mail to his fellow HRC members: Jack Galloway, Suzanne Simms, Jen Sievertsen, Mark Floyd and Sarah Sloyan. (Id. at ¶12). Mr. Lopez also forwarded Plaintiff's e-mail to her supervisor, Michael Finney, and the company's CEO, Dave Ramsey. (Lopez at ¶12). Mses. Simms and Sievertsen met with Plaintiff on June 24, 2020 and confirmed that she had engaged in premarital sex. (Id.).

Historically, Defendant has terminated every employee known to have engaged in premarital sex. (Lopez at ¶14; Plaintiff's Motion to Reconsider (Doc.#56) at FN1). So, to remain consistent, the HRC decided to terminate Plaintiff's employment effective June 25, 2020. (Lopez

8

at ¶13). After terminating Plaintiff's employment on June 25, 2020, Plaintiff's duties have been absorbed by existing employees and Defendant has not hired anyone to replace her. (Id. at ¶18).

Since 2016, the HRC has become aware of eight employees (including Plaintiff) who have engaged in premarital sex during their employment with the company, five men and three women. (Lopez at ¶14). The HRC decided to terminate the employment of all eight employees, although some opted to resign in lieu of termination. (Id. at ¶14). In addition to those eight employees, one other employee (a woman) was also terminated for engaging in premarital sex, but that decision was not made by the HRC. (Id. at ¶16).

### C. Pregnancy-Related Leaves and Accommodations By Defendant

Defendant provides employees with up to 16 weeks of job-protected maternity leave, regardless of whether they are FMLA eligible. (Id. at ¶19). If employees are FMLA eligible (meaning they have worked at the company for at least a year and they have worked 1,250 hours in the year preceding maternity leave), Defendant pays their full salary and continues to contribute to their benefits for the first 12 weeks of their maternity leave. (Id.). If an employee remains on maternity leave past 12 weeks, the company continues to provide them with profit-sharing (if eligible) for the final four weeks. (Id.).

In addition to maternity leave, Defendant's pregnant employees are provided with other benefits like reserved parking spaces close to the company's entrance, work schedule flexibility to accommodate doctor's visits, work-from-home arrangements, participation in the Healthy Maternity Program which provides counseling and guidance for expectant mothers, and reimbursement for pregnancy-related wellness programs such as exercise and yoga. (Id. at ¶21).

Maternity and pregnancy-related leaves are a common occurrence among employees of Defendant. Since January 1, 2018, Defendant has granted approximately 86 maternity leaves. (Id.

at ¶20).

### D. Plaintiff's Allegations Against Defendant

Plaintiff claims that she requested FMLA leave and a disability accommodation in her June 18 e-mail to Mr. Lopez when she wrote "I'm not sure what my next steps are regarding ... getting FMLA & ADA paperwork in case its needed in the future, etc." (Third Amended Complaint at ¶16). Although Plaintiff now claims that she was disabled on June 18 by a "geriatric pregnancy" (Transcript of the Deposition of Caitlin O'Connor on June 22, 2021 ("O'Connor Deposition") at 255:19-23)[7], she never expressly notified Defendant that she had a geriatric pregnancy nor provided Defendant with any information about how that geriatric pregnancy limited her or otherwise constituted a disability. (O'Connor Declaration at ¶29, Attachment 6). Following her June 18 e-mail, Plaintiff did not have any further communications with anyone at Defendant regarding her alleged disability, need for a disability accommodation, or need for FMLA leave. (O'Connor Deposition at 255:19-257:9). When Plaintiff inquired about FMLA and ADA paperwork in her June 18 e-mail, she did not know whether she would request leave but wanted the paperwork to take to her doctor in case she needed it. (Id.).

Defendant propounded interrogatories to Plaintiff asking her to explain the factual basis for her claim that Defendant terminated her employment based on sex, pregnancy, disability and in retaliation for requesting FMLA and TMLA leave. (Plaintiff's Responses to Defendant's First Set of Interrogatories at ¶¶12, 13, 14, and 16).[8] Plaintiff provided the following response to each of those interrogatories, which she subsequently filed with the Court and expressly reaffirmed in her sworn declaration:

---

[7] Defendant has collectively attached all cited excerpts of this deposition transcript as Exhibit 7.

[8] Defendant has attached a copy of Plaintiff's Responses to Defendant's First Set of Interrogatories as Exhibit 8.

Plaintiff's sincerely held Christian belief is that Christianity is not meant to be punitive, hateful, vengeful, or judgmental. Accordingly, her Christian belief is that God gave a woman the ability to procreate, and that ability to procreate was not restricted by a contract, i.e. marriage or employment. Moreover, Plaintiff does not believe that her identification as a Christian gives her the right to judge and condemn other Christians or humans for how they choose to carry out their one dictate from Jesus, that is, to love one another. Her view of Christianity does not require her to invade or inquire or know the specifics of what other people do or do not do in their bedroom or when they do it, much less pass morality judgment on other people. Moreover, Plaintiff sincerely believes that she should be able to seek the support of her Christian community during her pregnancy without fear of termination from her employment.

(Doc. #26-2; O'Connor Declaration at ¶30, Attachment 7 at ¶¶11, 12, 13, 14, and 16).

## III.    ARGUMENT

The Court should grant summary judgment against Plaintiff with respect to all remaining claims in the Third Amended Complaint. There are no genuinely disputed material facts and Defendant is entitled to judgment as a matter of law.

### A.  Interrogatories No. 12, 13, 14, and 16

Before turning to Plaintiff's specific claims, we write to specifically address Plaintiff's answers to Interrogatories No. 12, 13, 14, and 16 of Defendant's First Set of Interrogatories. *See* Exhibit 9. In those interrogatories, respectively, Defendant asked Plaintiff to provide the factual bases for her claims that the company terminated her employment based on her request for FMLA and TMLA leave, sex, pregnancy, and disability. As explained in Section II, *supra*, Plaintiff answered those four interrogatories by reference to her answer to Interrogatory No. 11.

Plaintiff affirmed those answers under oath *twice*. First, in the verification page attached to Defendant's First Set of Interrogatories. (Id). And second, in the bizarre declaration that Plaintiff submitted following her deposition in which she seemingly disavowed her deposition testimony and reaffirmed her interrogatory answers as accurate. (O'Connor Declaration at ¶30, Attachment 7)("After my deposition, I also reviewed all of my interrogatory responses. Each

11

response is correct. (Attachment 7)." She also filed them with the Court in support of her effort to defeat Defendant's original motion to dismiss. (Doc. #26-2).

Plaintiff's answers to Interrogatories No. 12, 13, 14, and 16 provide an independent basis for dismissing her remaining claims against Defendant in the Third Amended Complaint. They do not provide a sufficient factual basis for any of Plaintiff's remaining claims, and it is settled law in the Sixth Circuit that a party cannot withstand summary judgment based on their own conflicting, sworn testimony. *See, e.g., Aerel, S.R.L. v. PCC Airfoils, LLC,* 448 F.3d 899, 906-09 (6th Cir. 2014); *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453, 459-60 (6th Cir. 1986); *Evola v. City of Franklin,* 18 F. Supp. 3d 935, 939 (M.D. Tenn. 2014); *Dunavant v. Frito Lay,* 2013 BL 57174 at *4-5 (M.D. Tenn. Mar. 5, 2013).[9] To the extent that this situation is attributable to mistakes or negligence by Plaintiff's attorneys, that is no excuse. *See, e.g., Couch v. Certified Flooring Installation, Inc.,* 439 F. Supp. 3d 964, 973-73 (S.D. Ohio 2020).

While dismissal of Plaintiff's remaining claims on this ground may seem drastic, it is warranted under the circumstances because Plaintiff has confirmed her interrogatory answers under oath *twice*, including most recently in her completely unsolicited declaration, and even filed them with the Court. If statements made under oath have any meaning, the Court should hold Plaintiff accountable for hers by dismissing all of her remaining claims against Defendant.

### B. Sex Discrimination (Title VII & THRA)

Defendant is entitled to summary judgment with respect to Plaintiff's sex discrimination claims[10] in Count II because she cannot establish a prima facie case or pretext.

---

[9] Defendant has attached a copy of this unpublished decision as Exhibit 9.

[10] THRA claims are analyzed like Title VII claims, so we will hereafter speak only of Plaintiff's Title VII claims. *See, e.g., Holland v. LG Elecs. U.S.A., Inc.,* 2021 BL 13148 at *4-5 (M.D. Tenn. Jan. 12, 2021). Defendant has attached a copy of this unpublished decision as Exhibit 10.

12

## 1. **Prima Facie Case**

Plaintiff cannot establish a prima facie case of sex discrimination[11] because she cannot satisfy the fourth element—that Defendant treated similarly situated employees, outside of her protected class, more favorably than her.

Defendant is aware of nine employees (including Plaintiff) who have engaged in premarital sex since January 1, 2016, five men and four women. All nine employees were terminated or resigned in lieu of termination. As Plaintiff recently conceded in her motion for reconsideration, discovery has shown that "a person will, without exception, be terminated for engaging in pre or extra martial intercourse based on Ramsey Solutions' religious righteous living core value…." (Plaintiff's Motion to Reconsider (Doc.#56) at FN1). Plaintiff was treated like everybody else.

## 2. **Pretext**

Even if Plaintiff could establish a prima facie case of sex discrimination, she cannot establish pretext. The evidentiary record overwhelmingly favors Defendant. All employees of Defendant known to have engaged in premarital sex have been terminated or resigned in lieu of termination, most of those employees were men, and three of the six HRC members who decided to terminate Plaintiff's employment were women.

No jury could reasonably conclude that Defendant terminated Plaintiff's employment based on sex, rather than for violating the company's prohibition against premarital sex.

---

[11] To establish a prima facie case of sex discrimination, Plaintiff must show that (1) she is a member of a protected class, (2) she was terminated by Defendant, (3) she was qualified for her position with Defendant, and (4) Defendant treated similarly situated employees, outside of her protected class, more favorably than her. *See, e.g., Peltier v. United States,* 388 F.3d 984, 987 (6th Cir. 2004). The fourth element can also be established by showing that Plaintiff was replaced by someone outside of her protected class, *see, e.g., id.,* but that is inapplicable here.

13

## C.  Pregnancy Discrimination (Title VII & THRA)

Defendant is entitled to summary judgment with respect to Plaintiff's pregnancy discrimination claims in Count II because she cannot establish pretext.[12] Again, the evidentiary record overwhelmingly favors Defendant.

All employees of Defendant known to have engaged in premarital sex have been terminated or resigned in lieu of termination, most of those employees were men and not pregnant, and three of the six HRC members who decided to terminate Plaintiff's employment were women.

Defendant also voluntarily provides substantial benefits to employees who are pregnant or recently gave birth, including 16 weeks of job-protected maternity leave for employees who are not FMLA eligible, 12 weeks of paid maternity leave plus 4 additional weeks of unpaid (except for profit sharing) leave for employees who are FMLA eligible, reserved parking spaces close to the company's entrance, work schedule flexibility to accommodate doctor's visits, work-from-home arrangements, participation in the Healthy Maternity Program which provides counseling and guidance for expectant mothers, and reimbursement for pregnancy-related wellness programs such as exercise and yoga. Since January 1, 2018, Defendant has employed and offered those benefits to at least 86 pregnant women.

The only evidence that Plaintiff can adduce in support of her pregnancy discrimination claim is temporal proximity—that Defendant discovered her pregnancy on June 18, 2020 and

---

[12] Given the strength of Defendant's pretext argument, we bypass without conceding that Plaintiff can establish a prima facie case of pregnancy discrimination. Although temporal proximity is the only evidence that Plaintiff has adduced in support of her pregnancy discrimination claim against Defendant, that may be enough to establish a "nexus" for prima facie purposes at the summary judgment phase given that Defendant learned of her pregnancy on June 18, 2020 and terminated her employment one week later on June 25, 2020. *Cox v. Little Clinic of Tenn., LLC,* 2020 BL 439867 at *10-11 (M.D. Tenn. Nov. 12, 2020) (discussing sufficiency of "close temporal proximity"). Defendant has attached a copy of this unpublished decision as Exhibit 11.

14

terminated her employment one week later on June 25, 2020. But that timing is better explained by the fact that Defendant discovered on June 18, 2020 that Plaintiff engaged in premarital sex. And, in any event, it is settled law in the Sixth Circuit that temporal proximity is not enough to survive summary judgment. *See, e.g., Donald v. Sybra,* 667 F.3d 757, 763 (6th Cir. 2012)("[T]he law in this circuit is clear that temporal proximity cannot be the sole basis for finding pretext.").

No jury could reasonably conclude that Defendant terminated Plaintiff's employment based on pregnancy, rather than for violating the company's prohibition against premarital sex.

### D. FMLA Interference & Retaliation

Defendant is also entitled to summary judgment with respect to Plaintiff's FMLA interference and retaliation claims in Count I because she cannot establish pretext.[13]

The only evidence that Plaintiff can adduce in support of her FMLA claims is temporal proximity—that Defendant terminated her employment on June 25, 2020, one week after she e-mailed Mr. Lopez on June 18, 2020:

> I needed to let you know that I'm 12 weeks pregnant. I understand that being unmarried and expecting is frowned on here, but the reality of the situation is this is what I'm walking through right now. This is obviously uncharted territory for me so I'm not sure what my next steps are regarding sharing the news with my leader, getting FMLA & ADA paperwork *in case its needed in the future, etc.*

It is highly doubtful whether Plaintiff's scant reference to a *potential* need for FMLA leave at some point in the future satisfies the FMLA's notice standard. *See, e.g., Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2006); 29 C.F.R. §825.302(c). But regardless, the Sixth Circuit is clear that temporal proximity is not enough to withstand summary judgment. *Donald* at 763.

The remaining evidence in the record uniformly supports summary judgment. All employees of Defendant known to have engaged in premarital sex have been terminated or

---

[13] Given the strength of Defendant's pretext argument, we bypass without conceding that Plaintiff can establish a prima facie case of FMLA interference or retaliation.

15

resigned in lieu of termination, most of those employees were men and not pregnant, and three of the six HRC members who decided to terminate Plaintiff's employment were women. When the other eight employees were terminated or resigned in lieu of termination for engaging in premarital sex, none of them were on FMLA leave, had pending requests for FMLA leave, or had recently returned from FMLA leave. And Defendant voluntarily provides a host of maternity-related benefits to employees, including 16 weeks of job-protected leave to employees who are not FMLA eligible and 12 weeks of paid leave plus 4 additional weeks of unpaid leave to employees who are FMLA eligible. Defendant provided this leave to 86 pregnant and/or new mothers since January 1, 2018.

No jury could reasonably conclude Defendant terminated Plaintiff's employment for the FMLA reference in her June 18 e-mail to Mr. Lopez, rather than for violating the company's prohibition against premarital sex.

### E. TMLA Violation

Defendant is also entitled to summary judgment with respect to Plaintiff's TMLA claim in Count III. Although the TMLA has existed for over 30 years and provides greater benefits in some respects than the FMLA, it is rarely litigated. As recently as 2010, the Eastern District of Tennessee noted that no court had even established legal standards for TMLA claims. *Payne v. Goodman Mfg. Co.,* 726 F. Supp. 2d 891, 907-08 (E.D. Tenn. 2010). And even those sparse authorities disagree. *Payne* reasoned that TMLA claims should be analyzed like THRA claims, given that the TMLA is part of the THRA and the THRA does not reference the FMLA at all. *Id.* However, in another case the following year, the Eastern District of Tennessee analyzed TMLA and FMLA claims together. *Wilkes v. T-Mobile,* 2011 BL 77439 at *8-10 (E.D. Tenn. Mar. 24,

2011).[14] Given that Plaintiff's THRA and FMLA claims are both based on indirect evidence and follow the *McDonnell Douglas* burden-shifting framework, this is a distinction without a difference. Plaintiff's TMLA claim fails for the same reasons as her THRA and FMLA claims, though it is actually even weaker given that her June 18, 2020 e-mail to Mr. Lopez makes no mention of the TMLA at all.

### F. Disability Discrimination (ADA & TDA)

Defendant is also entitled to summary judgment with respect to Plaintiff's disability discrimination claims in Count IV because she cannot establish a prima facie case or pretext.[15]

#### 1. Prima Facie Case

Plaintiff cannot establish a prima facie case of disability discrimination because she cannot satisfy the first, fourth, or fifth elements.[16]

First, Plaintiff cannot establish that she was disabled or regarded as disabled. Plaintiff's purported disability was a "high risk" pregnancy. By that, Plaintiff means that she was 37 years old and pregnant. It is settled law in the Sixth Circuit that pregnancy is not a disability under the ADA and, therefore, cannot support a disability discrimination claim based on either an "actually disabled" or "regarded as" theory. *See, e.g., Latowski v. Northwoods Nursing Ctr.,* 549 Fed. Appx. 478, 487 (6th Cir. 2013). Adding age does not transform Plaintiff's pregnancy into a

---

[14] Defendant has attached a copy of this unpublished decision as Exhibit 12.

[15] TDA claims are analyzed like ADA claims. *See, e.g., Dunn v. Chattanooga Publ'g Co.,* 993 F. Supp. 2d 830, 835-36 (E.D. Tenn. 2014). So, hereafter, we will speak only of Plaintiff's ADA claims, except when specifically addressing the different causation standards.

[16] To establish a prima facie case of disability discrimination, Plaintiff must show that (1) she was disabled or regarded as disabled, (2) she was otherwise qualified for her position, with or without reasonable accommodation, (3) she suffered an adverse employment action, (4) Defendant knew or had reason to know of her disability, and (5) similarly situated employees were treated more favorably. *See, e.g., Becker v. Elmwood Local Sch. Dist.,* 519 Fed. Appx. 339, 342 (6th Cir. 2013).

pregnancy-related disability. Disability requires "a physical or mental impairment that substantially limits one or more major life activities." *Id.* at 486. Plaintiff has not produced any evidence that she suffered from an actual disability when Defendant terminated her employment on June 25, 2020. In fact, Plaintiff seems to disavow it in her June 18 e-mail that requests "ADA paperwork *in case it's needed in the future, etc."* And Plaintiff admitted to the EEOC that her doctor had not provided any documentation of a disability.

Nor has Plaintiff produced any evidence that Defendant regarded her as disabled. Plaintiff's entire disability discrimination claim is premised upon her June 18 e-mail to Mr. Lopez, in which she announced her pregnancy and stated "I'm not sure what my next steps are regarding sharing the news with my leader, getting FMLA & ADA paperwork *in case it's needed in the future, etc.*" (Third Amended Complaint at ¶16) (emphasis added). Again, pregnancy is not a disability under the ADA, so Plaintiff's "regarded as" claim cannot be based simply upon Defendant's awareness of her pregnancy. *See, e.g., Latowski* at 487. Plaintiff's June 18 e-mail does not even mention her age, does not mention any pregnancy-related disabilities, and appears to expressly disavow anything of the sort by requesting "ADA paperwork in case it's needed in the future…."

Second, for similar reasons, Plaintiff cannot establish that Defendant knew or had reason to know that she was disabled. Again, Plaintiff's entire disability discrimination claim is premised upon her June 18 e-mail, which disavows that Plaintiff was disabled and/or needed accommodations when terminated. So, that e-mail cannot be reasonably interpreted as putting Defendant on notice that Plaintiff was disabled. Apparently, Plaintiff claims that Defendant knew her age and should have considered her disabled because she was pregnant. This message is exactly opposite of the mission of the ADA.

18

Third, Plaintiff cannot show that she was treated differently than similarly situated, non-disabled employees. Defendant terminates all employees who engage in premarital sex, without exception. To Defendant's knowledge, when the other eight employees were terminated or resigned in lieu of termination for engaging in premarital sex, none were disabled. Plaintiff was treated like everybody else.

### 2. Pretext

Even if Plaintiff could establish a prima facie case of disability discrimination, she cannot establish pretext. All nine (9) employees of Defendant known to have engaged in premarital sex have been terminated or resigned in lieu of termination. To Defendant's knowledge, other than Plaintiff (allegedly), none of those employees were disabled. And Plaintiff's allegations that Defendant discriminated against her based on an actual or perceived pregnancy-related disability is fundamentally inconsistent with the generous benefits that Defendant voluntarily provides to employees who are pregnant or have recently given birth.

No jury could reasonably conclude that Plaintiff was disabled or regarded as disabled. Nor could a jury reasonably conclude that Defendant terminated Plaintiff's employment because of a disability, rather than for engaging in premarital sex.

### G. Failure to Accommodate (ADA)

Defendant is also entitled to summary judgment with respect to Plaintiff's claim in Count VII that the company failed to accommodate her disability as required under the ADA.

The Sixth Circuit analyzes failure to accommodate claims under the ADA using the direct-evidence framework. *Fisher v. Nissan N. Am., Inc.,* 951 F.3d 409, 416-17 (6th Cir. 2020). Plaintiff bears the initial burden of establishing that she was (1) disabled and (2) otherwise qualified for her position despite her disability, (a) without accommodation from Defendant, (b)

19

with an essential job requirement eliminated, or (c) with a reasonable accommodation. *Id*.

As discussed in Section III(F), *supra*, Plaintiff was not actually disabled when terminated by Defendant.[17] But even if Plaintiff had been disabled when terminated and Defendant knew it, Plaintiff's June 18 e-mail clearly indicated that she did not require any accommodations at that time and her future need for accommodations was purely speculative. *See, e.g., Lowes v. Baldwin*, 2020 BL 399194 at \*2 (6th Cir. Oct. 15, 2020) (employer not required to speculate regarding extent of employee's disability or need or desire for accommodation)[18]; *Tennial v. United Parcel Serv., Inc.,* 840 F.3d 292, 306-07 (6th Cir. 2016) (no failure to accommodate unless employee proposes an accommodation to conform with existing medical restrictions); *Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042, 1046-47 (6th Cir. 1998).

No jury could reasonably conclude that Plaintiff was disabled, needed any accommodations, or had requested any accommodations from Defendant when she was terminated. Moreover, even if Defendant had some duty to accommodate Plaintiff on account of disability in some unknown way at an unknown future time, that duty was rendered moot by the termination of her employment on June 25, 2020, for engaging in premarital sex.

### H. Retaliation (THRA, Title VII & ADA)

Plaintiff has added "retaliation" to the headings of her THRA, TDA, and Title VII claims in Counts II, IV, and VI of her Third Amended Complaint without any clear bases, so we separately address those retaliation claims here to avoid muddling the foregoing analysis of Plaintiff's more clearly pled claims. Defendant is entitled to summary judgment with respect to

---

[17] The ADA does not require employers to accommodate an employee who is merely "regarded as" disabled. *See, e.g., Baker v. Windsor Republic Doors,* 414 Fed. Appx. 764, 774 (6th Cir. 2011); *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999).

[18] Defendant has attached a copy of this unpublished decision as Exhibit 13.

each of these retaliation claims because Plaintiff cannot establish a prima facie case[19] or pretext.

## 1. **THRA & Title VII**

Counts II and VI of Plaintiff's Third Amended Complaint purport to assert retaliation claims under the THRA and Title VII. Because THRA claims are analyzed like Title VII Claims and both counts relate to sex and pregnancy discrimination, we will address them together.

Title VII prohibits retaliation against employees for opposing "any practice made an unlawful employment practice." *See, e.g., EEOC v. New Breed Logistics,* 783 F.3d 1057, 1067-68 (6th Cir. 2015) (defining opposition); 42 U.S.C. §2000e-3(a).[20] Plaintiff has never identified any protected activity that could form the basis of a sex or pregnancy-related retaliation claim under Title VII or the THRA.

In Paragraph 88 of the Third Amended Complaint, Plaintiff alleges that she was retaliated against for "requesting leave and an accommodation for her pregnancy." But, strictly speaking, the Pregnancy Discrimination Act ("PDA") does not recognize a "failure to accommodate" claim akin to those available in connection with religious accommodations under Title VII or disability accommodations under the ADA.

The PDA comes closest to requiring accommodation in the second clause of 42 U.S.C. §2000e(k), which requires that "women affected by pregnancy, childbirth, or related medical conditions…be treated the same for all employment purposes…as other persons not so affected

---

[19] To state a prima facie case of retaliation under the THRA, TDA, or Title VII, Plaintiff must show (1) that she engaged in protected activity, (2) Defendant knew about it, (3) Defendant subsequently took an adverse employment action against her, and (4) there was a causal connection between Plaintiff's protected activity and the adverse employment action taken by Defendant. *See, e.g., Grizzard* at *9-10 (Title VII retaliation); *Whitesell v. FMS Fin. Mgmt. Servs., LLC,* 2020 BL 199004 at *9 (M.D. Tenn. May 28, 2020). Defendant has attached a copy of this unpublished decision as Exhibit 14.

[20] This is commonly referred to as the "opposition clause." *See, e.g., Niswander v. The Cincinnati Ins. Co.,* 529 F.3d 714, 720-21 (6th Cir. 2008). 42 U.S.C. §2000e-3(a) also contains a "participation clause", but it is not implicated in this case. *Id.*

21

but similar in their ability or inability to work." However, the cause of action that arises out of 42 U.S.C. §2000e(k) is a disparate treatment claim, not failure to accommodate. *See Young v. United Parcel Serv., Inc.,* 575 U.S. 135 (2015). If an employee requests an accommodation for pregnancy and suffers an adverse employment action because of it, her possible claims are (i) discrimination under the PDA because the employer provides the requested accommodation to non-pregnant employees with a similar ability/inability to work, (ii) failure to accommodate under the ADA if the requested accommodation is prompted by a disability, or (iii) retaliation for requesting an ADA accommodation if that request was prompted by a disability. So, a retaliation claim could only arise under the PDA here if Plaintiff had complained that she was being treated differently than non-pregnant employees with a similar ability or inability to work and Defendant took an adverse employment action against her for making that complaint. Plaintiff has not alleged and there is no evidence in the record to support that kind of retaliation claim, so she cannot establish a prima facie case of sex or pregnancy-related retaliation under Title VII.

However, even if Plaintiff could establish a prima facie case of sex or pregnancy-related retaliation under Title VII, Plaintiff cannot establish pretext for the same reasons that bar her pregnancy discrimination claim. *See* Section III(C) *supra*.

No jury could reasonably conclude that Plaintiff engaged in any protected activity under Title VII. Nor could a jury reasonably conclude that Defendant terminated Plaintiff's employment because of her protected activity, rather than for engaging in premarital sex.

## 2. **TDA**

Plaintiff's TDA retaliation claim in Count II is stranger still.[21] In Paragraph 65 of the Third Amended Complaint, Plaintiff expressly identifies her purported protected activity under

---

[21] Plaintiff's Third Amended Complaint does not assert a claim for retaliation under the ADA.

the TDA as follows:

> Plaintiff engaged in protected activity when she notified her employer of her disability and requested paperwork regarding her disability. Such actions by the Plaintiff are statutorily protected activities under the TDA.

Plaintiff is clearly referring, once again, to her June 18 e-mail to Mr. Lopez. Even if we credit Plaintiff's June 18 e-mail as requesting a disability accommodation, Plaintiff's TDA retaliation claim reaches a dead end because the TDA does not require disability accommodations. So, requesting a disability accommodation is not protected activity under the TDA, leaving Plaintiff unable to establish a prima facie case. *See, e.g., Lovell v. Champion Car Wash, LLC*, 969 F. Supp. 2d 945, 954 FN8 (M.D. Tenn. 2013). But even if Plaintiff could establish a prima facie case of retaliation, she cannot establish pretext for the same reasons that barred her disability discrimination claim. *See* III(F) *supra*.

No jury could reasonably conclude that Plaintiff engaged in protected activity under the TDA. Nor could a jury reasonably conclude that Defendant terminated Plaintiff's employment because of her protected activity, rather than for engaging in premarital sex.

Respectfully submitted,

/s/Daniel Crowell
Leslie Sanders (TN #18973)
Daniel Crowell (TN #31485)
WEBB SANDERS PLLC
611 Commerce Street
Suite 3102
Nashville, TN 37203
Telephone: (615) 915-3300
Fax: (866) 277-5494
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com

*Attorneys for Defendant*

23

## CERTIFICATE OF SERVICE

I certify that, on November 9, 2021, I filed the foregoing *Memorandum of Law in Support of Defendant's Motion for Summary Judgment* via the Court's electronic filing system, which will automatically notify and send a copy of that filing to:

Heather Moore Collins
Anne Bennett Hunter
Ashley Shoemaker Walter
Collins & Hunter PLLC

*Attorneys for Plaintiff*

/s/Daniel Crowell
Daniel Crowell (TN #31485)
*Attorney for Defendant*