- Southall v. USF Holland, Inc., No. 3:15-cv-1266, 2018 BL 452011, 2018 Us Dist Lexis 206220, 2018 WL 6413651 (M.D. Tenn. Dec. 05, 2018), Court Opinion

**Pagination**
\*     BL

Majority Opinion >

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION

ERNEST A. SOUTHALL, Plaintiff, v. USF HOLLAND, INC. and OCCUPATIONAL HEALTH CENTERS OF THE SOUTHWEST, P.A., Defendants.

NO. 3:15-cv-1266

December 5, 2018, Filed

For Ernest A. Southall, Plaintiff: Gina Renee Crawley, Law Office of GRC, Nashville, TN.

For USF Holland, Inc., Defendant: John Alan Doran, Lori Wright-Keffer, Sherman & Howard, LLC (Scottsdale Office), Scottsdale, AZ; Steven E. Anderson, Anderson & Reynolds, PLC, Nashville, TN.

For Occupational Health Centers of the Southwest, P.A. CO., Defendant: Austin C. Evans, Robert M. Burns, Howell & Fisher, PLLC, Nashville, TN.

ELI RICHARDSON, UNITED STATES DISTRICT JUDGE.

ELI RICHARDSON

**MEMORANDUM OPINION**

Pending before the Court are Defendant USF Holland's Motion for Summary Judgment (Doc. No. 113) and Defendant Occupational Health Centers' Motion to Dismiss and Motion for Summary Judgment (Doc. No. 118).

**BACKGROUND**

Defendant USF Holland ("Holland") operates big-rig trucks and a large truck terminal just outside

📝 Southall v. USF Holland, Inc., No. 3:15-cv-1266, 2018 BL 452011, 2018 Us Dist Lexis 206220, 2018 WL 6413651 (M.D. Tenn. Dec. 05, 2018), Court Opinion

Goodlettsville, Tennessee. Doc. No. 130-3 at ¶¶ 1-2. Defendant Occupational Health Centers of the Southwest ("Concentra") is a multi-state healthcare services company that services, among others, various employers, like Holland, who require Federal Department of Transportation ("DOT") certifications and re-certifications for their drivers.[1] Doc. No. 149 at ¶¶ 1 and 19.

In his Second Amended Complaint (Doc. No. 48), Plaintiff alleges that he began working for Holland in November of 1999. Plaintiff contends that he was diagnosed with sleep apnea in August of 2013 and was required to wear a continuous positive airway pressure device ("CPAP"). He avers that at times in the years 2013-2016, he did not receive his DOT certification to drive from Concentra because of his sleep apnea. Plaintiff alleges that Holland exerted pressure upon Concentra not to re-certify him to drive. He also argues that Holland made no reasonable accommodations for him. He alleges that in July of 2015, Holland terminated his employment.[2] Doc. No. 48 at ¶ 27.

Plaintiff claims that both Defendants discriminated and retaliated against him in various ways in violation of the Americans with Disabilities Act ("ADA"), Tennessee Human Rights Act ("THRA"),[3] and the Tennessee Disability Act ("TDA"). Plaintiff alleges that Holland violated the Tennessee Public Protection Act ("TPPA"), and Concentra violated the Patient's Privacy Protection Act ("PPPA"). Plaintiff also contends that Concentra is culpable of an unreasonable intrusion upon the seclusion of another and of negligence, and that both Defendants have caused the negligent and intentional infliction of emotional distress. Doc. No. 48.

Plaintiff seeks compensatory and punitive damages, as well as injunctive relief to enjoin Defendants from disability discrimination and retaliation and to order Defendants to provide equal opportunities to victims of disability discrimination. Doc. No. 48. Defendants have moved for summary judgment on all of Plaintiff's claims.[4]

Local Rule 56.01(b) requires that any motion for summary judgment be accompanied [*2] by a separate, *concise* statement of the *material* facts as to which the moving party contends there is no genuine issue for trial. A fact is "material" if its proof or disproof might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The parties have filed, together, more than 400 statements of fact (allegedly undisputed by Defendants and allegedly disputed by Plaintiff). The existence of that many "material" facts in this case is highly unlikely. The Court, especially given the number of cases in this district and before this judge, should not have to spend time considering alleged facts that will have no effect on the outcome of the lawsuit.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly-supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will

not lie if the dispute about a material fact is 'genuine[.]'" *Id.* A fact is "material" within the meaning of **Rule 56(c)** "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Id.* A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, **902 F.3d 630**, **634-35** (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, **901 F.3d 619**, **627-28** (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. **Id. at 628**. A party asserting that a fact cannot be or genuinely is disputed—i.e., a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. **Fed. R. Civ. P. 56(c)(1)(A)**.

The Court should view the facts and draw all reasonable inferences in favor of the nonmoving party. *Pittman*, **901 F.3d at 628**. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, **895 F.3d 844**, **852** (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id.* The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary **[*3]** judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, **344 F.3d 587**, **595** (6th Cir. 2003).

## BANKRUPTCY/JUDICIAL ESTOPPEL

Plaintiff filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 23, 2014. Doc. No. 115-40; Doc. No. 72-1 at 23 (Dep. at 22). Plaintiff filed for Chapter 13 bankruptcy protection in August of 2014. Plaintiff did not include or identify his employment discrimination claim as an asset in his bankruptcy petition. Id. at 233-34 (Dep. at 232-33); Doc. No. 115-42. On November 13, 2014, the Bankruptcy Court confirmed Plaintiff's Chapter 13 Plan. Doc. No. 115-2 at ¶ 80. This lawsuit was filed on November 17, 2015. On September 15, 2016, almost a year later and almost two years after confirmation of his bankruptcy plan, Plaintiff filed a Notice of Amendment with the Bankruptcy Court to disclose this employment discrimination case. Doc. No. 115-38.

Defendants argue that Plaintiff is barred from asserting his claims in this action "as a matter of bankruptcy preemption." The Court construes this as a reference to the doctrine of judicial estoppel. A debtor has an affirmative duty to disclose all of his assets to the bankruptcy court. **11 U.S.C. § 521(a)(1)**. The doctrine of judicial estoppel bars claims not disclosed in prior bankruptcy proceedings where (1) the debtor assumes a position contrary to one he asserted under oath while in bankruptcy; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the debtor's omission did not result from mistake or inadvertence. *White v. Wyndham Vacation Ownership, Inc.*, **617 F.3d 472**, **478** (6th Cir. 2010).

Plaintiff does not contest elements one and two, but he relies upon the third element, claiming that his non-

Bloomberg Law® © 2021 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service
// PAGE 3

disclosure was a mistake or inadvertent. Doc. No. 130-1 at 3. In his deposition, Plaintiff testified that his lawyer did not include these claims in the bankruptcy action because they were not completed - "they couldn't put a value on a lawsuit if you ain't won that lawsuit." Doc. No. 72-1 at 234 (Dep. at 233). The circumstances in which a debtor's failure to disclose might be deemed inadvertent are (1) where the debtor lacks knowledge of the factual basis of the undisclosed claims; (2) where the debtor has no motive for concealment; and (3) where the evidence indicates an absence of bad faith. *White*, 617 F.3d at 478 .

Plaintiff knew, at the time of his bankruptcy filing, of the factual basis for his discrimination claim, because he had already filed his EEOC complaint. The motive for concealment could have been present because if the discrimination claim became part of his bankruptcy estate, then any proceeds from it would go toward paying his creditors, rather than simply to Plaintiff. *White*, 617 F.3d at 479 . But Plaintiff has shown an apparent misunderstanding[5] about when such claims must be filed in the bankruptcy case, and there is, at a minimum, a genuine issue of material fact as to the issue of bad faith. The Court concludes that Defendants have not carried their burden and are not entitled to summary judgment based upon this bankruptcy/**[*4]** judicial estoppel theory.

*PREEMPTION*

Defendant Holland argues that Plaintiff's state law claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA") because those claims are inextricably intertwined with or substantially dependent upon consideration of Plaintiff's collective bargaining agreement ("CBA"). Plaintiff asserts that his claims are not preempted because the CBA is not needed "to interpret" his claims. Doc. No. 130-1.[6]

Section 301 of the LMRA provides that suits for violation of contracts between an employer and a labor organization representing employees may be brought in any district court of the United States having jurisdiction of the parties without respect to the amount in controversy and without regard to the citizenship of the parties. 29 U.S.C. § 185(a) . Individual employees may sue for breach of a collective bargaining agreement under Section 301 . *Lyon v. Yellow Transp., Inc.*, 379 F. App'x 452 , 454 (6th Cir. 2010) (citing *Groves v. Ring Screw Works*, 498 U.S. 168 , 173 , 111 S. Ct. 498 , 112 L. Ed. 2d 508 (1990)); *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602 , 617 (6th Cir. 2004) (employee may sue for breach of CBA without the union). Section 301 contemplates suits by and against individual employees as well as between unions and employers. *Groves*, 498 U.S. at 172 (citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 , 562 , 96 S. Ct. 1048 , 47 L. Ed. 2d 231 (1976)).

Section 301 reaches beyond the violation of these employer-labor organization contracts and also preempts state law claims that substantially implicate the meaning of the CBA's terms. *Powers v. Cottrell, Inc.*, 728 F.3d 509 , 516 (6th Cir. 2013). Section 301 governs claims founded directly on rights created by collective bargaining agreements and also claims substantially dependent on analysis of collective bargaining agreements. *Gulley v. General Motors LLC*, 285 F. Supp. 3d 1047 , 1052 (M.D. Tenn. 2018). Preemption under Section 301 applies not only to contract-based claims, but also to some state-law tort claims. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580 , 592 (6th Cir. 2014). To survive preemption under Section 301 , the tort claims must be independent of the CBA. *Mattis v. Massman*, 355 F.3d 902 , 905 (6th Cir. 2004).

To decide whether a state law claim is preempted by Section 301 , the Court must first determine whether

resolving the state-law claim would require interpretation of the terms of the CBA. *Loyd*, 766 F.3d at 592 ; *Gulley*, 285 F. Supp. 3d at 1053 . If interpretation of the CBA is required, then the state-law claim is preempted and the inquiry is at an end. *Id.* ; *Loyd*, 766 F.3d at 592 . Otherwise, the Court must proceed to a second step, which involves ascertaining whether the rights claimed by the plaintiff were created by the CBA or by state law. *Id.* If the rights were created by the CBA, then the claim is preempted. *Id.*

The Second Amended Complaint alleges statutory state-law claims for violations of the TDA, the TPPA, and the PPPA. Plaintiff's non-statutory, state-law claims are for unreasonable intrusion upon the seclusion of another, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress.

With its Motion, Holland filed excerpts from the CBA between Plaintiff's Union and Holland (Doc. No. 115-4) and referenced those excerpts in its Statement of Undisputed Facts. Plaintiff objected to these excerpts from [*5] the CBA by arguing that the material cited to support those facts cannot be presented in a form that would be admissible in evidence. Doc. No. 130-3, ¶¶ 6-20.

Rule 56 permits a party seeking summary judgment to rely on depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials in the record. Rule 56(c)(1)(A) . Rule 56 provides that, on a motion for summary judgment, a party may object that supporting materials "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2) . Although summary judgment should be based on admissible evidence, that evidence does not necessarily have to be presented in final, admissible form at the time of the summary judgment motion. *Adduci v. Fed. Express Corp.*, 298 F. Supp. 3d 1153 , 1159 (W.D. Tenn. 2018); *Mount Vernon Fire Ins. Co. v. Liem Construction, Inc.*, No. 3:16-cv-00689, 2017 U.S. Dist. LEXIS 63224 , [2017 BL 138297], 2017 WL 1489082 at * 2 (M.D. *Tenn. Apr. 26* , 2017). For example, the Court may consider evidence presented in inadmissible hearsay form if the evidence can be reduced to an admissible form at trial. 2017 U.S. Dist. LEXIS 63224 , [WL] at * 3.

Once a party objects to the form of evidence offered in support of (or to dispute) a motion for summary judgment, the proponent of that evidence must show that the material is admissible as presented or explain the admissible form that is anticipated. *Thomas v. Haslam*, 303 F. Supp. 3d 585 , 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 674 Fed. App'x 531 , 536-37 (6th Cir. 2017) (quoting Fed. R. Civ. P. 56(c) , advisory committee's note to 2010 amendment); *Wilson v. Stein Mart, Inc.*, No. 3:15-cv-01271, 2016 U.S. Dist. LEXIS 120658 , [2016 BL 292124], 2016 WL 4680008 at * 2 (M.D. Tenn. Sept. 7, 2016) (inadmissible hearsay may be considered if the statement could be reduced to admissible form).

Plaintiff has not challenged the authenticity of these excerpts from the CBA. Nor has he indicated some other basis for their being deemed inadmissible, and the Court believes that the main possible basis—hearsay—would be inapplicable to many if not all of the excerpts, because those excerpts are often, if not exclusively, cited for a non-hearsay purpose.[7] For its part, the Court is considering those excerpts for non-hearsay purposes.

In addition, other than objecting futilely to the excerpts as noted above, Plaintiff has not disputed Holland's Statement of Undisputed Facts concerning the CBA or provided rebuttal to those facts. Doc. No. 130-3. Plaintiff was a member of the Union, operating under the CBA, including its mandatory grievance procedure.

Doc. No. 130-3 at ¶ 20.[8] Plaintiff asserts that the CBA is not needed to interpret his claims, since he was being discriminated and retaliated against because of his sleep apnea. He argues that Holland's actions were "inspired" by a discriminatory purpose and that determining the motivation for Holland's actions does not require the court to interpret any provision of the CBA.[9]

In Article 8, Section 1, the CBA provides that all grievances or questions of interpretations arising under the CBA shall be processed under the CBA's grievance procedures. Doc. No. 115-4 at 9. Article 37 of the CBA provides that Holland and the Union:

> agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions [*6] of employment because of such individual's race, color, religion, sex, age, or national origin nor will they limit, segregate or classify employees in any way to deprive any individual employee of employment opportunities because of race, color, religion, sex, age, or national origin or in engage in any other discriminatory acts prohibited by law.

Doc. No. 115-4 at p. 22.

The rights claimed by Plaintiff in his statutory state-law claims against Holland were created under the two state statutes at issue, not under the CBA. Plaintiff may establish those claims by proving the elements of each claim pursuant to state law, without a need to interpret or rely upon the CBA. Claims for violation of a state statute assert a right not derived solely from the CBA. *Paul v. Kaiser Foundation Health Plan of Ohio*, 701 F.3d 514, 520 (6th Cir. 2012). Even if dispute resolution pursuant to a CBA on the one hand, and state law on the other, would require addressing precisely the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is "independent of" the agreement for purposes of Section 301 preemption. *Gulley*, 285 F. Supp. 3d at 1053. Although not dispositive, it is telling that the Second Amended Complaint does not even mention the CBA, much less rely upon it.

The fact that an employer might assert terms of the CBA as a defense to the claim does not overcome the paramount policies of the well-pleaded complaint rule and does not trigger preemption. *Paul*, 701 F.3d at 520 (citing *Smolarek v. Chrysler Corp.*, 879 F.2d 1326, 1333-34 (6th Cir. 1989)). Even though the CBA at issue here includes assurance against discrimination, Plaintiff's statutory claims do not invoke rights or procedures under the CBA. As in *Paul*, Plaintiff is not asking the Court to manage his CBA-governed relationship with his employer; he is asking for enforcement of rights under state statutes, independent of the CBA. Id. at 521.

Holland asserts that Plaintiff's common law state claims against it (negligent and intentional infliction of emotional distress) are preempted because they are inextricably intertwined with, or substantially dependent on, consideration of the CBA's terms. Again, however, Plaintiff has not asserted claims under the CBA or asked the Court to interpret any terms of that agreement. To the extent Defendants rely upon the CBA for their defenses, as indicated above, such reliance does not trigger preemption. *Paul*, 701 F.3d at 520. Federal law favors resolution of disputes by a method agreed upon by the parties, but it is "the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d).[10] With regard to Plaintiff's claims for the infliction, both negligent and intentional, of emotional distress, Defendants have failed to show that those claims arise from or require interpretation of the CBA.

📝 Southall v. USF Holland, Inc., No. 3:15-cv-1266, 2018 BL 452011, 2018 Us Dist Lexis 206220, 2018 WL 6413651 (M.D. Tenn. Dec. 05, 2018), Court Opinion

For all these reasons, Holland's Motion for Summary Judgment will not be granted on the basis of preemption.

## FAILURE TO EXHAUST

Holland argues that all ADA allegations outside the scope of Plaintiff's first charge with the [*7] EEOC are barred for failure to exhaust administrative remedies. EEOC charges are construed liberally, so courts may consider claims that are reasonably related to or grow out of the factual allegations of a timely-filed[11] EEOC charge, even if not specifically included in the EEOC charge. *Equal Employment Opportunity Comm'n. v. Dolgencorp, LLC*, 196 F. Supp. 3d 783 , 801 (E.D. Tenn. 2016). Thus, when facts related to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim. *Id.*

Plaintiff filed his EEOC charge on July 23, 2014. Doc. No. 115-40. In it, he checked the boxes for retaliation, disability and "continuing action." *Id.* He complained that between the dates of December 27, 2013, and the date his charge was filed, Holland "has only allowed me to work limited hours even though I was cleared to return to full time work." *Id.* Plaintiff also stated: "I believe that I have been discriminated against and retaliated against because of my disability." *Id.*

Because Plaintiff indicated that the alleged discrimination was a continuing action, and because the later claims are based upon the same facts and types of discrimination, the Court finds that Plaintiff's ADA claims arising after July 23, 2014, are not barred for failure to exhaust. The EEOC charge is sufficiently broad to include further discrimination and/or retaliation on the same basis after the date of the charge. Thus, Defendants' Motion for Summary Judgment on this basis will be denied.

## ADA [12] and TDA [13]

The Americans with Disabilities Act prohibits discrimination against a "qualified individual with a disability." 42 U.S.C. § 12112(a) . To establish this claim, Plaintiff must show that: (1) he has a disability, as defined in the ADA; (2) he is qualified to perform the essential functions of the position, with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419 , 433 (6th Cir. 2014).[14] Thus, in order to proceed with his claims under the ADA, Plaintiff must meet the threshold burden of showing that he is a "disabled" individual within the meaning of the ADA. If Plaintiff has no "disability," then Defendant cannot be liable for discrimination or failure to accommodate because of a disability.

Under the ADA, a "disability" is defined in three ways: (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1) . For purposes of this definition, "major life activities" include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2) . Plaintiff's alleged disability is sleep apnea.

In his deposition, Plaintiff testified that sleep apnea does *not* affect his major life activities. Doc. No. 72-1 at 33 (Dep. at 32). He stated that he has "mild" sleep apnea and that it has never affected him. [*8] Doc. No. 72-1 at

Southall v. USF Holland, Inc., No. 3:15-cv-1266, 2018 BL 452011, 2018 Us Dist Lexis 206220, 2018 WL 6413651 (M.D. Tenn. Dec. 05, 2018), Court Opinion

32-33 (Dep. at 31-32). He testified that he did not know that sleep apnea was a sleep disorder and he always checked the box for "no" on his medical forms when asked if he had sleep disorders. Id. at 81-82 (Dep. at 80-81).[15] Thus, Plaintiff's own statements contradict his claim of being disabled, yet he sued Defendants under the ADA and the TDA.

The Second Amended Complaint does not identify which "major life activity" Plaintiff claims his sleep apnea limits. Indeed, Plaintiff has denied that his sleep apnea substantially limits any major life activity. Doc. No. 72-1 at 33 (Dep. at 32). As noted above, sleep is recognized by the EEOC guidelines as a major life activity. 42 U.S.C. § 12102(2) . Obviously, sleep apnea *relates* to this major life activity, but that does not necessarily mean that it "substantially limits" this major life activity in Plaintiff's case. The Court recognizes that sleep apnea, by its very nature, tends to substantially limit sleeping for those who have it. But the question here is whether Plaintiff has raised a genuine issue as to whether this is true in *his* case. In order to demonstrate a substantial limitation on the major life activity of sleeping, a plaintiff must show that he is significantly restricted in the condition, manner or duration of sleep as compared to the average person in the general population. *Peter*, 255 F. Supp. 2d 417 , 433 (E.D. Pa. 2002). Plaintiff has not made that showing.

To the extent Plaintiff claims he is substantially limited in the major life activity of work, there is no assertion that that limitation is based upon anything other than an impairment to his sleep. As discussed above, Plaintiff has not shown an impairment to the major life activity of sleep. Moreover, to show that he is substantially limited in the major life activity of work, Plaintiff must show that he is precluded from more than one type of job, a specialized job, or a particular job of choice. *Wolfe v. U.S. Steel Corp.*, 567 F. App'x 367 , 372 (6th Cir. 2014) (citing *Mahon v. Crowell*, 295 F.3d 585 , 591 (6th Cir. 2002)). He must demonstrate that he is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. *Matthews v. City of Houston Fire Dep't*, 609 F. Supp. 2d 631 , 648 (S.D. Tex. 2009). The inability to perform a singular, particular job does not constitute a "substantial limitation." *Wolfe*, 567 F. App'x at 372 . Plaintiff has not shown that he is significantly restricted in his ability to perform a class of jobs or a broad range of jobs in various classes; indeed, he contends that he is *not* substantially limited. The Court finds that Plaintiff has not carried his burden to show, under the ADA and the TDA, that his sleep apnea substantially limits *his* major life activities of sleep or work.

There is an additional consideration that separately mandates this conclusion. As noted, Plaintiff was prescribed the use of a CPAP to treat his sleep apnea. Measures taken to correct or mitigate an impairment are taken into account when determining whether an impairment is substantially limiting. *Hylinger v. Union Pacific R.R.*, 538 F. Supp. 2d 1325 , 1331 (W.D. Wash. 2008). A person whose **[*9]** impairment "is corrected by a mitigating measure still has an impairment, but if the impairment is corrected, it does not substantially limit a major life activity." *Id.* (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 , 482 , 119 S. Ct. 2139 , 144 L. Ed. 2d 450 (1999)). Because Plaintiff failed adequately to comply with his prescribed mitigating measure (CPAP),[16] there is no way for Plaintiff to show that, even with proper CPAP use, he was substantially limited. In any event, Plaintiff claims he was *not* substantially limited, with or without mitigating measures.[17]

The Court concludes that there is no genuine issue of material fact raised as to whether Plaintiff was actually disabled. Defendants have carried their burden on summary judgment for the claim of actual disability.

Southall v. USF Holland, Inc., No. 3:15-cv-1266, 2018 BL 452011, 2018 Us Dist Lexis 206220, 2018 WL 6413651 (M.D. Tenn. Dec. 05, 2018), Court Opinion

Turning from whether Plaintiff was actually disabled to whether he was "regarded as" disabled by his employer, Plaintiff argues that Defendants regarded him as unable to drive a commercial motor vehicle and, therefore, regarded him as disabled. But Defendants regarded Plaintiff as unable lawfully to drive a commercial vehicle, the evidence shows, because he did not have the required medical certification to drive. If Defendants regarded Plaintiff as unable lawfully to drive a commercial motor vehicle because of his non-compliance with use of the CPAP machine, not because of the sleep apnea itself, they may have regarded him as someone whose *response* to sleep apnea made him legally unable to perform his job, not as someone whose sleep apnea made him disabled. The Court cannot find, under these circumstances, that Plaintiff was "regarded as disabled" under the ADA or THA.

In any event, whether or not he was disabled or regarded as disabled, Plaintiff's ADA and TDA claims fail because Defendants have carried their burden to show that there is no genuine issue of material fact as to whether Plaintiff was "qualified" for the essential functions of driving. Federal law prohibits an employer from allowing an employee to operate a commercial motor vehicle when that employee had been disqualified from operating such a vehicle. 49 U.S.C. § 31304(a) . It is undisputed that Plaintiff has some form of sleep apnea. The CPAP machine prescribed for Plaintiff remotely tracks a patient's usage and records the actual amount of time the patient uses the machine. Doc. No. 112-1 at 32 (Dep. at 31).[18] This tracking allows DOT examiners to determine whether a driver is using the CPAP appropriately for DOT certification purposes. Plaintiff's treating physician, Dr. Rodriguez, testified that treatment of sleep apnea with a CPAP is largely, if not completely, dependent upon the patient's compliance. Id. at 29 (Dep. at 28). Dr. Rodriguez told Plaintiff to use the CPAP every night. Id. at 32 (Dep. at 31).

The record reflects that, most of the time, Plaintiff was not compliant with his CPAP use. *See, e.g.*, Doc. No. 130-3, ¶¶ 34-36, 38.[19] Dr. Rodriguez testified that a patient with sleep apnea who does not use the CPAP will have symptoms of daytime somnolence that put the patient at risk of having accidents such as motor vehicle accidents. Doc. No. 112-1 at 47 (Dep. at 46). He stated **[*10]** that compliance is very important because it helps maximize the treatment of the disorder and will keep the patient from having symptoms of daytime somnolence. "The more you use the machine, the less sleepy you are, which means it will be safer for you to be on the road." Id. at 61 (Dep. at 60).

Plaintiff argues he was "qualified" for this job because he possessed a DOT certification card; but there were numerous times when he did *not* possess a DOT certification card because of his failure to comply with the prescribed CPAP treatment. His own treating physician (and expert witness) testified that, because of his noncompliance with use of the CPAP machine, Plaintiff could not safely drive a big rig for Holland. Doc. No. 112-1 at 77 (Dep. at 76). Compliance with DOT safety regulations is an essential function of the job for a commercial truck driver. *Cummings v. Dean Transp., Inc.*, 9 F. Supp. 3d 795 , 802 (E.D. Mich. 2014).

In addition, Plaintiff contends that Holland inappropriately influenced Concentra's decisions regarding his certification to drive and wrongfully requested that Concentra disqualify him for 90 days. In so contending, Plaintiff is apparently trying to show that he should not have been disqualified from driving. But Plaintiff has not offered anything to rebut the basis for Concentra's actions — his sleep apnea and failure to use the CPAP.

For this assertion about improper influence, Plaintiff cites to his own testimony at his unemployment hearing,

Bloomberg Law® © 2021 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service

// PAGE 9

Southall v. USF Holland, Inc., No. 3:15-cv-1266, 2018 BL 452011, 2018 Us Dist Lexis 206220, 2018 WL 6413651 (M.D. Tenn. Dec. 05, 2018), Court Opinion

his own affidavit, his own Second Amended Complaint, and his own responses to interrogatories. Although such forms of evidence under certain circumstances can suffice to raise a genuine issue, they fail to do so here because the cited statements are glaringly self-serving, conclusory, and, for the most part, not based upon personal knowledge. In order to survive summary judgment, a plaintiff cannot rely on conjecture or conclusory accusations. *Arendale v. City of Memphis*, 519 F.3d 587 , 605 (6th Cir. 2008). Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment. *Id.*

Plaintiff also cites a letter to Concentra by his attorney, Stephen Crofford, which states:

> Mr. Southall has brought to my attention that he is not being cleared for his DOT physical. It is unclear what the medical rationale is for denying his DOT card. Pressure from the employer or higher than prescribed requirements from an employer to my understanding is not a consideration in issuing a DOT card. Whether USF Holland wants a 90 day time frame for compliance if not mandated by law should not require Mr. Southall being denied his DOT card.

Doc. No. 130-5 at 4. This letter does not establish that Holland exerted any pressure simply because Mr. Crofford claimed such pressure would be improper; Crofford does not even claim that such pressure actually existed in Plaintiff's case, let alone establish any basis for validly asserting such a claim. In any event, Plaintiff has not provided any evidence that the decision of Concentra not to recertify him for 90 days was incorrect.

The office manager of the Holland [*11] terminal in Nashville, Denise Vernon, testified that the Safety Administrator for Holland requested additional information from Concentra concerning Plaintiff because he had been issued a series of *only short-term* DOT certifications. Doc. No. 115-46. Vernon stated that Holland also had substantial safety concerns stemming from Plaintiff's driving into a concrete barrier and sleeping in the break room before picking up his load.[20] *Id.* Vernon stated that she spoke with Concentra through e-mails, but she did not instruct Concentra to deny Plaintiff's certification; she simply sought information. *Id.* The email correspondence between Vernon and Concentra reflects that Holland requested (and was given) this information. Doc. No. 115-47. The Concentra doctor who saw Plaintiff stated that he disqualified Plaintiff because he was not compliant on the CPAP and had a history of "repeated non-compliance." *Id.* In addition, the doctor said: "We asked for 90 day compliance this time for any further extensions because of sleepiness." *Id.*[21] Although the Court is mindful of not accepting either side's evidence uncritically, Plaintiff has offered nothing to legitimately cast doubt on the credibility of this testimony.

On this issue, Plaintiff also cites to a "Transcription of Undated Audio Recording" allegedly made by a court reporter from a cellular telephone recording. Doc. No. 158-1 and Doc. No. 130-12. Plaintiff represented that he allowed a friend, Kimberly Floyd, *who is now deceased*, to record, with Plaintiff's phone, conversations Plaintiff had with employees of Concentra. Doc. No. 158-1. The court reporter stated that the recordings were undated and the identities of the speakers were provided to her by Plaintiff's counsel and were not confirmed by her. Doc. No. 158-1 at 12. Plaintiff has not authenticated this evidence by showing it to be what it purports to be; Plaintiff has not offered testimony of anyone who compared the recording and the transcript and can say that the transcript accurately reflects who said what in the recorded conversation.[22] Thus, the transcript, even if otherwise conceivably admissible (under, for example, Rule 1004 ), cannot properly be considered by the Court at this time. Moreover, Plaintiff has not filed the actual recording. Plaintiff has not shown how any

evidence of this alleged conversation could be admissible at trial, and the Court views it, even if admissible, as presenting serious reliability issues.

Plaintiff has not offered sufficient evidence to show a genuine issue of material fact as to whether that Holland inappropriately influenced Concentra in any way. Plaintiff has not rebutted the evidence from Ms. Vernon and the Concentra physician or the corresponding e-mails concerning Plaintiff's (lack of) compliance. Nor has Plaintiff shown that the doctor's evaluations were coerced. Moreover, Plaintiff has not shown that he adequately complied with the requirements for his CPAP use and, therefore, should have been given DOT certification.

For all of the above-discussed reasons, Plaintiff **[*12]** has not raised a genuine issue as to whether he is a "qualified individual with a disability," as that term is defined in the ADA and TDA. Therefore, his claims for violation of the ADA and TDA will be dismissed.

*TPPA*

Tennessee law provides that no employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities. Tenn. Code Ann. § 50-1-304(a) . "Illegal activities" means activities that are in violation of the criminal or civil code of Tennessee or the United States or any regulation intended to protect the public health, safety or welfare. Tenn. Code Ann. § 50-1-304(c) . Any employee terminated in violation of subsection (a) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled. Tenn. Code Ann. § 50-1-304(d) .

Plaintiff asserts that Holland is involved in "illegal activities that violates (sic) the laws that are intended to protect the public health, safety and welfare." Doc. No. 48 at ¶ 59. Contrary to his other claims (which allege that he was discharged for a variety of other reasons having nothing to do with retaliation) and apparently as a stark alternative to them, Plaintiff alleges that he was discharged *solely* for refusing to remain silent about Holland's illegal treatment of him. *Id.* at ¶ 60. To establish a claim under the TPPA, a plaintiff must show that (1) he was an employee of the defendant; (2) he refused to participate in or remain silent about "illegal activities," as defined in the TPPA; (3) he was fired; and (4) there is an *exclusive* causal relationship between his refusal to participate or remain silent and his termination. *Wheeler v. Jackson Nat'l Life Ins. Co.*, 159 F. Supp. 3d 828 , 861 (M.D. Tenn. 2016).

Defendants argue that Plaintiff's TPPA claim fails because the TPPA protects only employees who advance truly *public* policy and not simply their own interests. Defendants point to the absence of any claimed substantial public policy concerns in the Second Amended Complaint. In response to the Motion for Summary Judgment, Plaintiff fails to identify any public policy concern allegedly advance by Plaintiff's allegedly protected activities. Doc. No. 162 at 20.

The Tennessee Supreme Court has instructed that, under the TPPA, the plaintiff must assert that his whistleblowing activity serves a public purpose that should be protected. *Young v. United Parcel Serv., Inc.*, 992 F. Supp. 2d 817 , 839 (M.D. Tenn. 2014). An employee's actions will not qualify him for protection merely because he pointed out an illegal activity. *Id.* It is essential that the employee's attempt to expose illegal or

unsafe practices furthers an important public policy interest and does more than merely advance the employee's private interest. *Id.* Plaintiff does not explain what important public policy interest was advanced by his alleged refusal to remain silent. The Court finds that his filing an EEOC complaint and filing this action merely advance Plaintiff's private interests. In fact, the public policy most evident in this situation is the public policy of motor vehicle safety.

In any event, aside from merely alleging in conclusory fashion [*13] that he was discharged "solely" for refusing to remain silent, Plaintiff has offered no evidence to support a claim of an exclusive causal connection between his refusal to remain silent and his termination. Defendants have sufficiently carried their burden on this issue, and Plaintiff has failed to show a genuine issue regarding this claim. Accordingly, Plaintiff's TPPA claim will be dismissed.

*PPPA*

Plaintiff contends that Defendant Concentra disclosed medical information in violation of Tennessee's Patient's Privacy Protection Act. That statute provides that every patient entering and receiving care at a health care facility has the expectation of and right to privacy for care received at such facility. **Tenn. Code Ann. § 68-11-1502**. It provides that a civil action for damages for invasion of privacy shall be available to a person for violations of the statute. **Tenn. Code Ann. § 68-11-1504**.[23]

Plaintiff testified that he did not know what information Holland received from Concentra that it was not authorized to receive. Doc. No. 72-1 at 134 (Dep. at 133). Now he argues that Concentra should not have told Holland that Plaintiff failed to discuss his CPAP use at his July 10, 2015 DOT exam and that Concentra should not have told Holland that Plaintiff did not disclose his sleep apnea or his CPAP use to the physician at that exam.

Plaintiff has produced evidence that, on June 8, 2015, he revoked his original authorization for Concentra to communicate his health information to Holland. Doc. No. 121-12. On July 10, 2015, however, when he appeared at Concentra for his medical exam and commercial driver fitness determination, Plaintiff signed a Medical Examination Report ("MER") that stated: "I certify that the above information is complete and true. . . . I authorize Concentra Health Services, Inc., its subsidiaries, divisions and related entities . . . to provide all or any of my medical records to my employer and release Concentra . . . from any and all liabilities, claims, or causes of action that may result from this authorization." Doc. Nos. 121-14 and 121-15.[24]

Plaintiff testified that he knew Concentra had to sign off on his testing in order to keep his DOT card in place and he knew that the information from Concentra regarding his physical examination was going from Concentra to Holland. Doc. No. 72-1 at 267-68 (Dep. at 266-67). He stated that he was "okay with that." Id. at 268 (Dep. at 267). He understood that, as part of his condition of employment at Holland, he had to be tested. *Id.* He knew that, in order to keep his certification in place, Concentra (or whoever did the examination) had to sign off on that testing. *Id.* And he stated that he knew the testing information went back to Holland as his employer, and he never had any issue with that. *Id.* He was okay with information about his physical going back to Holland, but nothing other than his physical. Id. at 269 (Dep. at 268). Finally, Plaintiff testified that he did not know of anything else besides the information from his physical that went from Concentra to Holland. *Id.* Yet, in argument, Plaintiff contends that Concentra divulged private information about Plaintiff to Holland

**[*14]** in violation of the PPPA.

Again, Plaintiff's testimony conflicts with his allegations. But, in any event, Plaintiff has failed to show, in support of his allegations, that Concentra provided information to Holland that Plaintiff had not authorized be disclosed to Holland as his employer. Therefore, Plaintiff's PPPA claim will be dismissed.

### UNREASONABLE INTRUSION AND NEGLIGENCE

Plaintiff contends that the alleged disclosure of his private information by Concentra also constituted an unreasonable intrusion upon the seclusion of another and negligence. Doc. No. 48 at ¶¶ 68-77. The Tennessee Supreme Court held, in 2002, that a cause of action for unreasonable intrusion on the seclusion of another may be stated where a plaintiff shows an intentional and objectively offensive interference with his or her interest in solitude or seclusion. *Givens*, 75 S.W.3d at 411 . To establish this claim, a plaintiff must allege and prove that: (1) information sought by the opposing party was not properly discoverable or was otherwise subject to some form of privilege; (2) the opposing party knew that the information was not discoverable or was subject to privilege, but nevertheless proceeded to obtain that information; (3) the obtaining of such information would be highly offensive to a reasonable person; and (4) injury was suffered from the invasion of privacy. Id. at 412 ; *Rodgers v. McCullough*, 296 F. Supp. 2d 895 , 903 (W.D. Tenn. 2003).

The Restatement (Second) of Torts describes the requirements of tort liability for "unreasonable intrusion upon seclusion" as follows: One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person. *Rodgers*, 296 F. Supp. 2d at 903 (citing Restatement (Second) of Torts § 652B ); *see also Yount v. Midland Funding, LLC*, No. 2:14-CV-108, [2016 BL 37463], 2016 U.S. Dist. LEXIS 16154 , [2016 BL 37463], 2016 WL 554851 at * 9 (E.D. Tenn. Feb. 10, 2016).

For the reasons explained above, Defendant has offered evidence that Plaintiff signed an authorization to release information to his employer on July 10, 2015, and that Plaintiff understood that his health information related to DOT certification would be forwarded to Holland. Plaintiff has failed to show a genuine issue of material fact as to this issue and, therefore, has not shown that Concentra knew this information was non-discoverable and otherwise subject to privilege, and yet disclosed it to Holland anyway. Concentra's Motion for Summary Judgment on the unreasonable intrusion upon the seclusion of another claim will be granted.

To establish a claim of negligence, a plaintiff must show (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, cause. *Green v. Roberts*, 398 S.W.3d 172 , 176 (Tenn. Ct. App. 2012). For the same reasons Plaintiff has not shown a genuine issue concerning the PPPA claim, Plaintiff has not established a genuine issue as to Concentra's alleged duty not to disclose or as to any breach of **[*15]** that duty. Accordingly, Concentra's Motion for Summary Judgment on the negligence claim will be granted as well.

### NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Bloomberg Law © 2021 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service

Plaintiff asserts that Defendants' alleged misconduct, as set forth in the Second Amended Complaint, constituted negligent and intentional infliction of emotional distress. Holland argues that Plaintiff's claim against it for negligent infliction of emotional distress is barred by the exclusive remedy provisions of Tennessee's Workers' Compensation Act ("TWCA"). Plaintiff has not rebutted or addressed this argument.

Tennessee law states that the remedies provided by the TWCA on account of personal injury "shall exclude all other rights and remedies of the employee at common law or otherwise." Tenn. Code Ann. § 50-6-108 . Pursuant to this section, workers' compensation law provides the exclusive remedy for an employee who is injured during the course and scope of his employment, meaning that the employee is precluded from seeking tort damages from his employer for the injury. *Young*, 992 F. Supp. 2d at 840 .25 Tennessee courts have created an exception to the exclusivity provision for intentional torts committed by an employer against an employee; those torts give rise to a common law tort action for damages. *Id.* Negligent infliction of emotional distress claims such as Plaintiff's, however, are preempted by the TWCA. *Id.* ; *Giles v. Hometown Folks, LLC*, 61 F. Supp. 3d 749 , 758 (E.D. Tenn. 2014).

Plaintiff's negligent infliction of emotional distress claim against Concentra, however, is not covered by the TWCA because Concentra was not Plaintiff's employer. And Plaintiff's *intentional* infliction of emotional distress claim against both Concentra and Holland is not barred by the TWCA because it, of course, alleges intent. Actions for both negligent and intentional infliction of emotional distress require a showing that the plaintiff suffered a serious mental injury[26] resulting from the defendant's conduct. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196 , 206 (Tenn. 2012).

Plaintiff admitted at his deposition that he has never seen a mental health professional and never taken medications for depression. He also stated that he was not suffering from any kind of emotional hurt. Doc. No. 72-1 at 220-221 (Dep. at 219-220). Moreover, as Plaintiff admits (Doc. No. 130-3, Supplemental Response to ¶ 167), the only psychiatric expert to examine Plaintiff stated that he was not demonstrating any significant signs or symptoms of emotional distress. Doc. No. 115-68 at 9.

Plaintiff has filed the Affidavit of retired minister D. Michael Crowder, who states that he provided counseling to Plaintiff between 2013 and 2016, about once every two to three months. Doc. No. 130-8. Crowder asserts that Plaintiff appeared to be "impoverished, confused, hopeless, and depressed" and "expressed sadness and concern about the future." *Id.* Rev. Crowder is not offered as an expert witness, and his Affidavit includes nothing about the cause of the characteristics he observed in Plaintiff. Even if Crowder could provide testimony admissible at trial, which the Court specifically does not **[*16]** find, that testimony is insufficient to show, based upon Crowder's personal knowledge, that any alleged misconduct by Defendants caused Plaintiff a serious mental injury.

The Court finds that Plaintiff has not shown a genuine issue of material fact concerning serious mental injury, as that term is defined in Tennessee law. The evidence produced by Plaintiff in response to Defendants' Motions fails adequately to show that Defendants caused him to be "unable adequately to cope with the mental stress engendered by the circumstances of the case," sufficient to support a negligent or intentional infliction of emotional distress claim.

For these reasons, Defendants have carried their burdens of showing entitlement to summary judgment on

*Southall v. USF Holland, Inc.*, No. 3:15-cv-1266, 2018 BL 452011, 2018 Us Dist Lexis 206220, 2018 WL 6413651 (M.D. Tenn. Dec. 05, 2018), Court Opinion

Plaintiff's negligent and intentional infliction of emotional distress claims, and those claims will be dismissed.

## CONCLUSION

For all of these reasons, Defendants' motions for summary judgment (Doc. Nos. 113 and 118) will be **GRANTED**, and this action will be **DISMISSED WITH PREJUDICE**.

An appropriate Order will be entered.

/s/ Eli Richardson

ELI RICHARDSON

UNITED STATES DISTRICT JUDGE

## ORDER

Pending before the Court are Defendant USF Holland's Motion for Summary Judgment (Doc. No. 113), Defendant Occupational Health Centers' Motion to Dismiss and for Summary Judgment (Doc. No. 118), and Plaintiff's Motion to Alter or Amend (Doc. No. 177).

Plaintiff's Motion to Alter or Amend (Doc. No. 177) is **DENIED**. Plaintiff's Motion is made pursuant to **Fed. R. Civ. P. 59**. Plaintiff has failed to carry his burden of showing that that Order should be changed under **Rule 59** or, for that matter, any other provision of the Federal Rules of Civil Procedure. In any event, in making its decisions on the other pending Motions, the Court did not consider the alleged "new evidence" to which Plaintiff objects.

For the reasons stated in the accompanying Memorandum Opinion, the Motion for Summary Judgment (Doc. No. 113) and the Motion to Dismiss and for Summary Judgment (Doc. No. 118) are both **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**. The Clerk shall close the file.

This Order shall constitute the judgment in this case pursuant to **Fed. R. Civ. P. 58**.

IT IS SO ORDERED.

/s/ Eli Richardson

ELI RICHARDSON

UNITED STATES DISTRICT JUDGE

---

fn

1

Detailed DOT Federal Motor Carrier Safety Regulations pertaining to qualifications of drivers can be found at **49 C.F.R. §391.1**, et seq. A person subject to these regulations must not operate a commercial motor

vehicle unless he or she is medically certified as physically qualified to do so. 49 C.F.R. § 391.41(a)(1)(i) .

fn
2

Plaintiff filed a grievance regarding this discharge, and the grievance committee changed the discharge to a suspension with no pay for time off work. Doc. No. 115-6 at 7.

fn
3

The THRA does not specifically cover employment-related handicap discrimination; that claim is covered by the TDA. *Thompson v. UGL Unicco Serv. Co.*, 750 F. Supp. 2d 907 , 912 (W.D. Tenn. 2010). Therefore, Plaintiff's THRA claim will be dismissed.

fn
4

Concentra's Motion is designated as both a Motion to Dismiss and a Motion for Summary Judgment. Because Concentra has relied on information outside the Complaint and submitted Undisputed Statements of Material Fact as required by Fed. R. Civ. P. 56 , to which Plaintiff has responded, the Court is treating Concentra's Motion as one solely for summary judgment.

fn
5

The Court finds that there is at least a genuine issue of material fact as to whether this claimed misunderstanding was in fact a "strategic decision," as Defendants claim.

fn
6

Plaintiff testified that he had been a member of the union and operated under a CBA for thirty-five years. Doc. No. 72-1 at 26 (Dep. at 25).

fn
7

To the extent that Holland has in mind a non-hearsay purpose, an exception to the hearsay rule, such as Fed. R. Evid. 803(6) , could justify the excerpts' admission, though the Court need not address this issue.

fn
8

Plaintiff used the CBA's grievance procedures on numerous occasions related to the issues in this case. Doc. No. 115-6.

fn
9

The PPPA, unreasonable intrusion upon the seclusion of another, and negligence claims against Concentra have nothing to do with the CBA, as Concentra is neither a party to nor governed by the CBA.

fn
10

Plaintiff does assert that Holland discriminated against him related to seniority rights, a claim that could implicate the CBA. Plaintiff's allegation in this regard, however, is based upon disability discrimination and retaliation, claims which are not preempted. Even if that allegation somehow requires interpretation of the CBA, in light of the Court's ultimate ruling herein, the Court will not make a specific finding as to any preemption of discrimination claims related to seniority rights.

fn
11

Under the ADA, a claimant who wishes to bring a lawsuit alleging a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination. *Oliver v. Titlemax*, 149 F. Supp. 3d 857 , 863 (E.D. Tenn. 2016).

fn
12

Plaintiff admits that he was never an employee of Concentra (Doc. No. 149 at ¶ 31), so Concentra is not a "covered entity" under the ADA that would be liable for ADA violations. 42 U.S.C. §§ 12111 and 12112(a) . Therefore, Plaintiff's ADA claims against Concentra will be dismissed.

fn
13

A claim brought under the THA is analyzed under the same principles as those utilized for the ADA. *Cantrell v. Yates Servs., LLC*, 205 F.Supp.3d 928 , 934 (M.D. Tenn. 2016).

fn
14

If a plaintiff establishes this *prima facie* case, then the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its adverse action.

*Sjöstrand v. Ohio State Univ.*, 750 F.3d 596 , 599 (6th Cir. 2014). If the defendant makes this showing, which is a burden of production, not persuasion, the plaintiff must then present evidence allowing a jury to find that the defendant's explanation is a pretext for unlawful discrimination. *Id.*

fn
15

Holland discharged Plaintiff for dishonesty as a result of his not indicating that he had sleep apnea on a July 10, 2015 medical form and not noting his sleep apnea condition to the examining doctor. Doc. No. 72-1 at 136 (Dep. at 135); Doc. No. 130-3 at ¶ 91.

fn 16

*See, e.g.*, Doc. No. 130-3, ¶¶ 34-36, 38.

fn 17

In other words, if Plaintiff had in fact taken mitigating measures that removed any limitation, Plaintiff could not establish a limitation; and if Plaintiff did *not* take mitigating measures that would have removed any limitation, Plaintiff also could not establish a limitation.

fn 18

As before, Plaintiff objects that this evidence cannot be presented in a form that would be admissible in evidence. The deponent is Plaintiff's own designated expert, however, testifying under oath about matters within his expertise and presumably available to testify at trial. Plaintiff's objection is without merit.

fn 19

Plaintiff objects to these cited propositions, which Holland claims are undisputed, but he does not provide citations to evidence that rebuts them.

Plaintiff has provided "string cites" to alleged evidence not easily identified or accessible, but he has not provided the specific citations required by Fed. R. Civ. P. 56 . The Court is not required to search the record for some piece of evidence that might stave off summary judgment. *Mullenix v. Eastman Chemical Co.*, 237 F. Supp. 3d 695 , 710 (E.D. Tenn. 2017) (citing *U.S. Structures, Inc. v. J.P Structures, Inc.*, 130 F.3d 1185 , 1191 (6th Cir. 1997)).

fn 20

Plaintiff has not denied that he received a citation for driving while fatigued in December of 2013 (Doc. No. 130-3 at ¶ 42) or that in August of 2014, he hit a concrete barrier in a construction zone. Doc. No. 130-3 at ¶ 68; Doc. No. 115-44.

fn 21

Concentra's expert, Dr. Puricelli, testified that the decision of Concentra's physician not to recertify Plaintiff

and require that he provide evidence of 90 days of CPAP compliance was reasonable under the circumstances and well within DOT guidelines. Doc. No. 128-3 at ¶ 12.

fn
22

Instead, the most Plaintiff can provide is his own statement that "[t]hese recordings are true and accurate based upon my recollection of the events." Doc. No. 158-1 at 3.

fn
23

The statutory action is available only against those persons who (1) have a statutory duty to keep identifying information confidential, and (2) actually divulge that information to parties not falling within a statutory exception. *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383 , 412 (Tenn. 2002).

fn
24

Plaintiff argues that this MER form is insufficient because it does not comply with federal regulations. The referenced federal regulations, found at 45 C.F.R. § 164.508 , however, are applicable under the PPPA only "when required." Tenn. Code Ann. § 68-11-1503(a)(2) . Plaintiff has presented no evidence or argument that compliance with these regulations was, in this case, "required."

fn
25

Although Tennessee courts have carved out a narrow exception for sexual harassment as a matter of public policy, so that sexual harassment claims are not covered by the TWCA, negligence claims arising from discrimination claims are covered by the TWCA exclusively. *Davis v. Northpoint Senior Servs.*, No. 3:14-CV-106-PLR-HBG, *2016 WL 6078337* at * 7 (E.D. Tenn. March 22, 2016). Plaintiff's claims have nothing to do with sexual harassment.

fn
26

"Serious mental injury" occurs where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case.

*Giles*, 61 F. Supp. 3d at 758 .

# General Information

| | |
|---|---|
| **Case Name** | Southall v. USF Holland, Inc. |
| **Court** | U.S. District Court for the Middle District of Tennessee |
| **Date Filed** | Wed Dec 05 00:00:00 EST 2018 |
| **Judge(s)** | Mr. Eli Jeremy Richardson |
| **Parties** | ERNEST A. SOUTHALL, Plaintiff, v. USF HOLLAND, INC. and OCCUPATIONAL HEALTH CENTERS OF THE SOUTHWEST, P.A., Defendants. |
| **Topic(s)** | Employment Law; Torts; Occupational Safety & Health |