DocuSign Envelope ID: C2392819-3248-4812-A3EC-A1FEDEAA3CDF

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CAITLIN O'CONNOR, | ) |
|     Plaintiff, | ) Case No. 3:20-cv-00628 |
| v. | ) District Judge Richardson |
| THE LAMPO GROUP, LLC, | ) Magistrate Judge Frensley |
|     Defendant. | ) Jury Demand |

### DECLARATION OF ARMANDO LOPEZ

I, Armando Lopez, declare the following on behalf of The Lampo Group, LLC:

1. I am the Senior Executive Director of Human Resources for The Lampo Group, LLC (the "Company") and by virtue of my position, I have knowledge of the information set forth in this Declaration.

2. The Company is a private, closely held company that specializes in creating and delivering counseling programs for individuals and organizations.

3. The Company is best known for providing biblically based financial counseling programs that help individuals get out of debt, manage their money well and achieve financial success.

4. Lampo's mission is "We provide biblically based, commonsense education and empowerment that give hope to everyone in every walk of life."

5. Defendant has a set of 14 principles known as "Core Values" that embody the philosophy of the Company. Defendant uses the Core Values as the guiding principles for all decisions made at the Company.

6. The Company considers pre-marital sex a violation of the Core Value known as Righteous Living. The Righteous Living Core Value is stated as "We believe character

DocuSign Envelope ID: C2392819-3248-4812-A3EC-A1FEDEAA3CDF

matters. All the time."

7. When the Company learns that a current employee is engaged in a relationship that includes pre-marital sex, the Company considers it inconsistent with the Righteous Living Core Value.

8. Defendant manages its organization through committees who interpret and implement the Core Values as situations arise.

9. Employment-related matters, including discipline of employees and employee policies, are typically decided and implemented by the Human Resources Committee ("HRC") which consists of 5-6 employees, including the Human Resources leader and other upper-level managers at the Company. The membership rotates on a regular basis. In June 2020, the members of the HRC were: Jack Galloway, Armando Lopez, Suzanne Simms, Jen Sievertsen, Mark Floyd and Sarah Sloyan.

10. The Operating Board is responsible for the day-to-day operation of the Company. The Operating Board typically does not make employment-related decisions, but if there is a new issue the Company has not dealt with or the employee in question is an executive or a public-facing personality, the Operating Board may be involved in the decision-making process. The Operating Board is a larger group of employees (typically 15-17 employees) and is comprised of executive leaders and owners of the Company.

11. Nearly all issues related to discipline of employees in the Company are handled by the HRC except for those few occasions when the Operating Board either makes the decision or directs a subset of its members to make the decision.

12. Caitlin O'Connor e-mailed me on June 18, 2020, informing me that she was 12 weeks pregnant and unmarried. Within two (2) minutes of receiving the e-mail, I forwarded it to the HRC, Michael Finney (Ms. O'Connor's supervisor) and Dave Ramsey (CEO of the

Company). Mses. Simms and Sievertsen met with Ms. O'Connor on June 23, 2020 and confirmed that Plaintiff had engaged in premarital sex.

13. The HRC decided to terminate Plaintiff's employment effective June 25, 2020, to remain consistent with decisions it made in the past.

14. Since 2016, the HRC has learned of eight (8) employees who were engaging in premarital sex during their employment with the Company. Three (3) of them were females (including Caitlin O'Connor) and five (5) of them were males. The HRC decided to terminate all eight (8) of the employees though some of them resigned in lieu of an involuntary termination.

15. Two (2) of the three (3) females that were considered by the HRC were pregnant at the time of their separation. Both of them were offered severance benefits that were greater than benefits offered to any of the other six (6) non-pregnant employees terminated for premarital sex. Ms. O'Connor was offered one (1) year of salary and health insurance benefits for her and her child as part of a severance agreement.

16. In addition to these eight (8) employees that were brought before the HRC, members of the Operating Board have decided to terminate one other employee (female) for engaging in premarital sex since 2016. This employee was pregnant at the time and was also offered a severance agreement comparable to Ms. O'Connor's.

17. No employees other than the nine (9) employees referred to in Paragraphs 14 and 16 have come before the HRC or the Operating Board for violating the prohibition on premarital sex.

18. Nobody was hired to replace Caitlin O'Connor after she was terminated on June 25, 2020. Instead, her duties were dispersed to existing employees.

19. The Company provides employees up to 16 weeks of maternity leave, regardless if they are FMLA eligible. If employees are FMLA eligible (meaning they have worked at the Company for at least a year and they have worked 1,250 hours in the year leading up to the maternity leave), the Company pays their full salary and the Company's portion of the cost of their benefits for 12 weeks of the maternity leave. They do not receive salary continuation or paid benefits for the additional 4 weeks, but they are allowed to continue to participate in profit sharing if they are eligible.

20. Since January 1, 2018 through the present, the Company has granted approximately 86 maternity leaves. Most of the employees who were granted maternity leave were FMLA eligible. If an employee requests an extended leave, those are approved by the HRC.

21. In addition to maternity leave, pregnant employees at the Company are provided with additional benefits including reserved parking spaces close to the entrance, flexibility on schedule to accommodate doctor's visits, work-from-home arrangements, participation in the Healthy Maternity Program which provides counseling and guidance for expectant mothers and reimbursement for pregnancy-related wellness programs such as exercise and yoga.

I declare, under penalty of perjury, that the foregoing declaration is true and correct to the best of my knowledge, information, and belief.

*Armando Lopez*
ARMANDO LOPEZ

11/5/2021
DATE