# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **CAITLIN O'CONNOR,** ) | **Case No. 3:20-cv-00628** |
| **Plaintiff,** ) | |
| ) | **District Judge Richardson** |
| **v.** ) | |
| ) | **Magistrate Judge Frensley** |
| **THE LAMPO GROUP, LLC a/k/a** ) | |
| **RAMSEY SOLUTIONS,** ) | **Jury Demand** |
| ) | |
| **Defendant.** ) | |

## DECLARATION OF CAITLIN O'CONNOR

I, Caitlin O'Connor, voluntarily makes the following Declaration subject to the laws of perjury in accordance with the provisions of 28 U.S.C. § 1746. I have personal knowledge of the facts set forth in this Declaration.

1. I was employed by The Lampo Group, LLC a/k/a Ramsey Solutions from February 22, 2016, until June 25, 2020.

2. However, if Ramsey terminates you, you are shunned by all current employees, and they are encouraged not to speak to you.

3. Although there is a supposed "Core Value" against gossip, there is a culture of keeping an eye on employees and former employees and reporting them to other Ramsey employees if they believe the employee is doing something not aligned with Core Values.

4. For example, I was instructed to continue to provide information on Kasey Frank and her social media page after she was no longer with Ramsey Solutions.

5. As a result, I suffer from anxiety and insomnia, which is triggered and exacerbated by stress, which can cause me to be unable to remember information.

6. I was deposed in this case on June 22, 2021.

1

7. Due to my extreme anxiety surrounding my case and deposition, I did not review many documents prior to my deposition because the trauma experienced from my employment with Ramsey Solutions and my subsequent termination while I was pregnant was overwhelming.

8. Any documents detailing what I experienced while as an employee of Ramsey, as well as my ultimate termination, trigger my anxiety and insomnia.

9. In addition to documents in my case, any articles or stories regarding my experience, termination, as well as the experiences of others are significantly triggering.

10. As a result of all the articles posted on Facebook and the comments of strangers on Facebook, I deleted my Facebook page in order to cope and not spiral as a result of the intense emotions I feel when reading these stories and the comments of strangers regarding my life.

11. My deposition was particularly re-traumatizing. I was forced to face one of the individuals who terminated me as a result of my pregnancy, sex, and religious beliefs. It was intimidating to be in a room with a court reporter, videographer, two attorneys, Ramsey's General Counsel, and Ramsey's HR Director with the Ramsey representatives staring me down the entire day.

12. The experience of having my child was severely impacted by the stress and emotion of losing my job, my "work family," and having financial concerns, including the loss of my health insurance.

13. Seeing multiple representatives from Ramsey triggered what I now realize was a trauma response, and I froze, unable to recall basic details that I previously provided to the EEOC

and details that are set forth in Complaint and the subsequent amendments. I was intimidated and traumatized.

14. I was scared to say anything that could be considered disparaging as I am aware of Ramsey threats to former employees as a result of them telling their story and the harassment former employees have experienced in the form of threats of legal action.

15. Due to my emotional inability to review documents at the time, the trauma and fear associated with facing one of the people who terminated me, as well as the fear of repercussions, I froze and could not remember the details of some of the conversations I had with Ramsey Solutions employees.

16. Since my deposition, I have been able to review contemporaneous records, the facts in the first and subsequent complaints, and other documents.

17. During my deposition, I was asked questions regarding my Third Amended Complaint, however I was only given moments to review it.

18. Upon a thorough review of all facts in my first complaint and subsequent complaints (Attachment 1-4), including the Third Amended Complaint, I can attest that the facts detailed within are accurate.

19. During my deposition, I was asked questions regarding a recording I took of a conversation with Suzanne Simms and Armando Lopez regarding my termination.

20. I had not listened to the recording prior to my deposition, as it is incredibly upsetting to re-live the events of my termination.

21. Upon listening to the recording, which I did not have access to during my deposition, I was able to recall that Suzanne Simms told me at the beginning of my termination meeting that, "I get the feeling you kind of know what's coming . . . here is where we

3

land because we have no other choice." and "you and us are out of alignment with our Core Values."

22. Ms. Simms also stated I was being terminated because they have "no other choice" as they are "hardcore" about their Core Values.

23. Ms. Simms made it clear, my time was up with Ramsey Solutions, despite me being, "one of the smartest [she] knows and one of strongest people [she] knows."

24. I was asked if this is what I was expected and I said yes. Ms. Simms referenced our phone call the previous Monday, which led me to believe I would be terminated, as well as my time with Ramsey made me understand my termination as a result of my pregnancy was a possibility.

25. During this meeting, Ms. Simms said she hoped I would get some rest as she acknowledged the toll my pregnancy would take on my body.

26. Ms. Simms then left the room and Armando Lopez discussed further details of my termination.

27. He reaffirmed that my termination was due to an issue of "alignment with Core Values" and "who we are as a company and the Core Values that we profess don't align."

28. Additionally, after further time to review my EEOC charge, which was created closer in time to my termination than my deposition, the details outlined in my charge are an accurate representation of the facts surrounding my termination. (Attachment 5).

29. After further review of the EEOC notes taken during my interview, these notes are accurate, other than the spelling of Camden Laws and the note regarding the separation letter, as I was not terminated for lack of work. (Attachment 6).

4

30. After my deposition, I also reviewed all of my interrogatory responses. Each response is correct. (Attachment 7).

31. During my deposition, I was also asked vague questions about whether some unnamed person from Ramsey was lying. I have no idea why I answered that they must not have been lying. I do not even know who was being referred to, but my agreement to this question further demonstrates how the deposition affected my ability to think straight. It makes no logical sense that I would have agreed to such a question.

32. The bottom line is that my private life and religious beliefs are mine and while I was employed by Ramsey, they had no right to inquire about either, much less terminate me because of them.

33. The deposition made me realize that the emotional trauma I have from my separation from Ramsey is more significant than I previously was able to appreciate. Because of this, I intend to seek mental health counseling to help me recover from this trauma and the ongoing stress.

I have read the foregoing Declaration and declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 6th day of Aug, 2021.

Caitlin O'Connor

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CAITLIN O'CONNOR,

          Plaintiff,                Case No.

          v.

                                  JURY DEMAND

THE LAMPO GROUP, LLC a/k/a
RAMSEY SOLUTIONS,

          Defendant.
_____/

## COMPLAINT

After working for The Lampo Group, a/k/a Ramsey Solutions ("Ramsey Solutions") for over four years, Caitlin O'Connor notified Ramsey Solutions she was pregnant; however instead of it being a joyful time she was terminated from her job because of her pregnancy. Ms. O'Connor requested FMLA paperwork for the birth of her child and requested ADA paperwork since her pregnancy is considered a geriatric pregnancy. Subsequently, Ms. O'Connor received a phone call from a board member informing her she would have a meeting with a board member the next week. During this meeting, Ms. O'Connor met with two board members who informed her Ramsey Solutions was still deciding the best way to proceed. Ms. O'Connor finally had a meeting with the Head of Human Resources and the board members and was informed she was being terminated due to her pregnancy and for a violation of "Company Conduct," because she is not married to her partner, the baby's father. Ramsey contends that her committed relationship and her pregnancy are a violation of its "righteous living" policy. Accordingly, Ms. O'Connor files the instant Complaint for both retaliation and interference violations of the Family and Medical Leave Act, Tennessee Human Rights Act, the Tennessee Maternity Leave Act, and the Tennessee Disability Act.

1

## PARTIES

1.      Plaintiff, Caitlin O'Connor, ("Ms. O'Connor") is a citizen and resident of Williamson County, Tennessee, and a former employee of Defendant. Plaintiff worked for Defendant at its location in Franklin, Tennessee.

2.      Defendant The Lampo Group, LLC, ("Lampo") a/k/a Ramsey Solutions ("Ramsey" or "Ramsey Solutions") is a limited liability company licensed to transact business in Tennessee. Its registered agent for service of process is Mark Floyd, 1011 Reams Fleming Blvd, Franklin, TN, 37064-1844. At all material times, Defendant has been an employer as defined by the FMLA, ADA, Title VII, and under state law.

3.      At all times material to this action, Defendant has employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2019 and/or 2020 and is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A).

4.      At all times material to this action, Plaintiff was an "eligible employee" under the FMLA pursuant to 29 U.S.C. § 2611(2) and 29 C.F.R. § 825.110.

5.      At all times material to this action, Defendant was an employer within the meaning of the THRA, TDA, and FMLA.

## JURISDICTION AND VENUE

6.      This is an action for unlawful employment practices brought under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA") (Count I); the Tennessee Human Rights Act ("THRA"), T.C.A. §4-21-101, *et seq.* (Count II, V); [1] the Tennessee Maternity Leave Act ("TMLA"), T.C.A. §4-21-408, *et seq.* (Count III), and the Tennessee Disability Act ("TDA")

---

[1] Plaintiff is filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex, disability, and religious discrimination and retaliation violations. Plaintiff intends to request her Right to Sue and amend this Complaint to bring claims under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act once her charge has been administratively exhausted.

2

T.C.A. § 8-50-103 (Count IV).

7.      The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

## FACTS

8.      Ms. O'Connor was employed with Ramsey Solutions over four years. She was hired in February 22, 2016. Her position with Ramsey Solutions was as an Administrative Assistant in the Information Technology Department.

9.      Ms. O'Connor performed her job duties without incident and was never given a write up for performance or place on a Performance Improvement Plan until recent events described in this Complaint.

10.     On June 18, 2020, Ms. O'Connor emailed Ramsey Solutions's Head of Human Resources, Armand Lopez, that she was 12 weeks pregnant and requested FMLA paperwork for her maternity leave once she had her baby.

11.     In this same email, Ms. O'Connor requested ADA accommodation paperwork to take to her doctor, as she is considered to have a geriatric pregnancy due to her age and was unsure if she would need accommodation or suffer any limitations during her pregnancy.

12.     The next day, on June 19, 2020, Ms. O'Connor received a phone call from a board member telling her that the next week she would have to have a meeting with the board.

13.     On June 23, 2020, Ms. O'Connor met with two board members who told her Ramsey Solutions was still deciding the best way to proceed with her situation.

14.     On June 25, 2020, Mr. Lopez and Ramsey Solutions board members terminated Ms. O'Connor due to her pregnancy and violating Ramsey Solutions's rules of "Company Conduct."

3

15.     Ramsey Solutions's Company Conduct provision in their handbook states, "The image of Ramsey Solutions is held out to be Christian. Should a team member engage in behavior not consistent with traditional Judeo-Christian values or teaching, it would damage the image and the value of our good will and our brand. If this should occur, the team member would be subject to review, probation, or termination."

16.     The Code of Conduct incorporates a "righteous living" policy which prohibits premarital sex.

17.     Ms. O'Connor's violation of "Company Conduct" and righteous living policy is that she and father of her child are in a committed long-term relationship, but not legally married, nor do they desire to be married at this time.

18.     Ms. O'Connor's duties as Administrative Assistant included: managing her leader's calendars, daily emails, and day to day business. Ms. O'Connor would schedule meetings, one on ones and annual reviews for the leaders and other employees. Ms. O'Connor would also take notes during meetings, handle team member care which included sending flowers, supporting the staff etc.

19.     Ramsey Solutions's termination of Ms. O'Connor interfered with her right to take FMLA leave, discriminated against her due to her sex, pregnancy, religion, and disability, and was in retaliation for becoming pregnant, requesting FMLA, and/or her disabilities.

20.     Ramsey Solutions's discriminatory policy has a disparate impact on women, in particular pregnant women because they are unable to keep their private lives private in the event they become pregnant because pregnancy is a very visible condition.

**Count I**
**Violation of FMLA – Retaliation and Interference**

21.     Plaintiff restates and incorporates herein the foregoing paragraphs.

4

22.     At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

23.     Defendant is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

24.     Plaintiff was entitled to receive FMLA leave for the birth and care of a child.

25.     Defendant subjected Plaintiff to adverse employment actions after she requested FMLA, including but not limited to, interfering with her rights to take FMLA and terminating her.

26.     Defendant's actions constitute both interference and/or retaliation violations of the FMLA.

27.     Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

28.     Defendant's conduct harmed and caused damage to Plaintiff.

29.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, cost of replacement coverage or reimbursement for medical expenses, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

### Count II
### Violation of THRA- Sex Discrimination/Retaliation

30.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

31.     Plaintiff was subjected to disparate treatment in the terms and conditions of her job the Defendant's workplace because of her sex, female, and because of her pregnancy.

32.     Plaintiff was qualified for her position.

33.     Plaintiff suffered adverse employment actions as a result of discrimination on the basis of sex, including, but not limited to different terms and conditions, loss of pay and benefits and the loss of her job than similarly situated non-pregnant employees.

34.     Plaintiff objected to the manner in which she was being treated when she complained to Defendant and refused to get married to satisfy their discriminatory demands and behavior.

35.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, inconvenience, lost earnings and benefits.

36.     As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, cost of replacement coverage or reimbursement for medical expenses, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count III**
**Violation of Tennessee Maternity Leave Act**

37.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

38.     Plaintiff was employed for at least 12 months prior to her leave as a full-time employee of Defendant.

39.     Defendant employs a minimum of 100 employees.

40.     Plaintiff gave at least three (3) months' advance notice of her leave to Defendant.

41.     Defendant subjected Plaintiff to disparate terms and conditions of employment after she requested TMLA, including but not limited to, interfering with her rights to take TMLA and terminating her.

42.     Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

43.     Defendant's conduct harmed and caused damage to Plaintiff.

44.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, cost of replacement coverage or reimbursement for medical expenses, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count IV
## Violation of TDA- Disability Discrimination/Retaliation

45.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

46.     Defendant is an employer as defined in the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA").

47.     Plaintiff was regarded as an individual with a disability after she notified them of her high risk pregnancy.

48.     Defendant discriminated against Plaintiff on the basis of her disability in violation of the TDA that culminated in her termination.

49.     Plaintiff engaged in protected activity when she notified her employer of her disability and requested paperwork regarding her disability. Such actions by the Plaintiff are statutorily protected activities under the TDA.

50.     Plaintiff was subjected to adverse employment actions in violation of the TDA.

51.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer professional and personal embarrassment, humiliation, inconvenience and lost earnings and benefits.

52.     As a result, Plaintiff is entitled to recover her damages, including lost wages, benefits, cost of replacement coverage or reimbursement for medical expenses, compensatory and punitive damages, attorneys' fees, costs, interest, and any other legal and equitable relief to which she may be entitled.

7

**Count V**
**Violation of THRA- Religious Discrimination/Retaliation**

53.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

54.     Plaintiff notified Defendant she was pregnant.

55.     Defendant terminated her employment premised on a violation its "Core Values" which incorporate a "righteous living" policy allegedly premised on its interpretation of "Judeo-Christian" values that it believes prohibits or frowns upon premarital sex.

56.     Premised on these alleged values, Defendant terminated Plaintiff's employment after she notified them of her pregnancy and not only terminated her employment, but in a particularly cruel manner also her health insurance benefits which include pre and post-natal care.

57.     Defendant terminated Plaintiff because of its religious based Core Value policy which discriminates against employees who do not strictly adhere to Ramsey's interpretation of "Judeo-Christian" values for non-work related behavior.

58.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits, including pre- and post-natal coverage.

59.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, cost of replacement medical coverage or reimbursement for medical expenses, and any other legal and equitable relief to which she may be entitled.

**RELIEF REQUESTED**

Plaintiff respectfully requests:

1.      A jury trial;

2.      Judgment in favor of Plaintiff and against Defendant on all counts in this action;

3.      Back pay and damages for lost benefits;

4.      Reinstatement or front pay;

5.      Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

6.      Punitive damages;

7.      Liquidated damages under the FMLA;

8.      Attorneys' fees and expenses;

9.      Prejudgment interest and, if applicable, post-judgment interest; and

10.     Such other and further legal or equitable relief to which she may be entitled.


Respectfully submitted,


_s/ Heather Moore Collins_____
Heather Moore Collins BPR # 026099
Anne Bennett Hunter BPR # 022407
Ashley Shoemaker Walter BPR #037651
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
ashley@collinshunter.com

_Attorneys for Plaintiff_

Case 3:20-cv-00628 Document 67-1 Filed 07/27/20 Page 14 of 71 PageID #: 91089

**MOTION GRANTED.**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| CAITLIN O'CONNOR, | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 3:20-cv-00628** |
| | ) | |
| v. | ) | **Judge Eli J. Richardson** |
| | ) | |
| | ) | |
| THE LAMPO GROUP, LLC a/k/a | ) | **Magistrate Judge Frensley** |
| RAMSEY SOLUTIONS, | ) | **Jury Demand** |
| | ) | |
| **Defendant.** | ) | |

## <u>PLAINTIFF'S UNOPPOSED FIRST MOTION TO AMEND COMPLAINT</u>

COMES NOW Plaintiff Caitlin O'Connor pursuant to Rule 15(a)(1)(B), (c)(1)(C)(ii) of the Federal Rules of Civil Procedure and Local Rule 15.01 and moves the Court for an order granting Plaintiff leave to amend her Complaint (ECF 1) and file the attached Amended Complaint to add claims that have been administratively exhausted at the EEOC. In particular, 180 days have passed since Ms. O'Connor filed her charge with the EEOC, and a right to sue letter has been requested. Thus, the Amended Complaint adds claims for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), discrimination on the basis of sex/pregnancy, religion and retaliation; and for violations of the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et. seq.* ("ADA")*,* as amended by the ADA Amendments Act of 2008 ("ADAAA") for disability discrimination and retaliation. Plaintiff's counsel conferred with Defendant's counsel who does not oppose the filing of the Amended Complaint.

WHEREFORE, Plaintiff respectfully requests that the Court grant this motion and direct the attached Amended Complaint be filed.

Respectfully submitted,

*s/ Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Bennett Hunter BPR # 022407
Ashley Shoemaker Walter BPR #037651
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
ashley@collinshunter.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been served via the Court's CM/ECF system this the 5th day of February 2021 to counsel of record:

Leslie Goff Sanders
Daniel Crowell
WEBB SANDERS PLLC
611 Commerce Street
Suite 3102
Nashville, TN 37203
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com          /s/ Heather Moore Collins
                                     *Attorney for Plaintiff*

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CAITLIN O'CONNOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 3:20-cv-00628** |
| | ) | |
| **v.** | ) | **Judge Eli J. Richardson** |
| | ) | |
| | ) | |
| **THE LAMPO GROUP, LLC a/k/a** | ) | **Magistrate Judge Frensley** |
| **RAMSEY SOLUTIONS,** | ) | **Jury Demand** |
| | ) | |
| **Defendant.** | ) | |

**AMENDED COMPLAINT**

After working for The Lampo Group, a/k/a Ramsey Solutions ("Ramsey Solutions") for over four years, Caitlin O'Connor notified Ramsey Solutions she was pregnant; however instead of it being a joyful time she was terminated from her job because of her pregnancy. Ms. O'Connor requested FMLA paperwork for the birth of her child and requested ADA paperwork since her pregnancy is considered a geriatric pregnancy. Subsequently, Ms. O'Connor received a phone call informing her she would have a meeting with a board member the next week. During this meeting, Ms. O'Connor met with two board members who informed her Ramsey Solutions was still deciding the best way to proceed. Ms. O'Connor finally had a meeting with the Head of Human Resources and the board members and was informed she was being terminated due to her pregnancy and for a violation of "Company Conduct," because she is not married to her partner, the baby's father. Ramsey contends that her committed relationship and her pregnancy are a violation of its "righteous living" policy. Accordingly, Ms. O'Connor files the instant Amended Complaint for both retaliation and interference violations of the Family and Medical Leave Act, Tennessee Human Rights Act, the Tennessee Maternity Leave Act, the Tennessee Disability Act, Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act.

1

## PARTIES

1.       Plaintiff, Caitlin O'Connor, ("Ms. O'Connor") is a citizen and resident of Williamson County, Tennessee, and a former employee of Defendant. Plaintiff worked for Defendant at its location in Franklin, Tennessee.

2.       Defendant The Lampo Group, LLC, ("Lampo") a/k/a Ramsey Solutions ("Ramsey" or "Ramsey Solutions") is a limited liability company licensed to transact business in Tennessee. Its registered agent for service of process is Mark Floyd, 1011 Reams Fleming Blvd, Franklin, TN, 37064-1844.

3.       At all times material to this action, Defendant has employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2019 and/or 2020 and is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A).

4.       At all times material to this action, Plaintiff was an "eligible employee" under the FMLA pursuant to 29 U.S.C. § 2611(2) and 29 C.F.R. § 825.110.

5.       At all times material to this action, Defendant was an employer within the meaning of the THRA, TDA, TMLA, FMLA, ADA and Title VII.

## JURISDICTION AND VENUE

6.       This is an action for unlawful employment practices brought under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA") (Count I); the Tennessee Human Rights Act ("THRA"), T.C.A. §4-21-101, *et seq*. (Count II, V); the Tennessee Maternity Leave Act ("TMLA"), T.C.A. §4-21-408, *et seq*. (Count III), and the Tennessee Disability Act ("TDA") T.C.A. § 8-50-103 (Count IV); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII") (Count V, VI); and the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et. seq*. ("ADA")*,* as amended by the ADA Amendments Act of 2008 ("ADAAA") (Count VII).

7.     The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

8.     Plaintiff complied with all conditions precedent to the filing of her claims pursuant to 42 U.S.C. § 12101 *et. seq.* and 42 U.S.C. §§ 2000e *et seq.*, to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; 180 days have passed since the filing of her charge of discrimination, a right to sue letter has been requested, and thus, the charge prerequisites have been satisfied.

## FACTS

9.     Ms. O'Connor was employed with Ramsey Solutions over four years. She was hired in February 22, 2016. Her position with Ramsey Solutions was as an Administrative Assistant in the Information Technology Department.

10.     Ms. O'Connor performed her job duties without incident and was never given a write up for performance or placed on a Performance Improvement Plan until recent events described in this Amended Complaint.

11.     On June 18, 2020, Ms. O'Connor emailed Ramsey Solutions' Head of Human Resources, Armando Lopez, that she was 12 weeks pregnant and requested FMLA paperwork for her maternity leave once she had her baby.

12.     In this same email, Ms. O'Connor requested ADA accommodation paperwork to take to her doctor, as she is considered to have a geriatric pregnancy due to her age and was unsure if she would need accommodation or suffer any limitations during her pregnancy.

13.     The next day, on June 19, 2020, Ms. O'Connor received a phone call from a board member telling her that the next week she would have to have a meeting with the board.

Case 3:20-cv-00628 Document 67-1 Filed 08/18/21 Page 19 of 71 PageID #: 1094

14.     On June 23, 2020, Ms. O'Connor met with two board members who told her Ramsey Solutions was still deciding the best way to proceed with her situation.

15.     On June 25, 2020, Mr. Lopez and Ramsey Solutions board members terminated Ms. O'Connor due to her pregnancy and violating Ramsey Solutions' rules of "Company Conduct."

16.     Ramsey Solutions' Company Conduct provision in their handbook states, "The image of Ramsey Solutions is held out to be Christian. Should a team member engage in behavior not consistent with traditional Judeo-Christian values or teaching, it would damage the image and the value of our good will and our brand. If this should occur, the team member would be subject to review, probation, or termination."

17.     The Core Values incorporated into Ramsey's Mission Statement incorporates a "righteous living" policy or value which prohibits premarital sex.

18.     Ms. O'Connor's violation of "Company Conduct" and righteous living policy is that she and the father of her child are in a committed long-term relationship, but not legally married, nor do they desire to be married at this time.

19.     Ms. O'Connor's duties as Administrative Assistant included: managing her leader's calendars, daily emails, and day to day business. Ms. O'Connor would schedule meetings, one on ones and annual reviews for the leaders and other employees. Ms. O'Connor would also take notes during meetings, handle team member care which included sending flowers, supporting the staff etc.

20.     Ramsey Solutions' termination of Ms. O'Connor interfered with her right to take FMLA leave, discriminated against her due to her sex, pregnancy, religion, and disability, and was in retaliation for informing them of her pregnancy due to it being "frowned upon here," requesting

FMLA, and/or accommodation for her disability.

21.     Ramsey Solutions' discriminatory policy has a disparate impact on women, in particular pregnant women because they are unable to keep their private lives private in the event they become pregnant because pregnancy is a very visible condition.

## Count I
## Violation of FMLA – Retaliation and Interference

22.     Plaintiff restates and incorporates herein the foregoing paragraphs.

23.     At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

24.     Defendant is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

25.     Plaintiff was entitled to receive FMLA leave for the birth and care of a child.

26.     Defendant subjected Plaintiff to adverse employment actions after she requested FMLA, including but not limited to, interfering with her rights to take FMLA and terminating her.

27.     Defendant's actions constitute both interference and/or retaliation violations of the FMLA.

28.     Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

29.     Defendant's conduct harmed and caused damage to Plaintiff.

30.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, cost of replacement coverage or reimbursement for medical expenses, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count II
## Violation of THRA- Sex/Pregnancy Discrimination/Retaliation

Case 3:20-cv-00628 Document 67-1 Filed 08/9/21 Page 21 of 71 PageID #: 1596

31.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

32.     Plaintiff was subjected to disparate treatment in the terms and conditions of her job the Defendant's workplace because of her sex, female, and because of her pregnancy.

33.     Plaintiff was qualified for her position.

34.     Plaintiff suffered adverse employment actions as a result of discrimination on the basis of sex/pregnancy, including, but not limited to different terms and conditions, loss of pay and benefits and the loss of her job than similarly situated non-pregnant employees.

35.     Plaintiff objected to the manner in which she was being treated when she complained to Defendant and refused to get married to satisfy their discriminatory demands and behavior.

36.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, inconvenience, lost earnings and benefits.

37.     As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, cost of replacement coverage or reimbursement for medical expenses, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count III**
**Violation of Tennessee Maternity Leave Act**

38.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

39.     Plaintiff was employed for at least 12 months prior to her leave as a full-time employee of Defendant.

40.     Defendant employs a minimum of 100 employees.

41.     Plaintiff gave at least three (3) months' advance notice of her leave to Defendant.

42.     Defendant subjected Plaintiff to disparate terms and conditions of employment after she requested TMLA, including but not limited to, interfering with her rights to take TMLA and terminating her.

43.     Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

44.     Defendant's conduct harmed and caused damage to Plaintiff.

45.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, cost of replacement coverage or reimbursement for medical expenses, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count IV**
**Violation of TDA- Disability Discrimination/Retaliation**

46.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

47.     Defendant is an employer as defined in the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA").

48.     Plaintiff was regarded as an individual with a disability after she notified them of her high risk pregnancy.

49.     Defendant discriminated against Plaintiff on the basis of her disability in violation of the TDA that culminated in her termination.

50.     Plaintiff engaged in protected activity when she notified her employer of her disability and requested paperwork regarding her disability. Such actions by the Plaintiff are statutorily protected activities under the TDA.

51.     Plaintiff was subjected to adverse employment actions in violation of the TDA.

Case 3:20-cv-00628 Document 67-1 Filed 10/08/21 Page 23 of 71 PageID #: 1098

52.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer professional and personal embarrassment, humiliation, inconvenience and lost earnings and benefits.

53.     As a result, Plaintiff is entitled to recover her damages, including lost wages, benefits, cost of replacement coverage or reimbursement for medical expenses, compensatory and punitive damages, attorneys' fees, costs, interest, and any other legal and equitable relief to which she may be entitled.

## Count V
## Violation of THRA & Title VII- Religious Discrimination/Retaliation

54.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

55.     Plaintiff notified Defendant she was pregnant.

56.     Defendant terminated her employment premised on a violation its "Core Values" which incorporate a "righteous living" value allegedly premised on its interpretation of "Judeo-Christian" values that it believes prohibits or frowns upon premarital sex.

57.     Premised on these alleged "Judeo-Christian" values, Defendant terminated Plaintiff's employment after she notified them of her pregnancy and not only terminated her employment, but in a particularly cruel manner also her health insurance benefits which include pre and post-natal care.

58.     Defendant terminated Plaintiff because of its religious based Core Value policy which discriminates against employees who do not strictly adhere to Ramsey's interpretation of "Judeo-Christian" values for non-work related behavior.

59.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment,

Case 3:20-cv-00628 Document 67-1 Filed 08/05/21 Page 24 of 71 PageID #: 1699
Case 3:20-cv-00628 Document 67-1 Filed 08/05/21 Page 24 of 71 PageID #: 1699

humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits, including pre- and post-natal coverage.

60.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, cost of replacement medical coverage or reimbursement for medical expenses, and any other legal and equitable relief to which she may be entitled.

## Count VI
## Violation of Title VII- Sex, Pregnancy Discrimination/Retaliation

61.     Plaintiff restates and incorporates herein the foregoing paragraphs.

62.     Title VII defines "because of sex" or "on the basis of sex" as follows:

The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e–2 (h) of this title shall be interpreted to permit otherwise.

42 U.S.C. § 2000e(k).

63.     Plaintiff was subjected to disparate treatment in the terms and conditions of her job in the Defendant's workplace because of her sex, female.

64.     Plaintiff was subject to disparate terms and conditions of employment that other similarly situated males were not subject to.

65.     Defendant's "righteous living" policy, to the extent it requires discipline or termination for sex outside of marriage that results in pregnancy can have a disparate impact on female employees who become pregnant or will require pregnancy related leave.

66.     Plaintiff was qualified for her position.

9

67.     Plaintiff suffered adverse employment actions as a result of discrimination on the basis of sex/pregnancy, including, but not limited to different terms and conditions of employment, retaliation for requesting an accommodation for her pregnancy, and eventually the loss of her job than similarly situated non-pregnant employees.

68.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, inconvenience, lost earnings and benefits.

### Count VII
### Violation of ADA- Disability Discrimination

69.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

70.     Plaintiff was a qualified individual with a disability or regarded as disabled.

71.     Defendant discriminated against Plaintiff on the basis of her disability in violation of the ADA that culminated in her termination.

72.     Plaintiff could perform the essential functions of her job and requested information about reasonable accommodation due to her pregnancy that had the potential for complications due to her age.

73.     Plaintiff was terminated because of her disability and/or in retaliation for her requests for the reasonable accommodation, and/or because she was regarded as disabled.

74.     Plaintiff's termination was because of her disability and/or because she was regarded as disabled.

75.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

10

76.     As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1.     A jury trial;

2.     Judgment in favor of Plaintiff and against Defendant on all counts in this action;

3.     Back pay and damages for lost benefits;

4.     Reinstatement or front pay;

5.     Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

6.     Punitive damages;

7.     Liquidated damages under the FMLA;

8.     Attorneys' fees and expenses;

9.     Prejudgment interest and, if applicable, post-judgment interest; and

10.     Such other and further legal or equitable relief to which she may be entitled.


Respectfully submitted,


*s/ Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Bennett Hunter BPR # 022407
Ashley Shoemaker Walter BPR #037651
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com

11

anne@collinshunter.com
ashley@collinshunter.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that a copy of the foregoing has been served via the Court's CM/ECF system this the 5th day of February 2021 to counsel of record:

Leslie Goff Sanders
Daniel Crowell
WEBB SANDERS PLLC
611 Commerce Street
Suite 3102
Nashville, TN 37203
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com

*s/ Heather Moore Collins*

12

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CAITLIN O'CONNOR, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:20-cv-00628 |
| | ) | |
| v. | ) | Judge Eli J. Richardson |
| | ) | |
| | ) | |
| THE LAMPO GROUP, LLC a/k/a | ) | Magistrate Judge Frensley |
| RAMSEY SOLUTIONS, | ) | Jury Demand |
| | ) | |
| Defendant. | ) | |

SECOND AMENDED COMPLAINT

After working for The Lampo Group, a/k/a Ramsey Solutions ("Ramsey Solutions") for over four years, Caitlin O'Connor notified Ramsey Solutions she was pregnant; however instead of it being a joyful time she was terminated from her job because of her pregnancy. Ms. O'Connor requested FMLA paperwork for the birth of her child and requested ADA paperwork since her pregnancy is considered a geriatric pregnancy. Subsequently, Ms. O'Connor received a phone call informing her she would have a meeting with a board member the next week. During this meeting, Ms. O'Connor met with two board members who informed her Ramsey Solutions was still deciding the best way to proceed. Ms. O'Connor finally had a meeting with the Head of Human Resources and the board members and was informed she was being terminated due to her pregnancy and for a violation of "Company Conduct," because she is not married to her partner, the baby's father. Ramsey contends that her committed relationship and her pregnancy are a violation of its "righteous living" policy. Accordingly, Ms. O'Connor files the instant Amended Complaint for both retaliation and interference violations of the Family and Medical Leave Act, Tennessee Human Rights Act, the Tennessee Maternity Leave Act, the Tennessee Disability Act, Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act.

1

Case 3:20-cv-00628   Document 25-1   Filed 03/09/21   Page 1 of 13 PageID #: 261
Case 3:20-cv-00628   Document 67-5   Filed 10/08/21   Page 29 of 71 PageID #: 1104
O'Connor 000990

## PARTIES

1.     Plaintiff, Caitlin O'Connor, ("Ms. O'Connor") is a citizen and resident of Williamson County, Tennessee, and a former employee of Defendant. Plaintiff worked for Defendant at its location in Franklin, Tennessee.

2.     Defendant The Lampo Group, LLC, ("Lampo") a/k/a Ramsey Solutions ("Ramsey" or "Ramsey Solutions") is a limited liability company licensed to transact business in Tennessee. Its registered agent for service of process is Mark Floyd, 1011 Reams Fleming Blvd, Franklin, TN, 37064-1844.

3.     At all times material to this action, Defendant has employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2019 and/or 2020 and is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A).

4.     At all times material to this action, Plaintiff was an "eligible employee" under the FMLA pursuant to 29 U.S.C. § 2611(2) and 29 C.F.R. § 825.110.

5.     At all times material to this action, Defendant was an employer within the meaning of the THRA, TDA, TMLA, FMLA, ADA and Title VII.

### JURISDICTION AND VENUE

6.     This is an action for unlawful employment practices brought under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA") (Count I); the Tennessee Human Rights Act ("THRA"), T.C.A. §4-21-101, *et seq*. (Count II, V); the Tennessee Maternity Leave Act ("TMLA"), T.C.A. §4-21-408, *et seq*. (Count III), and the Tennessee Disability Act ("TDA") T.C.A. § 8-50-103 (Count IV); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII") (Count V, VI); and the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et. seq*. ("ADA")*,* as amended by the ADA Amendments Act of 2008 ("ADAAA") (Count VII).

2

7.     The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

8.     Plaintiff complied with all conditions precedent to the filing of her claims pursuant to 42 U.S.C. § 12101 *et. seq.* and 42 U.S.C. §§ 2000e *et seq.*, to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; 180 days have passed since the filing of her charge of discrimination. Further, a right to sue letter was received on February 22, 2021, and thus, the charge prerequisites have been satisfied.

## FACTS

9.     Ms. O'Connor was employed with Ramsey Solutions over four years. She was hired in February 22, 2016. Her position with Ramsey Solutions was as an Administrative Assistant in the Information Technology Department.

10.     Ms. O'Connor performed her job duties without incident and was never given a write up for performance or placed on a Performance Improvement Plan until recent events described in this Amended Complaint.

11.     On June 18, 2020, Ms. O'Connor emailed Ramsey Solutions' Head of Human Resources, Armando Lopez, that she was 12 weeks pregnant and requested FMLA paperwork for her maternity leave once she had her baby.

12.     In this same email, Ms. O'Connor requested ADA accommodation paperwork to take to her doctor, as she is considered to have a geriatric pregnancy due to her age and was unsure if she would need accommodation or suffer any limitations during her pregnancy.

13.     The next day, on June 19, 2020, Ms. O'Connor received a phone call from a board member telling her that the next week she would have to have a meeting with the board.

14.     On June 23, 2020, Ms. O'Connor met with two board members who told her Ramsey Solutions was still deciding the best way to proceed with her situation.

15.     On June 25, 2020, Mr. Lopez and Ramsey Solutions board members terminated Ms. O'Connor due to her pregnancy and violating Ramsey Solutions' rules of "Company Conduct."

16.     Ramsey Solutions' Company Conduct provision in their handbook states, "The image of Ramsey Solutions is held out to be Christian. Should a team member engage in behavior not consistent with traditional Judeo-Christian values or teaching, it would damage the image and the value of our good will and our brand. If this should occur, the team member would be subject to review, probation, or termination."

17.     The Core Values incorporated into Ramsey's Mission Statement incorporates a "righteous living" policy or value which allegedly prohibits premarital sex. However, there is no written prohibition against premarital sex in the policy.

18.     Ms. O'Connor's violation of "Company Conduct" and righteous living policy is that she and the father of her child are in a committed long-term relationship, but not legally married, nor do they desire to be married at this time. Ms. O'Connor does not believe premarital sex is a requirement or fundamental tenant of her faith as a Christian.

19.     Ms. O'Connor's duties as Administrative Assistant included: managing her leader's calendars, daily emails, and day to day business. Ms. O'Connor would schedule meetings, one on ones and annual reviews for the leaders and other employees. Ms. O'Connor would also take notes during meetings, handle team member care which included sending flowers, supporting the staff etc.

20.     Plaintiff's sincerely held Christian belief is that Christianity is not meant to be

4

Case 3:20-cv-00628   Document 25-1   Filed 03/09/21   Page 4 of 13 PageID #: 264
Case 3:20-cv-00628   Document 67-5   Filed 01/08/21   Page 32 of 71 PageID #: 1107
O'Connor 000662

punitive, hateful, vengeful, or judgmental. Accordingly, her Christian belief is that God gave a woman the ability to procreate, and that ability to procreate was not restricted by a contract, i.e., marriage or employment at Ramsey Solutions. Moreover, Plaintiff does not believe that her identification as a Christian gives her the right to judge and condemn other Christians or humans for how they choose to carry out their one dictate from Jesus, that is, to love one another. To the contrary, Ms. O'Connor believes it is inherently unloving to pass judgment and condemnation on others for their private relationships.

21.     Plaintiff's view of Christianity does not require her to invade or inquire or know the specifics of what other people do or do not do in their bedroom or when they do it, much less pass morality judgement on other people. Moreover, Plaintiff sincerely believes that she should be able to seek the support of her Christian community during her pregnancy without fear of recrimination, much less termination from her employment.

22.     When Plaintiff notified Defendant of her pregnancy on June 18, 2020, she specifically stated to Armando Lopez "I needed to let you know that I'm 12 weeks pregnant. I understand that being unmarried and expecting is frowned on here, but the reality of the situation is this is what I'm walking through right now. This is obviously uncharted territory for me so I'm not sure what my next steps are regarding sharing the news with my leader, getting FMLA & ADA paperwork in case it's need in the future, etc."

23.     In sending this email on June 18, 2020, Plaintiff ostensibly requested an accommodation from Defendant's strict Righteous Living value which frowns on, by termination, pregnancy outside of marriage.

24.     Ramsey Solutions' termination of Ms. O'Connor interfered with her right to take FMLA leave, discriminated against her due to her sex, pregnancy, religion, and disability, and was

5

in retaliation for informing them of her pregnancy due to it being "frowned upon here," requesting FMLA, and/or accommodation for her disability.

25.    Ramsey Solutions' discriminatory policy has a disparate impact on women, in particular pregnant women because they are unable to keep their private lives private in the event they become pregnant because pregnancy is a very visible condition.

## Count I
### Violation of FMLA – Retaliation and Interference

26.    Plaintiff restates and incorporates herein the foregoing paragraphs.

27.    At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

28.    Defendant is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

29.    Plaintiff was entitled to receive FMLA leave for the birth and care of a child.

30.    Defendant subjected Plaintiff to adverse employment actions after she requested FMLA, including but not limited to, interfering with her rights to take FMLA and terminating her.

31.    Defendant's actions constitute both interference and/or retaliation violations of the FMLA.

32.    Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

33.    Defendant's conduct harmed and caused damage to Plaintiff.

34.    As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, cost of replacement coverage or reimbursement for medical expenses, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count II

6

## Violation of THRA- Sex/Pregnancy Discrimination/Retaliation

35.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

36.     Plaintiff was subjected to disparate treatment in the terms and conditions of her job the Defendant's workplace because of her sex, female, and because of her pregnancy.

37.     Plaintiff was qualified for her position.

38.     Plaintiff suffered adverse employment actions as a result of discrimination on the basis of sex/pregnancy, including, but not limited to different terms and conditions, loss of pay and benefits and the loss of her job than similarly situated non-pregnant employees.

39.     Plaintiff objected to the manner in which she was being treated when she complained to Defendant and refused to get married to satisfy their discriminatory demands and behavior.

40.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, inconvenience, lost earnings and benefits.

41.     As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, cost of replacement coverage or reimbursement for medical expenses, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count III
## Violation of Tennessee Maternity Leave Act

42.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

43.     Plaintiff was employed for at least 12 months prior to her leave as a full-time employee of Defendant.

44.     Defendant employs a minimum of 100 employees.

7

45.    Plaintiff gave at least three (3) months' advance notice of her leave to Defendant.

46.    Defendant subjected Plaintiff to disparate terms and conditions of employment after she requested TMLA, including but not limited to, interfering with her rights to take TMLA and terminating her.

47.    Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

48.    Defendant's conduct harmed and caused damage to Plaintiff.

49.    As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, cost of replacement coverage or reimbursement for medical expenses, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count IV**
**Violation of TDA- Disability Discrimination/Retaliation**

50.    Plaintiff restates and incorporates herein the above paragraphs in their entirety.

51.    Defendant is an employer as defined in the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA").

52.    Plaintiff was regarded as an individual with a disability after she notified them of her high risk pregnancy.

53.    Defendant discriminated against Plaintiff on the basis of her disability in violation of the TDA that culminated in her termination.

54.    Plaintiff engaged in protected activity when she notified her employer of her disability and requested paperwork regarding her disability. Such actions by the Plaintiff are statutorily protected activities under the TDA.

55.    Plaintiff was subjected to adverse employment actions in violation of the TDA.

8

56.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer professional and personal embarrassment, humiliation, inconvenience and lost earnings and benefits.

57.     As a result, Plaintiff is entitled to recover her damages, including lost wages, benefits, cost of replacement coverage or reimbursement for medical expenses, compensatory and punitive damages, attorneys' fees, costs, interest, and any other legal and equitable relief to which she may be entitled.

**Count V**
**Violation of THRA & Title VII- Religious Discrimination/Retaliation**

58.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

59.     Plaintiff is a Christian. Her practice and belief of Christianity is that Christianity is above all a loving, not punitive and judgmental faith. Her practice of Christianity differs from Defendant.

60.     Plaintiff notified Defendant she was pregnant on June 18, 2020, she specifically stated in an email to Armando Lopez "I understand that being unmarried and expecting is frowned on here, but the reality of the situation is this is what I'm walking through right now. This is obviously uncharted territory for me so I'm not sure what my next steps are regarding sharing the news with my leader, getting FMLA & ADA paperwork in case it's need in the future, etc."

61.     Plaintiff's email to HR was a request for an accommodation from its strict policies which "frown on" pregnancy outside of marriage.

62.     Defendant terminated her employment premised on a violation its "Core Values" which incorporate a "righteous living" value allegedly premised on its interpretation of "Judeo-Christian" values that it believes prohibits or frowns upon premarital sex.

9

63.     Premised on these alleged "Judeo-Christian" values, Defendant terminated Plaintiff's employment after she notified them of her pregnancy and not only terminated her employment, but in a particularly cruel manner also her health insurance benefits which included pre and post-natal care.

64.     Defendant terminated Plaintiff because of its religious based Core Value policy which discriminates against employees who do not strictly adhere to Ramsey's interpretation of "Judeo-Christian" values for non-work related behavior.

65.     Plaintiff does not adhere to Ramsey's interpretation of "Judeo-Christian" values for non-work related behavior.

66.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits, including pre- and post-natal coverage.

67.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, cost of replacement medical coverage or reimbursement for medical expenses, and any other legal and equitable relief to which she may be entitled.

**Count VI**
**Violation of Title VII- Sex, Pregnancy Discrimination/Retaliation**

68.     Plaintiff restates and incorporates herein the foregoing paragraphs.

69.     Title VII defines "because of sex" or "on the basis of sex" as follows:

The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar

10

in their ability or inability to work, and nothing in section 2000e–2 (h) of this title shall be interpreted to permit otherwise.

42 U.S.C. § 2000e(k).

70.     Plaintiff was subjected to disparate treatment in the terms and conditions of her job in the Defendant's workplace because of her sex, female.

71.     Plaintiff was subject to disparate terms and conditions of employment that other similarly situated males were not subject to.

72.     Defendant's "righteous living" policy, to the extent it requires discipline or termination for sex outside of marriage that results in pregnancy can have a disparate impact on female employees who become pregnant or will require pregnancy related leave.

73.     Plaintiff was qualified for her position.

74.     Plaintiff suffered adverse employment actions as a result of discrimination on the basis of sex/pregnancy, including, but not limited to different terms and conditions of employment, retaliation for requesting an accommodation for her pregnancy, and eventually the loss of her job than similarly situated non-pregnant employees.

75.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, inconvenience, lost earnings and benefits.

## Count VII
## Violation of ADA- Disability Discrimination

76.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

77.     Plaintiff was a qualified individual with a disability or regarded as disabled.

78.     Defendant discriminated against Plaintiff on the basis of her disability in violation of the ADA that culminated in her termination.

11

Case 3:20-cv-00628   Document 25-1   Filed 03/09/21   Page 11 of 13 PageID #: 271
Case 3:20-cv-00628   Document 67-5   Filed 01/08/21   Page 39 of 71 PageID #: 1114
O'Connor 000664

79.     Plaintiff could perform the essential functions of her job and requested information about reasonable accommodation due to her pregnancy that had the potential for complications due to her age.

80.     Plaintiff was terminated because of her disability and/or in retaliation for her requests for the reasonable accommodation, and/or because she was regarded as disabled.

81.     Plaintiff's termination was because of her disability and/or because she was regarded as disabled.

82.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

83.     As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1.      A jury trial;

2.      Judgment in favor of Plaintiff and against Defendant on all counts in this action;

3.      Back pay and damages for lost benefits;

4.      Reinstatement or front pay;

5.      Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

6.      Punitive damages;

7.      Liquidated damages under the FMLA;

12

8.     Attorneys' fees and expenses;

9.     Prejudgment interest and, if applicable, post-judgment interest; and

10.    Such other and further legal or equitable relief to which she may be entitled.

Respectfully submitted,

*s/ Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Bennett Hunter BPR # 022407
Ashley Shoemaker Walter BPR #037651
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
ashley@collinshunter.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been served via the Court's CM/ECF system this the 9th day of March 2021 to counsel of record:

Leslie Goff Sanders
Daniel Crowell
WEBB SANDERS PLLC
611 Commerce Street
Suite 3102
Nashville, TN 37203
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com

*s/ Heather Moore Collins*

13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **CAITLIN O'CONNOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 3:20-cv-00628** |
| | ) | |
| **v.** | ) | **Judge Eli J. Richardson** |
| | ) | |
| | ) | |
| **THE LAMPO GROUP, LLC a/k/a** | ) | **Magistrate Judge Frensley** |
| **RAMSEY SOLUTIONS,** | ) | **Jury Demand** |
| | ) | |
| **Defendant.** | ) | |

### THIRD AMENDED COMPLAINT

After working for The Lampo Group, a/k/a Ramsey Solutions ("Ramsey Solutions") for over four years, Caitlin O'Connor notified Ramsey Solutions she was pregnant; however instead of it being a joyful time she was terminated from her job because of her pregnancy. Ms. O'Connor requested FMLA paperwork for the birth of her child and requested ADA paperwork since her pregnancy is considered a geriatric pregnancy. Subsequently, Ms. O'Connor received a phone call informing her she would have a meeting with a board member the next week, little did she know that the decision to terminate her employment due to her pregnancy announcement had already been made. During this meeting, Ms. O'Connor met with two board members who informed her Ramsey Solutions was still deciding the best way to proceed. Ms. O'Connor finally had a meeting with the Head of Human Resources and the board members and was informed she was being terminated due to her pregnancy and for a violation of "Company Conduct," because she is not married to her partner, the baby's father. Ramsey contends that her committed relationship and her pregnancy are a violation of its "righteous living" policy. Accordingly, Ms. O'Connor files the instant Amended Complaint for both retaliation and interference violations of the Family and Medical Leave Act, Tennessee Human Rights Act, the Tennessee Maternity Leave Act, the

1

Case 3:20-cv-00628   Document 37   Filed 05/14/21   Page 1 of 17 PageID #: 576
Case 3:20-cv-00628   Document 67-5   Filed 00/09/21   Page 42 of 71 PageID #: 1117
O'Connor 000912

Tennessee Disability Act, Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act.

## PARTIES

1.      Plaintiff, Caitlin O'Connor, ("Ms. O'Connor") is a citizen and resident of Williamson County, Tennessee, and a former employee of Defendant. Plaintiff worked for Defendant at its location in Franklin, Tennessee.

2.      Defendant The Lampo Group, LLC, ("Lampo") a/k/a Ramsey Solutions ("Ramsey" or "Ramsey Solutions") is a limited liability company licensed to transact business in Tennessee. Its registered agent for service of process is Mark Floyd, 1011 Reams Fleming Blvd, Franklin, TN, 37064-1844.

3.      At all times material to this action, Defendant has employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2019 and/or 2020 and is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A).

4.      At all times material to this action, Plaintiff was an "eligible employee" under the FMLA pursuant to 29 U.S.C. § 2611(2) and 29 C.F.R. § 825.110.

5.      At all times material to this action, Defendant was an employer within the meaning of the THRA, TDA, TMLA, FMLA, ADA and Title VII.

## JURISDICTION AND VENUE

6.      This is an action for unlawful employment practices brought under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA") (Count I); the Tennessee Human Rights Act ("THRA"), T.C.A. §4-21-101, *et seq.* (Count II, V); the Tennessee Maternity Leave Act ("TMLA"), T.C.A. §4-21-408, *et seq.* (Count III), and the Tennessee Disability Act ("TDA") T.C.A. § 8-50-103 (Count IV); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et*

2

Case 3:20-cv-00628   Document 37   Filed 05/14/21   Page 2 of 17 PageID #: 577
Case 3:20-cv-00628   Document 67-5   Filed 01/06/21   Page 43 of 71 PageID #: 1118
O'Connor 000981

*seq.* ("Title VII") (Count V, VI); and the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et.*

*seq.* ("ADA")*,* as amended by the ADA Amendments Act of 2008 ("ADAAA") (Count VII).

7.      The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a).

Venue is proper under 28 U.S.C. § 1391.

8.      Plaintiff complied with all conditions precedent to the filing of her claims pursuant

to 42 U.S.C. § 12101 *et. seq.* and 42 U.S.C. §§ 2000e *et seq.*, to wit: a charge of discrimination

was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the

unlawful employment practice; 180 days have passed since the filing of her charge of

discrimination. Further, a right to sue letter was received on February 22, 2021, and thus, the

charge prerequisites have been satisfied.

## FACTS

9.      Ramsey is a private for profit company that alleges to provide "biblically based,

common-sense education and empowerment." Ramsey is not a religious institution, church, nor

affiliated with any specific church.

10.     Dave Ramsey, the founder of Ramsey Solutions contends "I've got a right to tell

my employees whatever I want to tell them," he said in a Q&A segment about the company code of

conduct posted on the company website. "They freaking work for me."

11.     Upon information and belief, Ramsey's contention includes discriminating against

employees on the basis of sex, pregnancy and religion. In other words, Mr. Ramsey's beliefs are

inconsistent with civil rights laws prohibiting discrimination on the basis of a protected class.

12.     Ms. O'Connor was employed with Ramsey Solutions over four years. She was

hired on February 22, 2016. Her position with Ramsey Solutions was as an Administrative

Assistant in the Information Technology Department.

Case 3:20-cv-00628   Document 37   Filed 05/14/21   Page 3 of 17 PageID #: 578
Case 3:20-cv-00628   Document 67-5   Filed 01/09/21   Page 44 of 71 PageID #: 1119
O'Connor 000094

13. In Ms. O'Connor's role she was not as "the face of the company" and she did not have a public role, a radio show, a pod cast, nor was she required to engage in any public appearances as the face of the company.

14. Ms. O'Connor's duties as Administrative Assistant included: managing her leader's calendars, daily emails, and day to day business. Ms. O'Connor would schedule meetings, one on ones and annual reviews for the leaders and other employees. Ms. O'Connor would also take notes during meetings, handle team member care which included sending flowers, supporting the staff etc.

15. Ms. O'Connor performed her job duties without incident and was never given a write up for performance or placed on a Performance Improvement Plan until recent events described in this Amended Complaint.

16. On June 18, 2020, Ms. O'Connor emailed Ramsey Solutions' Head of Human Resources, Armando Lopez, that she was 12 weeks pregnant and requested FMLA paperwork for her maternity leave once she had her baby. Her email stated:

> I needed to let you know that I'm 12 weeks pregnant. I understand that being unmarried and expecting is frowned on here, but the reality of the situation is this is what I'm walking through right now. This is obviously uncharted territory for me so I'm not sure what my next steps are regarding sharing the news with my leader, getting FMLA & ADA paperwork in case it's need in the future, etc.

17. Ms. O'Connor's email was circulated among various members of Ramsey's Human Resource Committee ("HRC"), Dave Ramsey and Ms. O'Connor's immediate supervisor, Michael Finney. The HRC passes moral judgment on Ramsey employees based on gossip that has been reported to them, or by employee reports. Immediately after the email was circulated, a member of the HRC and a high ranking officer in the company stated Ms. O'Connor's email was "totally classless" for sending the email requesting information about FMLA and notifying that she was

4

Case 3:20-cv-00628   Document 37   Filed 05/14/21   Page 4 of 17 PageID #: 579
Case 3:20-cv-00628   Document 67-5   Filed 01/08/21   Page 45 of 71 PageID #: 1120
O'Connor 000965

pregnant. Another HRC member appeared offended Ms. O'Connor sent the email "on her way out the door" and claimed "our core values and what they stand for are clear."

18.     The next day, on June 19, 2020, Ms. O'Connor received a phone call from a board member telling her that the next week she would have to have a meeting with the board.

19.     On June 23, 2020, Ms. O'Connor met with two board members who told her Ramsey Solutions was still deciding the best way to proceed with her situation.

20.     On June 25, 2020, Mr. Lopez and Ramsey Solutions board members terminated Ms. O'Connor due to her pregnancy and violating Ramsey Solutions' rules of "Company Conduct."

21.     Ramsey Solutions' Company Conduct provision in their handbook states, "The image of Ramsey Solutions is held out to be Christian. Should a team member engage in behavior not consistent with traditional Judeo-Christian values or teaching, it would damage the image and the value of our good will and our brand. If this should occur, the team member would be subject to review, probation, or termination."

22.     The Core Values incorporated into Ramsey's Mission Statement incorporates a "righteous living" policy or value which allegedly prohibits premarital sex. However, there is no written prohibition against premarital sex in the policy.

23.     The righteous living core value states that "We believe that character matters. All the time" and "Who you are is far more important than what you do. We aren't perfect, but we want to get better. No cheating, stealing or lying. Goal # 1 is to be men and women of integrity."

24.     Ms. O'Connor's violation of "Company Conduct" and righteous living policy is that she and the father of her child are in a committed long-term relationship, but not legally married, nor do they desire to be married at this time. Ms. O'Connor does not believe premarital

5

Case 3:20-cv-00628   Document 37   Filed 05/14/21   Page 5 of 17 PageID #: 580
Case 3:20-cv-00628   Document 67-5   Filed 01/08/21   Page 46 of 71 PageID #: 1121
O'Connor 000976

sex is a requirement or fundamental tenant of her faith as a Christian.

25.     Ms. O'Connor neither cheated, stole or lied, as set forth in the Righteous Living value. However, there have been sustained and admitted to allegations that male employees, who obviously did not get pregnant, did cheat and lie, and they were in fact not terminated.

26.     Ms. O'Connor's sincerely held Christian belief is that Christianity is not meant to be punitive, hateful, vengeful, or judgmental. Accordingly, her Christian belief is that God gave a woman the ability to procreate, and that ability to procreate was not restricted by a contract, i.e., marriage or employment at Ramsey Solutions. Moreover, Plaintiff does not believe that her identification as a Christian gives her the right to judge and condemn other Christians or humans for how they choose to carry out their one dictate from Jesus, that is, to love one another. To the contrary, Ms. O'Connor believes it is inherently unloving to pass judgment and condemnation on others for their private relationships.

27.     Ms. O'Connor's sincerely held Christian beliefs do not prohibit her from engaging in sex outside of a marriage contract.

28.     Plaintiff's view of Christianity does not require her to invade or inquire or know the specifics of what other people do or do not do in their bedroom or when they do it, much less pass morality judgement on other people. Moreover, Plaintiff sincerely believes that she should be able to seek the support of her Christian community during her pregnancy without fear of recrimination, much less termination from her employment. To be sure, her church did not ex-communicate her in the cruel manner in which Ramsey did.

29.     Ramsey Solutions is a for-profit company that seeks to impose a specific religious belief system on its employees. However, it is selective in its application of that purported belief system. Upon information and belief, Ramsey's religious belief system has a disparate impact on

6

women.

30.     Upon information and belief, there is no prohibition on pre-marital sex as a basic tenet of Christianity. Even if Defendant alleges it holds such a sincerely held belief, upon information and belief, Defendant has made exceptions for other employees, in particular male employees who have engaged in sex outside of marriage.

31.     When Plaintiff notified Defendant of her pregnancy on June 18, 2020, she specifically stated to Armando Lopez "I needed to let you know that I'm 12 weeks pregnant. I understand that being unmarried and expecting is frowned on here, but the reality of the situation is this is what I'm walking through right now. This is obviously uncharted territory for me so I'm not sure what my next steps are regarding sharing the news with my leader, getting FMLA & ADA paperwork in case it's need in the future, etc."

32.     In sending this email on June 18, 2020, Plaintiff ostensibly requested an accommodation from Defendant's strict Righteous Living value which frowns on pregnancy outside of marriage.

33.     Accommodating an exception to a policy that does not even specifically mention pre-marital sex would not have posed an undue hardship on Ramsey, nor would an exception to this policy have involved a *de minimus* cost, if any cost at all.

34.     Significantly, Ramsey has been notified of male employees who have had extra marital affairs, and they have not been immediately terminated, thus it appears sex that results in pregnancy is treated more harshly.

35.     Ramsey Solutions' termination of Ms. O'Connor interfered with her right to take FMLA leave, discriminated against her due to her sex, pregnancy, religion, and disability, and was in retaliation for informing them of her pregnancy due to it being "frowned upon here," requesting

7

Case 3:20-cv-00628   Document 37   Filed 05/14/21   Page 7 of 17 PageID #: 582
Case 3:20-cv-00628   Document 67-5   Filed 01/06/21   Page 48 of 71 PageID #: 1123
O'Connor000981

FMLA, and/or accommodation for her disability.

36.     Ramsey Solutions' discriminatory policy has a disparate impact on women, in particular pregnant women because they are unable to keep their private lives private in the event they become pregnant because pregnancy is a very visible condition.

## Count I
### Violation of FMLA – Retaliation and Interference

37.     Plaintiff restates and incorporates herein the foregoing paragraphs.

38.     At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

39.     Defendant is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

40.     Plaintiff was entitled to receive FMLA leave for the birth and care of a child.

41.     Defendant subjected Plaintiff to adverse employment actions after she requested FMLA, including but not limited to, interfering with her rights to take FMLA and terminating her.

42.     Defendant's actions constitute both interference and/or retaliation violations of the FMLA.

43.     Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

44.     Defendant's conduct harmed and caused damage to Plaintiff.

45.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, cost of replacement coverage or reimbursement for medical expenses, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count II
### Violation of THRA- Sex/Pregnancy Discrimination/Retaliation

8

Case 3:20-cv-00628   Document 37   Filed 05/14/21   Page 8 of 17 PageID #: 583
Case 3:20-cv-00628   Document 67-5   Filed 01/06/21   Page 49 of 71 PageID #: 1124
O'Connor 000976

46.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

47.     Plaintiff was subjected to disparate treatment in the terms and conditions of her job the Defendant's workplace because of her sex, female, and because of her pregnancy.

48.     Plaintiff was qualified for her position.

49.     Plaintiff suffered adverse employment actions as a result of discrimination on the basis of sex/pregnancy, including, but not limited to different terms and conditions, loss of pay and benefits and the loss of her job than similarly situated non-pregnant employees.

50.     Plaintiff objected to the manner in which she was being treated when she complained to Defendant and refused to get married to satisfy their discriminatory demands and behavior.

51.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, inconvenience, lost earnings and benefits.

52.     As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, cost of replacement coverage or reimbursement for medical expenses, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

### Count III
### Violation of Tennessee Maternity Leave Act

53.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

54.     Plaintiff was employed for at least 12 months prior to her leave as a full-time employee of Defendant.

55.     Defendant employs a minimum of 100 employees.

56.     Plaintiff gave at least three (3) months' advance notice of her leave to Defendant.

9

Case 3:20-cv-00628   Document 37   Filed 05/14/21   Page 9 of 17 PageID #: 584
Case 3:20-cv-00628   Document 67-5   Filed 01/08/21   Page 50 of 71 PageID #: 1125
O'Connor 000801

57.     Defendant subjected Plaintiff to disparate terms and conditions of employment after she requested TMLA, including but not limited to, interfering with her rights to take TMLA and terminating her.

58.     Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

59.     Defendant's conduct harmed and caused damage to Plaintiff.

60.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, cost of replacement coverage or reimbursement for medical expenses, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count IV**
**Violation of TDA- Disability Discrimination/Retaliation**

61.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

62.     Defendant is an employer as defined in the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA").

63.     Plaintiff was regarded as an individual with a disability after she notified them of her high risk pregnancy.

64.     Defendant discriminated against Plaintiff on the basis of her disability in violation of the TDA that culminated in her termination.

65.     Plaintiff engaged in protected activity when she notified her employer of her disability and requested paperwork regarding her disability. Such actions by the Plaintiff are statutorily protected activities under the TDA.

66.     Plaintiff was subjected to adverse employment actions in violation of the TDA.

10

67.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer professional and personal embarrassment, humiliation, inconvenience and lost earnings and benefits.

68.     As a result, Plaintiff is entitled to recover her damages, including lost wages, benefits, cost of replacement coverage or reimbursement for medical expenses, compensatory and punitive damages, attorneys' fees, costs, interest, and any other legal and equitable relief to which she may be entitled.

### Count V
### Violation of THRA & Title VII- Religious Discrimination/Retaliation

69.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

70.     Plaintiff is a Christian. Her practice and belief of Christianity is that Christianity is above all a loving, not punitive and judgmental faith. Her practice of Christianity differs from Defendant.

71.     Plaintiff engaged in protected conduct when she notified Defendant she was pregnant on June 18, 2020, she specifically stated in an email to Armando Lopez "I understand that being unmarried and expecting is frowned on here, but the reality of the situation is this is what I'm walking through right now. This is obviously uncharted territory for me so I'm not sure what my next steps are regarding sharing the news with my leader, getting FMLA & ADA paperwork in case it's need in the future, etc."

72.     Plaintiff's email to HR was a request for an accommodation from its strict policies which "frown on" pregnancy outside of marriage.

73.     Defendant terminated her employment premised on a violation its "Core Values" which incorporate a "righteous living" value allegedly premised on its interpretation of "Judeo-Christian" values that it believes prohibits or frowns upon premarital sex.

11

74.     Premised on these alleged "Judeo-Christian" values, Defendant terminated Plaintiff's employment after she notified them of her pregnancy and not only terminated her employment, but in a particularly cruel manner also her health insurance benefits which included pre and post-natal care.

75.     Defendant terminated Plaintiff because of its religious based Core Value policy which discriminates against employees who do not strictly adhere to Ramsey's interpretation of "Judeo-Christian" values for non-work related behavior.

76.     Plaintiff does not adhere to Ramsey's interpretation of "Judeo-Christian" values for non-work related behavior.

77.     Defendant discriminated against and retaliated against Plaintiff when it terminated her for having different religious beliefs than what Ramsey imposes on its employees.

78.     Allowing a religious accommodation in the form of an exception to Ramsey's righteous living policy which purports to prohibit premarital sex, would not have imposed any sort of undue hardship on Ramsey because based on information and belief, it had made exceptions for male employees in the past who had committed violations of the policy.

79.     Defendant's Righteous Living policy has a discriminatory impact on employees like Plaintiff who do not share the same rigid religious beliefs.

80.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits, including pre- and post-natal coverage.

81.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory damages, punitive damages, attorneys' fees, costs, interest, reinstatement,

12

Case 3:20-cv-00628   Document 37   Filed 05/14/21   Page 12 of 17 PageID #: 587
Case 3:20-cv-00628   Document 67-6   Filed 01/08/21   Page 53 of 71 PageID #: 1128

front pay and benefits, cost of replacement medical coverage or reimbursement for medical expenses, and any other legal and equitable relief to which she may be entitled.

**Count VI**
**Violation of Title VII- Sex, Pregnancy Discrimination/Retaliation**

82.    Plaintiff restates and incorporates herein the foregoing paragraphs.

83.    Title VII defines "because of sex" or "on the basis of sex" as follows:

The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e–2 (h) of this title shall be interpreted to permit otherwise.

42 U.S.C. § 2000e(k).

84.    Plaintiff was subjected to disparate treatment in the terms and conditions of her job in the Defendant's workplace because of her sex, female.

85.    Plaintiff was subject to disparate terms and conditions of employment that other similarly situated males were not subject to.

86.    Defendant's "righteous living" policy, to the extent it requires discipline or termination for sex outside of marriage that results in pregnancy can have a disparate impact on female employees who become pregnant or will require pregnancy related leave.

87.    Plaintiff was qualified for her position.

88.    Plaintiff suffered adverse employment actions as a result of discrimination on the basis of sex/pregnancy, including, but not limited to different terms and conditions of employment, retaliation for requesting leave and an accommodation for her pregnancy, and eventually the loss of her job than similarly situated non-pregnant employees.

13

89.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, inconvenience, lost earnings and benefits.

90.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory damages, punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, cost of replacement medical coverage or reimbursement for medical expenses, and any other legal and equitable relief to which she may be entitled.

## Count VII
### Violation of ADA- Disability Discrimination/Failure to Accommodate

91.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

92.     Plaintiff was a qualified individual with a disability or regarded as disabled.

93.     Defendant discriminated against Plaintiff on the basis of her disability in violation of the ADA that culminated in her termination.

94.     Plaintiff could perform the essential functions of her job and requested information about reasonable accommodation due to her pregnancy that had the potential for complications due to her age.

95.     Plaintiff was terminated because of her disability and/or in retaliation for her requests for the reasonable accommodation, and/or because she was regarded as disabled.

96.     Plaintiff's termination was because of her disability and/or because she was regarded as disabled.

97.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

14

98.     As a result, Plaintiff is entitled to recover her damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1.      A jury trial;

2.      Judgment in favor of Plaintiff and against Defendant on all counts in this action and a declaration that its "righteous living" policy violates Title VII;

3.      Back pay and damages for lost benefits;

4.      Reinstatement or front pay;

5.      Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

6.      Punitive damages;

7.      Liquidated damages under the FMLA;

8.      Attorneys' fees and expenses;

9.      Prejudgment interest and, if applicable, post-judgment interest; and

10.     Such other and further legal or equitable relief to which she may be entitled.


Respectfully submitted,

*s/ Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Bennett Hunter BPR # 022407
Ashley Shoemaker Walter BPR #037651
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996

15

615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
ashley@collinshunter.com

*Attorneys for Plaintiff*

16

Case 3:20-cv-00628   Document 37   Filed 05/14/21   Page 16 of 17 PageID #: 591
Case 3:20-cv-00628   Document 67-5   Filed 10/08/21   Page 57 of 71 PageID #: 1132
O'Connor 000987

## CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been served via the Court's CM/ECF system this the 19th day of April 2021 to counsel of record:

Leslie Sanders
Daniel Crowell
WEBB SANDERS PLLC
611 Commerce Street
Suite 3102
Nashville, TN 37203
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com

*s/ Heather Moore Collins*

17

| CHARGE OF DISCRIMINATION | | AGENCY | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | | ☐ FEPA  ☒ EEOC | 494-2020-02396 |
| | | | and EEOC |

Tennessee Human Rights Commission

*State or local Agency, if any*

| NAME *(indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* | |
|---|---|---|
| Caitlin O'Connor | | |
| STREET ADDRESS    CITY, STATE AND ZIP CODE | | DATE OF BIRTH |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME. *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| The Lampo Group | 500+ | (615) 371-8881 |
| STREET ADDRESS    CITY, STATE AND ZIP CODE | | COUNTY |
| 1011 Reams Fleming Blvd    Franklin, TN 37064 | | Williamson |
| NAME | TELEPHONE NUMBER *(include Area Code)* | |
| STREET ADDRESS    CITY, STATE AND ZIP CODE | | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | EARLIEST | LATEST |
| ☐ RACE  ☐ COLOR  ☒ SEX  ☒ RELIGION  ☐ NATIONAL ORIGIN | 06/18/2020 | 06/25/2020 |
| ☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☒ OTHER (Specify)  Pregnancy | ☐ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I. I was employed by The Lampo Group ("Lampo") aka- Dave Ramsey Solutions, as an Administrative Assistant in the Information Technology Department ("IT") Department since February 22, 2016. Ramsey has 500 or more employees and provides financial counseling services.

II. On June 18, 2020, I emailed Human Resources ("HR") to let them know I was 12 weeks pregnant. In this same email, I requested both Family Medical Leave Act ("FMLA") paperwork to begin the process for requesting my maternity leave, as well as Americans with Disability Act ("ADA") paperwork as I am considered to have a geriatric pregnancy, due to my age, and could possibly need accommodations during my pregnancy. I intended to take these documents to my doctor during my next appointment to determine if at this current time I am in need of accommodation. Instead of receiving any paperwork, I was contacted on June 19, and informed I would be having a meeting with a board member. At this meeting on June 23, I met with two female board members who informed me they were still deciding the best way to proceed. I then had another meeting with head of HR and the board members on June 25. I was informed that I was terminated due to my pregnancy and for violating the code of Company Conduct which states "The image of Ramsey Solutions is held out to be Christian. Should a team member engage in behavior not consistent with traditional Judeo-Christian values or teaching, it would damage the image and the value of our good will and our brand. If this should occur, the team member would be subject to review, probation, or termination." The father of my baby and I are in a committed long term relationship, but are not married. Part of this Code incorporates a "righteous living" policy which prohibits premarital sex. This policy has a disparate impact on women because we cannot keep our personal lives private if we become pregnant. Other women have been forced out for the same reason.

III. I believe I was discriminated and retaliated against due to my pregnancy, sex, disability, and religion in violation of Title VII and the ADAAA.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| Jul 20, 2020 | |
| Caitlin 'Connor (Jul 20, 2020 17:31 CDT) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| Date    Charging Party *(Signature)* | |

EEOC FORM 5 (REV. 3/01)

RECEIVED
JUL 2 8 2020
O'Connor
EEOC
Nashville Area Office
Nashville, TN

O'Connor v. LAMPO GROUP
Charge No. 494-2020-02396

EXHIBIT NO. 15
4/22/21  J. CAROLLO

August 6, 2020

494-2020-02396 Caitlin O'Connor

ADA: No pregnancy complications. No medical documentations stated ADA

Retaliation

Title VII: Sex (F-Pregnancy), Religion (Christian)

Hired: February 22, 2016

Position: Administrative Assistant

Discharged: June 25, 2020

CP doesn't remember signing any contract to follow the core values from the R. CP only signed the job agreement.

No previous write ups, nor discipline. Excellent yearly review. CP received 4 raises while employed for R.

June 18, 2020: CP informed H.R. about pregnancy

June 19, 2020: CP received an email from R. to set up a meeting.

ADA: Geriatric Pregnancy. Cp is 38 years old. Cp has no medical documentation about medical condition. CP's doctor told cp to work from home due to the virus.

June 22, 2020: CP requested FMLA & ADA paperwork to R. Requested was done by writing to H.R.D. Armando Lopez. She requested because she might need it and to take it to her doctor.

June 24, 2020: cp had a meeting with EBT Marketing, Jen and Susan (cp doesn't know her title). There were not cp supervisor and did not work directly with cp. The meeting was about cp not being married and pregnant, how to handle the situation.

June 25, 2020: cp received an email to set a meeting by Administrative Assistant, Jenni Cunnings. (In the morning)

June 25, 2020 (in the afternoon): cp recorded the meeting. HRD Lopez told cp "our moral is not in alignment" HRD and Susan were in the meeting. She was also told you know what its coming.

Religion: cp believed her religion belief were violated.

2 Lines

(b)(5)

(b)(5)    cp states the R. had meetings every Wednesday about devotional meeting, core values, infidelity. The meetings were held by Dave.

Core values:

1. Family
2. Marketing service
3. Living
4. No gossip



O'Connor v. LAMPO GROUP
Charge No. 494-2020-02396

O'Connor 000249

5. Excel ordinary: be better than normal
6. Don't question the question
7. Crusade
8. Don't be afraid to question
9. Self-employed mentality
10. Momentum
11. Share profit
12. Never give up

Separation letter: lack of work

Previous female employee discharged due to pregnancy: in 2018. Kandan Laws told cp that she was discharged because she was pregnant while getting divorce.

Cp's attorney is going to send evidences about her allegations.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CAITLIN O'CONNOR, | ) |
| | ) Case No. 3:20-cv-00628 |
| Plaintiff, | ) |
| | ) District Judge Richardson |
| v. | ) |
| | ) Magistrate Judge Frensley |
| THE LAMPO GROUP, LLC a/k/a | ) |
| RAMSEY SOLUTIONS, | ) Jury Demand |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Comes Now, Plaintiff, to respond and object to Defendant's First Set of Interrogatories as

follows:

### INTERROGATORIES

1. Identify every person who has discoverable information that Plaintiff may use to support

   her claims in this case by (i) name, (ii) physical address, (iii) mailing address, (iv)

   telephone number, and (v) e-mail address.

   **ANSWER: See Plaintiff's Rule 26(a) initial disclosures and additions below. Plaintiff
   will supplement this response in accordance with the Federal Rules of Civil
   Procedure, Local Rules of Court, and any applicable Scheduling Order(s). The
   following individuals have information relevant to Plaintiff's claims. All individuals
   listed are under the control or were under the control of Defendant. If counsel
   wishes to interview or speak with the Plaintiff or her family, counsel may do so by
   and through Plaintiff's counsel. Plaintiff will provide copies of medical records as
   they become available.**
   - **Caitlin O'Connor – Plaintiff. Has knowledge concerning the claims and defenses.
     May only be contacted through counsel.**
   - **Armando Lopez – Human Resources/Defendant's Employee. Has knowledge
     concerning Plaintiff's employment history, pregnancy, request for ADA
     Accommodations and FMLA paperwork, and termination. Familiar with
     Defendant's practices, policies, and procedures.**
   - **Suzanne Simms – Defendant's Board Member. Has knowledge concerning
     Plaintiff's employment history, pregnancy, request for ADA Accommodations**



and FMLA paperwork, and termination. Familiar with Defendant's practices, policies, and procedures.

- Jen Sievertsen – Defendant's Board Member. Has knowledge concerning Plaintiff's employment history, pregnancy, request for ADA Accommodations and FMLA paperwork, and termination. Familiar with Defendant's practices, policies, and procedures.
- Dave Ramsey – Defendant's Owner. Has knowledge concerning Plaintiff's employment history, pregnancy, request for ADA Accommodations and FMLA paperwork, and termination. Familiar with Defendant's practices, policies, and procedures.
- Michael Finney – Defendant Employee. Has knowledge concerning Plaintiff's employment history, job performance, pregnancy, and termination. Familiar with Defendant's practices, policies, and procedures.
- Justin Meeker – Defendant Employee. Has knowledge concerning Plaintiff's employment history and job performance. Familiar with Defendant's practices, policies, and procedures.
- Bill Edmonson – Defendant Employee. Has knowledge concerning Plaintiff's employment history and job performance. Familiar with Defendant's practices, policies, and procedures.
- Rich Pedrick – Defendant Employee. Has knowledge concerning Plaintiff's employment history and job performance. Familiar with Defendant's practices, policies, and procedures.
- Philip Dower – Defendant Employee. Has knowledge concerning Plaintiff's employment history and job performance. Familiar with Defendant's practices, policies, and procedures.
- Lee Yoder – Defendant Employee. Has knowledge concerning Plaintiff's employment history and job performance. Familiar with Defendant's practices, policies, and procedures.
- Dr. Jacqueline Stafford – Plaintiff's OB/GYN. Familiar with Plaintiff's disability and/or pregnancy and/or serious medical condition and need for leave and/or accommodation. This is not to be construed as a waiver of Plaintiff's HIPAA rights.
- Rob Kuskin – Plaintiff's Partner. Familiar with the effects of Plaintiff's work environment, Plaintiff's disability and/or pregnancy and/or serious medical condition, and Defendant's Actions. May be contacted through counsel only.

2. Identify every person who witnessed any alleged act of illegal discrimination,

interference, or retaliation by Defendant against Plaintiff by (i) name, (ii) physical

address, (iii) mailing address, (iv) telephone number, and (v) e-mail address.

**ANSWER: Objection. This request calls for speculation and is overly broad. Please**

**see interrogatory no. 1**

2

3. Identify every verbal or written reprimand that Plaintiff received from Defendant for performance or behavior during her employment by (i) date that it was delivered, (ii) name of the person who delivered it, and (iii) performance or behavior issues that it addressed.

   **ANSWER: None to her knowledge, but this information should be in Defendant's possession.**

4. Identify by name every person for whom the following is true: (i) the person engaged in premarital sex while employed by Defendant, (ii) Defendant became aware of it, and (iii) Defendant did not thereafter terminate their employment, in whole or in part, because of it.

   **ANSWER: This request calls for speculation because Defendant is notoriously secretive about the selective application of its policies. Upon information and belief, Plaintiff identifies the following: Chris Hogan, Francois l/n/u, and Tony Bradshaw. Defendant should have this information.**

5. Identify by name every person for whom the following is true: (i) the person engaged in premarital sex while employed by Defendant, (ii) Defendant became aware of it, and (iii) Defendant thereafter terminated their employment, in whole or in part, because of it.

   **ANSWER: Objection. This request calls for information that seeks privileged attorney client communications and invades the work product doctrine. This request calls for speculation because Defendant is notoriously secretive about the selective application of its policies. Further, this information should be in Defendant's possession.**

6. Describe each of the ways, if any, that Plaintiff was disabled at any point during her

3

employment with Defendant.

**ANSWER: Plaintiff's pregnancy is considered by her doctor a "geriatric pregnancy" due to her "advanced maternal age" and was considered a high risk pregnancy. As such, because of the higher risk associated with her pregnancy, it was likely she would need accommodations that would not be required with a typical pregnancy. However, she was terminated before any sort of discussion was held to determine how her pregnancy would affect her employment. Thus, even if she was not disabled, she certainly was regarded as disabled.**

7. Identify by name every employee of Defendant who knew that Plaintiff was disabled or

    regarded her as disabled at any point during her employment with Defendant.

    **ANSWER: Objection. This request calls for speculation. The following employees were aware of Plaintiff's disability: Suzanne Sims, Armando Lopez, Jen Seivertson, Dave Ramsey. Upon information and belief, other members of the board and HR committee. All employees of Lampo Group were notified in a staff meeting.**

8. Identify by name every woman who has been disciplined or terminated under the

    "discriminatory policy" referenced in Paragraph 20 of the Complaint.

    **ANSWER: This request calls for speculation because Defendant is notoriously**

    **secretive about the selective application of its policies. To Plaintiff's knowledge, the**

    **following females have been disciplined or terminated under the Defendant's**

    **discriminatory policy: Plaintiff and Camden Laws.**

9. Identify by name each of the "similarly situated non-pregnant employees" referenced in

    Paragraph 33 of the Complaint.

    **ANSWER: This request calls for speculation because Defendant is notoriously**

    **secretive about the selective application of its policies. To Plaintiff's knowledge, the**

    **following similarly situated male employees are Chris Hogan and Tony Bradshaw.**

10. Identify by name every employee of Defendant to whom Plaintiff "complained" as

    alleged in Paragraph 34 of the Complaint.

    **ANSWER: Plaintiff complained to Suzanne Simms, Armando Lopez, Jen**

4

Seivertson.

11. Explain how Defendant prohibiting employees from engaging in premarital sex

conflicted with Plaintiff's sincere religious beliefs at the time that her employment with

Defendant was terminated.

ANSWER:
   Plaintiff's sincerely held Christian belief is that Christianity is not meant to be punitive, hateful, vengeful, or judgmental. Accordingly, her Christian belief is that God gave a woman the ability to procreate, and that ability to procreate was not restricted by a contract, i.e., marriage or employment. Moreover, Plaintiff does not believe that her identification as a Christian gives her the right to judge and condemn other Christians or humans for how they choose to carry out their one dictate from Jesus, that is, to love one another. Her view of Christianity does not require her to invade or inquire or know the specifics of what other people do or do not do in their bedroom or when they do it, much less pass morality judgement on other people. Moreover, Plaintiff sincerely believes that she should be able to seek the support of her Christian community during her pregnancy without fear of termination from her employment.

12. Explain the factual basis for Plaintiff's claim that Defendant terminated her employment

in retaliation for requesting FMLA and TMLA leave.

ANSWER: See interrogatory no. 11.

13. Explain the factual basis for Plaintiff's claim that Defendant terminated her employment

based on sex.

ANSWER: See interrogatory no. 11.

14. Explain the factual basis for Plaintiff's claim that Defendant terminated her employment

based on pregnancy.

ANSWER: See interrogatory no. 11.

15. Explain the factual basis for Plaintiff's claim that Defendant terminated her employment

based on religion.

ANSWER: See interrogatory no. 11.

16. Explain the factual basis for Plaintiff's claim that Defendant terminated her employment based on disability.

    <u>ANSWER</u>: See interrogatory no. 11.

17. Identify every healthcare provider that Plaintiff has seen for pregnancy or mental health-related issues since January 1, 2019 by (i) name, (ii) physical address, (iii) mailing address, (iv) and telephone number. *Ob/Gyn*

    **ANSWER: Dr. Jacqueline Stafford, 4155 Carothers Pkwy, Franklin, TN 37067, (615) 794-8800**

18. Identify every medical restriction placed on Plaintiff since January 1, 2019 by (i) effective dates, (ii) name of the healthcare provider who issued the medical restriction, and (iii) a brief description of the medical restriction.

    **<u>ANSWER</u>: At the time of Plaintiff's request for ADA accommodation paperwork she had not yet been placed on medical restrictions. However, she was to see her physician later the next week and was to provide the accommodation paperwork based on her physician's recommendation. She requested ADA paperwork from Armando Lopez as she is considered to have a geriatric pregnancy and likely to be in need of reasonable accommodations. After her unlawful termination, Plaintiff was required to cut back on medical services related to her pregnancy because Defendant cruelly removed her health insurance unless she signed a severance and agreed to keep Defendant's civil rights violations confidential. As a result of her lack of private insurance, Plaintiff had to get insurance through the state which was more limited, and she simply self-imposed rest during her pregnancy rather than incur additional uncovered costs.**

19. Identify every application for work, as an employee, independent contractor, or volunteer, that Plaintiff has submitted since January 1, 2020 by (i) date that the application was submitted, (ii) name of the employer or other principal to which the application was submitted, and (iii) either job title or a brief description of the type of work sought.

    **<u>ANSWER</u>: Plaintiff did not apply for any work at while employed by Defendant. Plaintiff estimates that she sent out 3 to 10 resumes per week since her**

6

discriminatory termination. However, it is very difficult to find a job when you are pregnant. For jobs she has applied to since her unlawful termination, see Plaintiff's production.

20. Provide the amount that Plaintiff is seeking in this case for each of the following damages specifically requested in the Complaint:

    a. Back pay:

    b. Damages for lost benefits:

    c. Front pay:

    d. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life:

    e. Punitive damages:

    f. Liquidated damages under the FMLA:

**ANSWER:** **Plaintiff is owed sums for back wages and lost benefits from the time of the discrimination to trial. Plaintiff will seek damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss enjoyment of life. In addition, Plaintiff seeks attorneys' fees and costs, pre-and post-judgment interest, punitive damages, actual damages and liquidated damages under the FMLA, and such other and further legal or equitable relief to which she may be entitled. Moreover, absent reinstatement, Plaintiff will be owed front pay. At this early stage, Plaintiff is unable to make economic calculations and any calculation for emotional distress will be made by a jury. Discovery is just beginning, and new information may be revealed. Plaintiff will supplement this response and disclose any such report in accordance with the Federal Rules of Civil Procedure and any applicable Scheduling Order(s).**

| | |
|---|---|
| **Back Pay to trial date, includes loss of pay, loss of benefits or replacement benefits,** | **Approximately $95,722.25 in lost salary plus the additional cost for benefits** |
| **Front Pay** | **Approximately $54,000 plus the additional costs for benefits.** |
| **Liquidated Damages** | **$95,722.25** |
| **Actual Damages** | **Based on actual damages including but not limited to medical bills and other losses.** |
| **Emotional Distress/Punitive** | **To be determined by a jury** |
| **Attorney's Fees through trial (Est.) (partner rates are $450.00 per hour, associate rates are $325.00 per hour, subject to annual adjustment)** | **250,000.00** |

7

| Costs (Est.) | 15,000.00 |
| Interest (prevailing rate) | 6% |
| TOTAL | Approximately $510,444.50 not including lost/replacement benefit costs, emotional damages, actual damages, and pre-and post-judgment interest. |

Respectfully submitted,

*/s/ Heather Moore Collins*
Heather Moore Collins (BPR 26099)
Anne Hunter (BPR 022407)
Ashley Walter (BPR 037651)
7000 Executive Center Drive
Building Two Suite 320
Brentwood, TN 37027
(615) 724-1996
heather@collinshunter.com
anne@collinshunter.com
ashley@collinshunter.com

*Counsel for Plaintiff*

8

## CERTIFICATE OF SERVICE

I certify that, on January 18, 2021, I caused a copy of the foregoing document to be sent

by e-mail to:

Leslie Sanders (TN #18973)
Daniel Crowell (TN #31485)
WEBB SANDERS PLLC
611 Commerce Street
Suite 3102
Nashville, TN 37203
Telephone: (615) 915-3300
Fax: (866) 277-5494
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com

*Attorneys for Defendant*

                                             */s/ Heather Moore Collins*
                                             Heather Moore Collins

### Verification to Plaintiff's Response Defendant's Interrogatories

I, Caitlin O'Connor, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that my responses to Defendant's Interrogatories are true to the best of my recollection, knowledge, information and belief.

_s/ Caitlin O'Connor  01/18/21_
Caitlin O'Connor