UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CAITLIN O'CONNOR, | ) |
|     Plaintiff, | ) Case No. 3:20-cv-00628 |
| | ) |
| | ) District Judge Richardson |
| v. | ) |
| | ) Magistrate Judge Frensley |
| THE LAMPO GROUP, LLC, | ) |
| | ) Jury Demand |
|     Defendant. | ) |

## DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant, The Lampo Group, LLC, by and through the undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.01(b), files this statement of undisputed facts in support of its Motion for Summary Judgment (Doc. #66).

1. Defendant is a private, closely held company that specializes in creating and delivering education programs for individuals and organizations. (Declaration of Armando Lopez ("Lopez") at ¶2).[1]

**Response:**

2. Defendant is best known for providing biblically based financial counseling programs that help individuals get out of debt, manage their money well and achieve financial success. (Id. at ¶3).

**Response:**

---

[1] All documents referenced in Defendant's Statement of Undisputed Material Facts have been filed with the Court or attached to the Memorandum of Law filed in support of Defendant's Motion for Summary Judgment (Doc. #67).

3.  Defendant's mission is stated as follows: "[w]e provide biblically based, commonsense education and empowerment that give hope to everyone in every walk of life." (Id. at ¶4).

**Response:**

4.  Defendant has a set of 14 principles known as "Core Values" that embody the philosophy of the company. (Id. at ¶5).

**Response:**

5.  Defendant uses the Core Values as the guiding principles for all decisions made at the company. (Id.).

**Response:**

6.  One of Defendant's Core Values is "Righteous Living", expressed as "[w]e believe character matters. All the time." (Id. at ¶6; Third Amended Complaint at ¶23).

**Response:**

7.  Defendant also has a "Company Conduct" section in its Employment Policies and Procedures that states the following:

> The image of Ramsey Solutions is held out to be Christian. Should a team member engage in behavior not consistent with traditional Judeo-Christian values or teaching, it would damage the image and the value of our good will and our brand. If this should occur, the team member would be subject to review, probation, or termination.

(Third Amended Complaint at ¶21).

**Response:**

8. Defendant considers premarital sex to be inconsistent with the Righteous Living Core Value. (Defendant 0002315; Lopez at ¶6).

**Response:**

9. Defendant prohibits its employees from engaging in premarital sex while employed there. (Lopez at ¶7).

**Response:**

10. Defendant manages its organization through committees who interpret and implement the Core Values as situations arise. (Id. at ¶8).

**Response:**

11. Employment-related matters, including employee discipline and employment policies, are typically decided and implemented by the Human Resources Committee ("HRC"). (Id. at ¶9).

**Response:**

12. The HRC consists of the Human Resources leader and 4-5 other upper-level managers who rotate on and off the committee at regular intervals. (Id.).

**Response:**

13. The company's day-to-day operations are managed by the Operating Board. (Id. at ¶10).

**Response:**

14. Although the Operating Board does not typically make employment-related decisions, if there is a new issue the company has not dealt with or the employee in question is an executive or a public-facing personality, the Operating Board may be involved in the decision-making process. (Id.).

**Response:**

15. The Operating Board is a larger group (typically 15-17 employees) comprised of the executive leaders and owners of the company. (Id.).

**Response:**

16. The company employed Plaintiff as an administrative assistant from February 22, 2016 to June 25, 2020. (Third Amended Complaint at ¶¶ 12, 20).

**Response:**

17. On June 18, 2020, Plaintiff emailed the following to Armando Lopez, the company's Director of Human Resources and an HRC member:

> I needed to let you know that I'm 12 weeks pregnant. I understand that being unmarried and expecting is frowned on here, but the reality of the situation is this is what I'm walking through right now. This is obviously uncharted territory for me so I'm not sure what my next steps are regarding sharing the news with my leader, getting FMLA & ADA paperwork in case it's needed in the future, etc.

(Id. at ¶16).

**Response:**

18. Mr. Lopez forwarded Plaintiff's e-mail to his fellow HRC members: Jack Galloway, Suzanne Simms, Jen Sievertsen, Mark Floyd and Sarah Sloyan. (Id. at ¶12).

**Response:**


19. Mr. Lopez also forwarded Plaintiff's e-mail to her supervisor, Michael Finney, and the company's CEO, Dave Ramsey. (Lopez at ¶12).

**Response:**


20. Mses. Simms and Sievertsen met with Plaintiff on June 24, 2020 and confirmed that she had engaged in premarital sex. (Id.).

**Response:**


21. Since 2016, Defendant has made the decision to terminate every employee known to be engaging in premarital sex during their employment. (Lopez at ¶14; Plaintiff's Motion to Reconsider (Doc.#56) at FN1).

**Response:**


22. The HRC decided to terminate Plaintiff's employment effective June 25, 2020. (Lopez at ¶13).

**Response:**

23. After terminating Plaintiff's employment on June 25, 2020, Plaintiff's duties have been absorbed by existing employees and Defendant has not hired anyone to replace her. (Id. at ¶18).

**Response:**

24. Since 2016, the HRC has become aware of eight employees (including Plaintiff) who have engaged in premarital sex during their employment with the company, five men and three women. (Id. at ¶14).

**Response:**

25. The HRC decided to terminate the employment of all eight employees, although some opted to resign in lieu of termination. (Id. at ¶14).

**Response:**

26. In addition to those eight employees, one other employee (a woman) was also terminated for engaging in premarital sex, but that decision was made by the Operating Board, not the HRC. (Id. at ¶16).

**Response:**

27. Defendant provides up to 16 weeks of job-protected maternity leave, regardless of whether employees are FMLA eligible. (Id. at ¶19).

**Response:**

28.     If employees are FMLA eligible (meaning they have worked at the company for at least a year and they have worked at least 1,250 hours in the year preceding maternity leave), Defendant pays their full salary and continues to contribute to their benefits for the first 12 weeks of their maternity leave. (Id.).

**Response:**


29.     If an employee remains on maternity leave past 12 weeks, the company continues to provide them with profit-sharing (if eligible) for the final four weeks. (Id.).

**Response:**


30.     In addition to maternity leave, the company's pregnant employees are provided with other benefits like reserved parking spaces close to the company's entrance, work schedule flexibility to accommodate doctor's visits, work-from-home arrangements, participation in the Healthy Maternity Program which provides counseling and guidance for expectant mothers, and reimbursement for pregnancy-related wellness programs such as exercise and yoga. (Id. at ¶21).

**Response:**


31.     Since January 1, 2018, Defendant has granted approximately 86 maternity leaves. (Id. at ¶20).

**Response:**

32. Plaintiff claims that she requested FMLA leave and a disability accommodation in her June 18 e-mail to Mr. Lopez when she wrote "I'm not sure what my next steps are regarding … getting FMLA & ADA paperwork in case it's needed in the future, etc." (Third Amended Complaint at ¶16).

**Response:**

33. Plaintiff did not expressly notify Defendant that she had a geriatric pregnancy or provide Defendant with any information about how that geriatric pregnancy limited her or otherwise constituted a disability. (O'Connor Declaration at ¶29, Attachment 6; Third Amended Complaint at ¶16).

**Response:**

34. Following her June 18 e-mail, Plaintiff did not have any further communications with anyone at Defendant regarding her alleged disability, need for a disability accommodation, or need for FMLA leave. (O'Connor Deposition at 255:19-257:9).

**Response:**

35. When Plaintiff inquired about FMLA and ADA paperwork in her June 18 e-mail, she did not know whether she would request leave but wanted the paperwork to take to her doctor in case she needed it. (Id.).

**Response:**

36. Defendant propounded interrogatories to Plaintiff asking her to explain the factual basis for her claim that Defendant terminated her employment based on sex, pregnancy, disability and in retaliation for requesting FMLA and TMLA leave. (Plaintiff's Responses to Defendant's First Set of Interrogatories at ¶¶12, 13, 14, and 16).

**Response:**


37. Plaintiff provided the following response to Interrogatories No. 12, 13, 14, and 16 of Defendant's First Set of Interrogatories, which she thereafter filed with the Court and reaffirmed in a sworn declaration:

> Plaintiff's sincerely held Christian belief is that Christianity is not meant to be punitive, hateful, vengeful, or judgmental. Accordingly, her Christian belief is that God gave a woman the ability to procreate, and that ability to procreate was not restricted by a contract, i.e. marriage or employment. Moreover, Plaintiff does not believe that her identification as a Christian gives her the right to judge and condemn other Christians or humans for how they choose to carry out their one dictate from Jesus, that is, to love one another. Her view of Christianity does not require her to invade or inquire or know the specifics of what other people do or do not do in their bedroom or when they do it, much less pass morality judgment on other people. Moreover, Plaintiff sincerely believes that she should be able to seek the support of her Christian community during her pregnancy without fear of termination from her employment.

(Id.; Doc. #26-2; O'Connor Declaration at ¶30, Attachment 7 at ¶¶11, 12, 13, 14, and 16).

**Response:**

Respectfully submitted,

/s/Daniel Crowell
Leslie Sanders (TN #18973)
Daniel Crowell (TN #31485)
WEBB SANDERS PLLC
611 Commerce Street
Suite 3102
Nashville, TN 37203
Telephone: (615) 915-3300
Fax: (866) 277-5494
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I certify that, on November 9, 2021, I filed the foregoing *Defendant's Statement of Undisputed Material Facts* via the Court's electronic filing system, which will automatically notify and send a copy of that filing to:

Heather Moore Collins
Anne Bennett Hunter
Ashley Shoemaker Walter
Collins & Hunter PLLC

*Attorneys for Plaintiff*

/s/Daniel Crowell
Daniel Crowell (TN #31485)
*Attorney for Defendant*