UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CAITLIN O'CONNOR, | ) |
| | ) Case No. 3:20-cv-00628 |
| Plaintiff, | ) |
| | ) District Judge Richardson |
| v. | ) |
| | ) Magistrate Judge Frensley |
| THE LAMPO GROUP, LLC, | ) |
| | ) Jury Demand |
| Defendant. | ) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT**

Defendant, The Lampo Group, LLC, replies to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Doc. #74 ("Plaintiff's Memorandum")).

**I. Plaintiff's Pregnancy Discrimination Claim.[1]** Plaintiff's Title VII and THRA claims are based entirely on a disparate treatment theory of pregnancy discrimination.[2] As Plaintiff concedes in her Memorandum, "[T]he Pregnancy Discrimination Act ["PDA"] does not require preferential treatment for pregnant employees. Rather, it mandates that employers treat pregnant employees the same as nonpregnant employees who are similarly situated with respect to their ability to work." (Plaintiff's Memorandum at p. 15) (quoting *Tysinger*, 463 F.3d at 575).

Defendant is aware of nine employees (including Plaintiff) who have engaged in

---

[1] Plaintiff continues to argue the religious aspects of this case despite dismissal of her religious discrimination/accommodation claims. Docs. #55, 61. Defendant does not have the space to engage in irrelevant theological, philosophical, or political conversations here with Plaintiff or her religious experts.

[2] Plaintiff's Memorandum clarified that she is only pursuing a pregnancy discrimination claim under Title VII and the THRA, not a separate sex discrimination claim. Plaintiff's Memorandum at p. 18 ("[Plaintiff's] prima facie case of sex discrimination…is premised entirely on her pregnancy."); *see also* Id. at §III(A) (describing only pregnancy-related claims under the Pregnancy Discrimination Act).

premarital sex during employment—five men, four women/three pregnant, six not pregnant. All nine employees have been terminated. If an employee engages in premarital sex, Defendant terminates their employment without regard for pregnancy, which is all the PDA requires.

Plaintiff's Memorandum is full of red herrings, like Plaintiff emphasizing Defendant's discovery of her having engaged in premarital sex via learning about her pregnancy. That emphasis is misplaced. As highlighted in Plaintiff's Memorandum, Defendant has discovered employees engaging in premarital sex in a variety of ways, e.g., the employee admitting it, a third party reporting it. Whatever way Defendant has discovered that an employee engaged in premarital sex, the result has been the same—summary termination.[3] Plaintiff is effectively arguing that Defendant should make a categorical exception when premarital sex is discovered via pregnancy. But preferential treatment is not required by the PDA.

Having run aground against the premarital sex comparator data, Plaintiff seeks to expand the comparator pool to include employees who have engaged in extramarital sex and viewed pornography in a bid to find non-pregnant employees who were treated better than her. Given Defendant's consistent handling of premarital sex over the past six years, across the entire company and a diverse set of employees, there is no reason to go beyond the eight premarital sex comparators in this case.[4] Against that evidence, no reasonable juror could conclude that

---

[3] This is one way that this case is distinguishable from *Cline*, 206 F.3d 651 (6th Cir. 2000). Defendant does not enforce its premarital sex ban solely by observing pregnancy. *Id.* at 667. In fact, none of the pretextual circumstances described in *Cline* are present here. *See Id.* Upon discovering that Plaintiff had engaged in premarital sex, she was almost immediately terminated. Defendant did not consider any options other than termination. From a disciplinary standpoint, Defendant focused exclusively on Plaintiff engaging in premarital sex, not being pregnant. And Defendant has terminated more men than women and non-pregnant than pregnant employees for premarital sex.

[4] Defendant has provided comparator data for all employees who engaged in the same conduct as Plaintiff (premarital sex) since January 1, 2016, without regard for any of the other factors

2

Case 3:20-cv-00628    Document 77    Filed 01/03/22    Page 2 of 7 PageID #: 2072

Defendant terminated Plaintiff's employment because of pregnancy and not premarital sex.[5]

To the extent that the extramarital sex or pornography comparators are probative at all, they do not change the outcome. Defendant knew of three employees who engaged in extramarital sexual activities during employment. Two of the employees (one male and one female) were summarily terminated and the other (male) was disciplined but terminated over two years later when the Company learned more information about his extramarital activities. So, in summary, Defendant ultimately terminated all three employees who engaged in extramarital sex—two men, one woman, none pregnant.

The pornography comparators are even further removed. Plaintiff seized upon pornography because Defendant handles that infraction differently than premarital or extramarital sex and, thus far, all employees known to have viewed pornography have been men. If Defendant discovers an employee viewing pornography, the company has historically allowed

---

typically considered when establishing comparators, e.g., position, supervisor, decisionmaker. *See, e.g., Miles v. S. Cent. Human Res. Agency, Inc.,* 946 F.3d 883, 893-94 (6th Cir. 2020). Plaintiff and the eight premarital sex comparators worked in different areas of the company, held different positions, had different supervisors, and were not all terminated by the same decisionmakers. Likewise, Defendant provided two more years of premarital sex comparator data than Plaintiff requested, even though it was less favorable. This is not a cherrypicked dataset. Despite differences, for summary judgment purposes, Defendant accepts all premarital sex comparators as similarly situated. The extramarital and pornography comparators are not similarly situated because they did not even engage in the same conduct as Plaintiff.

[5] Plaintiff's Memorandum has raised a mixed motive theory for the first time. Given that Defendant terminated all six non-pregnant premarital sex comparators, the fact that Defendant's 86 other pregnant employees during the relevant period were not terminated, and the generous benefits that Defendant voluntarily provides to pregnant employees, no reasonable jury could conclude that Plaintiff's pregnancy was a motivating factor in Defendant's decision to terminate her employment. *See, e.g., Megivern v. Glacier Hills Inc.,* 519 Fed. Appx. 385, 401-02 (6th Cir. 2013) (summary judgment warranted where the record is devoid of evidence that reasonably supports plaintiff's mixed-motive claim). But even if Plaintiff's mixed motive theory could survive summary judgment, Defendant would clearly be entitled to the affirmative defense described in 42 U.S.C. §2000e-5(g)(2)(B) as a matter of law.

3

that employee to remain employed if they agree to undergo counseling and take any other steps deemed necessary to end that behavior. If the employee continues to view pornography, they are terminated. Since 2018, Defendant has discovered three employees viewing pornography, all men. All three employees were given an opportunity to correct their behavior, two did not and were terminated. Defendant would follow this same approach if the company discovered a female employee viewing pornography.

Even if the extramarital and/or pornography comparators were probative of Plaintiff's pregnancy discrimination claims, she must compare them with *all* nine employees who have been terminated for premarital sex not just the three pregnant employees. Plaintiff wants to compare only herself and the other two pregnant employees terminated for premarital sex with one male employee who was not initially terminated for extramarital sexual activities and the three employees who were not initially terminated for pornography. That is an incomplete picture because the one extramarital employee and the three pornography employees were treated differently than *all* of the employees summarily terminated for premarital sex, not just the three who were pregnant. That is perhaps the clearest illustration of why the extramarital and pornography comparators are not actually relevant at all. They do not make it more or less likely that Plaintiff was terminated for pregnancy rather than premarital sex.

**II. Plaintiff's FMLA/TMLA and ADA/TDA Claims.** Plaintiff's FMLA and TMLA claims are specious and should have been abandoned. Defendant contends that the FMLA and TMLA claims should be dismissed because Plaintiff cannot establish pretext. Plaintiff's Memorandum is singularly focused on notice but she does not address her failure to give notice in her own June 18, 2020 e-mail to Mr. Lopez, in which she discusses "getting FMLA & ADA paperwork *in case its* [sic] *needed in the future, etc.*" She does not address Defendant's argument

4

regarding temporal proximity or the remaining evidence in the record that uniformly supports that Defendant would not and did not engage in FMLA/TMLA interference or retaliation.

Plaintiff's ADA and TDA claims are even worse[6]. There is no evidence in the record to support these claims, apart from (and we are being generous) Plaintiff's June 18 e-mail to Mr. Lopez. In this section of Plaintiff's Memorandum, she includes many cites to deposition testimony by employees of Defendant. Not a single citation is accurate. None of the deposition excerpts cited relate to her ADA or TDA claims at all.

**III. Plaintiff's Retaliation Claims.** In addition to Plaintiff's June 18 e-mail to Mr. Lopez, Plaintiff claims that the following excerpt from an e-mail sent by Defendant's Suzanne Simms constitutes both protected activity and evidence of retaliatory intent: "[Plaintiff] seemed nervous but made it clear she needs us to make this decision—she isn't going to self-select out. But you can tell she pretty much knows what's gonna happen." (Ex. 7 to Lopez Depo on 6/29/21 at DEFENDANT 1930). We are not sure how Ms. Simms' observation that Plaintiff was not going to voluntarily resign constitutes protected activity by Plaintiff, nor how Ms. Simm's observation that Plaintiff knew that she was going to be terminated suggests retaliatory intent. Regardless, Plaintiff's Memorandum does not address Defendant's pretext argument at all.

**IV. Plaintiff's Interrogatory Answers**. Plaintiff amended her answer to Interrogatory No. 14 of Defendant's First Set of Interrogatories[7] after Defendant moved for summary judgment. But she has still not amended her answers to Interrogatories No. 12, 13, or 16. Plaintiff confirmed her original answer to Interrogatory No. 14 *twice* under oath before Defendant called it out at summary judgment, so her amended answer should be disregarded. But

---

[6] On response, Plaintiff voluntarily dismissed her ADA claim for failure to accommodate.

[7] Defendant has attached a copy as Exhibit 1.

5

Plaintiff has now *tripled down* on her answers to Interrogatories No. 12, 13, and 16. On this issue, Plaintiff's Memorandum is inaccurate and defiant. This is not a discovery issue. Plaintiff answered the interrogatories, but those answers require dismissal of her remaining claims. Nor did Defendant make a "backhanded allegation of professional negligence." Our point was that Plaintiff is bound by her sworn interrogatory answers, however they came to be. The Court should hold Plaintiff accountable for her sworn testimony, especially her inexplicable answers to Interrogatories No. 12, 13, and 16, by including this as an alternative basis for dismissing all her remaining claims in this case.

Respectfully submitted,

/s/Daniel Crowell
Leslie Sanders (TN #18973)
Daniel Crowell (TN #31485)
WEBB SANDERS PLLC
611 Commerce Street
Suite 3102
Nashville, TN 37203
Telephone: (615) 915-3300
Fax: (866) 277-5494
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com

*Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE

I certify that *Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment* is five pages per the page limitations standards provided in Local Rule 7.03.

/s/Daniel Crowell
Daniel Crowell (TN #31485)
*Attorney for Defendant*

6

# CERTIFICATE OF SERVICE

I certify that, on January 3, 2022, I filed *Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment* via the Court's electronic filing system, which will automatically notify and send a copy of that filing to:

Heather Moore Collins
Anne Bennett Hunter
Ashley Shoemaker Walter
Collins & Hunter PLLC

*Attorneys for Plaintiff*

/s/Daniel Crowell
Daniel Crowell (TN #31485)
*Attorney for Defendant*