# CAITLIN O'CONNOR

## vs.

# LAMPO GROUP

---

**30(b)(6), Attorneys Eyes Only**

## JACK GALLOWAY

**September 30, 2021**

---



**R. Michelle Smith, RMR, LCR, CCR, FPR, CLR**

Chattanooga (423)266-2332   Jackson (731)425-1222
Knoxville (865)329-9919   Nashville (615)595-0073   Memphis (901)522-4477
www.elitereportingservices.com

CONFIDENTIAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

_____

CAITLIN O'CONNOR,

                    Plaintiff,

vs.                              Case No. 3:20-cv-00628

THE LAMPO GROUP, LLC a/k/a
RAMSEY SOLUTIONS,

                    Defendant.

_____


                    ***CONFIDENTIAL***
                 ***ATTORNEYS' EYES ONLY***
               (UNTIL FURTHER DETERMINATION)

          30(b)(6) Video Recorded and Videoconference
          Deposition of:

           THE LAMPO GROUP, LLC a/k/a
          RAMSEY SOLUTIONS by JACK GALLOWAY

          Taken on behalf of the Plaintiff
          September 30, 2021

          Commencing at 9:45 a.m.


_____

          Elite-Brentwood Reporting Services
   MICHELLE SMITH, RDR, LCR, CCR, FPR, CLR, CLVS, CDVS
                 Nashville, Tennessee
                    (615)595-0073

```
 1

 2                 A  P  P  E  A  R  A  N  C  E  S

 3

 4      For the Plaintiff, via videoconference:

 5              MS. HEATHER MOORE COLLINS
                MS. ASHLEY WALTER
 6              Collins & Hunter PLLC
                7000 Executive Center Drive, Suite 320
 7              Brentwood, TN 37027
                (615)724-1996
 8              Heather@collinshunter.com
                Ashley@collinshunter.com
 9

10      Attorney For Defendant, via videoconference:

11              MS. LESLIE SANDERS Attorney at Law
                Webb Sanders
12              611 Commerce Street, Suite 3102
                Nashville, TN 37203
13              (615)4915-3300
                Lsandesr@websanderslaw.com
14

15      ALSO PRESENT:

16              MS. MARY CIEZADLO, Legal Videographer
                MR. DANIEL CORTEZ
17              MR. ARMANDO LOPEZ
                MS. CAITLIN O'CONNOR
18

19

20

21

22

23

24

25
```

Case 3:20-cv-00663 Brentwood Reporting Services Page 3 of 41 PageID #: 5130
Elite Document Reporting Services (901) 522-4447
www.EliteReportingServices.com

1

2                S T I P U L A T I O N S

3

4        The 30(b)(6) Video Recorded and

5    Videoconference of JACK GALLOWAY was taken by

6    Counsel for the Plaintiff, by Agreement, with all

7    participants appearing at their respective

8    locations, on September 30, 2021, for all purposes

9    under the Federal Rules of Civil Procedure.

10        All formalities as to caption, notice,

11   statement of appearance, et cetera, are waived.  All

12   objections, except as to the form of the question,

13   are reserved to the hearing, and that said deposition

14   may be read and used in evidence in said cause of

15   action in any trial thereon or any proceedings

16   herein.

17        It is agreed that R. MICHELLE SMITH, RDR, and

18   Licensed Court Reporter for the State of Tennessee,

19   may swear the witness, and that the reading and

20   signing of the completed deposition by the witness

21   was not discussed.

22

23

24

25

Elite Reporting Services
www.EliteReportingServices.com

1                     *   *   *

2

3              THE VIDEOGRAPHER:  We are now on the

4    record.  Today is Thursday the 30th of September 2021

5    and the time indicated on the video screen is 9:45

6    a.m.  This is the videoconference deposition of

7    Jack Galloway taken in the matter of O'Connor versus

8    The Lampo Group, LLC, also known as Ramsey Solutions;

9    Case number 3:20-cv-00628, filed in the United States

10   District Court for the Middle District of Tennessee,

11   Nashville Division.

12           My name is Mary Ciezadlo, the videographer.

13   The court reporter is Michelle Smith, both in

14   association with Elite-Brentwood Reporting Services.

15   Since this deposition is being taken by video

16   conference, the oath will be administered remotely by

17   the court reporter.

18           Any digital exhibits marked during this

19   deposition will be deemed as original for purposes of

20   said deposition.

21           At this time I'll ask Counsel to identify

22   yourselves and state whom you represent.  And if you

23   have any objections with the procedures outlined,

24   please state so when you introduce yourselves.  We

25   will start with the noticing attorney.

```
 1            MS. COLLINS:  Heather Collins and Ashley
 2    Walter for the Plaintiff.
 3            MS. SANDERS:  Leslie Sanders for
 4    Defendants, and with me is Daniel Cortez, attorney
 5    for Defendant and Armando Lopez, the corporate
 6    representative.
 7            THE VIDEOGRAPHER:  Will the court
 8    reporter please swear in the witness.
 9                    *   *   *
10            THE LAMPO GROUP, LLC a/k/a
11         RAMSEY SOLUTIONS by JACK GALLOWAY,
12    was called as a witness, and after having been duly
13    sworn, testified as follows:
14
15                    EXAMINATION
16    QUESTIONS BY MS. COLLINS:
17    Q.      Okay.  Could you state your full name for the
18    record.
19    A.      Jack Boone Galloway, Junior.
20    Q.      And Mr. Galloway, are do you currently work?
21    A.      Ramsey Solutions.
22    Q.      And it is my understanding that you've been
23    designated as a corporate representative for the
24    30(b)(6) deposition that's been noticed for today;
25    correct?
```

Case 3:20-cv-00613 Brentwood Report Filed 06/01/22 Page 7 of 41 PageID #: 5134 6
Elite Reporting Services (901) 522-4477
www.EliteReportingServices.com

1    A.      That is correct.

2           MS. SANDERS:  And just for the record

3    he's been designated for portions of that notice, to

4    testify to portions of that notice.

5           MS. COLLINS:  All right.  I was going to

6    attach the notice of deposition, as well as the

7    objections to the next exhibit in this case.

8           And Michelle, I'm having difficulty attaching

9    it through the chat.

10          THE REPORTER:  Maybe Mary can help on

11   this.

12          MS. COLLINS:  Well, I don't -- I can send

13   it over later, but we can just proceed, everyone

14   should have a copy of it.

15          (WHEREUPON, a document was marked as

16   Exhibit Number 19.)

17   BY MS. COLLINS:

18   Q.      Mr. Galloway, it's my understanding that the

19   first topic that you've been designated to testify to

20   is topic Number 6, if you have the deposition notice

21   in front of you, and topic Number 6 concerns the

22   Defendant's righteous living policy, and that's

23   including but not limited to its inception, origin,

24   any modifications and interpretations.  So we're

25   going to start there this morning.  What do you know

1    about --

2                MS. SANDERS:  Heather, can you hold on

3    one second so I can pull this up for him?  He did not

4    have it in front of him, but I'm pulling it up for

5    him.

6          For the record I have pulled up the

7    Defendant's objections and corporate representative

8    designations.  I'm not sure if that's what Exhibit 18

9    [sic] but that is what the Defendant is reviewing,

10   did you say Number 6, Heather?

11               MS. COLLINS:  Yes.  I'm sorry.

12               MS. SANDERS:  Okay.  He has that in front

13   of him.  Thank you.

14         And also before you go any further, Heather,

15   is Ms. O'Connor, is she on this Zoom today?

16               MS. COLLINS:  Yes.

17               MS. SANDERS:  Okay.  Thank you.  I didn't

18   hear you introduce her, I was just making sure.

19   Okay.  You've got it in front of you.

20   BY MS. COLLINS:

21   Q.     Okay.  Mr. Galloway, what do you know about

22   the Defendant's "righteous living policy"?

23   A.     Could you be more specific?

24   Q.     Okay.  When was it created?

25   A.     Approximately 2013 our operating board at

1    that time created the document that now holds our

2    righteous living core values.  There is not a

3    "righteous living policy".

4    Q.      Okay.  Did you work at Ramsey Solutions in

5    2013?

6    A.      Yes, I did.

7    Q.      Were you part of that operating board that

8    created the policy?

9    A.      Yes, I was.

10   Q.      Who else was part of that operating board

11   that created the policy?

12           MS. SANDERS:  Object to the form.  He can

13   answer.

14           THE WITNESS:  I can start naming names.

15   It has changed over time, but Suzanne Simms --

16   BY MS. COLLINS:

17   Q.      No, Mr. Galloway, what I'm asking, is

18   who was a part of the operating board at the time

19   the policy was created, who, who were the core group

20   of people that created the righteous living core

21   values?

22           MS. SANDERS:  Object to the form.  He may

23   answer.

24   //

25   //

1          THE WITNESS:  Suzanne Simms, Jim

2   Severson, Mark Floyd, Dave Ramsey, I'm uncertain on

3   some of the other names that transitioned on and off

4   during that time, but I believe Debbie LoCurto, who

5   is no longer employed, was on the board at that time,

6   myself, that's all that I'm certain of.

7   BY MS. COLLINS:

8   Q.     Okay.  Why did this become part of Ramsey

9   Solutions' core values, the righteous living

10  values?

11  A.     Our core values as a whole that were put

12  together around 2013, prior to that, they were a set

13  of principles that we were operating by, but were

14  not well documented.  And they were being collected

15  sort of as we articulated them, and as we grew, we

16  stared to take these operating principles that we

17  were already operating by, and give them the

18  verbiage and the phrases that we now call the core

19  values.

20  Q.     Okay.  Has the righteous living value changed

21  over time?

22  A.     No.

23  Q.     Has it been modified over time at all?

24  A.     I would not say that it has been modified.

25  It has been, as we have used it and had specific

Case 3:20-cv-01066-Brentwood Reporting Services Page 11 of 41 PageID #: 5130
Elite Reporting Services * (904) 522-4477
www.EliteReportingServices.com

1    situations we have -- we have not modified the core

2    value.

3    Q.      Did you say you have not modified the core

4    value?

5    A.      Not that I'm aware of, not modified or

6    changed.

7    Q.      And what is the righteous living core values

8    based on?

9    A.      Biblical principles.

10   Q.      Specifically which Biblical principles?

11   A.      Well, the Bible as a whole.  The Bible is not

12   our policy handbook, but the Bible as a whole is a

13   set of Biblical principles that we attempt to use as

14   we decide the core values of our company.  We, our

15   company is based on Biblical principles as a whole,

16   the Bible as a whole, not a specific chapter and

17   verse.

18   Q.      Whose interpretation of the Bible?

19   A.      It's not any one person's interpretation of

20   the Bible.  Our HR committee and occasionally our

21   operating board are involved in interpreting the

22   Bible as best we can, Biblical principles for

23   everyday application and practical use in the

24   workplace.

25   Q.      Okay.  And Ramsey Solutions is not a

Case 3:20-cv-01026-Brentwood Reporting Services Page 12 of 41 PageID #: 5131
Elite Document 64-3 Filed 03/11/22 (901) 522-4477
www.EliteReportingServices.com

1   religious organization, is it?

2          MS. SANDERS:  Object to the form as

3   being outside of the scope, but he may answer if he

4   knows.

5          THE WITNESS:  That is correct.  We are

6   not a 501c3 or a church.

7   BY MS. COLLINS:

8   Q.     Does Ramsey Solutions impose the Biblically

9   based righteous living core value on all of its

10  employees?

11  A.     Yes.

12  Q.     And for the record when you say Biblically

13  based, you're talking about the Christian Bible;

14  right?

15  A.     That's correct.

16  Q.     Were any pastors or ordained ministers

17  involved in the drafting of the righteous living core

18  value?

19  A.     No, they were not.

20  Q.     Now, moving on to topic Number 7, it's

21  Defendant's determination that its righteous living

22  policy prohibits premarital sex, where did that come

23  from?

24  A.     It's a widely-held belief among Christians

25  that the Bible teaches that sex is reserved for

Case 3:20-cv-01062-Brentwood Reporter Filed 08/31/22 Page 13 of 41 (904) 522-4477 #: 51402
Elite Reporting Services
www.EliteReportingServices.com

1    marriage.

2    Q.      Among which Christians?

3    A.      Christians following Biblical principles,

4    Christians that are using the Bible to determine how

5    they should live.

6    Q.      Okay.  So do Christians who don't adhere

7    to that belief that premarital sex is prohibited

8    before or outside of marriage, are they not true

9    Christians?

10   A.      I do not have a -- I'm not an expert on that

11   and I don't have an opinion on that.

12   Q.      Does Ramsey Solutions only hire Christians?

13   A.      We hire the best person for the position,

14   skill fit, team fit, culture fit.

15   Q.      To your knowledge have any non Christians

16   been hired?

17          MS. SANDERS:  Object to the form.

18   It's outside of the scope, but he can answer if he

19   knows.

20          THE WITNESS:  We do not ask anyone during

21   the interview process or during their employment if

22   they are or are not a Christian.

23   //

24   //

25   //

```
 1    BY MS. COLLINS:
 2    Q.      But all employees are expected to abide by
 3    the Biblically based righteous living core value;
 4    right?
 5    A.      Yes.
 6    Q.      And with respect to premarital sex,
 7    all employees are expected to not engage in
 8    premarital sex based on this Biblically based policy;
 9    correct?
10    A.      Sex outside of marriage, including premarital
11    sex.
12    Q.      Okay.  And as part of topic Number 7 it asks
13    to know who made the determination that the righteous
14    living core value that prohibits premarital sex,
15    specifically who made that determination that that
16    was going to be part of Ramsey Solutions' values that
17    it imposes on its employees?
18    A.      We make decisions by consensus, and so that
19    would have been primarily our HR committee and
20    occasionally our operating board as a whole on
21    certain decisions like that.
22    Q.      Were you a part of that determination?
23    A.      Yes.
24    Q.      Okay.  Who else was a part of that
25    determination, or was it just the same people that
```

1    you listed earlier?

2    A.      It was the same group that I listed earlier

3    originally, that's the original board, the names that

4    I gave you earlier, so yes.

5    Q.      When did it come up specifically that

6    premarital sex was going to be prohibited under the

7    righteous living core value?

8    A.      I do not remember an exact date or its

9    inception, but it -- prior to righteous living being

10   a core value that was living righteously, including

11   not having sex outside of marriage was something that

12   our company valued and was operating by before there

13   was a stated document of core values.

14   Q.      Okay.  So but where did that come from, that

15   not engaging in premarital sex was considered part of

16   living righteously?

17   A.      It has been a part of our culture as long as

18   I can remember.  I don't remember of a specific

19   conversation or start date to where any individual

20   said this is how we define righteous living.

21   Righteous living is trying to live a Biblical and

22   Biblically righteous life including not having sex

23   outside of the marriage.  But the righteous living

24   core value is not a sex only core value, it's not a

25   core value that just deals with sex.

Case 3:20-cv-01163-Brentwood Reporting Services (904) 522-4477 Filed 08/11/22 Page 16 of 41 PageID #: 51485
Elite-Brentwood Reporting Services (904) 522-4477
www.EliteReportingServices.com

1   Q.      Okay.  What is the Biblical basis that the

2   Bible prohibits premarital sex or extramarital

3   sex?

4   A.      There are a number of references in the Bible

5   to sex within marriage, sexual purity, as well as it

6   being a widely accepted understanding of the Bible

7   among Christians, that the Bible instructs us to

8   reserve sexual intercourse for marriage.

9   Q.      Okay.  And when you say it's widely accepted

10  among Christians, are you speaking specifically about

11  a certain group of Christians?

12  A.      Christians following Judeo-Christian values,

13  following the Bible.

14  Q.      Okay.  Do you mean evangelical Christians?

15  A.      Yes.

16  Q.      Okay.  Because not all Christians agree that

17  premarital sex is prohibited by the Bible; correct?

18  A.      I do not know --

19  Q.      Okay.

20  A.      -- what all Christians believe.

21  Q.      But you're aware that some Christians don't

22  adhere to this belief that premarital sex is

23  prohibited by the Bible; correct?

24  A.      I, as a company representative, I don't have

25  an opinion on what all Christians believe about the

Case 3:20-cv-00629-TJC-PDB Document 31-16 Filed 03/11/22 Page 17 of 41 PageID #: 5146
Elite Document Reporting Services (904) 522-4477
www.EliteReportingServices.com

1    topic of sex outside of marriage.

2    Q.      Okay.  Well, you just testified that it's a

3    Christian belief that premarital sex was prohibited.

4    So the converse is that some Christians don't, in

5    fact, practice that belief; correct?

6    A.      That may be true.  What I stated was that it

7    was a widely-held belief; I did not say that all

8    Christians believe the same.

9    Q.      So is it that it's a widely-held belief by

10   the Christians and leadership at Ramsey Solutions?

11   A.      That would be a true statement that we do

12   believe that the Bible tells us to reserve sex for

13   marriage, according to Biblical principles.

14   Q.      How does Ramsey Solutions go about enforcing

15   this policy or core value specifically with respect

16   to premarital or extramarital sex?

17   A.      We communicate with our team that we have an

18   expectation that team members here are not having sex

19   outside of marriage, and we communicate it to mind

20   regularly in public settings.  We do not seek out

21   these situations, we do not ask people about their

22   sexual lives, but if a situation comes to our

23   attention that someone is having sex outside of

24   marriage, then we would deal with that situation and

25   learn more.

1  Q.      Okay.  Can you give me an example of how it

2  would come to your attention that someone is having

3  sex outside of marriage?

4  A.      It could be that the team member discloses

5  it, it could be that another team member discloses

6  it, it could be that another person involved in the

7  relationship discloses it.

8  Q.      And with respect to the team member

9  disclosures, does that include when a team member

10  discloses that they're pregnant or their spouse or

11  significant other is pregnant, do you look

12  closely at whether or not sex would have taken place

13  outside of marriage for that pregnancy to have

14  occurred?

15            MS. SANDERS:  Object as outside of the

16  scope, but he may answer if he knows.

17            THE WITNESS:  We do not ask team members

18  certainly -- we do not make it a practice to ask team

19  members if their pregnancy came from sex inside of

20  marriage, we do not.  That is not something that we

21  do.

22  //

23  //

24  //

25  //

1  BY MS. COLLINS:

2  Q.      Okay.  So when I asked you a moment ago about

3  the Biblical basis for the assertion that the Bible

4  prohibits premarital sex, sitting here today can you

5  identify any specific Bible verse that premarital sex

6  is prohibited?

7  A.      The belief is based on the totality of what

8  the Bible teaches.  There are many references

9  to sex and living a sexually pure life, and we draw

10 that belief from the totality of the Bible as a

11 whole.

12 Q.      Okay.  So sitting here today you do not have

13 a specific Bible verse that you can point to, or

14 even a couple of Bible verses that support that

15 assertion?

16 A.      No.

17 Q.      Okay.  Also in topic Number 7 it asks to know

18 how -- what is the basis that the prohibition, the

19 Biblically based prohibition on premarital sex is

20 consistent with Title VII?

21         MS. SANDERS:  Object to the extent it

22 asks for a legal conclusion, but he can answer the

23 question.

24         THE WITNESS:  Is there any way to mute

25 the alerts?

```
 1              MS. SANDERS:  And Heather, just for a
 2     timeout, there are some alerts that are coming
 3     through and it's interfering with understanding your
 4     questions.  So I'm not sure where it's coming from,
 5     but if anybody has alerts on, could we mute those?  I
 6     don't know if everyone is hearing them, it may just
 7     be on our end.
 8              MS. COLLINS:  I'm hearing them but
 9     they're not on my end.  I don't believe they're on
10     ours.
11              MS. SANDERS:  I'm just going to
12     double-check his and make sure they're not coming
13     from here.  Give us just a second, Heather, it may be
14     coming -- we have a borrowed laptop, so let us just
15     double-check and make sure it's not coming --
16              THE VIDEOGRAPHER:  Counsel, would you
17     like to go off the record?
18              MS. SANDERS:  Yes, that will be fine, it
19     will just take us about 30 seconds.
20              THE VIDEOGRAPHER:  Going off the record
21     at 10:10 a.m.
22              (Brief break.)
23              THE VIDEOGRAPHER:  We are back on the
24     record at 10:12 a.m.
25     //
```

1            THE WITNESS:  Would you mind to repeat

2    the last question?

3    BY MS. COLLINS:

4    Q.    Sure.  Michelle, can you repeat the last

5    question?

6            (WHEREUPON, the pending question was read

7    back by the reporter.)

8    BY MS. COLLINS:

9    Q.    Okay.  Mr. Galloway, at any point in time has

10   it been considered as to whether or not imposing

11   Biblically based core values on Ramsey Solutions'

12   employees is consistent with Title VII?

13           MS. SANDERS:  And renew that objection to

14   the extent it's calling for a legal conclusion, but

15   he may answer, if he knows.

16           THE WITNESS:  Our understanding is that

17   sex outside of marriage is not a protected class

18   under Title VII.

19   BY MS. COLLINS:

20   Q.    And what is that understanding based on?

21           MS. SANDERS:  Objection to the extent it

22   calls for attorney-client privileged information, but

23   otherwise he may answer.

24           THE WITNESS:  Our legal counsel.

25   //

```
1    BY MS. COLLINS:

2    Q.      And specifically who are you referring to

3    when you say legal counsel?

4              MS. SANDERS:  Objection, I believe that's

5    calling for privileged information.  He cannot

6    answer.

7              MS. COLLINS:  It's not calling for

8    privileged information to ask who the attorney is.

9    You can answer.

10             MS. SANDERS:  I'll state the objection

11   but he can answer.

12             THE WITNESS:  Daniel Cortez

13   BY MS. COLLINS:

14   Q.      Okay.  So do you know any other facts that

15   support Ramsey Solutions' position that imposing a

16   Biblically based core value on all of its employees

17   is consistent with Title VII's dictates against

18   discrimination, including discrimination on the bases

19   of religion and sex?

20   A.      I don't understand the question, would you

21   mind to rephrase?

22   Q.      One of the topics that you were asked to come

23   testify to today was topic Number 7, and you were

24   designated for that topic, the last clause of the

25   last sentence of topic Number 7 asks Defendant's
```

1  factual basis that this prohibition, and it's

2  referring to the prohibition on premarital sex under

3  its values is consistent with Title VII.  So that's

4  what I'm asking you, are there any other facts that

5  you have as a designated corporate representative,

6  that the policy or the core value that's encompassed

7  under the righteous living core value that prohibits

8  premarital sex is consistent with Title VII, which

9  includes discrimination on the bases of sex and

10 religion?

11 A.      There are no other facts.

12 Q.      Okay.  Now, I'm moving on to topic Number 8.

13 And the first part of that is Defendant's

14 determination that its righteous living policy does

15 not prohibit oral sex in the context of premarital

16 sex or extramarital affairs, where did that concept

17 come from?

18         MS. SANDERS:  Object to form.  He may

19 answer.

20         THE WITNESS:  We have never stated that

21 we do not prohibit sex -- oral sex outside of

22 marriage, or we have not made any determination,

23 conclusion, statement as a company around oral sex

24 being okay.  We have determined that intercourse

25 outside of marriage is immediately terminable.

Case 3:20-cv-01630 Document Report Filed 08/11/22 Page 24 of 41 PageID #: 5152
Elite Brentwood Reporting Services (204) 522-4477
www.EliteReportingServices.com

1    BY MS. COLLINS:

2    Q.      Okay.  Who made that determination?

3    A.      Our human resources committee and operating

4    board as a whole.

5    Q.      When was that decision made?

6    A.      I do not remember an exact date when that

7    decision was made, but it was -- has always been a

8    part of our culture, even prior to the formation of

9    the operating board structure today, the company

10   operated under that principle, and the leaders prior

11   to that also operated under that practice.

12   Q.      Okay.  But there did come a time when whether

13   or not someone engaged in oral sex versus intercourse

14   was parsed out by those people in leadership;

15   correct?

16           MS. SANDERS:  Objection to the extent

17   that Ms. O'Connor is present and to the extent that

18   the questions you're asking him are going to lead to

19   information that is subject to attorney's eyes only.

20   BY MS. COLLINS:

21   Q.      You can answer the question.

22           MS. SANDERS:  You can answer it, but if

23   Ms. O'Connor is present, you can't answer any

24   information that has been designated attorney eyes

25   only.

1          MS. COLLINS:  Yes, she -- yes, he can.

2     We've got to be able to proceed with this deposition.

3     My client has a right to be here during the

4     deposition, and so you know, it's already difficult

5     enough with the speaking objections that have been

6     going on this morning, I need to be able to proceed

7     and take this deposition without these constant

8     interruptions.

9          MS. SANDERS:  I want you to proceed, but

10    there is information that has been designated as

11    attorney's eyes only, which means Ms. O'Connor may

12    not be present.  I'm fine with you proceeding.  She

13    just -- "attorney's eyes only" means Ms. O'Connor

14    doesn't get the information.

15         MS. COLLINS:  We need to go off the

16    record and see if we can get the Judge on the phone,

17    because my client has a right to attend a corporate

18    deposition.

19         MS. SANDERS:  Okay.  That will be fine.

20         THE VIDEOGRAPHER:  Going off the record

21    at 10:19 a.m.

22         (Brief break.)

23         THE VIDEOGRAPHER:  We are back on the

24    record at 10:40 a.m.

25    //

1    MS. COLLINS:  Michelle, can you read back

2    the last question, because I have no idea where we

3    were.  I think we were on topic eight.

4        (WHEREUPON, the pending question was read

5    back by the reporter.)

6    BY MS. COLLINS:

7    Q.    All right.  Now, with the respect to

8    the -- and really this goes to topic Number 8, about

9    the righteous living core value and the distinction

10   between oral sex and intercourse.  So as I understand

11   it, I'm just recapping a little bit of testimony

12   since we had a break, if -- if Ramsey Solutions finds

13   out that an employee had intercourse, then they

14   determine that that violates the righteous living

15   core value and they will immediately be terminated;

16   right?

17   A.    Intercourse outside of marriage.

18   Q.    Okay.  They'll be terminated?

19   A.    Correct.

20   Q.    But if it comes to their attention that they

21   have been an employee who has engaged in oral sex,

22   that does not necessarily mean immediate termination;

23   correct?

24   A.    That is correct.

25   Q.    Okay.  And you would agree with me that with

1    respect to intercourse, that a woman can get pregnant
2    from that; right?
3    A.      Yes.
4    Q.      Okay.  And a woman cannot easily hide a
5    pregnancy; correct?
6    A.      I would agree with that.
7    Q.      So if a female employee comes to Ramsey
8    Solutions and says I'm pregnant, and they know that
9    she's unwed, she will be terminated?
10   A.      If a female employee has had sex outside of
11   marriage, there's a high likelihood that they would
12   be terminated regardless of whether or not they were
13   pregnant or not.
14   Q.      Okay.  And female employees have done that,
15   they've come to Ramsey Solutions and said I'm
16   pregnant and I'm not married, and every single one
17   without exception has been terminated; right?
18   A.      Every single team member that has had sex
19   outside of marriage has been terminated.
20   Q.      I'm asking you specifically about female
21   employees who have come to Ramsey Solutions and
22   informed them that they were pregnant and unwed, they
23   have been all terminated without exception?
24   A.      Correct.
25   Q.      And that was for violation of the righteous

1    living core value?

2    A.      Correct.

3    Q.      Okay.  Now, with respect to topic Number 8

4    there is no Biblical basis for a distinction between

5    intercourse and oral sex, is there, as being a

6    violation of some sort of righteous living notion?

7    A.      I'm not aware of Biblical references to oral

8    sex.

9    Q.      Okay.  And is that based on any sort of

10   Judeo-Christian value, that an employee who is not

11   married and engages in premarital sex should be

12   immediately terminated versus one who engages in oral

13   sex?

14   A.      A person who engages in oral sex may be

15   terminated.  We have not said that oral sex outside

16   of marriage is okay or does not violate the righteous

17   living core value.  We have only said it does not

18   mean immediate and automatic termination.

19   Q.      Okay.  And without getting into any of the

20   protective order issues, that's because there has

21   been a male employee who it came to the company's

22   attention, admitted to having oral sex outside of

23   marriage in an extramarital affair, but he was not

24   terminated; correct?

25   //

```
 1              MS. SANDERS:  Object to the form.  He can

 2     answer.

 3              THE WITNESS:  He was not terminated

 4     immediately; he was later terminated.

 5     BY MS. COLLINS:

 6     Q.      Okay.  And it's my understanding that you are

 7     not here to testify as to the ins and outs as to why

 8     he was terminated; right?

 9     A.      That is correct.

10     Q.      Okay.  Now, the last topic area, and then

11     you're out of the hot seat, is topic Number 9, and

12     that's about the Defendant's core values, including

13     but not limited to the inception, origin,

14     modification and interpretation of the values.  I

15     think we already covered all of that earlier.  So is

16     there anything else with respect to the inception of

17     those core values that we have not already covered

18     as far as the when, the where, the why, all of

19     that --

20     A.      No.

21     Q.      -- that you feel is important?

22     A.      Okay.  I'm sorry.  No.

23     Q.      Okay.  Now, I'm going to provide you one more

24     document, and this one is Bates number, Leslie, 2315,

25     we were provided this document last week.
```

1       MS. SANDERS:  He's got that in front of

2   him.

3       MS. COLLINS:  He has it in front of him.

4   Okay.  I'm going to mark this as Exhibit 20,

5   let me see if I can shoot it over for the court

6   reporter.

7       MS. SANDERS:  For the record while you're

8   doing that, Heather, I handed the document -- excuse

9   me, the Deponent the document with the Bates number

10  Defendant 2315, which has just been marked as

11  Exhibit 20.

12      MS. COLLINS:  Okay.  And Michelle, I'm

13  going to go ahead and mark 2315 that was sent over in

14  the chat as Exhibit 20.

15      (WHEREUPON, a document was marked as

16  Exhibit Number 20.)

17  BY MS. COLLINS:

18  Q.     Mr. Galloway, have you seen this document

19  before?

20  A.     Yes, I have.

21  Q.     Okay.  Do you know who created it?

22  A.     I believe legal counsel created it.

23  Q.     Okay.  And does this explain -- well, what is

24  your understanding as to what this document is

25  explaining?

1    A.      My understanding is that this was in response

2    to an Interrogatory that asked for more information

3    about the righteous living core value, including its

4    inception and any Biblical references.

5    Q.      Okay.  And so is it your understanding that

6    this covers all of that?

7    A.      Yes.

8    Q.      Okay.  So this is the company's position on

9    that topic?

10   A.      Yes.

11   Q.      Okay.  All right.  I think we can move on to

12   the next witness.  I don't see that you're designated

13   for anything else, Mr. Galloway.

14              THE WITNESS:  All right.  Thank you.

15              MS. SANDERS:  Thank you, Heather.  I just

16   have one question for the witness.

17

18                    EXAMINATION

19   QUESTIONS BY MS. SANDERS:

20   Q.      Earlier, Mr. Galloway, Ms. Collins asked you

21   if there was any other information to add, just for a

22   point of clarification, you talked about the drafting

23   of those core values at the Operating board Retreat,

24   you then talked about -- I believe you referenced a

25   person who had gathered information, but you didn't

1    identify him by name.  So to the extent that's

2    information you did not provide, can you tell -- can

3    you tell us today who that person was who gathered

4    that information you referenced earlier?

5    A.      Prior to the 2013 meeting, our HR director,

6    Rick Perry, was the one who began documenting these

7    operating principles that we were using, and writing

8    them down.  And then at the 2013 Retreat we took

9    those ideas and transferred them into these phrases

10   that we have today.

11   Q.      That's all.

12

13                    EXAMINATION

14   QUESTIONS BY MS. COLLINS:

15   Q.      I just have one follow-up question.

16           Mr. Perry is no longer with the company;

17   correct?

18   A.      That is correct.

19   Q.      Okay.  When did he leave?

20   A.      He retired, his last date of employment was

21   this summer, and he -- his last regular time in the

22   office was prior to that.  But his last day of

23   actually being employed was this summer.

24   Q.      Okay.  That's all I have.  We're ready for

25   Ms. Simms, if she is ready we can go ahead and get

Case 3:20-cv-00628 Document 49-1 Filed 08/11/22 Page 33 of 41 PageID #: 5162
Elite-Brentwood Reporting Services   (904) 522-4477
www.EliteReportingServices.com

1    her started.

2                    THE REPORTER:  One moment, let's go off

3    record.

4                    MS. SANDERS:  Okay.

5                    MS. COLLINS:  Okay.

6                    THE VIDEOGRAPHER:  The time is 10:50 a.m.

7    we are going off the record.  This will conclude the

8    deposition of Jack Galloway.

9                    FURTHER DEPONENT SAITH NOT

10                    (Proceedings concluded at 10:50 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

www.EliteReportingServices.com

```
 1                    REPORTER'S CERTIFICATE

 2   STATE OF TENNESSEE

 3   COUNTY OF DAVIDSON

 4

 5           I, R. MICHELLE SMITH, Licensed Court

 6   Reporter, with offices in Nashville, Tennessee,

 7   hereby certify that I reported the foregoing

 8   deposition of JACK GALLOWAY by machine shorthand to

 9   the best of my skills and abilities, and thereafter

10   the same was reduced to typewritten form by me.

11           I am not related to any of the parties named

12   herein, nor their counsel, and have no interest,

13   financial or otherwise, in the outcome of the

14   proceedings.

15           Further certify that in order for this
     document to be considered a true and correct copy it
16   must bear my original signature, and that any
     unauthorized reproduction in whole or in part and/or
17   transfer of this document is not authorized, will not
     be considered authentic, and will be in violation of
18   Tennessee Code Annotated 39-14-04, Theft of Services.

19

20

21

22

23   _____

24   MICHELLE SMITH, RDR, LCR, CCR, FPR, CLR, CLVS, CDVS
     Elite Reporting Services
25   LCR# 544 - Expires:  6/30/2022
```

| | | | |
|---|---|---|---|

**Exhibits**

**Ex 20 -**
 **Jack Galloway**
 3:17 30:4,11,14,
 16

**1**

**10:10** 20:21
**10:12** 20:24
**10:19** 25:21
**10:40** 25:24
**10:50** 33:6,10
**18** 8:8
**19** 7:16

**2**

**20** 30:4,11,14,16
**2013** 8:25 9:5
 10:12 32:5,8
**2021** 5:4
**2315** 29:24 30:10,
 13

**3**

**30** 20:19
**30(b)(6)** 6:24
**30th** 5:4
**3:20-cv-00628**
 5:9

**5**

**501c3** 12:6

**6**

**6** 7:20,21 8:10

**7**

**7** 12:20 14:12
 19:17 22:23,25

**8**

**8** 23:12 26:8 28:3

**9**

**9** 29:11
**9:45** 5:5

**A**

**a.m.** 5:6 20:21,24
 25:21,24 33:6,10
**a/k/a** 6:10
**abide** 14:2
**accepted** 16:6,9
**add** 31:21
**adhere** 13:6 16:22
**administered**
 5:16
**admitted** 28:22
**affair** 28:23
**affairs** 23:16
**agree** 16:16 26:25
 27:6
**ahead** 30:13
 32:25
**alerts** 19:25 20:2,
 5
**application** 11:23
**Approximately**
 8:25
**area** 29:10
**Armando** 6:5
**articulated** 10:15
**Ashley** 6:1
**asks** 14:12 19:17,

22 22:25
**assertion** 19:3,15
**association** 5:14
**attach** 7:6
**attaching** 7:8
**attempt** 11:13
**attend** 25:17
**attention** 17:23
 18:2 26:20 28:22
**attorney** 5:25 6:4
 22:8 24:24
**attorney's** 24:19
 25:11,13
**attorney-client**
 21:22
**automatic** 28:18
**aware** 11:5 16:21
 28:7

**B**

**back** 20:23 21:7
 25:23 26:1,5
**based** 11:8,15
 12:9,13 14:3,8
 19:7,19 21:11,20
 22:16 28:9
**bases** 22:18 23:9
**basis** 16:1 19:3,18
 23:1 28:4
**Bates** 29:24 30:9
**began** 32:6
**belief** 12:24 13:7
 16:22 17:3,5,7,9
 19:7,10
**Bible** 11:11,12,16,
 18,20,22 12:13,25
 13:4 16:2,4,6,7,
 13,17,23 17:12
 19:3,5,8,10,13,14
**Biblical** 11:9,10,
 13,15,22 13:3
 15:21 16:1 17:13
 19:3 28:4,7 31:4

**Biblically** 12:8,12
 14:3,8 15:22
 19:19 21:11 22:16
**bit** 26:11
**board** 8:25 9:7,10,
 18 10:5 11:21
 14:20 15:3 24:4,9
 31:23
**Boone** 6:19
**borrowed** 20:14
**break** 20:22 25:22
 26:12

**C**

**call** 10:18
**called** 6:12
**calling** 21:14
 22:5,7
**calls** 21:22
**case** 5:9 7:7
**changed** 9:15
 10:20 11:6
**chapter** 11:16
**chat** 7:9 30:14
**Christian** 12:13
 13:22 17:3
**Christians** 12:24
 13:2,3,4,6,9,12,15
 16:7,10,11,12,14,
 16,20,21,25 17:4,
 8,10
**church** 12:6
**Ciezadlo** 5:12
**clarification**
 31:22
**class** 21:17
**clause** 22:24
**client** 25:3,17
**closely** 18:12
**collected** 10:14
**Collins** 6:1,16
 7:5,12,17 8:11,16,
 20 9:16 10:7 12:7

14:1 19:1 20:8
21:3,8,19 22:1,7,
13 24:1,20 25:1,
15 26:1,6 29:5
30:3,12,17 31:20
32:14 33:5

**committee** 11:20
14:19 24:3

**communicate**
17:17,19

**company** 11:14,
15 15:12 16:24
23:23 24:9 32:16

**company's** 28:21
31:8

**concept** 23:16

**concerns** 7:21

**conclude** 33:7

**concluded** 33:10

**conclusion** 19:22
21:14 23:23

**conference** 5:16

**consensus** 14:18

**considered**
15:15 21:10

**consistent** 19:20
21:12 22:17 23:3,
8

**constant** 25:7

**context** 23:15

**conversation**
15:19

**converse** 17:4

**copy** 7:14

**core** 9:2,19,20
10:9,11,18 11:1,3,
7,14 12:9,17 14:3,
14 15:7,10,13,24,
25 17:15 21:11
22:16 23:6,7 26:9,
15 28:1,17 29:12,
17 31:3,23

**corporate** 6:5,23
8:7 23:5 25:17

**correct** 6:25 7:1

12:5,15 14:9
16:17,23 17:5
24:15 26:19,23,24
27:5,24 28:2,24
29:9 32:17,18

**Cortez** 6:4 22:12

**counsel** 5:21
20:16 21:24 22:3
30:22

**couple** 19:14

**court** 5:10,13,17
6:7 30:5

**covered** 29:15,17

**covers** 31:6

**created** 8:24 9:1,
8,11,19,20 30:21,
22

**culture** 13:14
15:17 24:8

---

**D**

**Daniel** 6:4 22:12

**date** 15:8,19 24:6
32:20

**Dave** 10:2

**day** 32:22

**deal** 17:24

**deals** 15:25

**Debbie** 10:4

**decide** 11:14

**decision** 24:5,7

**decisions** 14:18,
21

**deemed** 5:19

**Defendant** 6:5
8:9 30:10

**Defendant's** 7:22
8:7,22 12:21
22:25 23:13 29:12

**Defendants** 6:4

**define** 15:20

**Deponent** 30:9
33:9

**deposition** 5:6,
15,19,20 6:24 7:6,
20 25:2,4,7,18
33:8

**designated** 6:23
7:3,19 22:24 23:5
24:24 25:10 31:12

**designations** 8:8

**determination**
12:21 14:13,15,
22,25 23:14,22
24:2

**determine** 13:4
26:14

**determined**
23:24

**dictates** 22:17

**difficult** 25:4

**difficulty** 7:8

**digital** 5:18

**director** 32:5

**discloses** 18:4,5,
7,10

**disclosures** 18:9

**discrimination**
22:18 23:9

**distinction** 26:9
28:4

**District** 5:10

**Division** 5:11

**document** 7:15
9:1 15:13 29:24,
25 30:8,9,15,18,
24

**documented**
10:14

**documenting**
32:6

**double-check**
20:12,15

**drafting** 12:17
31:22

**draw** 19:9

**duly** 6:12

---

**E**

**earlier** 15:1,2,4
29:15 31:20 32:4

**easily** 27:4

**Elite-brentwood**
5:14

**employed** 10:5
32:23

**employee** 26:13,
21 27:7,10 28:10,
21

**employees** 12:10
14:2,7,17 21:12
22:16 27:14,21

**employment**
13:21 32:20

**encompassed**
23:6

**end** 20:7,9

**enforcing** 17:14

**engage** 14:7

**engaged** 24:13
26:21

**engages** 28:11,
12,14

**engaging** 15:15

**evangelical**
16:14

**everyday** 11:23

**exact** 15:8 24:6

**EXAMINATION**
6:15 31:18 32:13

**exception** 27:17,
23

**excuse** 30:8

**exhibit** 7:7,16 8:8
30:4,11,14,16

**exhibits** 5:18

**expectation**
17:18

**expected** 14:2,7

Case 3:20-cv-00628-Document Reported by 08:11/22es Page 37 of 41 PageID #: 5164
Elite-Brentwood Reporting Services (901) 522-4477
www.EliteReportingServices.com

expert 13:10

explain 30:23

explaining 30:25

extent 19:21 21:14,21 24:16,17 32:1

extramarital 16:2 17:16 23:16 28:23

eyes 24:19,24 25:11,13

**F**

fact 17:5

facts 22:14 23:4, 11

factual 23:1

feel 29:21

female 27:7,10, 14,20

filed 5:9

finds 26:12

fine 20:18 25:12, 19

fit 13:14

Floyd 10:2

follow-up 32:15

form 9:12,22 12:2 13:17 23:18 29:1

formation 24:8

front 7:21 8:4,12, 19 30:1,3

full 6:17

**G**

Galloway 5:7 6:11,19,20 7:18 8:21 9:17 21:9 30:18 31:13,20 33:8

gathered 31:25 32:3

gave 15:4

give 10:17 18:1 20:13

grew 10:15

group 5:8 6:10 9:19 15:2 16:11

**H**

handbook 11:12

handed 30:8

hear 8:18

hearing 20:6,8

Heather 6:1 8:2, 10,14 20:1,13 30:8 31:15

hide 27:4

high 27:11

hire 13:12,13

hired 13:16

hold 8:2

holds 9:1

hot 29:11

HR 11:20 14:19 32:5

human 24:3

**I**

idea 26:2

ideas 32:9

identify 5:21 19:5 32:1

immediately 23:25 26:15 28:12 29:4

important 29:21

impose 12:8

imposes 14:17

imposing 21:10 22:15

inception 7:23

15:9 29:13,16 31:4

include 18:9

includes 23:9

including 7:23 14:10 15:10,22 22:18 29:12 31:3

individual 15:19

information 21:22 22:5,8 24:19,24 25:10,14 31:2,21,25 32:2,4

informed 27:22

ins 29:7

inside 18:19

instructs 16:7

intercourse 16:8 23:24 24:13 26:10,13,17 27:1 28:5

interfering 20:3

interpretation 11:18,19 29:14

interpretations 7:24

interpreting 11:21

Interrogatory 31:2

interruptions 25:8

interview 13:21

introduce 5:24 8:18

involved 11:21 12:17 18:6

issues 28:20

**J**

Jack 5:7 6:11,19 33:8

Jim 10:1

Judeo-christian

16:12 28:10

Judge 25:16

Junior 6:19

**K**

knowledge 13:15

**L**

Lampo 5:8 6:10

laptop 20:14

lead 24:18

leaders 24:10

leadership 17:10 24:14

learn 17:25

leave 32:19

legal 19:22 21:14, 24 22:3 30:22

Leslie 6:3 29:24

life 15:22 19:9

likelihood 27:11

limited 7:23 29:13

listed 15:1,2

live 13:5 15:21

lives 17:22

living 7:22 8:22 9:2,3,20 10:9,20 11:7 12:9,17,21 14:3,14 15:7,9,10, 16,20,21,23 19:9 23:7,14 26:9,14 28:1,6,17 31:3

LLC 5:8 6:10

Locurto 10:4

long 15:17

longer 10:5 32:16

Lopez 6:5

**M**

made 14:13,15

23:22 24:2,5,7

**make** 14:18 18:18 20:12,15

**making** 8:18

**male** 28:21

**mark** 10:2 30:4,13

**marked** 5:18 7:15 30:10,15

**marriage** 13:1,8 14:10 15:11,23 16:5,8 17:1,13,19, 24 18:3,13,20 21:17 23:22,25 26:17 27:11,19 28:16,23

**married** 27:16 28:11

**Mary** 5:12 7:10

**matter** 5:7

**means** 25:11,13

**meeting** 32:5

**member** 18:4,5,8, 9 27:18

**members** 17:18 18:17,19

**Michelle** 5:13 7:8 21:4 26:1 30:12

**Middle** 5:10

**mind** 17:19 21:1 22:21

**ministers** 12:16

**modification** 29:14

**modifications** 7:24

**modified** 10:23, 24 11:1,3,5

**moment** 19:2 33:2

**morning** 7:25 25:6

**move** 31:11

**moving** 12:20 23:12

**mute** 19:24 20:5

―――――

**N**

**names** 9:14 10:3 15:3

**naming** 9:14

**Nashville** 5:11

**necessarily** 26:22

**notice** 7:3,4,6,20

**noticed** 6:24

**noticing** 5:25

**notion** 28:6

**number** 5:9 7:16, 20,21 8:10 12:20 14:12 16:4 19:17 22:23,25 23:12 26:8 28:3 29:11, 24 30:9,16

―――――

**O**

**O'CONNOR** 5:7 8:15 24:17,23 25:11,13

**oath** 5:16

**Object** 9:12,22 12:2 13:17 18:15 19:21 23:18 29:1

**objection** 21:13, 21 22:4,10 24:16

**objections** 5:23 7:7 8:7 25:5

**occasionally** 11:20 14:20

**occurred** 18:14

**office** 32:22

**operated** 24:10, 11

**operating** 8:25 9:7,10,18 10:13, 16,17 11:21 14:20 15:12 24:3,9 31:23 32:7

**opinion** 13:11 16:25

**oral** 23:15,21,23 24:13 26:10,21 28:5,7,12,14,15, 22

**ordained** 12:16

**order** 28:20

**organization** 12:1

**origin** 7:23 29:13

**original** 5:19 15:3

**originally** 15:3

**outlined** 5:23

**outs** 29:7

―――――

**P**

**parsed** 24:14

**part** 9:7,10,18 10:8 14:12,16,22, 24 15:15,17 23:13 24:8

**pastors** 12:16

**pending** 21:6 26:4

**people** 9:20 14:25 17:21 24:14

**Perry** 32:6,16

**person** 13:13 18:6 28:14 31:25 32:3

**person's** 11:19

**phone** 25:16

**phrases** 10:18 32:9

**place** 18:12

**Plaintiff** 6:2

**point** 19:13 21:9 31:22

**policy** 7:22 8:22 9:3,8,11,19 11:12 12:22 14:8 17:15 23:6,14

**portions** 7:3,4

**position** 13:13 22:15 31:8

**practical** 11:23

**practice** 17:5 18:18 24:11

**pregnancy** 18:13, 19 27:5

**pregnant** 18:10, 11 27:1,8,13,16, 22

**premarital** 12:22 13:7 14:6,8,10,14 15:6,15 16:2,17, 22 17:3,16 19:4,5, 19 23:2,8,15 28:11

**present** 24:17,23 25:12

**primarily** 14:19

**principle** 24:10

**principles** 10:13, 16 11:9,10,13,15, 22 13:3 17:13 32:7

**prior** 10:12 15:9 24:8,10 32:5,22

**privileged** 21:22 22:5,8

**procedures** 5:23

**proceed** 7:13 25:2,6,9

**proceeding** 25:12

**proceedings** 33:10

**process** 13:21

**prohibit** 23:15,21

**prohibited** 13:7 15:6 16:17,23 17:3 19:6

**prohibition** 19:18,19 23:1,2

**prohibits** 12:22 14:14 16:2 19:4

23:7

**protected** 21:17

**protective** 28:20

**provide** 29:23
32:2

**provided** 29:25

**public** 17:20

**pull** 8:3

**pulled** 8:6

**pulling** 8:4

**pure** 19:9

**purity** 16:5

**purposes** 5:19

**put** 10:11

**Q**

**question** 19:23
21:2,5,6 22:20
24:21 26:2,4
31:16 32:15

**questions** 6:16
20:4 24:18 31:19
32:14

**R**

**Ramsey** 5:8 6:11,
21 9:4 10:2,8
11:25 12:8 13:12
14:16 17:10,14
21:11 22:15 26:12
27:7,15,21

**read** 21:6 26:1,4

**ready** 32:24,25

**recapping** 26:11

**record** 5:4 6:18
7:2 8:6 12:12
20:17,20,24
25:16,20,24 30:7
33:3,7

**referenced** 31:24
32:4

**references** 16:4
19:8 28:7 31:4

**referring** 22:2
23:2

**regular** 32:21

**regularly** 17:20

**relationship** 18:7

**religion** 22:19
23:10

**religious** 12:1

**remember** 15:8,
18 24:6

**remotely** 5:16

**renew** 21:13

**repeat** 21:1,4

**rephrase** 22:21

**reporter** 5:13,17
6:8 7:10 21:7 26:5
30:6 33:2

**Reporting** 5:14

**represent** 5:22

**representative**
6:6,23 8:7 16:24
23:5

**reserve** 16:8
17:12

**reserved** 12:25

**resources** 24:3

**respect** 14:6
17:15 18:8 26:7
27:1 28:3 29:16

**response** 31:1

**retired** 32:20

**Retreat** 31:23
32:8

**reviewing** 8:9

**Rick** 32:6

**righteous** 7:22
8:22 9:2,3,20
10:9,20 11:7 12:9,
17,21 14:3,13
15:7,9,20,21,22,
23 23:7,14 26:9,
14 27:25 28:6,16
31:3

**righteously** 5:10
15:10,16

**S**

**SAITH** 33:9

**Sanders** 6:3 7:2
8:2,12,17 9:12,22
12:2 13:17 18:15
19:21 20:1,11,18
21:13,21 22:4,10
23:18 24:16,22
25:9,19 29:1 30:1,
7 31:15,19 33:4

**scope** 12:3 13:18
18:16

**screen** 5:5

**seat** 29:11

**seconds** 20:19

**seek** 17:20

**send** 7:12

**sentence** 22:25

**September** 5:4

**Services** 5:14

**set** 10:12 11:13

**settings** 17:20

**Severson** 10:2

**sex** 12:22,25 13:7
14:6,8,10,11,14
15:6,11,15,22,24,
25 16:2,3,5,17,22
17:1,3,12,16,18,
23 18:3,12,19
19:4,5,9,19 21:17
22:19 23:2,8,9,15,
16,21,23 24:13
26:10,21 27:10,18
28:5,8,11,13,14,
15,22

**sexual** 16:5,8
17:22

**sexually** 19:9

**shoot** 30:5

**sic** 8:9

**significant** 18:11

**Simms** 9:15 10:1
32:25

**single** 27:16,18

**sitting** 19:4,12

**situation** 17:22,
24

**situations** 11:1
17:21

**skill** 13:14

**Smith** 5:13

**Solutions** 5:8
6:11,21 9:4 11:25
12:8 13:12 17:10,
14 26:12 27:8,15,
21

**Solutions'** 10:9
14:16 21:11 22:15

**sort** 10:15 28:6,9

**speaking** 16:10
25:5

**specific** 8:23
10:25 11:16 15:18
19:5,13

**specifically**
11:10 14:15 15:5
16:10 17:15 22:2
27:20

**spouse** 18:10

**stared** 10:16

**start** 5:25 7:25
9:14 15:19

**started** 33:1

**state** 5:22,24 6:17
22:10

**stated** 15:13 17:6
23:20

**statement** 17:11
23:23

**States** 5:9

**structure** 24:9

**subject** 24:19

**summer** 32:21,23

**support** 19:14
22:15

**Suzanne** 9:15
10:1

**swear** 6:8

**sworn** 6:13

---
**T**

**talked** 31:22,24

**talking** 12:13

**teaches** 12:25
19:8

**team** 13:14 17:17,
18 18:4,5,8,9,17,
18 27:18

**tells** 17:12

**Tennessee** 5:10

**terminable** 23:25

**terminated**
26:15,18 27:9,12,
17,19,23 28:12,
15,24 29:3,4,8

**termination**
26:22 28:18

**testified** 6:13
17:2

**testify** 7:4,19
22:23 29:7

**testimony** 26:11

**Thursday** 5:4

**time** 5:5,21 9:1,15,
18 10:4,5,21,23
21:9 24:12 32:21
33:6

**timeout** 20:2

**Title** 19:20 21:12,
18 22:17 23:3,8

**today** 5:4 6:24
8:15 19:4,12
22:23 24:9 32:3,
10

**topic** 7:19,20,21
12:20 14:12 17:1
19:17 22:23,24,25
23:12 26:3,8 28:3
29:10,11 31:9

**topics** 22:22

**totality** 19:7,10

**transferred** 32:9

**transitioned** 10:3

**true** 13:8 17:6,11

---
**U**

**uncertain** 10:2

**understand**
22:20 26:10

**understanding**
6:22 7:18 16:6
20:3 21:16,20
29:6 30:24 31:1,5

**United** 5:9

**unwed** 27:9,22

---
**V**

**valued** 15:12

**values** 9:2,21
10:9,10,11,19
11:7,14 14:16
15:13 16:12 21:11
23:3 29:12,14,17
31:23

**verbiage** 10:18

**verse** 11:17 19:5,
13

**verses** 19:14

**versus** 5:7 24:13
28:12

**video** 5:5,15

**videoconference**
5:6

**VII** 19:20 21:12,18
23:3,8

**VII's** 22:17

**violate** 28:16

**violates** 26:14

**violation** 27:25
28:6

---
**W**

**Walter** 6:2

**week** 29:25

**widely** 16:6,9

**widely-held**
12:24 17:7,9

**woman** 27:1,4

**work** 6:20 9:4

**workplace** 11:24

**writing** 32:7

---
**Z**

**Zoom** 8:15