UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CAITLIN O'CONNOR, | ) | |
| | ) | Case No. 3:20-cv-00628 |
| Plaintiff, | ) | |
| | ) | District Judge Richardson |
| v. | ) | |
| | ) | Magistrate Judge Frensley |
| THE LAMPO GROUP, LLC, | ) | |
| | ) | Jury Demand |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO
PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS**

Defendant, The Lampo Group, LLC, by and through the undersigned counsel and pursuant to Local Rule 56.01(d), files its response to Plaintiff's Statement of Additional Facts.[1]

1. <u>Human Resources Committee ("HRC")</u>: The HRC enforces and sets Ramsey Solutions Policy, deals with personnel issues, employees in crisis, disciplinary actions, performance improvement plans, nearly all terminations, and determines the scope of its Righteous Living Core Value ("Righteous Living"). (Lopez Dep. 17-18; Floyd Dep. 80; Simms Dep. 8; Finney Dep. 13).

    **RESPONSE: Admitted.**

2. Galloway acted as Chair, of the HRC during the relevant time, although he has no background in HR. (Galloway Dep. 7; Sievertsen Dep. 8).

    **RESPONSE**: **This fact is not material. However, admitted.**

3. Founder and CEO Dave Ramsey is involved in the decisions to terminate employees.(Lopez Dep. 18; Sievertsen Dep. 7).

---

[1] Local Rule 56.01(c) only allows Plaintiff to file a statement of additional material facts that are in dispute. Plaintiff appears to have filed a statement of additional facts without regard for materiality or whether they are disputed. However, for the sake of expediency, Defendant has responded to all of them.

> **RESPONSE:** This fact is not material. However, disputed. In the deposition testimony of Armando Lopez cited by Plaintiff, Mr. Lopez testified that Mr. Ramsey was informed of, but does not necessarily weigh in on, every termination decision. The deposition testimony of Jennifer Sievertsen cited by Plaintiff does not address Mr. Ramsey's involvement in termination decisions at all.

4. The HRC members and Ramsey have had very little, if any, training on Title VII or FMLA.(Lopez 30(b)(6) Dep. 73; Floyd Dep. 8; Simms Dep. 13-14; Ramsey Dep. 20).

    > **RESPONSE:** This fact is not material. However, disputed. Armando Lopez, Defendant's Senior Executive Director of Human Resources, is a member of the HRC. (Deposition of Armando Lopez on June 29, 2021 at 8:2-4, 62:5-11). Mr. Lopez testified that he has worked in HR for approximately 30 years, has formal training and education in HR, and has a background in Title VII. (Id. at 23:2-24:9).

5. Ramsey Solutions is "held out to be Christian," meaning Ramsey Solutions holds itself out as a Christian company "from time to time," but has no practical application other than its "image" is Christian and its market "views" it as a biblically based company. (Finney Dep. 33-34; Lopez Dep. 48, Ex. 1 p. 0007; Floyd Dep. 38).

    > **RESPONSE:** This fact is not material. However, disputed. Plaintiff has mischaracterized this deposition testimony. Michael Finney testified that Defendant holds itself out to be Christian "from time to time" in the sense that the company does not "just constantly say it in every publication, in every document, or everything that [they] produce." (Deposition of Michael Finney on September 28, 2021 at 32:21-33:2). In the deposition testimony cited by Plaintiff, none of the deponents testified about the "practical application" of the fact that Defendant is "held out to be Christian."

6. Ramsey Solutions policy states "[s]hould a team member engage in behavior not consistent with traditional Judeo-Christian values or teaching, it would damage the image and the value of our goodwill and our brand;" meaning an employee cannot engage in behavior contrary to evangelical "normative Christian beliefs" regardless of their religious beliefs. (Lopez Dep. 55, Ex.1 p. 0007; Ramsey Dep. 11, 27).

   **RESPONSE: This fact is not material. However, admitted except for the clause "regardless of their religious beliefs." That final clause is not supported by the deposition testimony cited by Plaintiff. Defendant provides religious accommodations as required by law.** *See, e.g.,* **Deposition of Armando Lopez on June 29, 2021 at 29:10-24.**

7. Ramsey Solutions also has adopted a set of "Core Values" that are also "Judeo-Christian" allegedly based on the Christian Bible as "guidelines" for operating the company and employee conduct and including a "Righteous Living" core value. (Lopez Dep. 76-77, 118, Ex. 2 p. 0007; Lopez 30(b)(6) Dep. 18; Sievertsen Dep. 21-23, 28; Floyd Dep 32, 35-36).

   **RESPONSE: Admitted.**

8. Ramsey Solutions has adopted contemporary evangelical, complementarity beliefs that sex is only allowed within marriage, between one man and one woman and that the marital relationship is to "embody gender complementarity; the idea that men and women have different but complementary and co-equal roles in marriage and the household" and that men serve as "benevolent head[s]" and women as "caretakers." (Walker Dep. 29-31, Ex. 17 p. 1. *See* Armour Report, MSJ Opp. Ex. 1 p. 6).

   **RESPONSE: These are expert opinions, not facts, and not material. Moreover, they are denied as stated.**

3

9. This view of sexual abstinence regulates all of sexuality, the performance of gender, and reinforces patriarchal authority, requiring proper dress and submissive demeanor for women. (Ingersoll Report, MSJ Opp. Ex. 2 p. 002).

   **RESPONSE: These are expert opinions, not facts. Moreover, they are not material.**

10. Complementarity affects women disproportionately to men enforcing rigid boundaries between men and women, including women's secondary status to men. (Walker Dep. 53-54; Ingersoll Report, MSJ Ex. p. 000002-3, 4).

    **RESPONSE: These are expert opinions, not facts. Moreover, they are not material.**

11. Complementarianism in the workplace, including the policing of sexual morality through moral codes of conduct "disproportionately impacts women." (Ingersoll Report, MSJ Ex. 2 p. 06). Ramsey Solutions adamantly contends that the Bible prohibits Sex outside of marriage, despite acknowledging Christian denominations interpret the Bible and the issue of sex outside of marriage differently (Lopez Dep. 56, 77-79, Ex. 2 p. 07, Ex. 12 p. 3; Floyd Dep. 35, 47-48; Galloway Dep.15, 21; Sievertsen Dep. 21; Simms Dep. 25; Ramsey Dep. 14; Walker Dep. 14-15, Ex. 17 p. 9; Armour Report, MSJ Opp. Ex. 1 pp. 2, 4, 9; Ingersoll Report, MSJ Opp. Ex. 2 p. 01).

    **RESPONSE: This paragraph combines an expert opinion in the first sentence, with a fact in the second sentence. With respect to the fact, admitted. However, neither the expert opinion nor the fact is material. Moreover, the expert opinion is denied to the extent that it purports to apply to Defendant.**

12. There is no written policy detailing behaviors that violate "Righteous Living," including its prohibition on sex outside of marriage, even though Ramsey

4

Solutions acknowledges the importance of knowing what are "fireable offenses." (Lopez Dep. 66, 91, Ex. 3 p. 0028; Sievertsen Dep. 14, 38; Floyd Dep. 42; Finney Dep. 25, 35, 39; Ramsey Dep. 12, 24).

**RESPONSE: This paragraph combines two facts. Admitted as to each fact. However, Defendant disputes Plaintiff's argument or at least implication that the company does not adequately notify employees that sex outside of marriage is a terminable offense. Moreover, these facts are not material.**

13. The company does not "go looking for" core value violations or regularly call employees in to ascertain whether they have had sex outside of marriage. (Sievertsen Dep. 17, 25; Simms Dep. 26-27).

    **RESPONSE: These facts are not material. However, admitted.**

14. Employees are not required to sign a purity pledge, but they are expected to know what Righteous Living means. (Lopez Dep. 78-79, 91; Ramsey Dep. 23).

    **RESPONSE: This paragraph combines two facts. Admitted as to each fact. However, Defendant disputes Plaintiff's argument or at least implication that the company does not adequately explain the Righteous Living Core Value to employees. Moreover, these facts are not material.**

15. According to Dave Ramsey, the whole organization accepts that premarital sex would be a violation, as this is a "normative" belief within the Christian community and if an employee does not know what traditional Judeo-Christian values are, it is the employee's responsibility to ask before they sign the handbook. (Ramsey Dep. 12-13, 42).

    **RESPONSE: These facts are not material. However, admitted.**

16. There are exceptions to Righteous Living if you are a man. For example, employees, all men, who violated the Righteous Living regarding pornography were offered restoration

5

plans, regardless of whether they had an addiction or not, and porn blockers were put on their work computers. (O'Connor Dep. 134; Lopez Dep. 172, 182; Lopez 30(b)(6) Dep. 16, 62, 65-66, 71-73,Ex. 30 p. 001507, Ex. 31, Ex. 34; Sievertsen Dep. 53-54, Galloway Dep. 35). Ramsey Solutions acknowledges porn offenses as "generally a male offense" and "the same story of every male born in the last half century. You see a magazine or a website and [its] evil claws get into you." (Lopez30(b)(6) Dep. Ex. 34 p. 001810; Ramsey Dep. 78).

**RESPONSE: This paragraph combines multiple facts. None of these facts are material. However, the first sentence is disputed and not supported by any deposition testimony cited by Plaintiff. There is no evidence in the record of "exceptions to Righteous Living if you are a man." Defendant treats viewing pornography differently than sex outside of marriage and, in the past four years, the only employees caught viewing pornography have been men. That does not equate to an exception to Righteous Living for men. Defendant would treat a woman caught viewing pornography the same way. The second and third sentences are disputed because the deposition testimony cited by Plaintiff does not support the contention that they were made by Ramsey Solutions.**

17. Female employees of Ramsey Solutions who engaged in premarital sex have not been given second chances, and would not be, even if they were to state they would not engage in the behavior again. (Lopez Dep. 171; Lopez 30(b)(6) Dep. 64).

    **RESPONSE: This fact is not material. However, admitted as stated, but not as characterized. Defendant does not give second chances to anyone who engages in premarital sex, male or female, pregnant or not.** *See, e.g.,* **Rule 30(b)(6) Deposition of Armando Lopez on September 30, 2021 at 17:15-24.**

18. Pregnancy via IVF does not violate this policy, and Ramsey testified he "doubts" Ramsey

6

Solutions would terminate a woman who was raped and became pregnant. (Lopez Dep. 87; Ramsey Dep. 45).

**RESPONSE: This fact is not material. However, the first clause is admitted. The second clause is admitted, but only in the context of the full answer given by Mr. Ramsey: "Q. Okay. What if Ms. O'Connor had been raped, would she still have been terminated. A. We have never faced that. I doubt it. It is not consistent with who we are. It's different than an active decision to have premarital sex. Considerably different." (Deposition of David L. Ramsey, III at 45:14-21).**

19. It was universally acknowledged by Ramsey Solutions managers that pregnancy out of wedlock is easier for men to hide because pregnancy is obviously a visible condition that only affects women. (Lopez Dep. 83, 173; Sievertsen Dep. 37; Galloway Dep. 35; Ramsey Dep. 42).

**RESPONSE: This fact is not material. However, admitted.**

20. In ▮▮▮▮, pre- and extra-marital sex violations were limited to "intercourse" after a male employee had admitted he engaged in an extramarital affair involving oral sex. (Lopez Dep. 60, 87; Sievertsen Dep. 23, 25, 30; Floyd Dep. 75; Simms Dep. 28; Galloway Dep. 31).

**RESPONSE: This is not material. However, disputed. Mr. Galloway, testifying on behalf of Defendant, confirmed that oral sex outside of marriage violated the Righteous Living Core Value. (Rule 30(b)(6) Deposition of Jack Galloway on September 30, 2021 at 23:12-25).**

21. The Operating Board, including Ramsey, among others, decided to use "wisdom to ascertain" what the Bible meant, as it is not clear on "oral sex" and decided to "draw the

7

line at intercourse" determining oral sex does not violate "Righteous Living" and is more forgivable. (Sievertsen Dep. 23, 30; Floyd Dep. 65, 75, 77-78; O'Connor Dep. 147-48; Simms Dep. 29-30; Galloway Dep. 27-28; Ramsey Dep. 14, 33). It was agreed that employees cannot become pregnant from oral sex. (Simms Dep. 30; Galloway 30(b)(6) Dep. 27).

**RESPONSE: This is not material. However, disputed. Mr. Galloway, testifying on behalf of Defendant, confirmed that oral sex outside of marriage violated the Righteous Living Core Value. (Rule 30(b)(6) Deposition of Jack Galloway on September 30, 2021 at 23:12-25).**

22. O'Connor through her June 18, 2020 email, O'Connor requested an exception to "Righteous Living" with respect to pregnancy outside of marriage. (O'Connor Dep. 344).

**RESPONSE: This fact is not material. However, disputed based both on the express text of Plaintiff's June 18, 2020 email to Mr. Lopez and her equivocal deposition testimony.**

23. It is only through this email that Ramsey Solutions became aware O'Connor *may have* engaged in premarital sex, and it would not have known until her pregnancy began to show, at which point, Ramsey Solutions would have called her in to discuss. (Lopez Dep. 93, 98-99, 116; Sievertsen Dep. 17; Galloway Dep. 25-26; Finney Dep. 54).

**RESPONSE: This paragraph combines several facts. Defendant admits that the company first became aware that Plaintiff was pregnant via her June 18, 2020 e-mail to Mr. Lopez and, from that e-mail, correctly concluded that she had engaged in**

**premarital sex. The remainder of this paragraph is not material. However, Mr. Lopez testified that, had Plaintiff not e-mailed him on June 18, 2020, Defendant would "probably not" have discovered that she had engaged in premarital sex except for her pregnancy. Defendant admits that, if Plaintiff appeared pregnant at work, the company would have discussed it with her.**

24. O'Connor was terminated because of her email informing Ramsey Solutions she was pregnant and requesting information regarding FMLA and ADA paperwork. (Galloway Dep. 26).

    **RESPONSE: Disputed. Plaintiff mischaracterizes Jack Galloway's testimony. Mr. Galloway testified simply that Plaintiff was terminated *after* e-mailing Mr. Lopez on June 18, 2020, not *because* of the e-mail.**

25. Ramsey Solutions HR who manages FMLA, maternity leave, and ADA requests were never contacted despite the explicit request, nor did Lopez discuss these policies with her. (Lopez Dep. 71, 75, 94, 127).

    **RESPONSE: This fact is not material. However, admitted.**

26. Within two minutes of receiving O'Connor's email, Lopez forwarded it to the HRC, Finney, and Ramsey. (Lopez Dep. 95, 97, Ex. 5 p. 0084). Sievertsen immediately replied, "We've dealt with this before [unwed pregnancy/motherhood] and I think we should handle it exactly the same way . . . our core values and what they stand for are clear" and Floyd noted it was "totally classless" and he agreed with "precedent, (a/k/a principles and values)," meaning they intended on terminating O'Connor for violating Righteous Living immediately upon notification of her pregnancy. (Lopez Dep. 97-98, 100 Ex. 5 p. 0083; Sievertsen Dep. 43; Floyd Dep. 46). Ramsey chimed in, at 5:10am the next morning, before anyone in the HRC spoke to O'Connor, stating that O'Connor's pregnancy news

9

was "so sad" and speculated she only sent the email because she "is scared and embarrassed." (Ramsey Dep. 50, Ex. 6 p. 2170). In this same email, Ramsey stated, "we will work this out with her" meaning work out her separation. (Ramsey Dep. 51; Lopez Dep Ex. 6 p. 2170).

**RESPONSE: This paragraph contains several facts.**

**Defendant admits the first sentence.**

**Defendant disputes the second sentence because Plaintiff has mischaracterized Ms. Sievertsen's testimony by inserting her own words. Ms. Sievertsen was referring to an employee engaging in premarital sex, not "unwed pregnancy/motherhood."** *See, e.g.,* **Deposition of Jennifer Sievertsen on July 20, 2021 at 43:20-23; Exhibit 5 to Deposition of Armando Lopez on June 29, 2021 at DEFENDNAT 0084. Plaintiff has also mischaracterized Mr. Floyd's testimony. When Mr. Floyd said "totally classless", he was referring to Plaintiff's decision to relay that information to Mr. Lopez via e-mail rather than to her supervisor in person.** *See, e.g.,* **Deposition of Mark Floyd on June 30, 2021 at 44:9-46:14. Likewise, Mr. Floyd's reference to precedent was Defendant's past practice of terminating employees for premarital sex, not pregnancy.** *Id.*

**Defendant disputes the third sentence because Plaintiff has mischaracterized Mr. Ramsey's testimony. Mr. Ramsey's "so sad" comment was in reference to Plaintiff losing her job for engaging in premarital sex.** *See, e.g.,* **Deposition of David L. Ramsey, III on November 12, 2021 at 49:24-50:12.**

**Defendant admits the fourth sentence, but only in the full context of what Mr. Ramsey said: "Tell [Plaintiff] we will work this out with her next week but**

10

she will be loved and cared for." Exhibit 6 to Deposition of Armando Lopez on June 29, 2021 at DEFENDANT 2170.

27. The HRC assumed she engaged in premarital sex and would be terminated due to perceived violation of "Righteous Living." (Lopez Dep. 102, 105; Sievertsen Dep. 45, 52; Lopez 30(b)(6) Dep. 12; Floyd Dep. 57). At this point it was a foregone conclusion that O'Connor would be terminated for engaging in premarital sex, as Ramsey testified, he understood O'Connor's email to mean she was resigning or knew that she would be terminated and that he focused on the fact that she was expecting and not that she was asking for FMLA and ADA paperwork. (Simms Dep. 32, 43; Ramsey Dep. 47-48).

    **RESPONSE: Admitted.**

28. Simms called O'Connor and although they discussed her pregnancy, Simms did not discuss termination and instead told O'Connor there would be another meeting; as a result, O'Connor was not concerned about her employment and returned to work. (O'Connor Dep. 99-100, 268; Simms Dep. 34-35, Ex. 9).

    **RESPONSE: This fact is not material. However, admitted except with respect to Plaintiff's lack of concern about her employment. Although Plaintiff initially testified that she was not concerned that her employment would be terminated after this call, Plaintiff then testified that she still thought her employment might be terminated. (Deposition of Caitlin O'Connor on June 22, 2021 at 100:18-101:3).**

29. On June 23, 2020, O'Connor met with Simms and Sievertsen in Simms' office, after which O'Connor became nervous that she was going to be illegally terminated. (O'Connor Dep. 103; Sievertsen Dep. 19; Lopez Dep. 94; Simms Dep. 36, 38). Simms wanted to make sure that O'Connor was "okay" in this meeting because they

11

had no reason to assume that "she was feeling great about her situation or not," despite O'Connor stating that she and her boyfriend were very happy about the pregnancy. (Simms Dep. 36-37).

**RESPONSE: This paragraph contains two facts. Neither is material. However, regarding the first fact, admitted. Regarding the second fact, admitted except for the final clause about Plaintiff and her boyfriend's feelings about the pregnancy, which is not discussed in the portion of Ms. Simms' deposition testimony cited by Plaintif.**

30. O'Connor was not asked if she engaged in premarital sex and never informed Ramsey Solutions how her pregnancy came about. (Lopez Dep. 87; O'Connor Dep. 123). Simms and Sievertsen were both aware that O'Connor was considered to have a geriatric pregnancy. (O'Connor Dep. 281).

    **RESPONSE: This paragraph contains two facts. Neither is material. However, the first sentence is admitted. The second sentence is disputed. After testifying that Mr. Lopez and Ms. Simms knew that she had a geriatric pregnancy, Plaintiff clarified, "I mean, they knew how old I was and that I was pregnant." (Deposition of Caitlin O'Connor on June 22, 2021 at 281:3-19).**

31. After this meeting, Simms emailed Ramsey, Finney, and the HRC that O'Connor was not going to "self-select out," and was never asked why she would not "self-select out." (Lopez Dep.110-11, Ex. 7 p. 1930-1931).

    **RESPONSE: This fact is not material. However, admitted.**

32. The HRC relied on O'Connor's email notifying Lopez of her pregnancy in its decision to terminate O'Connor for engaging in premarital sex, violating its version of Judeo-Christian, biblically based "Righteous Living." (Lopez Dep. 92, 112-13, 171, 175).

12

**RESPONSE: Admitted, however in addition to Plaintiff's conversation with Ms. Simms and Ms. Sievertsen.** *See, e.g.,* **Deposition of Armando Lopez on June 29, 2021 at 175:9-14.**

33. Ramsey Solutions never considered a "restoration plan" for O'Connor to keep her position and no other female, pregnant, unwed employees have ever been offered a "restoration plan" under the premise that there is no way for these employees to "redeem" themselves; instead, every unwed, pregnant woman employed by Ramsey Solutions has been terminated for "consistent[cy]."(Sievertsen Dep. 53; Simms Dep. 31, 33; Ramsey Dep. 21-22).

    **RESPONSE: This paragraph contains two facts. Neither is material. These facts mischaracterize and add to the deposition testimony of Ms. Sievertsen, Ms. Simms, and Mr. Ramsey. Defendant has terminated every employee who has engaged in premarital sex—male, female, pregnant, or not. Defendant has not considered a "restoration plan" for anyone who has engaged in premarital sex—male, female, pregnant, or not. None of the deposition testimony cited by Plaintiff refers to employees' ability to "redeem themselves."**

34. Ramsey Solutions identified employees terminated for violating "Righteous Living," as well as a list of employees brought before the HRC for violating "Righteous Living," regardlessof whether they were terminated. (Lopez 30(b)(6) Dep. 15, Ex. 21 p. 0078, Ex. 22 p. 2169).

    **RESPONSE: This fact is not material. However, admitted.**

35. Ramsey Solutions has terminated all pregnant, unwed female employees **after** they notified Ramsey Solutions of their pregnancy. (Lopez Dep. 124; Sievertsen Dep. 27; Simms Dep. 12, 13).One employee was terminated, her pregnancy part of the

equation, after she notified her leader, ▇▇▇▇▇▇▇ of her pregnancy and the father was her boyfriend. (O'Connor Dep. 113-114; Lopez Dep. 178-179; Lopez 30(b)(6) Dep. 34-35, Ex. 25). The other employee was terminated when she informed Ramsey Solutions of her pregnancy the weekend after she got married. (Lopez 30(b)(6) Dep. 22-23, 42, Ex. 24 p. 000902).

**RESPONSE: This paragraph contains several facts. None of them are material. The first sentence is admitted, but Plaintiff again ignores the fact that Defendant has terminated every employee who has engaged in premarital sex. The second sentence is admitted, but Plaintiff mischaracterizes Mr. Lopez's testimony. That employee's pregnancy was "part of the equation" in the same sense as Plaintiff—she was terminated for engaging in premarital sex as revealed through unwed pregnancy. The third sentence is admitted, but Plaintiff again mischaracterizes Mr. Lopez's testimony. That employee was also terminated for engaging in premarital sex as revealed through unwed pregnancy.**

36. A male employee was terminated after he notified his leader that his wife was pregnant and his leader calculated the date of conception, determining it was conceived prior to his marriage and his hire date. (O'Connor Dep. 212; Lopez 30(b)(6) Dep. 46-49, Ex. 18 p. 000671, 0676-677; Finney Dep. 81-84, Ex. 18 p. 00671, 0677).

**RESPONSE: This fact is not material. However, admitted.**

37. A Ramsey Solutions employee reported seeing a female employee's boyfriend walking her dog in his boxers in the morning at her apartment building. (Lopez 30(b)(6) Dep. 20, Ex. 23). Ramsey Solutions assumed that she engaged in premarital sex and terminated her. (Lopez 30(b)(6)Dep. Ex. 23 p. 0916).

**RESPONSE: This fact is not material. However, admitted.**

14

38. A male was terminated when it came to light that he was living with his fiancée at the direction of her pastor. (Floyd Dep. Ex. 14 p 0865; Lopez 30(b)(6) Dep. 26-27, 29, Ex. 14 0861, 0132). Ramsey made it clear they would not change their Core Values based on a pastor in another state and the employee should be fired on the spot if he would not answer questions about his personal life; "If he slept with her [or] lives with her or won't answer the question, fire him on thespot. We have let people go that were much repentant and offended the policy less." (Lopez 30(b)(6) Dep. 30-31; Floyd Dep. 63, Ex. 14 p. 1326). A religious accommodation was never discussed. (Finney Dep. 102, 108).

    **RESPONSE: This paragraph includes several facts. None of them are material. However, they are all admitted.**

39. Another male employee was not immediately fired as a result of his disclosure he engaged in premarital sex with a female employee, but instead was kept on as contract employee for a short period after giving a chance to tell his side of the story. (O'Connor Dep. 131; Lopez 30(b)(6) Dep.52-53, Ex. 27; Ramsey Dep. 76-77). This employee was given an opportunity by Ramsey to "repent" and refrain from engaging in premarital sex, which he refused. (O'Connor Dep. 133; Lopez 30(b)(6) Dep. 52-53).

    **RESPONSE: This Paragraph contains two facts. Neither is material. With respect to both quotes, Plaintiff's testimony regarding this employee is inadmissible hearsay because she only knows what the employee told her.** *See, e.g.,* **Deposition of Caitlin O'Connor on June 22, 2021 at 131:5-134:8.**

    **Regarding the first fact, it is disputed. Plaintiff has mischaracterized testimony of Mr. Lopez and Mr. Ramsey. This employee was ▇▇▇▇▇▇▇▇ He was immediately terminated as an employee for engaging in premarital sex.**

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███

**Regarding the second fact, it is also disputed. There is no admissible evidence in the record that this employee was offered an opportunity to "'repent' and refrain from engaging in premarital sex, which he refused." Plaintiff's deposition testimony to that effect is, again, hearsay. The deposition testimony of Mr. Lopez cited by Plaintiff does not support this fact at all.**

40. In ███████████, another male employee admitted to Ramsey Solutions and Ramsey that he had engaged in an extramarital affair ███████ prior, while employed by Ramsey Solutions, and also to a recent affair involving oral sex after his wife approached Ramsey Solutions with concerns he was having an ongoing affair with another employee and disclosed his previous affairs. (Ramsey Dep. 15-19, 65-66; Simms 30(b)(6) Dep. 10, 17, Ex. 36 p. 2337). In response, Ramsey chose to "walk[] with a broken guy who was trying to heal" including having the employee and his co-worker ███████████████ and proposed a "restoration plan" for his marriage and made the decision not to terminate him, despite his repeated extramarital affairs and violation of "Righteous Living;".(Ramsey Dep. 70, 72, Ex. 41 p. 2611; MSJ Opp. Ex. 4 p. 2661-63; Sievertsen Dep. 53; Simms 30(b)(6) Dep. 8). None of this man's affairs resulted in a pregnancy. (Simms 30(b)(6) 32).

    **RESPONSE: This paragraph contains several facts. None of them are material. However, they are all admitted except for Plaintiff's characterization of the**

16

employee's "recent affair", which had taken place approximately ▇▇▇▇ earlier.

41. During the time, Ramsey was aware that this man had "actively deceived everyone in the company . . . for ▇▇▇▇," and had lived a "double-life." (Ramsey Dep. 19, 58, 72, 75, Ex. 43 p.2511).

    **RESPONSE: This fact is not material. However, admitted.**

42. Ramsey did not find the male employee's wife "credible" because she was "erratic, out of control," and he referred to her as a "world-class bitch." (Ramsey Dep. 62, 74, Ex. 43 p. 2483-84).Simms stated in an email that the employee's wife was "crazy" and thought his wife "drove [him]to do the things he did. (MSJ Opp. Ex. 3 p. 2636). It was later proved the male employee's wife was not lying. (Ramsey Dep. 63).

    **RESPONSE: This paragraph contains several facts. None of them are material. However, they are all admitted.**

<br>

Respectfully submitted,

/s/Daniel Crowell
Leslie Sanders (TN #18973)
Daniel Crowell (TN #31485)
WEBB SANDERS PLLC
611 Commerce Street
Suite 3102
Nashville, TN 37203
Telephone: (615) 915-3300
Fax: (866) 277-5494
lsanders@webbsanderslaw.com
dcrowell@webbsanderslaw.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that, on January 3, 2022, I filed *Defendant's Response to Plaintiff's Statement of Additional Facts* via the Court's electronic filing system as a sealed document and sent an unredacted copy of it to the following via e-mail:

Heather Moore Collins
Anne Bennett Hunter
Ashley Shoemaker Walter
Collins & Hunter PLLC
heather@collinshunter.com
anne@collinshunter.com
ashley@collinshunter.com

*Attorneys for Plaintiff*

/s/Daniel Crowell
Daniel Crowell (TN #31485)
*Attorney for Defendant*