IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CAITLIN O'CONNOR, | ) | |
| Plaintiff, | ) | NO. 3:20-cv-00628 |
| v. | ) | JUDGE RICHARDSON |
| THE LAMPO GROUP, LLC, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Reconsideration (Doc. No. 56, "Motion"), whereby Plaintiff for the second time seeks reconsideration of the Court's Order (Doc. No. 55, "Order Dismissing Count V") granting Defendant's Partial Motion to Dismiss Count V of Plaintiff's Third Amended Complaint (Doc. No. 39, "Motion to Dismiss Count V"), which asserts claims for religious discrimination and religious retaliation. Defendant filed a response in opposition (Doc. No. 58, "Response"). The Court previously issued an order (Doc. No. 61, "Order Denying Reconsideration") denying Plaintiff's first motion (Doc. No. 56, "First Motion for Reconsideration") to reconsider the Order Dismissing Count V. For the reasons discussed herein, Plaintiff's Motion (Doc. No. 56) is **GRANTED**.

### STANDARDS ON A MOTION TO RECONSIDER

The Federal Rules of Civil Procedure do not provide for a "motion to reconsider" (or a "motion for consideration of") an order, whether interlocutory or final. Nevertheless, courts customarily have been willing to entertain motions titled this way.

The primary standard for such motions was essentially borrowed from the standard for motions under Fed. R. Civ. P. 59(e) to alter or amend a judgment. More specifically, a motion to reconsider generally must be based on one of the grounds available for motions to alter or amend judgment or upon a showing that the court clearly overlooked material facts or controlling law that were presented by the movant in its prior motion and that would result in a different disposition. *Id.* The Court may grant a motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Id.* (citing *United States v. Tennessee Walking Horse Breeders' and Exhibitors' Ass'n.*, 263 F. Supp. 3d 679, 681 (M.D. Tenn. 2017)). As indicated above, a motion to reconsider may be based on these four grounds. But this Court historically has also recognized that such a motion may be based essentially a fifth or sixth ground: (5) that the court clearly overlooked material facts (or, in the case of an order on a Rule 12(b) motion, factual allegations from the complaint) that were presented by the movant in its prior motion and that would result in a different disposition; or (6) that the court clearly overlooked controlling law that was presented by the movant in its prior motion and that would result in a different disposition. *See Al–Sadoon v. FISI Madison Fin. Corp.*, 188 F. Supp. 2d 899, 902 (M.D. Tenn. 2002).

The decision whether to deny a motion for reconsideration, including a motion for reconsideration of an order disposing of some but not all of the plaintiff's claim, is a matter within the discretion of the district judge. *See Tolbert v. Potter*, 206 F. App'x 416, 417 (6th Cir. 2006); *Lommen v. McIntyre*, 125 F. App'x 655, 658 (6th Cir. 2005) (noting that the Sixth Circuit "review[s] the district court's denial of the motion for reconsideration for an abuse of discretion").

For the sake of efficiency, the Court assumes readers' familiarity with the parties' arguments for and against the Motion to Dismiss Count V and the First Motion for Reconsideration, with the Order Dismissing Count V, and with the Order Denying Reconsideration. For present purposes, it suffices to make two pairs of observations regarding these matters. The first is that the Third Amended Complaint alleged that: (i) Plaintiff was terminated "due to her pregnancy and violating Ramsey Solutions' rules of 'Company Conduct'" (Doc. No. 37 at 20); and (ii) the "Company Conduct" provision in Defendant's handbook states in pertinent part, "The image of [Defendant] is held out to be Christian. Should a team member engage in behavior not consistent with traditional Judeo-Christian values or teaching . . . the team member would be subject to review, probation, or termination." The Court has always treated, and continues to treat, these allegations as true for purposes of assessing whether Count V states a claim upon which relief can be granted.

The second pair of observations is that the crux of the aforementioned two Orders were (i) the notion that the Third Amended Complaint (Doc. No. 37) alleged that Plaintiff was terminated for a violating a *conduct-based* policy specifically against pre-marital sex in particular; and (ii) the notion that termination for violating such a policy was not termination based on *religion*,[1] even if the policy happened to be motivated by religious beliefs.

---

[1] The Court continues to adhere to the view that termination grounded on violation of a conduct-based policy is not always or necessarily religious discrimination merely because the conduct-based policy is motivated by the religious beliefs of company leaders imposing the policy. True, in some circumstances it may be; for example, if someone is terminated for not complying with a policy requiring physical attendances at Christian worship services every Sunday, that surely would be termination based on non-compliance with a conduct-based policy motivated by the policy-makers' religious beliefs—and it surely would be religious discrimination. But imagine a different scenario in which a particular construction company has (as it should) a policy against paying bribes to building inspectors. Imagine that when one really scrutinizes company leaders' motivation behind the policy, it is not that bribery poses excessive risks to the company, threatens the company's bottom line, etc., but rather that company leaders believe that bribery is sinful behavior that runs contrary to the teachings of their particular religion. The undersigned

Asking the Court, via the instant Motion, to revisit its views on Count V, Plaintiff relies on *Amos v. Lampo Grp., LLC*, No. 24-5011, 2024 WL 3675601, at *7 (6th Cir. Aug. 6, 2024). In *Amos*, in which the defendant was Defendant herein (The Lampo Group, LLC), the Sixth Circuit affirmed the undersigned's dismissal of the plaintiff's fraud claims while reversing the undersigned's dismissal of claims under Title VII and the Tennessee Human Rights Act.[2]

---

simply cannot conclude that an employee terminated for violating the anti-bribery policy necessarily has a valid claim of religious discrimination merely because the policy was motivated by religious beliefs.

The undersigned's view in this regard is strengthened by a hypothetical scenario that is identical to the one just described, except that: (i) the company leaders all are avowedly non-religious, rejecting the notion that under even the broadest definition of "religion," they have (or adhere to) any religion; (ii) their motivation behind the policy is not a belief that bribery is sinful behavior that runs contrary to the teachings of a particular religion, but rather a belief that bribery runs contrary to company leaders' deeply held views as to what constitutes good citizenship. The Court has great difficulty understanding why the first company should be subject to liability for religious discrimination under Title VII for any termination for violation of the anti-bribery policy, while the second company would not. Such a result, in the view of the undersigned, would promote and protect secular values over religious-based values in the realm of company policy-making. The undersigned is disinclined to believe that thus disadvantaging religious-based morality, and instead favoring secular morality, is appropriate under Title VII (or, for that matter, the First Amendment).

[2] Given that *Amos* has been raised herein, the court wishes to clarify his views about the religious-accommodation claim in *Amos* because it evidently was nowhere near precise or effective enough in expressing his views in his memorandum opinion and order, *Amos v. Lampo Grp.*, LLC, No. 3:21-CV-00923, 2023 WL 8631674 (M.D. Tenn. Dec. 13, 2023), *aff'd in part, rev'd in part and remanded*, No. 24-5011, 2024 WL 3675601 (6th Cir. Aug. 6, 2024), whereby he dismissed the plaintiff's claims. In its opinion reversing that order in part and remanding this case, the Sixth Circuit noted:

> The district court spent a lot of time on the distinction between religious belief and conduct that may be influenced by religious belief—a distinction of its own creation. Title VII defines "religion" as "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate . . . [the] religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). And the Supreme Court has explicitly denied attempts to create a distinction between religious belief and conduct in the Title VII context. *See E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774–75 (2015) ("Congress defined 'religion,' for Title VII's purposes, as 'includ[ing] all aspects of religious observance and practice, as well as belief' . . . . Thus, religious practice is one of the protected characteristics that cannot be accorded disparate treatment and must be accommodated." (citation omitted)).

*Amos v. Lampo Grp., LLC*, 2024 WL 3675601, at *4.

The undersigned did not mean to convey in his order that only religious belief, and not religious "practice and observance," was protected by Title VII. Far from it. The undersigned was not sufficiently precise or nuanced in his discussion. What he meant (and tried but failed) to convey was a different concept, one that he believes is consistent *both* with the Sixth Circuit's own observations above and the undersigned's above-referenced "distinction between religious belief and conduct that may be influenced by religious belief." It did not occur, and never would have occurred, to the undersigned that something was unprotected by Title VII merely because it seems to fall more precisely into the "practice and observance" (which is to say "conduct") bucket than the "belief" bucket. Rather, it has always been clear to the undersigned that if something *actually* amounted to *religious* conduct, it would be protected even if it did not fall into the "belief" bucket. For example, the "practice and observance" and attending a Sunday church service, or of attending confession, or of traveling to Mecca for the Hajj, or of keeping Kosher, all constitute religious *conduct.* But a person's participation in such activities are typically—though not always, since sometimes persons engage in these activities for cultural or other reasons, despite lacking any particular belief or any belief at all—*influenced* (sometimes heavily and even exclusively) by religious belief. So the undersigned did not mean to suggest that activities like these are excluded from protection merely because they constitute conduct and not belief as such.

The undersigned's intended point, rather was that some conduct, though influenced by religious belief, is not properly characterized as *religious conduct*, i.e., as religious "observance or practice." An example will demonstrate the point.

Imagine a driver for a delivery-service company that has a policy—intended to promote speed, efficiency, customer satisfaction, and, ultimately, profits—that drivers must drive at the speed limit (and not below it) unless applicable circumstances reasonably counsel driving below the speed limit. Imagine also that this driver is a follower of a religion that (like most religions, surely) generally teaches doing right by other people, treating other people well, caring for other people, etc. Imagine that this driver is focused on the (objectively verifiable) fact that driving below the speed limit poses a lower risk to the safety of other drivers and pedestrians than does driving at the speed limit. Suppose further that this driver wishes to lower the risk to other people (and thereby treat these other people better and with more care) by driving five miles per hour under the speed limit, and that this desire is driven entirely by the driver's religious-based beliefs about how to treat people. Finally, suppose that based on this *belief*, the *conduct* of the driver is (very directly) affected, i.e., the conduct of the driver is to drive five miles per hour below the speed limit.

In the view of the undersigned, in this example the conduct obviously is influenced by religious belief. But that does not make the conduct "religious conduct," and it certainly does not make the conduct religious "observance" or religious "practice." That is, in the view of the undersigned, conduct does not become religious conduct (or religious practice or religious observance) merely because (i) it reflects a general desire to treat other people decently, and (ii) generally treating people decently is a tenant of the person's religion. Otherwise, any conduct by any adherent of virtually any religion (since, surely, almost all adherents of a religion are adherents of a religion that believes in treating other people decently) becomes "religious" conduct that is protected by Title VII. This would mean that any such adherent disciplined for failing to follow a company policy has a valid Title VII claim as long as the adherent can characterize the refusal to follow the policy as an application of the religious tenant to treat people decently. This strikes the undersigned as going way too far; for believers, it would turn an employee's most routine act of purported general human decency into religious conduct for purposes of a Title VII claim, when that act constitutes non-compliance with an employer's policy for which the employee is disciplined. And it also creates the potential for a huge disparity between religious believers and non-believers under Title VII.

Imagine someone who (a) believes in treating other people well; (b) does not in any way whatsoever attribute that belief to any "religion" or "religious" beliefs, and indeed adamantly denies having any religion or religious beliefs of any type whatsoever (including atheism or agnosticism, insofar as those are "religious" beliefs; and (c) is fired for refusing to follow a company policy because he believes that the policy requires him to treat other people poorly. That person would not have a Title VII claim the way our

Plaintiff relies primarily on the following language in particular:

> At its core, the claim is that an employee's "lack of adherence to the religious beliefs promoted by the [employer] was the genesis of the discrimination." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007). In other words, the adverse employment actions "were taken because of a discriminatory motive based upon the employee's failure to hold or follow her employer's religious beliefs." *Owens v. City of New York Dep't of Educ.*, No. 21-2875, 2022 WL 17844279, at *2 (2d Cir. Dec. 22, 2022); *see also Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 292 (3d Cir. 2009) ("Title VII seeks to protect employees not only from discrimination against them on the basis of their religious beliefs, but also from forced religious conformity."). Accordingly, the focus of the claim is on "the religious beliefs of the employer, and the fact that [the employee] does not share them"—not on the specific religious beliefs of the employee himself. *Shapolia v. Los Alamos Nat. Lab'y*, 992 F.2d 1033, 1038 (10th Cir. 1993).

---

hypothetical driver would. This strikes the undersigned as problematic; the driver has a cause of action *precisely because* the basis for her general belief in treating people decently is *religious*, whereas the other person is deprived of a cause of action because his general belief in treating people decently is avowedly non-religious. The undersigned questions whether such a divergence of results is consistent with the spirit of Title VII or promotes the objectives of Title VII (or of the First Amendment, for that matter). Although the undersigned above has expressed a concern about the law *favoring* secular-based company policies over religious-based company policies, he also has a concern about the law *disfavoring* secular-based employee conduct compared to religious-based personal conduct.

The undersigned will put it another way. It seems indisputable that a lot of people are honest on their tax returns, consciously eschewing dishonesty from which they could benefit financially, solely and precisely because they maintain principles of honesty (and not cheating) that they would consider religious principles. But the undersigned does not see how the act of filing an honest tax return, and intentionally eschewing a dishonest tax return, constitutes religious conduct, religious practice, or religious observance. In short, the undersigned's view is that at least at *some* point actions, even if motivated in the actor's mind by religious principles, become so attenuated from religious principles (other than the most general "religious" principles imaginable) that they do not constitute religious conduct, religious observance, or religious practice. And the undersigned does not perceive that this view is precluded by the Sixth Circuit's view expressed in *Amos*, except insofar as the Sixth Circuit arguably suggested that such attenuation should not be assessed at the Rule 12(b)(6) stage as a potential ground for dismissal. (Doc. No. 170 at 12 n.5).

The undersigned's view in his order in Amos was that the plaintiff's allegations made his situation analogous to that of our hypothetical driver—that the conduct was *influenced* by religious belief, but did not rise to the level of religious conduct/observance/practice. Put another way, the undersigned's view was that the allegations suggested conduct that was the result of a context-specific application of a very general principle (one typically shared by believers and non-believers alike) to treat people well, and that the fact that Plaintiff drew the principle from Plaintiff's religion did not make the conduct religious conduct (and certainly not religious "observance" or "practice"). But the Sixth Circuit—without considering (or having occasion to consider) the views the undersigned has just expressed and should have expressed the first time—has spoken, finding that the plaintiff in *Amos* has alleged what it labeled "religious nonconformity" and "general religious discrimination" claims, and the undersigned must and does proceed in accordance with the Sixth Circuit's view.

*Amos*, 2024 WL 3675601, at *2. Plaintiff's highlight of this passage—in particular the first sentence has occasioned the undersigned to assess very closely whether Plaintiff here can be said to be claiming that her "lack of adherence to the religious beliefs promoted by the [employer] was the genesis of the discrimination," as would be sufficient for Count V to survive Defendant's Rule 12(b)(6) motion. Construed in favor of Defendant as required, the Amended Complaint alleges not that Plaintiff was terminated for violating a company policy against premarital sex, but rather that she was terminated for engaging in behavior that conflicted with—failed to adhere to—"traditional Judeo-Christian values or teaching." In other words, the Amended Complaint can be construed as not alleging even the *existence* of a policy against particular *behavior* (premarital sex), let alone *termination* based on a violation of such a policy.[3] It can be construed instead as alleging termination based "lack of adherence to the [Judeo-Christian] religious beliefs promoted by [Defendant]" in its handbook's statement regarding "Company Conduct." Thus construed, the Third Amended Complaint suffices to state a claim under *Amos*.

In fairness to the undersigned, it was far from clear from the briefing that Plaintiff was alleging that the violation for which she was terminated was a violation *of the Company Conduct provision*, rather than a violation of a policy (wherever it might be found)[4] specifically prohibiting

---

[3] If the Amended Complaint is construed—as it was previously by the Court—to allege termination for non-adherence to a policy prohibiting *conduct*, the applicable sentence from *Amos* (which relates to lack of adherence to "*beliefs*" and not to lack of adherence to *conduct-based rules*) would be facially inapplicable. That is not to say that termination for non-adherence to a policy prohibiting *conduct* can never amount to religious discrimination; such a termination may or may not amount to religious discrimination, depending on, among other things, the extent to which such a prohibition is religiously motivated and the extent to which the plaintiff's non-adherence to such a policy is based on the plaintiff not sharing the religious beliefs underpinning the policy.

[4] The Third Amended Complaint fosters confusion as to the various potential sources of whatever rule, policy, standard, etc. was invoked as justification to terminate Plaintiff. As noted above, there is a clear reference to Plaintiff being terminated "due to violating . . . [Defendant's] rules of "Company Conduct." (Doc. No. 37 at ¶ 20). And this is enough for Count V to survive for now. But the Third Amended Complaint also refers to "Core Values incorporated into [Defendant]'s Mission Statement as well as a "righteous living" policy incorporated into the "Core Values." (*id.* at ¶ 22), then alleges that she was terminated based

pre-marital sex in particular. (Doc. No. 56 at 4 ("O'Connor was terminated specially for violating the Religious Core Value prohibiting pre-marital sex." (citing Doc. No. 37 at ¶¶ 17, 20)); alleging that, although "[t]he Core Values incorporated into Ramsey's Mission Statement incorporates a 'righteous living' policy or value which allegedly prohibits premarital sex" although there was no *written* prohibition against premarital sex in the righteous living policy.).[5] And the Court does not see where Plaintiff pushed back specifically against the notion that the rule for which Plaintiff was terminated was, in particular, one specifically against premarital sex. But the Court now concludes—consistent in broad strokes with Plaintiff's argument—that the notion was in fact flawed because the Third Amended Complaint, construed in Plaintiff's favor as required, alleges that she was terminated for refusing to comply with Defendant's religious views (meaning, Defendant's (patently religious) view as to whether pre-marital sex "is not consistent with traditional Judeo-Christian values or teaching, (Doc. No. 37 at ¶ 21).

To be clear, Plaintiff takes many positions with which the Court respectfully disagrees.[6] But the Court does agree that the Order Dismissing Count V should be vacated. In particular, in

---

on a violation of the "Core Values." (*Id.* ¶ 73, 75). Plaintiff's (apparently alternative) reliance on a violation of the "Core Values" is far shakier, because unlike the "Company Conduct" provision, the Core Values (and, for that matter, the associated "Mission Statement into which *they* were incorporated, or the "righteous living" policy that was incorporated into *them*" are alleged to be expressly couched in terms of any particular religion (or even religious belief generally) or to otherwise make any reference to any particular religion or religion generally.

[5] The Third Amended Complaint's reference here to the lack of a written prohibition against premarital sex seemingly suggests that Plaintiff is actually alleging that in fact there was no such policy and that personnel of Defendant were merely *claiming* that there was such a policy. But in the Court's view, Plaintiff is simply unclear whether this is what she actually is alleging.

[6] For example, Plaintiff suggests that the Court was incorrect to state in its Order denying Reconsideration (Doc. No. 61 at 5), that "nothing prohibits employers from having (enforceable) policies with religious motivations," and further suggests that *Amos* reveals that the statement was incorrect. (Doc. No. 103 at 3). The undersigned disagrees. First, he does not see where Plaintiff ahs pointed to any part of *Amos* that suggests the incorrectness of this statement. Second, the undersigned does not perceive any legal authority holding that employers are prohibited from having policies with religious motivations. The undersigned

its discretion, it finds that reconsideration in this manner is necessary to prevent manifest injustice and because the Court overlooked facts (or, to be more precise, overlooked one particular and very material manner way in which Plaintiff's factual allegations could be construed). This finding is a close call, because in the Court's view the Third Amended Complaint was not nearly as clear as it could have been as to what rule, policy, standard. etc., she was violated. But on balance, the Court concludes that construed in her favor, the Third Amended Complaint does allege what it needs to allege to state the claim asserted in Count V.

## CONCLUSION

Plaintiff's Motion (Doc. No. 103) is **GRANTED**, and the dismissal of Count V is vacated accordingly. All counts thus now remain pending, as does Defendant's motion for summary judgment as to Counts I through IV (Doc. No. 66), upon which the Court already has done substantial work.

A telephonic status conference is scheduled for June 24, 2025, at 2:00 p.m.

Counsel may access the conference call by dialing 1-855-244-8681. When prompted, enter the access code of 2319 024 8273, followed by the pound (#) sign. If you have any issues

---

also cannot fathom such a holding; surely companies can have policies motivated by avowedly secular values, and surely values should not be excluded from company policy making merely because they are religious rather than secular; any such exclusion, it seems, would legally promote secular values over religious ones, and the undersigned struggles to see how this would be appropriate. So the undersigned continues to adhere to the view that nothing prohibits employers from having (enforceable) policies with religious motivations.

To be clear, where a company policy does have religious motivations, the religious underpinning of the policy under certain circumstances will support a particular claim that the company's application of the policy to the employee—via, for example, the company's invocation of a violation of the policy to terminate the employee—constituted religious discrimination. That is precisely the situation in the present case. But that is not to say that companies (who plainly are allowed to have policies based on what the company considers secular values) are categorically not allowed to have policies that have their origin in the policymaker's views that are religious in nature.

connecting, please call Chambers at (615) 736-5291. As these are public proceedings, other persons may access the conference call in the same manner.

As for Plaintiff's motion to ascertain status (Doc. No. 104), the Court deems it to have been GRANTED via the instant order.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE