## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| CAITLIN O'CONNOR, | ) | Case No. 3:20-cv-00628 |
| Plaintiff, | ) | |
| | ) | District Judge Richardson |
| v. | ) | |
| | ) | Magistrate Judge Frensley |
| | ) | |
| THE LAMPO GROUP, LLC, | ) | Jury Demand |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT V OF PLAINTIFF'S THIRD AMENDED COMPLAINT

Defendant, The Lampo Group, LLC, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.01, files this memorandum of law in support of its Motion for Summary Judgment as to Count V of Plaintiff's Third Amended Complaint. (Doc. No. 108).

### I.    INTRODUCTION

The Court is familiar with this case and Count V in particular. As Defendant reads the Court's Memorandum Opinion and Order at Doc. No. 105, the only facet of Count V that survives is Plaintiff's contention that she was "terminat[ed] based [on] 'lack of adherence to the [Judeo-Christian] religious beliefs promoted by [Defendant]' in its handbook's statement regarding 'Company Conduct.'" (Doc. No. 105 at PageID #: 5982). In other words, that Plaintiff was terminated for failing to comply with Defendant's religious beliefs or "religious non-conformity."

However, to ensure that this motion is complete, Defendant will address Count V as asserting a general religious discrimination claim, religious accommodation claim, "religious non-conformity" claim, and retaliation claim. By doing so, Defendant does not concede that Plaintiff stated or even attempted to state any of those claims in Count V, concede that any of those claims survived the Court's Memorandum and Opinion at Doc. No. 105, or stipulate to Plaintiff raising

or resurrecting any of those claims at this stage. If Defendant addresses a claim in this motion that did not survive the Court's Memorandum and Opinion at Doc. No. 105, we ask the Court to expressly dismiss that claim on that basis instead of, or before, resolving it on the merits. *Amos v. Lampo Group, LLC*, No. 24-5011, 2024 WL 3675601, at *3 FN3 (6th Cir. Aug. 6, 2024) (allowing the losing party to challenge anything that the district court resolves).

Finally, but most importantly, we are mindful that Count V of this case concerns fundamental constitutional liberties and protections. Plaintiff is clearly asking the Court to ban employers from having religiously inspired workplace rules. While that strikes Defendant (and hopefully any reasonably minded person) as facially unconstitutional, we do not take it for granted. Defendant understands that freedom "is not ours by way of inheritance; it must be fought for and defended constantly by each generation, for it comes only once to a people."[1] While Plaintiff and others may disagree with how Defendant conducts its business, the simple and only relevant truth is that we have constitutional and statutory rights to do so, and those rights must be defended.

## II.      ADDITIONAL UNDISPUTED MATERIAL FACTS

Given the Court's familiarity with this case and the parties' extensive recitations of facts in prior summary judgment briefing, Defendant will not rehash everything again here. However, for the sake of completeness and in keeping with the Court's instructions in *McLemore v. Gumucio*, 619 F. Supp. 3d 816, 820-26 (M.D. Tenn. 2021), the following additional facts are undisputed for summary judgment purposes and material to Plaintiff's claims in Count V:

- Plaintiff's sincerely held religious beliefs at issue in this case are described as follows:

    "Plaintiff's sincerely held Christian belief is that Christianity is not meant to be punitive, hateful, vengeful, or judgmental. Accordingly, her Christian belief is that

---

[1] https://governors.library.ca.gov/addresses/33-Reagan01.html

2

God gave a woman the ability to procreate, and that ability to procreate was not restricted by a contract, i.e., marriage or employment. Moreover, Plaintiff does not believe that her identification as a Christian gives her the right to judge and condemn other Christians or humans for how they choose to carry out their one dictate from Jesus, that is, to love one another. Her view of Christianity does not require her to invade or inquire or know the specifics of what other people do or do not do in their bedroom or when they do it, much less pass morality judgement on other people. Moreover, Plaintiff sincerely believes that she should be able to seek the support of her Christian community during her pregnancy without fear of termination from her employment."

(Doc. No. 111-1 at ¶ 11).

- Apart from Plaintiff's expression of her sincerely held religious beliefs in her answer to Interrogatory No. 11 of Defendant's First Set of Interrogatories, she has no other facts to support her claim that Defendant terminated her employment based on religion. *Id.* at ¶ 15.[2]

- Plaintiff's sincerely held religious beliefs did not require her to engage in premarital sex. (Doc. No. 111-2 at 260:11-19).

- Plaintiff's sincerely held religious beliefs neither encouraged nor discouraged her from engaging in premarital sex. (Doc. No. 111-2 at 261:18 – 262:7).

- Plaintiff does not "think that God cares what you're doing in your bedroom." *Id.* at 262:2-4.

- Plaintiff's sincerely held religious beliefs only regulates her conduct, not the conduct of Defendant. *See* Doc. No. 111-1 at ¶ 11.

---

[2] Interrogatory No. 15 of Defendant's First Set of Interrogatories asked Plaintiff to "[e]xplain the factual basis for Plaintiff's claim that Defendant terminated her employment based on religion." (Doc No. 111-1 at ¶ 15). Plaintiff answered by referring Defendant to her answer to Interrogatory No. 11. *See Id.* at ¶¶ 11, 15.

- Defendant was not aware of Plaintiff's sincerely held religious beliefs regarding premarital sex before it terminated her employment. (Doc. No. 111-2 at 259:21 – 260:6).

- Plaintiff never requested a religious accommodation from Defendant's prohibition against premarital sex. *Id.* at 248:8-11.

- Defendant is a private, closely held company. (Doc. No. 67-4 at ¶ 2).

- Defendant specializes in creating and delivering counseling programs for individuals and organizations. *Id.*

- Defendant is best known for providing biblically based financial counseling programs that help individuals get out of debt, manage their money well, and achieve financial success. *Id.* at ¶ 3.

- Defendant has a Righteous Living Core Value. *Id.* at ¶ 6.

- Defendant believes that premarital sex violates the Righteous Living Core Value. *Id.*

- Defendant's prohibition of premarital sex as a violation of the Righteous Living Core Value is a sincerely held religious belief. (Docs. No. 93-8 at 12:20 – 17:13; 111-2 at 262:8-18).

- Defendant is aware of eight employees since 2016, including Plaintiff, who have engaged in premarital sex. (Doc. No. 67-4 at ¶ 14). All eight have been terminated. *Id.*

These additional material facts are fatal to Plaintiff's remaining claims in Count V.

4

## III.    LEGAL STANDARD

The Court recently restated the summary judgment standard in *Grizzard v. Nashville*

*Hosp. Capital, LLC*:

> Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id*. at 248 . On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id*.
>
> A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).
>
> The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 628 .
>
> A party asserting that a fact cannot be or genuinely is disputed—*i.e.*, a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A) . In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248 ). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-

5

moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

No. 3:18-cv-00034, 2021 WL 3269955, at *5-6 (M.D. Tenn. July 30, 2021).

To survive summary judgment, Plaintiff cannot rely on her own personal opinions, conjecture, or conclusory assertions or accusations. *Southall v. USF Holland, Inc.,* No. 3:15-cv-1266, 2018 WL 6413651, at *9 (M.D. Tenn. Dec. 5, 2018). Nor can Plaintiff rely upon affidavit testimony that contradicts earlier sworn testimony, whether made in a deposition or interrogatory answers. *Evola v. City of Franklin*, 18 F. Supp. 3d 935, 939 (M.D. Tenn. 2014).

## IV.   ARGUMENT

Defendant is entitled to summary judgment with respect to Plaintiff's remaining claims in Count V.

### A.  Plaintiff's Religious Beliefs

As a threshold matter, Plaintiff has not articulated any religious beliefs that warrant protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").[3] This case is part of a recent genre of cases that threaten to expand Title VII's religious protections until they burst. The Court has expressed concerns about watering down Title VII to the point that every workplace grievance becomes actionable. *See, e.g., Amos v. The Lampo Group, LLC*, No. 3:21-cv-00923, 2023 WL 8631674, at *7-8 (M.D. Tenn. Dec. 13, 2023). It is an obvious problem. And while line-drawing may not be easy, it is incumbent upon courts to restore Title VII to a justiciable standard.

---

[3] Count V asserts claims under both Title VII and the Tennessee Human Rights Act, T.C.A. § 4-21-101 *et seq.* ("THRA"). (Doc. No. 37). Since the THRA largely mirrors Title VII and THRA claims are usually analyzed like Title VII claims, Defendant will only address Title VII in this memorandum except when there are relevant distinctions. *See, e.g., Johnson v. Tyson Foods, Inc.*, 676 F. Supp. 3d 594, 599-600 (W.D. Tenn. 2023).

6

Plaintiff has described her sincerely held religious beliefs, at least as they pertain to this case, as follows:

> Plaintiff's sincerely held Christian belief is that Christianity is not meant to be punitive, hateful, vengeful, or judgmental. Accordingly, her Christian belief is that God gave a woman the ability to procreate, and that ability to procreate was not restricted by a contract, i.e., marriage or employment. Moreover, Plaintiff does not believe that her identification as a Christian gives her the right to judge and condemn other Christians or humans for how they choose to carry out their one dictate from Jesus, that is, to love one another. Her view of Christianity does not require her to invade or inquire or know the specifics of what other people do or do not do in their bedroom or when they do it, much less pass morality judgement on other people. Moreover, Plaintiff sincerely believes that she should be able to seek the support of her Christian community during her pregnancy without fear of termination from her employment.

(Doc. No. 111-1 at ¶ 11). At deposition, Plaintiff conceded that her sincerely held religious beliefs did not require her to engage in premarital sex. (Doc. No. 111-2 at 260:11-19). Later, Plaintiff testified that she does not "think that God cares what you're doing in your bedroom" and that her sincerely held religious beliefs neither encourage nor discourage premarital sex. *Id.* at 261:18 – 262:7.

With respect to the issue at hand—premarital sex—Plaintiff has described her sincerely held religious beliefs as completely neutral. And the rest of her sincerely held religious beliefs, if read closely, are just regulations *of her own conduct. See* Doc. No. 111-1 at ¶ 11. Plaintiff believes that *she* does not have the right to "judge and condemn other Christians or humans for how they choose to carry out their one dictate from Jesus…to love one another"[4], "invade or inquire or know the specifics of what other people do or do not do in their bedroom or when they do it", or "pass morality judgement on other people." But Plaintiff was never been asked or required to do any of those things by Defendant. *Id.* How Plaintiff's sincerely held religious beliefs limit *her conduct*

---

[4] Ironically, through this lawsuit, Plaintiff is seeking to do just that—force a privately held company, which she freely joined, to change how *they* obey God.

have absolutely no bearing—legal or otherwise—on how Defendant conducts its business. If, hypothetically, Plaintiff had been asked by Defendant to terminate an employee for engaging in premarital sex or some other violation of the Righteous Living Core Value, then perhaps things would be different. But that was not the case.

To restore Title VII to its proper place, Defendant asks the Court to formally adopt and apply the following three-factor test outlined by the Third Circuit in *Africa v. Commonwealth of Pennsylvania* or a similar framework:

- First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters.

- Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching.

- Third, a religion often can be recognized by the presence of certain formal and external signs.

662 F.2d 1025, 1032 (3rd Cir. 1981).[5] Plaintiff's sincerely held religious beliefs are a disjointed set of generic principles. Plaintiff is free to have sex with whoever she wants, whenever she wants, but that is not a "religion" for purposes of Title VII that should be imposed upon Defendant or anyone else. The Court should declare that Plaintiff's beliefs are not entitled to Title VII protection.

---

[5] *Africa* has been applied in Title VII cases, *see, e.g., Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania*, 877 F.3d 487 (3rd Cir. 2017), and endorsed by the Sixth Circuit in an RLUIPA case, *Cutter v. Wilkinson*, 349 F.3d 257 (6th Cir. 2003). And while the Court may feel constrained by recently published Sixth Circuit decisions like *Lucky v. Landmark Medical of Michigan, P.C.*, 103 F. 4th 1241 (6th Cir. 2024), which reversed a district court's dismissal of Title VII claims based on the *Africa* factors without discussing them, Defendant contends that some threshold, objective criteria for evaluating sincerely held religious beliefs protected by Title VII is necessary and advances *Africa* or any similar framework in an effort to extend, modify, or reverse existing law or establish new law. Fed. R. Civ. Pro. 11(b)(2).

## B. Religious Discrimination

Defendant is entitled to summary judgment with respect to Plaintiff's remaining religious discrimination claims in Count V, however formulated. Again, given the lack of clarity in Count V and having lived through *Amos*, Defendant will analyze Plaintiff's religious discrimination claim under every possible formulation—general religious discrimination, religious accommodation, and religious non-conformity—without conceding that any of them were actually pled or survived the Court's Memorandum and Opinion at Doc. No. 105.

### 1. General Religious Discrimination

General religious discrimination is the facet of Title VII that focuses on the *employee's* sincerely held religious beliefs and asks whether they were the basis for any adverse employment actions. If Count V of Plaintiff's Third Amended Complaint states a general religious discrimination claim that survived the Court's Memorandum Opinion and Order at Doc. No. 105, it fails as a matter of law for several independent reasons.

*First*, there is no evidence that Defendant was aware of Plaintiff's sincerely held religious beliefs regarding premarital sex when it decided to terminate her employment. (Doc. No. 111-2 at 259:21 – 260:6). Nor can knowledge of Plaintiff's sincerely held religious beliefs regarding premarital sex be imputed to Defendant from her conduct. *Pedreira v. Kentucky Baptist Homes for Child., Inc.,* 579 F.3d 722, 728 (6th Cir. 2009). In *Pedreira*, the Sixth Circuit refused to charge the employer with knowledge of the employee's religious beliefs regarding homosexuality simply because she was a lesbian. *Id.* The same logic applies even more forcefully here with something as relatively ubiquitous as premarital sex. It is axiomatic that Defendant had to be aware of Plaintiff's sincerely held religious beliefs regarding premarital sex in order to terminate her for them.

9

*Second and relatedly*, the record evidence does not permit Plaintiff to state a prima facie case of general religious discrimination. To clear this hurdle, Plaintiff must produce evidence that (1) she belonged to a protected class, (2) she qualified for her position, (3) she suffered an adverse action, and (4) the action occurred under circumstances that support an inference of discrimination. *See, e.g., Savel et al v. The MetroHealth System*, No. 24-4025, 2025 WL 1826674, at *3 (6th Cir. July 2, 2025). Defendant doubts the first prong but concedes it for summary judgment purposes because Plaintiff cannot establish the fourth prong.

While the fourth prong analysis varies case-to-case, Defendant believes that the proper focus in this case is whether similarly-situated employees, outside Plaintiff's protected class, were treated more favorably than her. *Id*. And to that end, the record evidence is clear—eight employees have violated Defendant's prohibition against premarital sex since 2016 and all eight have been terminated. (Doc. No. 67-4 at ¶ 14).

*Third and lastly*, even if Plaintiff had stated a prima facie case of general religious discrimination, she could not establish pretext. Pretext requires evidence that Defendant's reason (1) had no basis in fact, (2) did not actually motivate the employer's action, or (3) was insufficient to motivate the action. *See, e.g., Macy v. Hopkins County School Bd. of Educ.*, 484 F.3d 357, 366 (6th Cir. 2007).

- **No Basis in Fact**

To establish pretext via "no basis in fact", Plaintiff must show that the stated reason for her termination—engaging in premarital sex—never happened. *Id*. However, in this case, Plaintiff concedes that it did.

10

- **Did Not Motivate**

To establish pretext via "did not motivate", Plaintiff must admit that she engaged in premarital sex and that it could have motivated her termination, but show that her termination was more likely motivated by illegal religious discrimination. *Id.* at 368. "That is, [Plaintiff must argue] that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that [Defendant's] explanation is a pretext, or coverup." *Id.* (internal quotations omitted).

This is another dead-end for Plaintiff. There is no evidence that Defendant knew that she held a sincere religious belief regarding premarital sex when it decided to terminate her employment. (Doc. No. 111-2 at 259:21 – 260:6). Defendant has terminated all eight employees (including Plaintiff) known to have engaged in premarital sex. (Doc. No. 67-4 at ¶ 14). And Defendant terminated Plaintiff's employment promptly after discovering that she had engaged in premarital sex.

- **Insufficient to Motivate**

To establish pretext via "insufficient to motivate", Plaintiff must show that Defendant did not terminate employees outside her protected class who engaged in substantially identical conduct. *Macy* at 369. Although comparator analysis is significantly more demanding at the pretext stage, we do not have to look that deep because Defendant has terminated all eight employees (including Plaintiff) known to have engaged in premarital sex.

Defendant is entitled to summary judgment with respect to any general religious discrimination claim asserted in Count V of Plaintiff's Third Amended Complaint that survived the Court's Memorandum Opinion and Order at Doc. No. 105.

## 2. *Religious Accommodation*

Religious accommodation is the facet of Title VII that focuses on conflict between an employee's sincerely held religious beliefs and their employer's work requirements.[6] If Count V of Plaintiff's Third Amended Complaint states a religious accommodation claim that survived the Court's Memorandum Opinion and Order at Doc. No. 105, it fails as a matter of law for several independent reasons.

*First*, as aforementioned, Defendant did not have actual or constructive knowledge that Plaintiff held any sincere religious beliefs regarding premarital sex when it decided to terminate her employment. Unaware of any conflict, Defendant had no duty to accommodate. *See, e.g., Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 934 (7th Cir. 2003); *Watts v. School Bd. of St. Landry Parish*, 213 Fed. Appx. 285, 285-86 (5th Cir. 2007); *Dooley v. BREC Parks and Recreation Comm'n for E. Baton Rouge Par.*, No. CV 06-932, 2007 WL 9710986, at *4 (M.D. La. July 30, 2007).

*Second*, even if Defendant had been aware of Plaintiff's sincerely held religious beliefs regarding premarital sex, they do not conflict with its prohibition against premarital sex. Plaintiff has described her sincerely held religious beliefs, as they pertain to this case, as follows:

> Plaintiff's sincerely held Christian belief is that Christianity is not meant to be punitive, hateful, vengeful, or judgmental. Accordingly, her Christian belief is that God gave a woman the ability to procreate, and that ability to procreate was not restricted by a contract, i.e., marriage or employment. Moreover, Plaintiff does not believe that her identification as a Christian gives her the right to judge and condemn other Christians or humans for how they choose to carry out their one dictate from Jesus, that is, to love one another. Her view of Christianity does not require her to invade or inquire or know the specifics of what other people do or do not do in their bedroom or when they do it, much less pass morality judgement on other people. Moreover, Plaintiff sincerely believes that she should be able to seek

---

[6] Unlike Title VII, the THRA does not impose a duty to accommodate. *See, e.g., Johnson*, 676 F. Supp. 3d. at 600. If Count V continues to assert a religious accommodation claim under the THRA, it must be dismissed. *Id.*

the support of her Christian community during her pregnancy without fear of termination from her employment.

(Doc. No. 111-1 at ¶ 11). At deposition, Plaintiff conceded that she is not required by her sincerely held religious beliefs to engage in premarital sex. (Doc. No. 111-2 at 260:11-19). Her sincerely held religious beliefs neither encourage nor discourage premarital sex. *Id.* at 261:18 – 262:7.

For there to be any sanity in Title VII, religious accommodations must be limited at least to situations in which there is a genuine conflict, i.e., when a work requirement (i) forces an employee to do something that their sincerely held religious beliefs prohibit or (ii) prohibits an employee from doing something that their sincerely held religious beliefs require. Employee actions taken within the confines of what their sincerely held religious beliefs permit, but do not require, are more akin to personal preferences that have no protection under Title VII.

The Sixth Circuit applied that standard in *Hall v. Baptist Mem'l Health Care Corp.*, affirming summary judgment against the employee's religious accommodation claim because her "employer did not direct her to do anything that conflicted with her religious beliefs, and [she] was not terminated over a failure to perform any duties which conflicted with her religious beliefs." 213 F.3d 618, 627-28 (6th Cir. 2000). And arguably in *Dewey v. Reynolds Metals Co.*, affirming dismissal of an employee's religious accommodation claim because the employer's work requirement—that he find a replacement worker for Sunday shifts—was not prohibited by his sincerely held religious beliefs. 429 F.2d 324, 336 (6th Cir. 1970), *aff'd* 402 U.S. 689 (1971). So did the Western District of Tennessee more recently in *Jiglov v. Hotel Peabody, G.P.*, rejecting "any requested accommodation incidental to a religious observance, practice, or belief and *not otherwise dictated by* the employee's religion…." 719 F. Supp. 2d 918, 929 (W.D. Tenn.2010) (emphasis added).

13

*Third and lastly*, even if Defendant had been aware of Plaintiff's sincerely held religious beliefs regarding premarital sex, accommodating them (ostensibly by waiving its prohibition against premarital sex for Plaintiff) would have imposed an undue hardship, violated the Establishment Clause of the First Amendment, and violated the Religious Freedom Restoration Act, 42 U.S.C. § 2000b-4 *et seq*. ("RFRA").

- **Undue Hardship**

The undue hardship exemption is awkwardly inserted into Title VII, along with the duty to accommodate itself, via the definition of "religion" in 42 U.S.C. § 2000e(j). The exact text refers to "undue hardship on the conduct of the employer's business." For years, courts examined undue hardship in accordance with *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), by asking whether a requested religious accommodation would cause the employer to incur "more than a *de minimis* cost." However, when the Supreme Court recently revisited undue hardship in *Groff v. DeJoy*, the justices unanimously replaced the *Hardison* standard with a "common-sense" inquiry focused on "whether a hardship would be substantial in the context of an employer's business." 600 U.S. 447, 471 (2023). Here, in the context of Defendant's business, it could only accommodate Plaintiff's sincerely held religious beliefs by waiving or displacing its own. Surely, that is an undue hardship.

- **Establishment Clause**

The Establishment Clause of the First Amendment prohibits the government from supporting assisting, favoring, or handicapping any religion. *Dewey* at 334-35. Employers' duty to accommodate religion under Title VII has raised Establishment Clause concerns for years because it effectively imposes employees' religious beliefs upon employers. That was central to the Sixth Circuit's holding in *Dewey* denying an employee's religious accommodation, which the

14

Supreme Court subsequently affirmed. *Dewey,* 429 F.2d at 334-36, *aff'd* 402 U.S. 689 (1971). In 1972, in response to *Dewey,* Congress amended *Title* VII to add and clarify employers' duty to accommodate. *Groff* at 458.

Five years later in 1977, the stage was set in *Hardison* for a dogfight over whether the Establishment Clause permitted Title VII's religious accommodation scheme, but the Supreme Court ultimately punted on that issue. *Id.* at 459-62.

Following *Hardison*, the Establishment Clause furor died down, albeit for fractured reasons. As Justice Alito recounted in *Groff*, Justice Marshall read *Hardison* as avoiding the Establishment Clause question altogether. *Id.* at 461 FN9. However, lower courts read *Hardison* as answering the Establishment Clause question by concluding that it would not be violated by any Title VII religious accommodations that satisfied the "*de minimis* costs" standard. *Id.*

Whether *Hardison* dodged the Establishment Clause question completely or answered it by adopting the "*de minimis* costs" standard, it is open (still or again) after *Groff*. Despite replacing the "*de minimis* costs" standard with a more stringent "common-sense" inquiry focused on "whether a hardship would be substantial in the context of an employer's business", *Groff* did not address the new standard's intersection with the Establishment Clause.

To Defendant's knowledge, no court has addressed that issue post *Groff*. The Establishment Clause concerns raised by the Sixth Circuit and Supreme Court in *Dewey* remain. And they are even more acute in this case because, unlike *Dewey*, here we have sincerely held religious beliefs on both sides. But one bedrock principle of the Establishment Clause is that government cannot privilege one religion over another, *see, e.g., Maye v. Klee*, 915 F.3d 1076, 1084-85 (6th Cir. 2019), and that is exactly what Plaintiff asks the Court to do. Not only to declare that Defendant should have set aside its sincerely religious beliefs to accommodate hers, but worse,

15

to declare Defendant's sincerely held religious beliefs categorically unlawful under Title VII as applied to anyone. If the Establishment Clause stands for anything, it prohibits Plaintiff from invoking the machinery of federal statutory law to privilege her or anyone else's sincerely held religious beliefs over those of Defendant.[7]

- **RFRA**

RFRA prohibits any government action that substantially burdens the free exercise of religion to strict scrutiny. *See, e.g., Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 690-91 (2014). Enacted in response to *Employment Division v. Smith,* 494 U.S. 872 (1990), RFRA is the subject of an ongoing circuit split regarding its applicability to disputes between private parties. *Id.* at 693; *Franklin v. Austal USA, LLC*, No. 1:23-cv-00040, 2024 WL 973973, at *7 (S.D. Ala. Feb. 26, 2024) (discussing circuit split).

Candidly, the Sixth Circuit is among the circuits that hold RFRA does not apply to disputes between private parties. *General Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 412 (6th Cir. 2010). While Defendant understands that the Court must follow the Sixth Circuit's lead, we believe that *McGill* was wrongly decided for the reasons expressed in *Hankins v. Lyght*, 441 F.3d 96, 103-04 (2nd Cir. 2006), as well as the historical circumstances in which RFRA came to be, the ongoing role of the EEOC in implementing and enforcing Title VII, and the practical reality that Title VII is overwhelmingly enforced via private lawsuits wherein the individual plaintiffs invoke the awesome machinery of the federal government and federal

---

[7] Intuitively, Plaintiff understands that this is wrong. At deposition, when asked how Defendant's prohibition against premarital sex violated her religious beliefs, she answered: "I would be discriminating against them, and they would be discriminating against me. Both things could be true." (Doc. No. 111-2 at 262:8-18).

16

statutory law to pursue redress against private defendants. We raise RFRA here to preserve it. Fed. R. Civ. Pro. 11(b)(2).[8]

Under RFRA, Defendant would argue that treating religiously and secularly motivated workplace rules the same is not the least restrictive way of achieving the government's purportedly compelling interest in eradicating religious discrimination in the workplace. To satisfy RFRA, there should be a categorical exemption from Title VII of workplace rules motivated by employers' sincerely held religious beliefs akin to existing ministerial and religious organization exemptions.

### 3.  *Religious Non-Conformity*

Religious non-conformity is purportedly the facet of Title VII that focuses only on the *employer's* sincerely held religious beliefs and asks whether they were the basis for any adverse employment actions. The Sixth Circuit has given conflicting explanations of the nature and contour of religious nonconformity. *Compare Pedreira* at 727-28 *with Amos* at *2-3.  It is either (i) an innocuous term for describing a particular fact pattern of religious discrimination or (ii) a completely different religious discrimination claim that runs afoul of the plain text of Title VII, the Free Exercise Clause of the First Amendment, and RFRA.

- **A Particular Fact Pattern**

Defendant believes that religious non-conformity simply describes a particular fact pattern of religious discrimination in which both the employer and the employee hold sincere religious

---

[8] Tennessee has enacted a substantially similar companion to RFRA at T.C.A. § 4-1-107. *Johnson v. Levy*, No. M2009-02596-COA-R3-CV, 2010 WL 119288, at *4-7 (Tenn. Ct. App. Jan. 14, 2010). While Defendant is not aware of any cases that have examined whether T.C.A. § 4-1-107 applies to disputes between private parties, we assume it does and believe it should for the same reasons as RFRA. *See also* Ark. Op. Att'y Gen. No. 2015-075 (Aug. 5, 2015) (opining that Arkansas state law equivalent to RFRA would likely apply to disputes between private parties).

beliefs. For example, a general religious discrimination claim that arises when an employee suffers an adverse action because their sincerely held religious beliefs differ from their employer's sincerely held religious beliefs. Or a religious accommodation claim that arises whenever an employee's sincerely held religious beliefs conflict with a work requirement that is based on their employer's sincerely held religious beliefs.

Defendant's view has parallels in Title VII. For example, courts frequently use the term "reverse discrimination" to describe fact patterns in which the victims of discrimination belong to the "majority" or historically privileged protected classes.[9] But while "reverse discrimination" is a useful descriptor, it has no legal significance. "Reverse discrimination" claims are analyzed like all other Title VII claims. *Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1542 (2025) (*unanimously* rejecting Sixth Circuit rule requiring a higher standard of proof for "reverse discrimination" claims under Title VII).[10]

While terms like "reverse discrimination" and "religious non-conformity" may help identify fact patterns, they "have a tendency to distort the underlying statutory text, impose unnecessary burdens on litigants, and cause confusion for courts." *Ames* at 1548 (Thomas, J., concurring). This is a particularly acute problem for religious claims under Title VII because they are a textually awkward fusion of the straightforward prohibitions against religious discrimination in 42 U.S.C. § 2000e-2 and the definition of "religion" in 42 U.S.C. § 2000e(j) that includes a duty

---

[9] As the Sixth Circuit noted in *Amos*, "religious non-conformity" claims have also been frequently—albeit imprecisely—described as "reverse discrimination" claims. *Amos* at *2.

[10] It is noteworthy that the Sixth Circuit was soundly, unanimously, and quite predictably reversed in *Ames* for, what Justices Thomas and Gorsuch criticized as, creating "atextual, judge-created legal rules" that "have a tendency to generate complexity, confusion, and erroneous results." *Ames* at 1555 (Thomas, J., concurring). We can think of no better way to describe the "religious non-conformity" chaos created by *Amos*.

to accommodate. *See EEOC v. Publix Super Markets, Inc.*, 481 F. Supp. 3d 684, 692 (M.D. Tenn. 2020) (describing religious accommodation claims as an outgrowth of general religious discrimination claims).

Like "reverse discrimination", "religious non-conformity" just describes a particular fact pattern of general religious discrimination and religious accommodation claims. It is not an independent legal theory. As Defendant has already addressed Plaintiff's general religious discrimination and religious accommodation claims in preceding paragraphs, we need not repeat those arguments here. Defendant is entitled to summary judgment regarding any claims that Plaintiff describes as "religious non-conformity."

- **A Completely Different Claim**

However, we expect Plaintiff to argue that religious non-conformity is an independent claim under Title VII that arises whenever an employee suffers an adverse employment action for failing to comply with their employer's sincerely held religious beliefs, regardless of whether the employee holds any conflicting sincere religious beliefs. That claim does not exist and would fail as a matter of law for several independent reasons.

*First*, an independent religious non-conformity claim that focuses exclusively on the employer's sincerely held religious beliefs, without any regard for the employee's sincerely held religious beliefs, has no textual support in Title VII. In 42 U.S.C. § 2000e-2(a), Title VII prohibits discrimination "because of [the employee's] race, color, *religion*, sex, or national origin." (emphasis added). Likewise, the definition of "religion" in 42 U.S.C. § 2000e(j) is couched entirely in terms of the "employee's or prospective employee's religious observance or practice." Title VII's religious protections begin and end with the *employee's* sincerely held religious beliefs.

19

*Second*, the Sixth Circuit has already declined to recognize an independent religious non-conformity claim in its binding, published decision in *Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722 (6th Cir. 2009).

In *Pedreira*, the Sixth Circuit *noted* that "courts have interpreted the prohibition [against religious discrimination] to preclude employers from discriminating against an employee because of the employee's religion as well as because the employee fails to comply with the *employer's* religion." 579 F.3d at 727.[11] In that case, it was undisputed that the employer refused to employ homosexuals for sincerely held religious reasons and terminated the employee because she was a lesbian. *Id.* at 728. In other words, it was undisputed that the employee was terminated for failing to comply with her employe's sincerely held religious beliefs. *Id.* And yet, the Sixth Circuit still affirmed dismissal of the employee's religious discrimination claim because she had not explained how any of that implicated *her religion*:

> It is undisputed that KBHC fired Pedreira on account of her sexuality. However, Pedreira has not explained how this constitutes discrimination based on *religion.* Pedreira has not alleged any particulars about her religion that would even allow an inference that she was discriminated against on account of her religion, or more particularly, her religious differences with KBHC. "To show that the termination was based on her religion, [the plaintiff] must show that it was the *religious* aspect of her [conduct] that motivated her employer's actions." [*Hall v. Baptist Memorial Health Care Corp.,* 215 F.3d 618, 627 (6th Cir. 2000)]. Furthermore, Pedreira does not allege that her sexual orientation is premised on her religious beliefs or lack thereof, nor does she state whether she accepts or rejects Baptist beliefs.

*Id*. Again, Title VII's religious protections begin and end with the *employee's* sincerely held religious beliefs.

---

[11] The *Amos* panel lifted and altered that line from *Pedreira* as a prooftext without considering how it was applied in the next two paragraphs. It clearly does not mean what *Amos* claims.

To the extent that *Amos* conflicts with *Pedreira*, it was wrongly decided and the Court must disregard it.[12] As a prior published decision, *Pedreira* is binding authority on all subsequent panels (including the *Amos* panel) and the Court until overruled by the Sixth Circuit en banc or the Supreme Court. 6 Cir. R. 32.1. Remarkably, despite *Pedreira* being recent, published, and on all fours regarding a relatively obscure subject, the *Amos* panel only cited it twice—once for the prooftext that Title VII "preclude[s] employers from discriminating against an employee because…the employee fails to comply with the *employer's* religion" and once more for an innocuous statement regarding the Fed. R. Civ. Pro. 12(b)(6) legal standard. *Amos* at *2-3. *Amos* essentially stopped reading (or following) *Pedreira* at the quote from *Hall* and completely ignored or disregarded *Pedreira's* holding.

*Third*, an independent religious non-conformity claim would clearly violate the Free Exercise Clause of the First Amendment, which protects Defendant as a privately and closely held company. *See, e.g., Burwell* at 713-15.

The Free Exercise Clause triggers constitutional scrutiny of any law that burdens the free exercise of religion. It is a two-step analysis. First, the Court must determine whether the law is neutral towards religion and generally applicable to religious and comparable secular activities. *See, e.g., Tandon v. Newsom*, 593 U.S. 61, 62 (2021). If so, then the Court must subject the law only to rational basis review. *See, e.g., Kentucky v. Yellen,* 54 F.4th 325, 355 (6th Cir. 2022). If not, then the Court must subject the law to strict scrutiny. *See, e.g., Tandon* at 62.

There can be no doubt that a religious non-conformity claim predicated solely on the employer's sincerely held religious beliefs, without any regard for the employee's sincerely held

---

[12] *Amos* is also distinguishable as a decision reviewing dismissal under Fed. R. Civ. Pro. 12(b)(6), whereas the instant summary judgment motion has been filed under Fed. R. Civ. Pro. 56.

religious beliefs, is neither neutral nor generally applicable. To the contrary, it specifically targets workplace rules motivated by sincerely held religious beliefs and treats them worse than rules motivated by secular concerns. Using this case as an example, whereas a premarital sex ban for religious reasons could give rise to a religious non-conformity claim, the same ban for secular reasons (e.g., to discourage sleeping around on the job) could not. Strict scrutiny clearly applies.

To survive strict scrutiny, religious non-conformity claims must be the least restrictive way of achieving a compelling government interest. *See, e.g., Yellen* at 355. Assuming for summary judgment only that eradicating religious discrimination is a compelling government interest, religious non-conformity claims neither achieve that interest nor in the least restrictive way.

Religious non-conformity claims remove employers' sincerely held religious beliefs from the workplace entirely, without regard for whether there are any conflicting, sincere religious beliefs held by employees. They are intended to eradicate employer religion from the workplace entirely, not just religious discrimination.

Likewise, removing employers' sincerely held religious beliefs from the workplace entirely, without regard for whether there are any conflicting, sincere religious beliefs held by employees, is an extraordinarily blunt and ham-fisted way of eradicating religious discrimination in employment.

Even if Plaintiff can technically state an independent religious non-conformity claim against Defendant, it clearly violates the Free Exercise Clause and must be dismissed.

*Fourth and lastly*, if RFRA applied to this case (as Defendant, again, believes it should), then there would be no question that religious non-conformity claims substantially burden employers' free exercise of religion and would be subjected to and fail strict scrutiny.

### C.  Retaliation

Defendant is also entitled to summary judgment with respect to Plaintiff's remaining retaliation claims in Count V that survived the Court's Memorandum Opinion and Order at Doc. No. 105 because she cannot establish (i) a prima facie case of retaliation or (ii) pretext.

Under any formulation of Title VII, a prima facie case of retaliation requires evidence that Plaintiff was terminated as a result of protected activity. *See, e.g., Kenney v. Aspen Technologies, Inc.,* 965 F.3d 443, 448 (6th Cir. 2020). Although there is no evidence that Plaintiff requested a religious accommodation prior to Defendant's decision to terminate her employment, even if she had, a request for religious accommodation is not protected activity under Title VII. *See, e.g., Stanley v. ExpressJet Airlines, Inc.*, 808 Fed. Appx. 351, 358 (6th Cir. 2020). And there is no evidence of any other potentially protected activity by Plaintiff prior to the termination of her employment.

Moreover, even if Plaintiff had engaged in protected activity prior to the termination of her employment, she could not establish pretext for the same reasons provided in Section IV(B)(1) *supra*. *See, e.g., Kenney* at 448 (requiring demonstration of pretext for Title VII retaliation claim).

### V.  CONCLUSION

However formulated, Plaintiff's remaining claims in Count V of Plaintiff's Third Amended Complaint are ripe for summary judgment, fail as a matter of law, and should be dismissed.

Respectfully submitted,

/s/Daniel Crowell
Leslie Sanders (TN #18973)
Daniel Crowell (TN #31485)
Barton LLP
611 Commerce Street
Suite 2911
Nashville, TN 37203
Telephone: (615) 340-6790
lsanders@bartonesq.com
dcrowell@bartonesq.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that, on July 9, 2025, I filed the foregoing document via the Court's electronic filing system, which will automatically notify and send a copy to:

Heather Moore Collins
Ashley Shoemaker Walter
HMC Civil Rights, PLLC

*Attorneys for Plaintiff*

/s/Daniel Crowell
Daniel Crowell (TN #31485)
*Attorney for Defendant*

24