UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| CAITLIN O'CONNOR, | ) | |
|---|---|---|
| | ) | Case No. 3:20-cv-00628 |
| Plaintiff, | ) | |
| | ) | District Judge Richardson |
| v. | ) | |
| | ) | Magistrate Judge Frensley |
| | ) | |
| THE LAMPO GROUP, LLC, | ) | Jury Demand |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF ADDITIONAL FACTS FILED IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT V AND PLAINTIFF'S ADDITIONAL STATEMENT OF MATERIAL FACTS**

Plaintiff's Response to Defendant's Statement of Additional Facts in Support of its Motion for Summary Judgment as to Count V of Plaintiff's Third Amended Complaint.

1. Plaintiff's sincerely held religious beliefs at issue in this case are described as follows:

   "Plaintiff's sincerely held Christian belief is that Christianity is not meant to be punitive, hateful, vengeful, or judgmental. Accordingly, her Christian belief is that God gave a woman the ability to procreate, and that ability to procreate was not restricted by a contract, i.e., marriage or employment. Moreover, Plaintiff does not believe that her identification as a Christian gives her the right to judge and condemn other Christians or humans for how they choose to carry out their one dictate from Jesus, that is, to love one another. Her view of Christianity does not require her to invade or inquire or know the specifics of what other people do or do not do in their bedroom or when they do it, much less pass morality judgement on other people. Moreover, Plaintiff sincerely believes that she should be able to seek the support of her Christian community during her pregnancy without fear of termination from her employment."

   (Doc. No. 111-1 at ¶ 11).

   **RESPONSE**: Admit.

2. Apart from Plaintiff's expression of her sincerely held religious beliefs in her answer to Interrogatory No. 11 of Defendant's First Set of Interrogatories, she has no other facts to support her claim that Defendant terminated her employment based on religion. *Id.* at ¶ 15.

   **RESPONSE: Denied. O'Connor believes sex outside of marriage is not a sin and is compatible with her Christian faith, a premise that is also supported by Plaintiff's disclosed experts. (O'Connor Dep. 259, 261-262; Armour Report, MSJ Opp. Ex. 1 p. 7). Further, Defendant admitted that her refusal to conform to its version of Christianity was the reason for her termination. (Lopez Dep. 92, 97-98, 100, 112-113, 171, 175, Ex. 5 p. 0083, Ex. 7; Sievertsen Dep. 43; Floyd Dep. 46; Ramsey Dep. 38, 55-56; O'Connor Dep. 91-92, 94, 104, 257, 267).** See **Armour Report, MSJ Opp. Ex. 1 p. 7.**

3. Plaintiff's sincerely held religious beliefs did not require her to engage in premarital sex. (Doc. No. 111-2 at 260:11-19).

   **RESPONSE: Admitted for purposes of summary judgment, but this view is simplistic. Plaintiff's religious beliefs do not require her to avoid engaging in premarital sex, nor do her views require her to follow the archaic views of her employer. (O'Connor Dep. 259, 261-262 (Doc. 111-2). See Ingersoll Report, MSJ Ex. 2 p. 06; Armour Report, MSJ Opp. Ex. 1 pp. 2, 4, 9).**

4. Plaintiff's sincerely held religious beliefs neither encouraged nor discouraged her from engaging in premarital sex. (Doc. No. 111-2 at 261:18 – 262:7).

   **RESPONSE: Admitted for purposes of summary judgment.**

5. Plaintiff does not "think that God cares what you're doing in your bedroom." *Id.* at 262:2-4.

   **RESPONSE: Admitted for purposes of summary judgment.**

6. Plaintiff's sincerely held religious beliefs only regulate her conduct, not the conduct of Defendant. *See* Doc. No. 111-1 at ¶ 11.

   **RESPONSE: Admitted for purposes of summary judgment, but this view is simplistic. Plaintiff's religious beliefs do not require her to follow the archaic, religious views of her employer either. (O'Connor Dep. 259, 261-262 (Doc. 111-2). See Ingersoll Report, MSJ Ex. 2 p. 06; Armour Report, MSJ Opp. Ex. 1 pp. 2, 4, 9).**

7. Defendant was not aware of Plaintiff's sincerely held religious beliefs regarding premarital sex before it terminated her employment. (Doc. No. 111-2 at 259:21 – 260:6).

   **RESPONSE: Denied, Plaintiff stated that she was open about her beliefs. (O'Connor Dep. 344-345).**

8. Plaintiff never requested a religious accommodation from Defendant's prohibition against premarital sex. *Id.* at 248:8-11.

   **RESPONSE: Denied. Through her June 18, 2020 email, O'Connor requested an exception to "Righteous Living" with respect to pregnancy outside of marriage. (O'Connor Dep. 344, Ex. 9)**

3

9. Defendant is a private, closely held company. (Doc. No. 67-4 at ¶ 2).

   **RESPONSE: Admit.**

10. Defendant specializes in creating and delivering counseling programs for individuals and organizations. *Id.*

    **RESPONSE: Admitted for purposes of summary judgment. Ramsey Solutions is a for-profit company, not a 501(c)(3) organization, that provides financial leadership, career, and small-business education. (Lopez Dep. 21-22; Galloway 30(b)(6) Dep. 12; Floyd Dep. 21; Ramsey Dep. 8).**

11. Defendant is best known for providing biblically based financial counseling programs that help individuals get out of debt, manage their money well, and achieve financial success. *Id.* at ¶ 3.

    **RESPONSE: Admit for purposes of summary judgment.**

12. Defendant has a Righteous Living Core Value. *Id.* at ¶ 6.

    **RESPONSE: Admit.**

13. Defendant believes that premarital sex violates the Righteous Living Core Value. *Id.*

    **RESPONSE: Admit.**

14. Defendant's prohibition of premarital sex as a violation of the Righteous Living Core Value is a sincerely held religious belief. (Docs. No. 93-8 at 12:20 – 17:13; 111-2 at 262:8-18).

**RESPONSE**: Denied. The HRC determines the subjective gradient of "Righteous Living," including the application, the extreme nature of the behavior, patterns, and individual circumstances and, depending on the facts and circumstances, an employee's behavior is subject to "review, probation, or termination." (Lopez Dep. 66, 85-86, Ex. 1 p. 0007; Galloway Dep. 30; Finney Dep. 37; Ramsey Dep. 28-29). This enforcement can change as new members bring a different perspective, and the collective decision might be different.[1] (Lopez Dep. 174). Further, its interpretation changes depending on who it involves and their sex; for example, in late 2018, pre- and extra-marital sex violations were limited to "intercourse" after a male employee had admitted he engaged in an extramarital affair involving oral sex. (Lopez Dep. 60, 87; Sievertsen Dep. 23, 25, 30; Floyd Dep. 75; Simms Dep. 28; Galloway Dep. 31).

15. Defendant is aware of eight employees since 2016, including Plaintiff, who have engaged in premarital sex. (Doc. No. 67-4 at ¶ 14). All eight have been terminated. *Id.*

    **RESPONSE**: Denied. In December 2018, another male employee admitted to Ramsey Solutions and Ramsey that he had engaged in an extramarital affair ten years prior, while employed by Ramsey Solutions, as well as to a recent affair involving oral sex after his wife approached Ramsey Solutions with concerns he was having an ongoing affair with another employee and disclosed his previous affairs. (Ramsey Dep. 15-19, 65-66; Simms 30(b)(6) Dep. 10, 17, Ex. 36 p. 2337). Though the male employee and co-worker initially denied it, he did admit to telling the employee she looked good and

---

[1] Daniel Tardy, a member of the Operating Board, stated on social media that Ramsey Solutions does not have policies but instead "principles" which "are guideposts and allow room for our hearts and wisdom to influence the decision. (O'Connor Dep. Ex. 26).

**that he missed her in the morning. (Ramsey Dep. 68, Ex. 41 p. 2610). In response, Ramsey chose to "walk[] with a broken guy who was trying to heal" including having the employee and his co-worker chaperoned on his book tour, proposed a "restoration plan" for his marriage, and made the decision not to terminate him, despite his repeated extramarital affairs and violation of "Righteous Living." (Ramsey Dep. 70, 72, Ex. 41 p. 2611; MSJ Opp. Ex. 4 p. 2661-63; Sievertsen Dep. 53; Simms 30(b)(6) Dep. 8).**

## ADDITIONAL STATEMENT OF MATERIAL FACTS

1. The HRC members and Ramsey have had very little, if any, training on Title VII or FMLA. (Lopez 30(b)(6) Dep. 73; Floyd Dep. 8; Simms Dep. 13-14; Ramsey Dep. 20).

   **RESPONSE:**

2. Ramsey Solutions is "held out to be Christian," meaning Ramsey Solutions holds itself out as a Christian company "from time to time," but has no practical application other than that its "image" is Christian, and its market "views" it as a biblically based company. (Finney Dep. 33-34; Lopez Dep. 48, Ex. 1 p. 0007; Floyd Dep. 38).

   **RESPONSE:**

3. Ramsey Solutions policy states "[s]hould a team member engage in behavior not consistent with traditional Judeo-Christian values or teaching, it would damage the image and the value of our goodwill and our brand;" meaning an employee cannot engage in behavior contrary to evangelical "normative Christian beliefs" regardless of their religious beliefs. (Lopez Dep. 55, Ex. 1 p. 0007; Ramsey Dep. 11, 27).

   **RESPONSE:**

4. Ramsey Solutions has adopted contemporary evangelical, complementarity beliefs that sex is only allowed within marriage, between one man and one woman and that the marital relationship is to "embody gender complementarity; the idea that men and women have different but complementary and co-equal roles in marriage and the household" and that men serve as "benevolent head[s]" and women as "caretakers." (Walker Dep. 29-31, Ex. 17 p. 1. *See* Armour Report, MSJ Opp. Ex. 1 p. 6).

**RESPONSE:**

5. Complementarianism in the workplace, including the policing of sexual morality through moral codes of conduct "disproportionately impacts women." (Ingersoll Report, MSJ Ex. 2 p. 06).

**RESPONSE:**

6. Ramsey Solutions contends that the Bible prohibits sex outside of marriage, despite acknowledging that Christian denominations interpret the Bible and the issue of sex outside of marriage differently. (Lopez Dep. 56, 77-79, Ex. 2 p. 07, Ex. 12 p. 3; Floyd Dep. 35, 47-48; Galloway Dep. 15, 21; Seivertsen Dep. 21; Simms Dep. 25; Ramsey Dep. 14; Walker Dep. 14-15, Ex. 17 p. 9; Armour Report, MSJ Opp. Ex. 1 pp. 2, 4, 9; Ingersoll Report, MSJ Opp. Ex. 2 p. 01).

**RESPONSE:**

7. Employees are not required to sign a purity pledge, but they are expected to know what Righteous Living means. (Lopez Dep. 78-79, 91; Ramsey Dep. 23).

**RESPONSE:**

8. According to Dave Ramsey, the whole organization accepts that premarital sex would be a violation, as this is a "normative" belief within the Christian community, and if an employee does not know what traditional Judeo-Christian values are, it is the employee's responsibility to ask before they sign the handbook. (Ramsey Dep. 12-13, 42).

**RESPONSE:**

9. Through her June 18, 2020 email, O'Connor requested an exception to "Righteous Living" with respect to pregnancy outside of marriage. (O'Connor Dep. 344).

**RESPONSE:**

10. Ramsey requires its employees to sign employment agreements that say they are going to live their life "in accordance with that value system," in other words, Ramsey Solutions' evangelical, normative Christian beliefs. (Ramsey Dep. 11, 24). Its Handbook states that the company is held out to be a Christian company adhering to "traditional Judeo-Christian values." (Ramsey Dep. 26, 28; Galloway 30(b)(6) Dep. Ex. 20(Doc. 67-6)). Employees are required to have the same Christian values as Dave Ramsey and Ramsey Solutions. (Ramsey Dep. 27). Ramsey Solutions requires its employees to agree to "Core Values" that include a "righteous living" core value based on Biblical principles. (Galloway Dep. 8, 11-12, 14; Ex. 20).

**RESPONSE:**

11. The normative Christian beliefs that Ramsey adheres to includes the belief that "having sex outside of marriage is not a righteous act." (Ramsey Dep. 13, 42; Galloway 14-16).

**RESPONSE:**

12. Ramsey's policies do not explicitly prohibit premarital sex, but it is part of the Righteous Living core value and the "whole organization" accepts that premarital sex would be a violation and an employee will be terminated for a violation. (Ramsey Dep. 12, 24, 41; Galloway Dep. 14-15; Lopez 30(b)(6) Dep. 17, 63-64).

**RESPONSE:**

13. The decision to terminate O'Connor was made within hours of her notification to Ramsey Solutions that she was pregnant and before any member of the Operating Board spoke to her.

(Lopez Dep. 97-98, 100, Ex. 5 p. 0083; Sievertsen Dep. 43; Floyd Dep. 46).

**RESPONSE:**

14. A week after notifying Ramsey Solutions of her pregnancy, Simms and Lopez terminated O'Connor, informing her their morals did not align. (O'Connor Dep. 91-92, 94, 104, 257, 267; Lopez Dep. 171; Ramsey Dep. 38).

**RESPONSE:**

Respectfully submitted,

*/s/ Heather Moore Collins*
Heather Moore Collins BPR # 026099
Ashley Shoemaker Walter BPR #037651
HMC Civil Rights Law, PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@hmccivilrights.com
ashley@hmccivilrights.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY certify that a copy of the foregoing has been e-mailed on July 29, 2025 to counsel of record through the court's CM/ECF system:

Leslie Goff Sanders
Daniel Crowell
Barton LLP
611 Commerce Street
Suite 2911
Nashville, TN 37203
lsanders@bartonesq.com
dcrowell@bartonesq.com

/s/ *Heather Moore Collins*
Heather Moore Collins