# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| CAITLIN O'CONNOR, | ) | |
| | ) | Case No. 3:20-cv-00628 |
| Plaintiff, | ) | |
| | ) | District Judge Richardson |
| v. | ) | |
| | ) | Magistrate Judge Frensley |
| THE LAMPO GROUP, LLC, | ) | |
| | ) | Jury Demand |
| Defendant. | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT
## AS TO COUNT V OF PLAINTIFF'S THIRD AMENDED COMPLAINT

Defendant, The Lampo Group, LLC, files this Reply in support of its Motion for Summary Judgment as to Count V of Plaintiff's Third Amended Complaint. (Doc. No. 108). Plaintiff's response (Doc. No. 113) does not establish any triable issues.

## I.        Red Herrings

Plaintiff devotes considerable space and energy to things that have no bearing on whether her claims in Count V survive summary judgment, e.g., the theological soundness of Defendant's view that Christianity prohibits premarital sex, the wisdom or general propriety of prohibiting employees from engaging in premarital sex, and arguments related to sex and pregnancy discrimination that should have been made in the parties' earlier summary judgment briefing. These interjections are merely an axe to grind that distracts from the real issues before the Court.

## II.       General Religious Discrimination & Religious Non-Conformity

Plaintiff's arguments pertaining to general religious discrimination and religious non-conformity are hard to follow.

### A. *McDonnell Douglas*

In response to Defendant's prima facie and pretext arguments under *McDonnell Douglas*, Plaintiff alternatively asserts that the Court should dispense with that framework entirely or that it does not apply because this is a direct evidence case.

While Justices Thomas and Gorsuch expressed doubts about the viability and utility of the *McDonnell Douglas* framework in their concurrence in *Ames*, they were merely inviting a future case to decide it head on. 605 U.S. 303, 326 (2025). That issue was not before the Court in *Ames* and the majority did not express any opinion on it. *Id.*

Here, Defendant need not take a side because Plaintiff loses either way. With *McDonnell Douglas*, she cannot establish a prima facie case or pretext as explained in Defendant's memorandum (Doc. No. 109).[1] Without *McDonnell Douglas*, she cannot satisfy her "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against [her]" based on religion. *Ames* at 308 FN2. After all, *McDonnell Douglas* is merely a useful framework for evaluating whether Plaintiff can satisfy her burden. *Id.* It does not change her ultimate burden.[2]

Alternatively, Plaintiff argues that the *McDonnell Douglas* framework does not apply because this is a direct evidence case. "[D]irect evidence is evidence which, if believed, requires

---

[1] With respect to the first element of Plaintiff's prima facie case – membership in a protected class – she argues that Defendant contradicted itself by first arguing that she did not have a sincerely held religious belief in Section IV(A) of its memorandum and then later conceding (for summary judgment purposes only) the first prima facie element in Section IV(B)(1). To be clear, Defendant does not believe that Plaintiff had a sincerely held religious belief regarding premarital sex protected by Title VII and urges the Court to reach that conclusion via the *Africa* test or similar analysis. However, if the Court declines to reach that threshold conclusion at the outset, then we need not rehash that analysis again in the prima facie case.

[2] That was the fundamental issue in *Ames*. The Sixth Circuit's *McDonnell Douglas* formulation for "reverse discrimination" claims improperly altered the burden for plaintiffs who belonged to "majority" groups. *Ames* at 313.

the conclusion that unlawful discrimination was at least a motivating factor.…Whatever the strength of the evidence, it is not direct evidence if [it] admits more than one plausible interpretation, and requires a significant inference or presumption on the part of the trier of fact." *Jordan v. Mathews Nissan, Inc.*, 539 F.Supp.3d 848, 868-69 (M.D. Tenn. 2021) (internal quotations and citations omitted).

This could only be a direct evidence case if Plaintiff can establish a religious discrimination claim under Title VII by proving that she was terminated for failing to comply with Defendant's sincerely held religious beliefs, without any regard for her own sincerely held religious beliefs or any conflicts between the two. As explained in Defendant's memorandum, we do not believe that is an accurate statement of the law. Defendant maintains that Title VII only prohibits discrimination against employees based on *their* sincerely held religious beliefs.

Otherwise, this is clearly an indirect evidence case. There is no direct evidence that Defendant terminated Plaintiff's employment because of her sincerely held religious beliefs rather than simply for engaging in premarital sex. She must rely on circumstantial evidence of religious discrimination, and there is none. As Plaintiff concedes on response, Defendant uniformly enforces its prohibition against premarital sex by terminating anyone who violates it.

## B. *Religious Non-Conformity*

On response, Plaintiff attempts to downplay the distinction between general religious discrimination and religious non-conformity claims.

She first argues that "discrimination is discrimination, irrespective of the genesis and artificial hurdles that undermine Title VII." Defendant agrees with that general principle. Title VII prohibits discrimination against employees based on *their* sincerely held religious beliefs. Period. While labels like "reverse discrimination" and "religious non-conformity" may be helpful to

describe particular fact patterns, they can take on a life of their own and improperly alter the law. The Sixth Circuit's heightened evidentiary burden for "reverse discrimination" claims, struck down in *Ames*, is a prime example.

But then she argues that "[c]haracterizing the claim as 'religious non-conformity' merely recognizes that 'lack of adherence to the religious beliefs promoted by the [employer] was the genesis of the discrimination' as opposed to the plaintiff's beliefs." Defendant does not believe that there is any statutory or constitutional support for an application of Title VII that only considers whether an employee complied with their employer's sincerely held religious beliefs, without regard for the employee's sincerely held religious beliefs or any conflict between the two. That formulation of Title VII would dramatically depart from the statutory text, violate RFRA, and violate the Free Exercise Clause.

Plaintiff claims that the Sixth Circuit rejected Defendant's Free Exercise argument in *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278 (6th Cir. 2023), but that is plainly incorrect. In *Ciraci*, the plaintiff-employees claimed that their employer—Smucker's—violated their Free Exercise rights by requiring vaccination. *Id.* at 279. The Sixth Circuit ruled for Smucker's, holding that the Free Exercise Clause only restrains state actors. *Id.*

Here, Defendant is asserting *its own* Free Exercise rights. In that sense, this case is the reverse of *Ciraci*. It is well settled that Defendant, as a closely held private company, has Free Exercise rights. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 713-15 (2014). And Plaintiff's religious non-conformity formulation would violate those rights.

### III.   Religious Accommodation

On response, Plaintiff asserts that knowledge of her sincerely held religious beliefs was not required to trigger Defendant's duty to accommodate them. In support, she cites the Supreme

Court's decision in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015). While the majority in *Abercrombie* held that Title VII does not directly impose a distinct knowledge requirement separate from motivation, knowledge was not at issue there. *Id.* at 773. The record in *Abercrombie* contained evidence that the defendant-employer knew that the plaintiff-applicant wore a headscarf because she was Muslim. *Id.* at 776-77 (Alito, J., concurring). Writing in concurrence, Justice Alito emphasized the absurdity of holding an employer liable for religious discrimination when it had no knowledge of the applicant or employee's religion. *Id.* at 775-79. The majority acknowledged Justice Alito's point but declined to resolve it in dictum. *Id.* at 774 FN3. Contrary to Plaintiff's suggestion, *Abercrombie* does not hold Defendant strictly liable for failing to accommodate any sincerely held religious beliefs of Plaintiff that it did not know about.

Plaintiff also fundamentally misunderstands and refuses to engage with Defendant's arguments that, per the Establishment Clause and RFRA, Title VII cannot be applied to require Defendant to set aside its own sincerely held religious beliefs in favor of Plaintiff's.

## IV.     Retaliation

On response, Plaintiff arguments in support of her retaliation claim are equally unavailing. Plaintiff's acknowledgement that premarital sex was "frowned upon" by Defendant is not protected activity, nor is Plaintiff's decision to wait for Defendant to terminate her employment instead of voluntarily resigning on her own initiative.

Moreover, although Plaintiff does not even attempt to address pretext on response, she cannot establish it for the reasons provided in Defendant's memorandum. Most notably, the undisputed fact that Defendant terminates any employees who engage in premarital sex. There is no evidence to sustain Plaintiff's ultimate burden of proving that she engaged in any protected activity or that it was a but-for cause of her termination.

5

Respectfully submitted,

/s/Daniel Crowell
Leslie Sanders (TN #18973)
Daniel Crowell (TN #31485)
Barton LLP
611 Commerce Street
Suite 2911
Nashville, TN 37203
Telephone: (615) 340-6790
lsanders@bartonesq.com
dcrowell@bartonesq.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that, on August 13, 2025, I filed the foregoing document via the Court's electronic

filing system, which will automatically notify and send a copy to:

Heather Moore Collins
Ashley Shoemaker Walter
HMC Civil Rights, PLLC

*Attorneys for Plaintiff*

/s/Daniel Crowell
Daniel Crowell (TN #31485)
*Attorney for Defendant*